UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------X

LANARD TOYS LIMITED,                              :

    Plaintiff,                :  Document Filed Electronically

    v.                        :  Civil Action No. 14-1939-SDW-MCA

TOYS "R" US, INC., DOLLAR GENERAL                 :  District Judge Susan D. Wigenton
CORPORATION, DOLGENCORP, LLC, and                       Magistrate Judge Madeline C. Arleo
JA-RU, INC.,                                      :

    Defendants.               :

-------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF LANARD TOYS LIMITED'S MOTION FOR PRELIMINARY INJUNCTION

LEWIS ANTEN, P.C.
Lewis Anten, *pro hac vice pending*
Ivy Choderker, *pro hac vice pending*
16830 Ventura Boulevard, Suite 236
Encino, CA 91436
(818) 501-3535

LOEB & LOEB LLP
Brian R. Socolow, *pro hac vice pending*
Jodi Sarowitz
345 Park Avenue
New York, NY 10154-1895
(212) 407-4000

*Attorneys for Defendants*
*Toys "R" Us, Inc., Dollar General Corporation,*
*Dolgencorp, LLC and Ja-Ru, Inc.*

# TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................................................... iii

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 3

    A.  Ja-Ru's Chalk Pencil ............................................................................... 3

    B.  Dollar General and TRU Never Purchased Or Sold The Ja-Ru Chalk
    Pencil ......................................................................................................... 6

    C.  Lanard's Chalk Holder ............................................................................. 7

III.  ARGUMENT ....................................................................................................... 8

    A.  Lanard Does Not Meet the Standard for Preliminary Injunctive Relief
    Because It Lacks a Protectable Copyright, Is Not Likely to Prevail on
    the Merits and Will Not Suffer Irreparable Damage ............................... 8

    B.  Dollar General and TRU Do Not Purchase or Sell the Ja-Ru Chalk
    Pencil And Accordingly Should Not Be Enjoined ................................... 9

    C.  Lanard Is Not Reasonably Likely To Prevail Eventually In The
    Litigation ................................................................................................ 10

        1.  Lanard Has Lost Any Presumption of Validity of Copyright
        Registration and Copyright ........................................................ 10

            a.  Lanard's Fraud on the Copyright Office Invalidates Its
            Certificate Of Registration ............................................. 10

            b.  Lanard's Copyright Is Invalid Because It Is A Derivative
            Work Lacking Originality ............................................... 13

        2.  Lanard Cannot Prove Infringement At Trial Because There is
        No Substantial Similarity Between Ja-Ru's Chalk Pencil and
        Protectable Aspects of Lanard's Chalk Pencil .......................... 17

    D.  Lanard Will Not Be Irreparably Harmed If the Preliminary Injunction
    Is Not Granted ........................................................................................ 19

        1.  Lanard Admits There is Still Substantial Demand for its Chalk
        Pencil ......................................................................................... 19

        2.  Lanard's Delay Belies Irreparable Harm ................................... 19

i

## TABLE OF CONTENTS CONTINUED

**Page**

       3.     Retailers Chose Not To Purchase Ja-Ru's Chalk Pencil, Belying Lanard's Claim of Irreparable Harm ......................................................... 21

  E.    The Balance Of Harms And Public Interest Weigh Heavily In Favor Of Denying Preliminary Injunction ........................................................................ 23

IV.    IN THE EVENT THE COURT IS INCLINED TO GRANT LANARD'S MOTION, LANARD SHOULD BE REQUIRED TO POST A $250,000 BOND ......................................................................................................................... 25

V.    CONCLUSION ...................................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*AT&T v. Winback & Conserve Program, Inc.*,
   42 F.3d 1421 (3d Cir. 1994) .................................................................. 8

*Apollo Techs. Corp. v. Centrosphere Indus. Corp.*,
   805 F. Supp. 1157 (D.N.J. 1992) ........................................................... 9

*Brandir Int'l., Inc. v. Cascade Pacific Lumber Co.*,
   834 F.2d 1142 (2d Cir. 1987) ............................................................... 16

*Bd. of Health v. Jennings*,
   18 A.2d 62 (Ct. Chancery N.J. 1941), *aff'd*, 25 A.2d 861 (N.J. 1942) ................................. 20

*Chosun Int'l., Inc. v. Chrisha Creations, Ltd.*,
   413 F.3d 324 (2d Cir. 2005) ................................................................. 16

*Dam Things from Denmark, a/k/a Troll Co. ApS v. Russ Berrie & Co., Inc.*,
   290 F.3d 548 (3d Cir. 2002) ...................................................... 13, 14, 17

*Durham Indus., Inc. v. Tomy Corp.*,
   630 F.2d 905 (2d Cir. 1980) ....................................................... 14, 17, 18

*Ecri v. McGraw-Hill, Inc.*,
   809 F.2d 223 (3d Cir. 1987) ................................................................. 19

*Educ. Testing Servs. v. Katzman*,
   793 F.2d 533 (3d Cir.1986) ............................................................ 14, 15

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*,
   25 F.3d 119 (2d Cir. 1994) .................................................................. 18

*Frank's GMC Truck Center, Inc. v. General Motors Corp.*,
   847 F.2d 100 (3d Cir. 1988) ................................................................. 19

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*,
   446 F.2d 738 (9th Cir.1971) ................................................................. 15

*Hoxworth v. Blinder, Robinson & Co.*,
   903 F.2d 186 (3d Cir. 1990) ................................................................. 25

*Jurista v. Amerinox Processing, Inc.*,
   492 B.R. 707 (D.N.J. 2013) .................................................................. 2

*K.A. v. Pocono Mountain School Dist.*
   710 F.3d 99 (3d Cir. 2013) ................................................................... 8

## TABLE OF AUTHORITIES CONTINUED

**Page(s)**

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
   421 F.3d 199 (3d Cir. 2005)........................................................ 14, 15

*L. Batlin & Son, Inc. v. Snyder*,
   536 F.2d 486 (2d Cir. 1976)................................................. 12, 14, 16, 17

*Lampon-Paz v. Dep't of Homeland Sec.*,
   No. 13-cv-5757-WJM-MF, 2014 WL 252909 (D.N.J. Jan. 23, 2014)..................... 8

*Masquerade Novelty, Inc. v. Unique Indus., Inc.*,
   912 F.2d 663 (3d Cir. 1990)....................................................*passim*

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*,
   724 F.2d 357 (2d Cir. 1983)........................................................ 15

*Mead Johnson & Co v. Abbott Labs.*,
   201 F.3d 883 (7th Cir. 2000)................................................... 25, 26

*Mortgage Market Guide, LLC. v. Freedman Report, LLC*,
   No. 06-CV-140-FLW, 2008 WL 2991570 (D.N.J. July 28, 2008) ........................ 11

*Original Appalachian Artworks, Inc. v. S. Diamond Assoc. Inc.*,
   44 F.3d 925 (11th Cir. 1995)................................................... 3, 27

*Orson, Inc. v. Miramax Film Corp.*,
   836 F. Supp. 309 (E.D. Pa. 1993) ................................................. 20

*Pearson v. Component Tech. Corp.*,
   247 F.3d 471 (3d Cir. 2001)........................................................ 9

*Pharmacia Corp. v. Alcon Labs.*, Inc.,
   201 F. Supp. 2d 335, 382 (D.N.J. 2002) ........................................... 20

*Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*,
   482 F. Supp. 980 (S.D.N.Y. 1980)................................................. 10

*Sanders v. Air Line Pilots Ass'n Int'l*,
   473 F.2d 244 (2d Cir. 1972)....................................................... 24

