United States District Court
Middle District of Florida
Jacksonville Division

**LANARD TOYS LIMITED,**

*Plaintiff,*

v.   No. 3:15-cv-849-J-34PDB

**DOLGENCORP LLC ETC.,**

*Defendants.*

# Order

Lanard has filed a motion seeking permission for its counsel to disclose to its employees an unredacted list of companies to whom Ja-Ru sold the Ja-Ru chalk pencil. Doc. 159 (motion); Doc. 221 (reply). Ja-Ru marked the unredacted list, "Highly Confidential—Attorneys' Eyes Only," which, under the stipulated protective order, is for extremely sensitive confidential information, the disclosure of which would create a substantial risk of serious harm that cannot be avoided by less restrictive means. Doc. 152 at 2. Ja-Ru opposes the motion. Doc. 209.

The stipulated protective order provides that a party receiving protected material for this action may use the material "only for prosecuting, defending, or attempting to settle this litigation." Doc. 152 at 8. It further provides that, when a designation is challenged, the designating party has the burden of persuasion. Doc. 152 at 8.

The unredacted list contains almost 50 lines, each with an account number, a customer name, an invoice date, an invoice number, a quantity shipped, a unit price, and a total price. Doc. 159 at 15−16. The redacted list contains all but the customer names. Doc. 159 at 15−16.

In a declaration, Russell Selevan, Ja-Ru's Vice President, states the customers on the unredacted list bought the Ja-Ru chalk pencil and buy other Ja-Ru toys. Doc. 209-5 ¶ 2. He states they have been Ja-Ru customers for years, and the unredacted list "represents years of developed customer relationships by Ja-Ru for numerous toy products resulting from considerable effort and resources expended." Doc. 209-5 ¶ 3. He states the unredacted list is generated from a password-protected computer system, is not shared publicly, and is not freely accessible in the toy business. Doc. 209-5 ¶ 4. He opines Ja-Ru "would be competitively harmed" if the unredacted list were shown to Lanard employees and others in the toy business because they could solicit the customers to buy their own toys, "thereby gaining a competitive advantage and taking business away from Ja-Ru, without having to expend any resources to obtain or develop" the list. Doc. 209-5 ¶ 5.

Lanard contends Ja-Ru provided the unredacted list on the eve of the deadline to add parties and designated it "Highly Confidential—Attorneys' Eyes Only" to "protect non-party infringers of [Lanard's] intellectual property rights, and … to protect itself against claims for indemnity and avoid potential disruption to its own infringing sales relationships with them." Doc. 159 at 3, 8, 10. Lanard's counsel contends Lanard employees "have a much deeper and more sophisticated knowledge of the toy industry" than he does. Doc. 159 at 4, 21. He states he wants to share the company names with them so they can help determine discovery to take and whether to bring claims against the companies in this or another action. Doc. 159 at 4, 9, 22; Doc. 209-4. Lanard contends there is "nothing confidential" about the company names because anyone who enters a store and sees the Ja-Ru chalk pencil could know the company is on the list. Doc. 159 at 4. Lanard contends that to require Lanard to undertake that effort when the unredacted list is handy would be "unfair, burdensome[,] unnecessary, and disproportionate."[1] Doc. 159 at 4. Lanard

---

[1]Citing a Florida Evidence Code provision allowing a person to refuse to disclose a trade secret unless allowance of the privilege would conceal fraud or otherwise work injustice, Lanard contends, "In fact, as preventing disclosure of the

2

emphasizes Selevan's opinion—expressed in his deposition—that Lanard is not a Ja-Ru competitor. Doc. 159 at 8, 22.