*Stern v. Halligan*,
   158 F.3d 729 (3d Cir. 1998)........................................................ 2

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
   863 F. Supp. 2d 394 (D.N.J. 2012) ................................................ 15

iv

## TABLE OF AUTHORITIES CONTINUED

**Page(s)**

*U.S. ex rel. Giles v. Sardie*,
  191 F. Supp. 2d 1117 (C.D.Cal. 2000) ................................................................. 2

*Vogue Ring Creations, Inc. v. Hardman*,
  410 F. Supp. 609 (D.R.I. 1976) ............................................................... 11, 12

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986) ............................................................................ 15

*Warner Bros. Pictures, Inc. v. Gittone*,
  110 F.2d 292 (3d Cir. 1940) ............................................................................ 9

*Warner Lambert Co. v. McCrory's Corp.*,
  718 F. Supp. 389 (D.N.J. 1989) ................................................................... 19, 20

*Zambelli Fireworks Mfg. Co., Inc. v. Wood*,
  592 F.3d 412 (3d Cir. 2010) ........................................................................... 25

### Statutes and Rules

17 U.S.C. § 101 .................................................................................... 13, 16

17 U.S.C. § 102(b) ................................................................................ 2, 14

17 U.S.C. § 106 ........................................................................................ 17

Fed. R. Civ. P. 65(c) ................................................................................ 25

Defendants Ja-Ru, Inc. ("Ja-Ru"), Toys "R" Us, Inc. ("TRU"), Dollar General Corporation ("Dollar General")[1] and Dolgencorp, LLC ("Dolgencorp") (Dollar General and Dolgencorp are hereinafter collectively referred to as "Dollar" and Ja-Ru, TRU and Dollar are hereinafter collectively referred to as "Defendants")[2] hereby oppose Plaintiff Lanard Toys Limited's ("Lanard") Motion for a Preliminary Injunction ("Motion").

## I.  <u>INTRODUCTION</u>

The Court should deny Lanard's request for the far-reaching and extraordinary remedy of a preliminary injunction.

Lanard's delay in seeking injunctive relief belies its claim of irreparable harm and indicates the lack of exigency required for the granting of a preliminary injunction.  The Ja-Ru Chalk Pencil sought to be enjoined by Lanard has been offered for sale to the major retail chains since April/May 2012 and on retail store shelves in the United States for more than a year. Lanard first contacted any of the Defendants regarding its claims of infringement in February 2014.  Yet, Lanard waited until April 10, 2014 to file its Motion for Preliminary Injunction and did not do so by order to show cause, never sought a temporary restraining order, and did not seek expedited discovery,  including to discover other potential retailers who purchased and sold the Ja-Ru Chalk Pencil.  Given that Lanard filed its Complaint on March 27, 2014 and waited until April 10 to file its Motion, Lanard apparently was not concerned with sale of the Ja-Ru Chalk Pencil during this time period.  Accordingly, there are no exigent circumstances warranting the extraordinary remedy of injunctive relief, before any discovery has taken place.

---

[1]As discussed below, Dollar General is a parent company and TRU is a holding company, and, as such, neither of these named defendants purchased or sold the Ja-Ru Chalk Pencil.

[2]In submitting this opposition brief, Dollar General and Dolgencorp do not consent to, or waive, their respective rights to contest the exercise of personal jurisdiction over them, or the propriety of venue, and reserve their rights to contest personal jurisdiction and venue.  All Defendants reserve their rights to move to change venue for convenience and the interests of justice.

Any harm suffered by Lanard is fully compensable by monetary damages in the unlikely event it prevails at trial.

A preliminary injunction is particularly inappropriate in this case because the entire basis for Lanard's Motion rests on its asserted presumption of validity of its copyright and certificate of copyright registration.   However, this rebuttable presumption of validity is overcome by Lanard's fraud on the Copyright Office in failing to disclose that its Chalk Pencil is a derivative work based on preexisting material, specifically the ubiquitous, iconic, standard yellow number two pencil ("No. 2 Pencil"), and due to the lack of any protectable (i.e. "original") elements in its Chalk Pencil as required by copyright law.   In its Motion, Lanard does not identify a single feature of its Chalk Pencil that is not identical to the No. 2. Pencil.[3]   Lanard cannot monopolize the "idea" of the standard, yellow number two pencil, which is anathema to the fundamental principle of copyright law that protection is available only for the expression of an idea, but not the idea itself. 17 U.S.C. § 102(b).

In addition, Lanard will not prevail in proving infringement because it will be unable to prove illicit copying.   Ja-Ru, like Lanard, had access to the No. 2 Pencil and to other similar yellow pencils. The Lanard and Ja-Ru items are both derived from and are necessarily common to the iconic No. 2. Pencil.   In designing its own Chalk Pencil, Ja-Ru made changes to the No. 2

---

[3]Lanard is precluded from raising new arguments and issues in its reply brief, including regarding what it claims to be protectable elements of its asserted copyright and upon what it based its Chalk Pencil design.  It is well established that new arguments are not permitted to be raised for the first time in reply briefs because the opposing party would not have an opportunity to respond to the "newly minted" arguments in the reply brief since the local rules do not permit sur-replies.  *Jurista v. Amerinox Processing, Inc.,* 492 B.R. 707, 779-80 (D.N.J. 2013) (citing *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.,* 998 F. Supp. 447, 458 (D.N.J.1998) (precluding plaintiff from asserting a new basis for injunctive relief in its reply brief); *see also Stern v. Halligan,* 158 F.3d 729, 731 n.3 (3d Cir. 1998) ("A party cannot raise issues for the first time in a reply brief."); *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those present in the moving papers" (citing *Lugan v Nat'l Wildlife Fed'n*, 497 U.S. 871, 894-95 (1990)).

Pencil.  To the extent that any similarity exists between Lanard's Chalk Pencil and Ja-Ru's Chalk Pencil, the similarity is the result of mutual derivation based on the No. 2 Pencil.

Lanard should not be permitted to stifle its business competition, or punish those who dare to compete with it.  Accordingly, Lanard's Motion for Preliminary Injunction should be denied.

Further, Lanard has failed to address the issue of posting bond in its Motion.  Posting bond is required before a court may issue a preliminary injunction.  If Lanard does not agree to post a reasonable bond if its Motion is granted, there is no reason for the Court to even rule on Lanard's Motion for Preliminary Injunction.  See *Original Appalachian Artworks, Inc. v. S. Diamond Assoc. Inc.*, 44 F.3d 925, 927 n.3 (11th Cir. 1995) (noting that in a previous, related lawsuit, although plaintiff had prevailed on its motion for preliminary injunction, an injunction never issued because plaintiff did not make the necessary application because it could not post the anticipated multi-million dollar bond).

## II.    FACTUAL BACKGROUND

### A.    Ja-Ru's Chalk Pencil

In late 2011, Ja-Ru's designers developed and designed a chalk holder product resembling a ubiquitous, iconic, standard yellow No. 2 Pencil containing chalk meant to be used by children to draw and write on the sidewalk ("Ja-Ru Chalk Pencil").  (*See* the accompanying Declaration of Russell Selevan, hereinafter "Selevan Dec." ¶3, Exhibit ("Exh.") A)  There are numerous large-sized products resembling a No. 2 Pencil on the market such as:



(The Sarut Group, http://www.thesarutgroup.com/products/think-big-pencil).   TRU, non-party

Toys "R" Us-Delaware, Inc. ("TRU-D"), Dollar General, and Dolgencorp had no involvement

with the design or development of the Ja-Ru Chalk Pencil.   (Selevan Dec. ¶3); *see* the

accompanying Declarations of Robert Stephenson, hereinafter "Stephenson Dec." ¶5; Kimberly

Mayben, hereinafter "Mayben Dec." ¶¶3, 5)

In designing the Ja-Ru Chalk Pencil, Ja-Ru had access to the Dixon Ticonderoga pencil

as well as other standard yellow pencils.  (Selevan Dec. ¶5)  Ja-Ru also had access to Lanard's

Chalk Pencil product, but the Ja-Ru Chalk Pencil is not a copy of the Lanard Chalk Pencil.