Ja-Ru contends Lanard wants the company names to solicit them to buy the Lanard chalk pencil and other Lanard toys. Doc. 209 at 2–3, 11. As evidence, Ja-Ru points to rejection by Lanard's counsel of a compromise under which Lanard's counsel would disclose the names of companies that had bought Lanard's chalk pencil or had been given an offer to buy Lanard's chalk pencil and bought Ja-Ru's chalk pencil instead. Doc. 209 at 3, 12; Doc. 209-3. Ja-Ru contends Lanard "paradoxically" argues the customer names are not trade secrets while refusing to identify customers who bought the Lanard chalk pencil and marking approximately 700 pages, "Highly Confidential—Attorney's Eyes Only." Doc. 209 at 2; Docs. 209-1, 209-2. Ja-Ru contends Lanard's counsel need not share the company names with Lanard's employees so they can help determine discovery to take because he has served as general counsel and vice president for Lanard's domestic subsidiary, he has represented Lanard for more than 30 years, he is an experienced litigator, and he has already conducted substantial discovery, including of the other defendants, who were customers of the Ja-Ru chalk pencil. Doc. 209 at 4–7 (citing Doc. 194-4 ¶ 4). Ja-Ru contends sharing the company names to decide whether to bring claims against the companies in this or another action would violate the stipulated protective order envisioning discovery only for prosecuting and defending this action and, in any event, Lanard's in-house and outside counsel could view the company names and make that decision without need for further disclosure. Doc. 209 at 4–5. Ja-Ru contends the compilation of customers must be protected, regardless of whether anyone who entered a store and saw the Ja-Ru chalk pencil would know the company is on the unredacted list. Doc. 209 at 5–6, 10. Ja-Ru observes compiling the same list

---

identities of the non-party infringers would conceal fraud and otherwise work injustice, the identities of those non-parties does not constitute a 'trade secret.'" Doc. 159 at 9 (citing Fla. Stat. § 90.506). The Florida Evidence Code does not apply, and Lanard has brought no fraud claim and has made nothing more than a bare-boned fraud allegation.

3

would require visiting every store in the United States that might sell a chalk pencil. Doc. 209 at 6. Ja-Ru contends Lanard mischaracterizes Selevan's opinion insofar as he never opined Ja-Ru and Lanard were not chalk-pencil competitors.[2] Doc. 209 at 11. Ja-Ru adds, "[I]f Lanard did not believe these were competitive products then presumably Lanard would not have brought this lawsuit." Doc. 209 at 11.

Lanard replies Ja-Ru's belief it will violate the protective order by using the customer names to solicit them is "unwarranted and insufficient." Doc. 221 at 3–4. Lanard replies there is nothing paradoxical about its discovery responses because Ja-Ru is in a different position than Lanard: unlike Lanard, Ja-Ru infringed Lanard's copyrights and solicited Lanard's customers, causing them to cease buying Lanard's chalk pencil. Doc. 221 at 2. Lanard replies the rejected compromise would not solve the matter because whether Ja-Ru's customers are actual or potential Lanard customers is irrelevant to the reasons Lanard employees need to know the customer names. Doc. 221 at 2. Lanard replies its counsel has not worked "in the ever-evolving, competitive toy industry" in more than 15 years, "widening even further the disparity in knowledge between [Lanard]'s management personnel and [him]." Doc. 221 at 3 n.1. Lanard replies using the customer names to decide whether to bring claims

---

[2]In a footnote, Ja-Ru contends Selevan's deposition testimony is not "best evidence" and is impermissible hearsay. Doc. 209 at 11 n.8. Ja-Ru offers no authority to support that the Federal Rules of Evidence apply when deciding a preliminary and non-dispositive motion like the one before the Court. Federal Rule of Evidence 1101(d) provides the rules—except on privilege—do not apply to miscellaneous proceedings. *See* 31 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 8077, at 620 (2000) (Rule 1101(d) provides incomplete list of proceedings in which Federal Rules of Evidence is inapplicable). To support their positions on numerous disputes throughout the litigation, both sides have relied on emails and other documents of dubious admissibility under the Federal Rules of Evidence; the emails attached to Ja-Ru's response, Docs. 209-1, 209-3, and 209-4, are examples. In any event, even assuming the Federal Rules of Evidence apply when deciding the current motion, Ja-Ru does not explain why deposition testimony is not "best evidence" or how it is hearsay. *See* Fed. R. Evid. 801(d)(2) (opposing party statement offered against opposing party is not hearsay if made by the party in an individual or representative capacity or by agent or employee on matter within scope of relationship while it existed).

against them in this or another action "is a perfectly legitimate use" of the information under the protective order. Doc. 221 at 4. Lanard attaches Selevan's deposition to show he testified Lanard is not a competitor of Ja-Ru. Doc. 221 at 4; Doc. 221-1.