(Selevan Dec. ¶5)  Ja-Ru added its own unique and original design elements, different from those

used by Lanard or the standard yellow No. 2 pencils.   (Selevan Dec. ¶5) Because the No. 2

Pencil has standard, stock, common features, such as a pink eraser at the top, a ridged ring

between the eraser and the yellow body, an area of shaved wood at the bottom when sharpened,

and protruding lead, Ja-Ru added its own unique design elements to the only two places that

would allow for such originality without diverging from the concept of the standard No. 2 Pencil.

Ja-Ru added unique design elements to (1) the ridged ring that appears between the eraser and

the body on a No. 2 Pencil (known as a ferrule on pencil) and (2) the area resembling the shaved

wood encasing the lead on a No. 2 Pencil. (Selevan Dec. ¶5)  The designs of these two features

are completely different from Lanard's designs on the comparable areas of its Chalk Pencil as

evident from the products themselves. (Selevan Dec. ¶¶3-5, Exhs. A, B)   Lanard does not refer to or identify any design features of its Chalk Pencil, but only states that it was trying to make it look like a No. 2 Pencil. Indeed, in its Motion, Lanard states that "Lanard came up with, and settled on, a design that evokes the distinctive appearance of a pencil found in school classrooms, on a larger scale." (Lanard's Brief in Support of its Motion for Preliminary Injunction ("Lanard Br.") at p. 2; Declaration of James W. Hesterberg in Support of Lanard's Motion for Preliminary Injunction, hereinafter "Hesterberg Dec." ¶14)

Ja-Ru has also designed unique and distinctive packaging for the Ja-Ru Chalk Pencil consisting of, among other features, a downward pointing bottom portion to the packaging, which mimics the downward pointing direction of the chalk protruding from the chalk holder; a color scheme of red, yellow, white, black, and gray, with the word "chalk" written in red, blue, pink, yellow and purple letters; and written and pictorial instructions, including red arrows, explaining how to use the product. (Selevan Dec. ¶6, Exh. A)  The packaging of the Ja-Ru Chalk Pencil uniquely identifies the chalk holder as coming from Ja-Ru.

The Ja-Ru Chalk Pencil was first offered for sale to retailers by Ja-Ru for domestic sale and by Ja-Ru (HK) Ltd. ("Ja-Ru HK"), an affiliate of Ja-Ru, which is not a party to this action, for sale FOB Asia, in Hong Kong, in April/May 2012, including to mass merchandisers including Walgreen Co. ("Walgreen"), Kmart Corporation ("Kmart"), and Wal-Mart Stores, Inc. ("Wal-Mart"), all identified by Lanard Managing Director James Hesterberg as retailers Lanard claims it is afraid it will lose.  (Selevan Dec. ¶7; Lanard Br. at pp. 6, 11; Hesterberg Dec. ¶¶26-27)  None of these retailers purchased the item at that time.  (Selevan Dec. ¶7)

In February 2013, Ja-Ru began shipping the Ja-Ru Chalk Pencil domestically to be on retail store shelves in the United States in or around February/March 2013.  (Selevan Dec. ¶8) The Ja-Ru Chalk Pencil first appeared in the Ja-Ru catalog in June 2012.  (Selevan Dec. ¶8)  In August 2013, Dolgencorp and Toys "R" Us Delaware-Inc. ("TRU-D"), which is not a party to

this action, placed an order for the Ja-Ru Chalk Pencil with Ja-Ru HK to be on their store shelves in or around January/February 2014.  (Selevan Dec. ¶9; Stephenson Dec. ¶¶6, 8; Mayben Dec. ¶¶6, 8 )  Non-party TRU-D first sold the Ja-Ru Chalk Pencil in January 2014.  (Mayben Dec. ¶8)  Dolgencorp first sold the Ja-Ru Chalk Pencil on February 6, 2014.  (Stephenson Dec. ¶8)  Sales to Dolgencorp and TRU-D of the Ja-Ru Chalk Pencil were made by Ja-Ru HK.  (Selevan Dec. ¶10)  Ja-Ru never sold the Ja-Ru Chalk Pencil to TRU-D, Dollar General, or Dolgencorp. (Selevan Dec. ¶11)  Ja-Ru HK never sold the Ja-Ru Chalk Pencil to Dollar General or TRU. (Selevan Dec. ¶12)  To date, Walgreen, Kmart, and Wal-Mart have not purchased the Ja-Ru Chalk Pencil from Ja-Ru HK or Ja-Ru. (Selevan Dec. ¶13)

The claims in the Complaint were first raised by Lanard with Dollar in February 2014. (Stephenson Dec. ¶12, Exh. B)  No notice of Lanard's claims of infringement were given by Lanard to TRU, TRU-D, or Ja-Ru prior to service of the Complaint.  (Mayben Dec. ¶10; Selevan Dec. ¶14)  On March 27, 2014, Lanard commenced this action by filing its Complaint for copyright infringement, design patent infringement, trade dress infringement, and unfair competition allegedly arising from Defendants' use of a chalk holder design.  (*See* Complaint). Lanard never informed Defendants that it intended to file a Motion for Preliminary Injunction prior to service of the Motion.  (Selevan Dec. ¶14; Stephenson Dec. ¶13; Mayben Dec. ¶11)

Lanard waited until April 10, 2014, to file and serve its Motion for Preliminary Injunction, and did not do so by order to show cause.  Lanard also did not seek a temporary restraining order or seek expedited discovery to discover identities of other potential retail customers of the Ja-Ru Chalk Pencil.

### B.      Dollar General and TRU Never Purchased Or Sold The Ja-Ru Chalk Pencil

Dollar General, the parent company to Dolgencorp, its wholly-owned subsidiary, never purchased or sold the Ja-Ru Chalk Pencil.  (Stephenson Dec. ¶¶3, 10)  Dolgencorp purchased the

Ja-Ru Chalk Pencil from Ja-Ru HK.  (Stephenson Dec. ¶¶6, 7)  Dolgencorp first sold the Ja-Ru Chalk Pencil on February 6, 2014. (Stephenson Dec. ¶8)

Defendant TRU never purchased or sold the Ja-Ru Chalk Pencil.   (Mayben Dec. ¶3)  TRU is holding company and itself does not operate any retail stores, purchase or sell any products, or have relationships with vendors.  (Mayben Dec. ¶3)  Any purchases and sales of the Ja-Ru Chalk Pencil would have been made by non-party TRU-D.  (Mayben Dec. ¶4)

Counsel for Defendants have apprised Lanard's counsel that Dollar General and TRU, are not proper parties to this action and requested that it name the proper Toys R Us entity, but Lanard's counsel indicated his refusal to dismiss these incorrectly-named defendants from the action and to name the correct Toys R Us entity. (*See* the accompanying Declaration of Lewis Anten, hereinafter "Anten Dec." ¶2, Exh. A)

C.   **Lanard's Chalk Holder**

The design of Lanard's Chalk Pencil is entirely based on and incorporates design elements of the classic, yellow No. 2 Pencil.  Indeed, in its Motion, Lanard states that "Lanard came up with,  and settled on, a design that evokes the distinctive appearance of a pencil found in school classrooms, on a larger scale."  (Lanard Br. at p. 2; Hesterberg Dec. ¶14)  In its Motion, Lanard does not identify a single design feature of its Chalk Pencil that is not copied from the standard No. 2 Pencil.