Under Federal Rule of Civil Procedure 26(c)(1), for good cause, a court may issue an order that protects trade secrets and other commercial information, including by prohibiting disclosure or requiring disclosure only in a specified way. The rule requires a court to balance the interest in obtaining the information against the interest in keeping the information confidential. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

Both sides rely on Florida's Uniform Trade Secrets Act to define "trade secret." Doc. 159 at 5; Doc. 209 at 8. Under the Act, a "trade secret" is "information, including a … compilation … that: (a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4).

The undisputed facts and opinion in Selevan's declaration establish that the unredacted list is a trade secret. Lanard's contention that it is not because anyone who enters a store and sees the Ja-Ru chalk pencil could know the company is on the unredacted list is unpersuasive. Even setting aside that Ja-Ru stopped selling the chalk pencil years ago and sold it only as a seasonal product, *see* Doc. 6-1 at 9; Doc. 6-2 ¶ 29, the argument disregards that the unredacted list—through its compilation of customer names—derives independent economic value from not being *generally known* and not being *readily ascertainable* by others—like Lanard—that can obtain economic value from its disclosure or use.

Lanard's asserted need for its counsel to share the unredacted list with unspecified Lanard employees is dubious. Its counsel's contention its employees know much more about the toy industry than he does is belied by his own words, used when he fought to stay in the case: "I have represented Lanard Toys in litigation and otherwise, including jury trials tried through to verdict, for more than thirty years, beginning in 1986, at two different law firms, the Sheppard Mullin firm in Los Angeles and now Gordon & Rees. From 1993 to 2001, I served as General Counsel of Lanard and Vice President of its U.S. subsidiary Lanard Toys, Inc. I have a deep knowledge and relationship with this client." Doc. 194-4 ¶ 4. Having benefitted from emphasizing his knowledge of Lanard then, he cannot benefit from understating his knowledge of Lanard now. His contention he needs to consult with Lanard employees about discovery against the customers on the list is belied by those words and that Lanard has already pursued discovery against the other defendants not shown to be materially different from the other customers of the Ja-Ru chalk pencil.[3] It does not help his position that he specified no particular Lanard employee whose consultation was needed. His contention that he needs to consult with Lanard employees to determine whether to sue the customers in this case is belied by the fact that Lanard filed the motion after the deadline for adding new parties. To the extent he needs to consult with Lanard employees to determine whether to sue the customers in separate litigation, that purpose would not be a legitimate purpose under the stipulated protective order.[4]

---

[3] In rejecting a generically stated need to share customer names with a client's employees, one court aptly observed, "If this were true, courts would never issue 'attorney's eyes only' protective orders in cases involving customer and supplier lists, as plaintiffs would always 'need' to see this information to prosecute their cases. Many cases involving claims of trademark infringement require the production of customer and supplier lists and such lists are customarily produced subject to an 'attorney's eyes only' order. The attorneys for plaintiffs commonly manage to conduct discovery and litigation strategy without revealing such information to their clients." *Nutratech, Inc. v. Syntech (SSPF) Intern., Inc.*, 242 F.R.D. 552, 556 (C.D. Cal. 2007).

[4] As Ja-Ru observes, the bit-torrent cases on which Lanard relies involve the different matter of identifying unknown "John Doe" defendants through their IP

Because the unredacted list is a trade secret, it is reasonable to find it constitutes "extremely sensitive confidential information" under the protective order. Regardless of whether Lanard and Ja-Ru deem each other serious competitors in the toy industry, they both sell toys and have customers in common, *see* Doc. 21 ¶ 15, and could later become serious competitors in the toy industry, especially if Lanard employees were to make use of the customer names on the unredacted list. Thus, it is also reasonable to find disclosure of the customer names to Lanard employees would create a substantial risk of serious harm. Given the nature of the confidential information—customer names—limiting their disclosure to attorney's eyes only appears to be the least restrictive means to address that risk.

The Court **denies** Lanard's motion, Doc. 159.

**Ordered** in Jacksonville, Florida, on April 24, 2017.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record

---

addresses at the outset of litigation so the litigation may proceed. Doc. 209 at 12–13. There, no one knew the defendant's identity. Here, Lanard's outside counsel knows the names of the customers on the list, and Ja-Ru appears to concede he can share them with Lanard's in-house counsel.

7