Lanard's copyright application for Lanard's Chalk Pencil does not disclose that it is a derivative work based on preexisting material, the No. 2 Pencil, and does not include a statement of additional new material added to the preexisting No. 2 Pencil, as required by copyright law and the Copyright Office application itself.  (Hesterberg Dec. ¶5, Exh. D)  The copyright application form contains a section entitled "Derivative Work or Compilation."  Spaces 6a and 6b of the copyright application form specifically require the applicant to identify any preexisting work that the work for which registration is sought is based on or incorporates and to give a

"statement of the additional new material covered by the copyright claim for which registration is sought."   (Anten Dec. ¶3, Exh. B)   Lanard left these sections blank on its copyright application.  (Hesterberg Dec. ¶5, Exh. D)

## III.   ARGUMENT

### A.   Lanard Does Not Meet the Standard for Preliminary Injunctive Relief Because It Lacks a Protectable Copyright, Is Not Likely to Prevail on the Merits and Will Not Suffer Irreparable Damage

The Court should deny Lanard's Motion for Preliminary Injunction.  "'[T]he grant of injunctive relief is an extraordinary remedy . . . . .which should be granted only in limited circumstances." *AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994)(internal citations omitted).  "This proposition is particularly apt in motions for *preliminary* injunctions, when the motion comes before the facts are developed to a full extent through the normal course of discovery." *Id.* at 1427 (emphasis in the original).

Pursuant to the Third Circuit's test for preliminary injunctions, this Court is to issue such an injunction only if a plaintiff produces evidence sufficient to convince the Court that *each* of four factors favor preliminary relief:  (1) that it is reasonably likely to prevail eventually in the litigation and (2) that it is likely to suffer irreparable injury without relief. If these two threshold showings are made the Court then considers, to the extent relevant, (3) whether an injunction would harm the defendant more than denying relief would harm the plaintiff and (4) whether granting relief would serve the public interest.  *K.A. v. Pocono Mountain School Dist*., 710 F.3d 99, 105 (3d Cir. 2013); *Lampon-Paz v. Dep't of Homeland Sec*., No. 13-cv-5757-WJM-MF, 2014 WL 252909, at *5 (D.N.J. Jan. 23, 2014) (citing *Score Bd., Inc. v. Upper Deck Co.,* 959 F. Supp. 234, 238 (D.N.J. 1997) (*citing New Jersey Hosp. Assoc. v. Waldman,* 73 F.3d 509 (3d Cir. 1995)).  Lanard has failed to satisfy even one of the necessary requirements for injunctive relief.

Further, a preliminary injunction cannot be issued when there are disputed issues of fact. *Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1191 (D.N.J. 1992). Where conflicting affidavits are the sole evidence at hand, the conflicting affidavits must be given equal weight. *Warner Bros. Pictures, Inc. v. Gittone*, 110 F.2d 292, 293 (3d Cir. 1940). The Court should also deny Lanard's Motion for Preliminary Injunction on the basis that significant factual issues are in dispute regarding issues of protectability, originality, similarity, and validity of its purported copyright, as set forth in detail below.

**B.      Dollar General and TRU Do Not Purchase or Sell the Ja-Ru Chalk Pencil And Accordingly Should Not Be Enjoined**

Dollar General is a parent company to Dolgencorp, its wholly-owned subsidiary, and did not purchase or sell the Ja-Ru Chalk Pencil. (Stephenson Dec. ¶¶3, 10) Further, the purchase and sale of the Ja-Ru Chalk Pencil by Dolgencorp is not a basis for liability against its parent, Dollar General.  Mere ownership of a subsidiary does not justify the imposition of liability on the parent corporation.  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001).  Courts will pierce the corporate veil to hold a parent company liable for the obligations and liabilities of its subsidiary "'when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.'" (Citation omitted). *Id.* at 484.  No such facts have been alleged by Lanard in its Complaint or Motion for Preliminary Injunction.

TRU is a holding company and as such does not purchase or sell any product.  (Mayben Dec. ¶3)

Accordingly, there is no basis for the preliminary injunction to issue against Dollar General or TRU.  Lanard's Motion for Preliminary Injunction against Dollar General and TRU should be denied.  As previously mentioned herein, Lanard has been notified that Dollar General and TRU are improper parties to this action.  (Anten Dec. ¶2, Exh. A)

**C.**      **Lanard Is Not Reasonably Likely To Prevail Eventually In The Litigation**

      **1.**      **Lanard Has Lost Any Presumption of Validity of Copyright Registration and Copyright**

Defendants, not Lanard, are likely to prevail eventually in the litigation. Lanard's entire Motion rests upon the rebuttable presumption of validity of its copyright registration and copyright. However, the presumption of validity of a copyright based on a certificate of registration can be rebutted by proof that that the plaintiff's product was copied from other works or similarly probative evidence as to lack of originality. *Masquerade Novelty, Inc. v. Unique Indus., Inc*., 912 F.2d 663, 668-69 (3d Cir. 1990). Further, a plaintiff's fraud on the Copyright Office in obtaining a certificate of registration is grounds for holding the registration invalid and incapable of supporting an infringement action. *Id.* at 667. Lanard's fraud on the Copyright Office in intentionally failing to disclose to the Copyright Office that its Chalk Pencil is a derivative work based on the preexisting No. 2 Pencil rebuts the presumption of validity rendering it incapable of supporting a copyright claim, as set forth in detail below. The presumption of validity is also rebutted by the lack of any original elements to Lanard's Chalk Pencil, regardless of Lanard's fraud on the Copyright Office. Moreover, and significantly, there is no substantial similarity between the protectable elements of Lanard's Chalk Pencil and Ja-Ru's Chalk Pencil.

      **a.**      **Lanard's Fraud on the Copyright Office Invalidates Its Certificate Of Registration**

A plaintiff's knowing failure to advise the Copyright Office of facts which might have led to the rejection of a registration application constitutes grounds for holding the registration invalid and incapable of supporting an infringement action. *Masquerade Novelty,* 912 F.2d at 667; *see also Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc*., 482 F. Supp. 980, 985, 988 (S.D.N.Y. 1980) (declining to enforce plaintiff's copyright where the plaintiff knowingly failed to disclose on copyright application that the work was based on pre-existing work as "the

knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the copyright invalid."); *Vogue Ring Creations, Inc. v. Hardman*, 410 F. Supp. 609, 614-15 (D.R.I. 1976) (invalidating copyright registration for failing to disclose preexisting material on application); *Mortgage Market Guide, LLC v. Freedman Report, LLC*, No. 06-CV-140-FLW, 2008 WL 2991570, at *19-20 (D.N.J. July 28, 2008) (declining to invalidate copyright registration even though supplemental application did not initially identify work as derivative or compilation because the original application identified the work as such, thus the Copyright Office was on notice about the derivative or compilation nature of the work and could make further inquiry where necessary, and because applicant amended its supplemental application to include the required information).

In *Vogue Ring Creations*, the court invalidated the plaintiff's copyright registration because plaintiff failed to disclose on its copyright application that the ring for which it had sought registration was based on a preexisting ring. *Id.* The court noted that had the plaintiff included this information on the application, the Copyright Office would have had the opportunity to evaluate whether or not the plaintiff had made any copyrightable changes, *i.e.,* original contributions. *Id.* at 615. The court noted that the requirement of disclosing preexisting material on a copyright application is similar to the prior art requirement in patents. *Id.* at 615.

In the present case, just like the plaintiff in *Vogue Ring Creations* who failed to disclose on the copyright application the preexisting work and any work added thereto, Lanard failed to disclose on its copyright application that the Lanard Chalk Pencil is a derivative work, based on and incorporating the preexisting standard yellow No. 2 Pencil, and failed to include a statement identifying what, if any, new material Lanard added to the No. 2. Pencil.[4] *Vogue Ring Creations,*

---

[4]Lanard may also have committed fraud on the Patent Office in failing to disclose the No. 2 Pencil as prior art when seeking its design patent for the Lanard Chalk Pencil, which it had an affirmative duty to do. Lanard's design patent, among other issues, will be the subject of a motion for summary

410 F. Supp. at 614-15.  Lanard clearly had first-hand knowledge of the No. 2 Pencil and based its design for its Chalk Pencil on the No. 2 Pencil as evidenced not just by the statement by Lanard's Managing Director, James W. Hesterberg, that Lanard "settled on, a design that evokes the distinctive appearance of a pencil found in school rooms."  (Lanard Br. at p. 2; Hesterberg Dec. ¶14)  Yet neither Lanard nor its counsel disclosed to the Copyright Office the preexisting material, the No. 2 Pencil, or what, if any, new material Lanard added to the No. 2 Pencil, thus preventing the Copyright Office from determining the copyrightability of any original elements, if any, Lanard added to the preexisting No. 2 Pencil.

The intentional omissions on Lanard's copyright application were material because had Lanard included the omitted information as required by the copyright application and rules, Lanard would not have been able to identify any new or additional material that meets the standard of originality needed to support copyright in its derivative work, as set forth in detail in Section III.C.1.b.iv below, leading to rejection of its application.  Like the plaintiff in *Vogue Ring Creations* whose copyright registration was invalidated for knowingly failing to include the required derivative work information on the copyright application, Lanard's copyright registration is invalid due to its fraud on the Copyright Office.

Significantly, in its Motion and Complaint, Lanard does not identify a single feature of its Chalk Pencil that is different from "the distinctive appearance of a pencil found in school classrooms" except that it is "on a larger scale." (Lanard Br. at p. 2; Hesterberg Dec. ¶14)  However, change in size is not sufficient to support the requisite level of originality for a derivative work.  *See L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 491 (2d Cir. 1976) (holding copyright invalid of a plastic "Uncle Sam" bank because it was extremely similar to the preexisting cast-iron "Uncle Sam" bank on which it was based, with the only differences being

---

judgment.  The motion for summary judgment will be brought after Defendants have had an opportunity to file a motion to transfer venue.

the size and different medium, and some other minor differences, and thus lacked the required degree of originality).

The Third Circuit has suggested that in the case where there has been a material but inadvertent omission on a copyright application, the correct approach may be to deprive the plaintiff of the presumption of validity afforded to copyright registrations and to require him to establish the copyrightability of the articles he claims are being infringed. *Masquerade Novelty,* 912 F.2d at 668 n.5.  Accordingly, even if the Court were to find Lanard's failure to disclose on its copyright application the preexisting No. 2 Pencil and any new material added thereto to be inadvertent, Lanard's inadvertent omission deprives Lanard of the presumption of validity of its copyright registration.

> **b.      Lanard's Copyright Is Invalid Because It Is A Derivative Work Lacking Originality**

Lanard's copyright is invalid because it lacks the requisite originality for a derivative work.

> **(1)      Standard of Originality for a Derivative Work**

A new work that utilizes expression from a previously existing work is considered to be derivative of that work. *Dam Things from Denmark, a/k/a Troll Co. ApS, v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 563-64 (3d Cir. 2002).  The Copyright Act defines a derivative work as "'based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.'  17 U.S.C. § 101.  An author's right to protection of the derivative work only extends to the elements that he has added to the work; he cannot receive protection for the underlying work." *Troll Co.*, 290 F.3d at 563.  The scope of protection afforded a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the

scope of any copyright protection in that preexisting material.  *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980)("Thus the only aspects of Tomy's Disney figures entitled to copyright protection are the non-trivial, original features, if any, contributed by the author or creator of these derivative works.").

In order to be protectable, the newly-added elements of a derivative work must meet the constitutional originality requirement that a work "must possess 'at least some minimal degree of creativity'" and be more than trivial.  *Troll Co.*, 290 F.3d at 564 (citing *Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991)); *Durham Indus.,* 630 F.2d at 909.   In considering the originality required to qualify for protection as a derivative work, "there must be at least some substantial variation, not merely a trivial variation such as might occur in the translation to a different medium." *Troll Co.,* 290 F.3d at 563-64 (citing *L. Batlin & Son,* 536 F.2d at 491).   Mere reproduction of preexisting works in a different medium, even though the adaptation of the preexisting works to this medium involves some degree of manufacturing skill, does not constitute originality. *Durham Indus.*, 630 F.2d at 910.  The Second Circuit in *L. Batlin & Son* held the copyright invalid of a plastic "Uncle Sam" bank because it was extremely similar to the preexisting cast-iron "Uncle Sam" bank on which it was based, with the only differences being the size and different medium, and some other minor differences, and thus lacked the required degree of originality.  *L. Batlin & Son*, 536 F.2d 486.

### (2)    There is No Copyright Protection for an Idea

Copyright law protects only the expression of an idea, and not the idea itself. 17 U.S.C. § 102(b).  When a copyright author's expression becomes indistinguishable from the idea he seeks to convey, the two merge and there is no protection available for the expression. *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 209 (3d Cir. 2005); *Educ. Testing Servs. v. Katzman,* 793 F.2d 533, 539 (3d Cir.1986). "In these circumstances, no protection is available for the expression; otherwise, the copyright owner could effectively acquire a monopoly on the

underlying art or the idea itself." *Kay Berry, Inc.,* 421 F.3d at 209 (citing *Educ. Testing Services*, 793 F.2d at 539). For example, in *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738 (9th Cir. 1971), the Ninth Circuit court found that the idea of jewelry pin in the form of a jewel encrusted bee was capable of expression in only one form and there was no protection found. Also for example, in *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983), the Second Circuit, in denying a preliminary injunction, found that a 5½ inch Warlord doll did not infringe upon a 5½ inch Masters of the Universe doll, though the dolls looked very similar, because the similarities were all attributable to the unprotectable idea of "a superhuman muscleman crouching in what since Neanderthal times has been a traditional fighting pose."

Also unprotectable by copyright law are expressions that are so associated with a particular genre, motif or idea that one is compelled to use such expression. *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 403 (D.N.J. 2012); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986).

Here, just like the jeweled bee in *Herbert Rosenthal Jewelry* and the doll in *Mattel,* which the respective courts found capable of expression in only one form and, thus, not subject to copyright protection, a chalk holder in the form of a standard classroom pencil is capable of expression in only one form, *i.e.*, in the form of the standard classroom pencil as embodied by both the Lanard Chalk Pencil and the Ja-Ru Chalk Pencil. *Herbert Rosenthal Jewelry,* 446 F.2d 738; *Mattel*, 724 F.2d at 360. Similarities in the Lanard Chalk Pencil and the Ja-Ru Chalk Pencil can be attributed to the fact that they are both expressions of the same unprotectable idea—a standard No. 2 Pencil.

### (3)   Only Separable Design Elements of Useful Articles Are Protectable

Further, the design of a useful article is protectable "if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately

from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101; *Masquerade Novelty,* 912 F.2d at 671 (holding nose masks held not to be useful articles); *Chosun Int'l., Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324, 328-29 (2d Cir. 2005). When a design element is "influenced in significant measure by utilitarian concerns,'" the design is not conceptually separable from the underlying article and thus not eligible for copyright protection. *Brandir Int'l., Inc. v. Cascade Pacific Lumber Co.*, 834 F.2d 1142, 1147 (2d Cir. 1987) (bike rack held not entitled to copyright protection).

Accordingly, only design features of Lanard's Chalk Pencil that can be physically or conceptually separated from its utilitarian elements as a chalk holder are eligible for copyright protection.

### (4)    Lanard's Chalk Pencil Lacks Originality

Here, Lanard's Chalk Pencil is copied from the design of the standard, yellow No. 2 Pencil.  Like the No. 2 Pencil, the Lanard Pencil has an eraser at the top in a short column-like shape, a ridged ring, a long yellow body with different planes with the number "2", and a pointed bottom from which the writing material protrudes.  Lanard has not identified in its copyright application, Complaint or Motion, any differences between its Chalk Pencil and the "pencil found in school classrooms" on which Lanard bases the design of its Chalk Pencil.  (Lanard Br. at p. 2; Hesterberg Dec. ¶14)

To the extent there are any differences between the preexisting No. 2. Pencil and Lanard's Chalk Pencil, such differences are trivial.  Like the plastic Uncle Sam bank in *L. Batlin & Son*, 536 F.2d 486, whose copyright was held to be invalid due to only trivial differences such as size and medium from the preexisting cast iron bank, the only real differences between the Lanard Chalk Pencil and a standard No. 2 Pencil are the size and medium in which they exist. Except for changes in scale and medium and some other minute differences, the Lanard Chalk Pencil is comprised of standard, stock elements found on the iconic No. 2 Pencil.  Thus, just as

16

the plastic bank in *L. Batlin & Son* was unprotectable, so too is Lanard's Chalk Pencil.  Because Lanard's Chalk Pencil lacks any protectable elements, Lanard is not entitled to copyright protection for its product.   Accordingly, Lanard is not reasonably likely to prevail in this litigation and its Motion for Preliminary Injunction should be denied.

> **2.**    **Lanard Cannot Prove Infringement At Trial Because There is No Substantial Similarity Between Ja-Ru's Chalk Pencil and Protectable Aspects of Lanard's Chalk Pencil**

To prove copyright infringement, a plaintiff must prove two essential elements: ownership of copyright, and copying by the defendant. *Troll Co.*, 290 F.3d at 561.  Copying is proven by showing not only that the defendant had access to a copyrighted work, but also that there are substantial similarities between the two works. *Id*. Copying is demonstrated when someone who has access to a copyrighted work uses material substantially similar to the copyrighted work in a manner which interferes with a right protected by 17 U.S.C. § 106.  *Id*.

The opinions of experts may be called upon in determining whether there is sufficient similarity between the works so as to conclude that the alleged infringer "copied" the work. *Id.* at 562.  The fact-finder is to determine whether a "lay-observer" would believe that the copying was of *protectable aspects* of the copyrighted work. *Id.* (emphasis added).  "Where the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying."  *Durham Indus.*, 630 F.2d at 913.

Here, even if the Court finds Lanard's copyright to be enforceable, Lanard is not likely to prevail on its copyright claim as there is no substantial similarity between the protectable elements of Lanard's Chalk Pencil and Ja-Ru Chalk Pencil. To the extent that similarity exists between Lanard's Chalk Pencil and Ja-Ru Chalk Pencil, the similarity is the result of mutual derivation based on the No. 2 Pencil, and not based on unlawful copying of Lanard's Chalk Pencil.  The plaintiff bears the burden to show that "substantial similarity exists between the

defendant's work and the *protectible elements* of plaintiff's." *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,* 25 F.3d 119, 122-23 (2d Cir. 1994)(emphasis added), *abrogated on other grounds by Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010); *accord Masquerade Novelty,* 912 F.2d at 671-72 ("[I]t will be Masquerade's burden to show that Unique's nose masks incorporate copies, in the copyright law sense, of Masquerade's sculptures, rather than sculptures that derive their similarity to Masquerade's sculptures merely from the commonality of the animal subjects both represent."); *Durham Indus.,* 630 F.2d at 913 ("…[W]here the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying.").

Here, a fact finder <u>could not</u> reasonably conclude that the Lanard Chalk Pencil and Ja-Ru Chalk Pencil are substantially similar because virtually all the similarities between the Lanard Chalk Pencil and the Ja-Ru Chalk pencil are attributable to the fact that they are both based on the standard No. 2 Pencil.  Commonalities between Lanard Chalk Pencil and Ja-Ru Chalk Pencil relate to features that are not Lanard's original design, but rather those that are standard, stock elements of a No. 2 Pencil.  Like the No. 2 Pencil, the Lanard Pencil and the Ja-Ru Pencil both have an eraser at the top in the shape of a short column, followed by a ridged ring, a long yellow body with different planes, the number "2", and a pointed bottom from which the writing material protrudes.

Differences between the Lanard Pencil and the Ja-Ru Pencil can be found in the unique and original design elements that Ja-Ru added that would allow for such originality without diverging from the concept of the standard No. 2 Pencil it wanted its product to evoke:  (1) Ja-Ru added unique design elements to the ridged ring that appears between the eraser and the body on a No. 2 Pencil, imbuing it with a particular texturized look and feel;  (2) Ja-Ru added unique design elements to the area resembling the shaved wood encasing the lead on a No. 2 Pencil, imbuing it with a particular, texturized look and feel; (3) the Ja-Ru Chalk Pencil has the word

"CHALK" in block letters on the body of the product, whereas the Lanard Chalk Pencil has the word "CHALK PENCIL" in a highly stylized font on the body of the product.  (Selevan Dec. ¶¶3-5, Exhs. A, B)

Accordingly, because there is no substantial similarity in the protectable elements of Lanard's Chalk Pencil, if any, and Ja-Ru's Chalk Pencil, Lanard will not prevail in the litigation.

### D.   Lanard Will Not Be Irreparably Harmed If the Preliminary Injunction Is Not Granted

"Of all the prerequisites for the issuance of a preliminary injunction, a demonstration that the movant is likely to suffer irreparable harm is perhaps the most important . . . given the drastic consequences that can entail when a court employs its coercive powers on the basis of a preliminary and incomplete factual record." (Internal citation omitted.)  *Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 393 (D.N.J. 1989).  It is not enough for the harm to be serious or substantial; it must be so peculiar in nature that that money cannot compensate for the harm.  *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)("availability of adequate money damages belies a claim of irreparable injury").

#### 1.   Lanard Admits There is Still Substantial Demand for its Chalk Pencil

In its Motion, Lanard states that "Lanard enjoys substantial demand for its Chalk Pencil." (Lanard Br. at p. 3; Hesterberg Dec. ¶20)  Clearly, Defendants' sale of the Ja-Ru Chalk Pencil is not preventing Lanard from successfully selling its Chalk Pencil and Lanard will not be irreparably harmed if the preliminary injunction does not issue.

#### 2.   Lanard's Delay Belies Irreparable Harm

Lanard's delay in filing a complaint and seeking a preliminary injunction demonstrates that no irreparable harm to Lanard exists and the extraordinary remedy of a preliminary injunction is not warranted.

Any claim to irreparable injury is undercut by delay in seeking preliminary injunctive relief. *Pharmacia Corp. v. Alcon Labs.*, Inc., 201 F. Supp. 2d 335, 382 (D.N.J. 2002). Actual or constructive notice is the governing standard for measuring delay in moving for preliminary injunctive relief. Thus, courts consider both a plaintiff's actual knowledge of infringement and its constructive knowledge. *Id.* Undue delay in commencing an action against the defendant can also defeat a claim of irreparable harm necessary for the issuance of an injunction. *Warner Lambert Co.*, 718 F. Supp. at 394-95; *Bd. of Health v. Jennings*, 18 A.2d 62, 66 (Ct. Chancery N.J. 1941) (". . . inaction is certainly persuasive that no preliminary injunction is here necessary. Long delay may serve to outweigh a claim of threatened irreparable injury."), *aff'd*, 25 A.2d 861 (N.J. 1942). In *Warner Lambert Co.*, the Court found that a seven-month delay seeking any injunctive relief after the first sales of the accused product minimized any claim of irreparable harm. *Warner Lambert Co.*, 718 F. Supp. at 395. In *Orson, Inc. v. Miramax Film Corp.*, 836 F. Supp. 309, 312 (E.D. Pa. 1993), the Court found that a 50-day delay in bringing a motion for preliminary injunction from date plaintiff first knew of conduct sought to be enjoined precluded a finding of irreparable harm.

The Ja-Ru Chalk Pencil has been offered to sale to retailers since April/May 2012 in Hong Kong, was first placed on retail store shelves in the United States in or around February/March 2013, and appeared in the Ja-Ru catalog in June 2012. (Selevan Dec. ¶8) Ja-Ru is a substantial company, having customers in common with Lanard. (Selevan Dec. ¶15) It can be assumed Lanard either knew of Ja-Ru's sales efforts, or that they were so insignificant to Lanard that Lanard did not learn of them.

The item was first shown in a Ja-Ru catalog in June 2012. (Selevan Dec. ¶8) TRU-D has been selling the Ja-Ru Chalk Pencil to consumers since January 2014 and retailer-defendant Dolgencorp has been selling the Ja-Ru Chalk Pencil to consumers since February 2014. (Stephenson Dec. ¶8; Mayben Dec. ¶8) Lanard first contacted any of the Defendants in this

action regarding its claims of infringement in February 2014.  (Stephenson Dec. ¶12, Exh. B)

Yet, Lanard waited until March 27, 2014 to file its Complaint and until April 10, 2014 to file its

Motion for Preliminary Injunction and did not do so by order to show cause or seek a temporary

restraining order.  Given that Lanard filed its Complaint on March 27 and waited until April 10

to file its Motion, Lanard apparently was not concerned with sales of the Ja-Ru Chalk Pencil

during this time period.

Further, Lanard never informed Defendants that it intended to file a Motion for

Preliminary Injunction.  At least 48 days went by from the date Lanard contacted any of the

Defendants in this action regarding claims of infringement before the date Lanard filed its

Motion.  Lanard's delay in filing its Complaint and seeking injunctive relief belies its claim of

the threat of irreparable harm.  If the exigent circumstances that Lanard relies on for its Motion

truly existed, it would have moved for injunctive relief sooner and certainly would have sought a

temporary restraining order.

In fact, although Lanard claims that the selling season for the product generally runs from

March through July, it did not schedule a hearing on its Motion until May 5, 2014.  (Lanard Br.

at p. 6; Hesterberg Dec. ¶29)  It strains credulity that Lanard would not have known of Ja-Ru's

Chalk Pencil as early as April/May 2013, when the Ja-Ru Chalk Pencil was first placed on retail

store shelves in the United States and when it appeared in Ja-Ru's catalog in 2012. At the latest,

Lanard knew that Dolgencorp began selling the Ja-Ru Chalk Pencil in February 2014.  Yet

Lanard waited until April 10, 2014 to seek a preliminary injunction.  Having delayed in seeking a

preliminary injunction, Lanard cannot credibly claim irreparable injury.

      **3.**        **Retailers Chose Not To Purchase Ja-Ru's Chalk Pencil, Belying
Lanard's Claim of Irreparable Harm**

In its Motion, Lanard alleges that it is irreparably harmed because Defendants' sale of the

less expensive Ja-Ru Chalk Pencil permanently threatens Lanard's ability to sell the Lanard

Chalk Pencil to customers, including Walgreen, Kmart, and Wal-Mart.  (Lanard Br. at p. 11)  This argument lacks merit.  The Ja-Ru Chalk Pencil was first offered for sale to retailers by Ja-Ru for domestic sale and by Ja-Ru HK in April-May 2012, including to mass merchandisers including Walgreen, Kmart, and Wal-Mart.  (Selevan Dec. ¶7)  To date, Walgreen, Kmart, and Wal-Mart have not purchased the Ja-Ru Chalk Pencil from Ja-Ru or Ja-Ru HK.  (Selevan Dec. ¶13)  Non-party TRU-D and Dolgencorp waited until August 2013 to place an order for the Ja-Ru Chalk Pencil to be on their store shelves on or around January/February 2014, even though they could have done so as early as April/May 2012. (Selevan Dec. ¶9; Mayben Dec. ¶6; Stephenson Dec. ¶6)

At the time non-party TRU-D ordered the Ja-Ru Chalk Pencil from Ja-Ru HK, it had already stopped ordering the Lanard Chalk Pencil from Lanard. (Mayben Dec. ¶12)  At the time Dolgencorp ordered the Ja-Ru Chalk Pencil from Ja-Ru HK, Dolgencorp had already reduced the quantity of product it was ordering from Lanard for various business reasons. (Stephenson Dec. ¶14) Dolgencorp is currently not making any further purchases of any products from Lanard.(Stephenson Dec. ¶14)

The Ja-Ru Chalk Pencil and Lanard Chalk Pencil are completely different products in that they are vastly different in size and price-point. (Selevan Dec. ¶¶4, 17, Exh. B)  In addition, the unique packaging of the Ja-Ru Chalk Pencil, designed by Ja-Ru, including the distinctive downward pointing bottom portion to the packaging, which mimics the downward pointing direction of the chalk protruding from the chalk holder, and unique color scheme, further distinguishes the Ja-Ru Chalk Pencil from Lanard's product. (Selevan Dec. ¶6, Exhs. A, B)

Lanard also states in its Motion that the lower price of the Ja-Ru Chalk Pencil will result in the Ja-Ru Chalk Pencil providing an "unsatisfactory experience" to the consuming public. (Lanard Br. at p. 6).  Lanard's insinuation that Ja-Ru's Chalk Pencil is an inferior product is not supported by a shred of evidence.  In fact, Ja-Ru and Ja-Ru HK have not received a single

complaint regarding the Ja-Ru Chalk Pencil since it was first sold in February 2013.  (Selevan Dec. ¶16)  Moreover, the Ja-Ru Chalk Pencil is a superior product in that its smaller size makes it easier for children to use than the unwieldy Lanard Chalk Pencil.  (Selevan Dec. ¶17)

### E.   The Balance Of Harms And Public Interest Weigh Heavily In Favor Of Denying Preliminary Injunction

The balance of the harms weighs in favor of denying a preliminary injunction.  If a preliminary injunction issued, this would harm Defendants' business due to the loss of ability to sell lawful, non-infringing product that Ja-Ru invested considerable time and money in developing, and for which the retailer-defendant Dolgencorp and non-party TRU-D already purchased and allotted shelf space.  A preliminary injunction also could cause harm to Defendants' business reputations because their business associates, vendors, and/or customers may make unwarranted negative inferences about Defendants' business practices if they learn of the injunction.  The issuance of the preliminary injunction requested by Lanard would also be ineffective to the extent that there are other retailers that have already purchased and are currently selling the Ja-Ru Chalk Pencil that would not be enjoined by Lanard's proposed preliminary injunction.

Moreover, Dolgencorp and non-party TRU-D have very little inventory of the Ja-Ru Chalk Pencil and will have even less by the time Lanard's Motion is heard by the Court. (Stephenson Dec. ¶15; Mayben Dec. ¶9)

Further, Lanard's proposed preliminary injunction seeks destruction of the Ja-Ru Chalk Pencil, which would be wholly inappropriate because the preliminary injunction proceeding is not a trial on the merits; Defendants have not even yet filed their responses to the Complaint and discovery has not even commenced.  Destruction of Ja-Ru's Chalk Pencil would be destroying crucial evidence needed for further pre-trial proceedings and at trial.  (*See* Lanard's [Proposed] Order, ¶3)

Lanard's Motion is based on a single, self-serving declaration. This should not be the only basis for determination of injunctive relief.  Discovery has not taken place yet and consequently Defendants have not had an opportunity to depose Mr. Hesterberg regarding the allegations in his declaration or otherwise take discovery relating to the claims and defenses in this case for which Lanard seeks the extraordinary relief of a preliminary injunction.

The harm that the granting of a preliminary injunction would cause is unnecessary and completely avoidable because if Lanard succeeds on its claims at trial, money damages are an available, calculable, and complete remedy.  *See Sanders v. Air Line Pilots Ass'n Int'l*, 473 F.2d 244, 248-49 (2d Cir. 1972) (finding no irreparable harm, and denying preliminary injunction, because party seeking preliminary injunction could be made whole if it prevailed at trial because monetary damages were available).

By contrast, if the preliminary injunction does not issue, the harm to Lanard will be non-existent. In its Motion, Lanard states that "Lanard enjoys substantial demand for its Chalk Pencil." (Lanard Br. at p. 3; Hesterberg Dec. ¶20)  Clearly, Defendants' sale of the Ja-Ru Chalk Pencil is not causing Lanard harm.

Public interest also disfavors the granting of the preliminary injunction here because Lanard is seeking to stifle lawful business competition.  Lanard seeks to prevent Defendants from selling products embodying the standard yellow No. 2 Pencil.  However, Lanard is not entitled to a monopoly over the standard yellow No. 2 Pencil.  Furthermore, Lanard has lost the presumption of validity of its copyright registration and copyright given Lanard's fraud on the Copyright Office and lack of requisite originality in the Lanard Chalk Pencil.  As shown above, the Lanard Chalk Pencil is not entitled to copyright protection and there is no substantial similarity between the Lanard Chalk Pencil and the Ja-Ru Chalk Pencil.  Thus, the public interest would be disserved by preventing lawful business by Defendants given that Lanard is not likely

to prevail at trial.  Moreover, if the Court grants the preliminary injunction, Defendants' customers would be denied access to lawful products.

Accordingly, the balance of the harms and public interest weigh heavily in favor of denying the  preliminary injunction.

## IV.    IN THE EVENT THE COURT IS INCLINED TO GRANT LANARD'S MOTION, LANARD SHOULD BE REQUIRED TO POST A $250,000 BOND

Lanard has failed to raise the issue of posting a bond.  Rule 65(c) of the Federal Rules of Civil Procedure states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. . . ."  The bond requirement on its face admits no exceptions and is interpreted very strictly by courts given its text and policies.  *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210 (3d Cir. 1990).  "Although the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary. While there are exceptions, the instances in which a bond may be required are so rare that the requirement is almost mandatory." *Id.* at 210 (quoting *Frank's GMC Truck Center, Inc.*, 847 F.2d at 103).   Such an extremely narrow exception exists "when complying with the preliminary injunction 'raises no risk of monetary loss to the defendant.'" *Hoxworth*, 903 F.2d at 210 (quoting *Sys. Operations, Inc. v. Scientific Games Dev. Corp.,* 555 F.2d 1131, 1145 (3d Cir.1977)); s*ee also Zambelli Fireworks Mfg. Co., Inc. v. Wood*,  592 F.3d 412, 426 (3d Cir. 2010) ("We have never excused a District Court from requiring a bond where an injunction prevents commercial, money-making activities.").  When setting the amount of security district courts should err on the high side. *Mead Johnson & Co v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000).

An error in setting bond too high is not serious, but an error in the other direction produces irreparable injury because the damages of an erroneous preliminary injunction cannot

exceed the amount of the bond.  *Id.* at 888.  Commercial litigation is often characterized by a company's desire to "heap costs on their rivals, imposing marketplace losses out of proportion to the legal merits."  Thus, requiring a plaintiff to post a bond and pay "substantial losses" if a preliminary is erroneously granted is warranted.  *Id.* at 888.

Defendants request that bond be set at U.S. $250,000.  This amount of bond is warranted because this is what it will take to compensate Defendants if a preliminary injunction is erroneously granted based on (1) lost future sales by Ja-Ru and/or Ja-Ru HK to all Ja-Ru customers for the Ja-Ru Chalk Pencil; (2) the cost of removing the Ja-Ru Chalk Pencil from store shelves, including large recall penalty fees and credits to TRU-D and Dolgencorp based on the retail price of the Ja-Ru Chalk Pencil; (3) cost of storage of the Ja-Ru Chalk Pencil removed from store shelves; (4) cost of destroying the Ja-Ru Chalk Pencil removed from store shelves (which is wholly inappropriate, as explained above, even if the Court grants a preliminary injunction); and (5) damage to Defendants' business reputations.  (Selevan Dec. ¶18)  *See Mead Johnson*, 201 F.3d at 887 (finding that calculating the amount of security solely by reference to out-of-pocket costs insufficient).

If the preliminary injunction is erroneously granted here, Defendants will lose money for products they have already purchased and/or put on store shelves and will incur substantial costs to comply with the injunction, including removal of products from stores and destruction of such products.  (Selevan Dec. ¶18)  Defendants, especially Ja-Ru, have fixed expenses for their respective operations.  Defendants will testify as to its damages in the event that a preliminary injunction issues.

Counsel for Defendants sent e-mails to Lanard's counsel asking if Lanard intended to post bond in the unlikely event that its Motion is granted.  Lanard's counsel never responded to these e-mails.  (Anten Dec. ¶4, Exh. C)  Absent Lanard agreeing that it will post a reasonable bond if its Motion is granted, there is no reason for the Court to even rule on Lanard's Motion.

*See Original Appalachian Artwork*, 44 F.3d at 927 n.3 (11th Cir. 1995) (noting that in previous, related lawsuit, although plaintiff had prevailed on its motion for preliminary injunction, an injunction never issued because plaintiff did not make the necessary application because it could not post the anticipated multi-million dollar bond).

## V.    CONCLUSION

For the foregoing reasons and authorities, Defendants respectfully request that the Court deny Lanard's Motion for a Preliminary Injunction.

Dated: April 28, 2014                                  LOEB & LOEB LLP


By:_____/s/ Jodi Sarowitz_____
Brian R. Socolow, *pro hac vice pending*
Jodi Sarowitz
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

LEWIS ANTEN, P.C.

Lewis Anten, *pro hac vice pending*
Ivy Choderker, *pro hac vice pending*
16830 Ventura Boulevard, Suite 236
Encino, CA 91436
(818) 501-3535

*Attorneys for Defendants*
*Toys "R" Us, Inc., Dollar General Corporation,*
*Dolgencorp, LLC, and Ja-Ru, Inc.*

NY1273031.2