**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| LANARD TOYS LIMITED ,         )<br>       Plaintiff,          )<br>                         )<br>v.                        )<br>                         )<br>TOYS "R" US - DELAWARE, INC. )<br>DOLGENCORP, LLC, and JA-RU, INC., )<br>      Defendants.         )<br>                         ) | **Case Number: 3:15-cv-00849- MMH-PDB**<br><br>**Dispositive Motion** |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Plaintiff and Cross-Defendant Lanard Toys Limited ("Lanard") hereby moves this Court for partial summary judgment as to the following issues: (1) that the affirmative defenses and counterclaims for declaratory relief of defendants and cross-complainants Toys "R" Us – Delaware, Inc. ("TRU"), Dolgencorp, LLC ("Dolgencorp"), and Ja-Ru, Inc. ("Ja-Ru") (collectively, "Defendants"), concerning patent, copyright, and trade dress invalidity and unenforceability, fail as a matter of law; (2); that the Defendants' products, the Ja-Ru chalk pencil, the TRU SIZZLIN COOL "Chalk Pencil," and the Dolgencorp "Side Walk Chalk -Chalk Pencil" (collectively, "Defendants' Products"), infringe Lanard's copyright, patent, and trade dress as a matter of law because the respective toys are virtually identical as a result of Defendants' intentional and willful conduct, leaving damages as the only issue remaining for trial as to these claims; (3) Lanard is entitled to summary judgment on its unfair competition claim that is predicated on the indisputable infringement; and (4) that Defendants TRU and Dolgencorp are estopped from asserting that the trade dress at issue is invalid as former authorized licensees and distributors of the Chalk Pencil.

<u>**INTRODUCTION**</u>

Admitting that they used Lanard's proprietary Chalk Pencil as a market "sample" or "reference" in designing their knock off toy, Defendants willfully infringed Lanard's legally

-1-

enforceable intellectual property rights in its "Chalk Pencil," a distinctive children's toy chalk holder with a cartoonish aesthetic featuring the shape of an oversized classroom pencil. Lanard's Chalk Pencil is protected by patent, copyright, and trade dress, which are presumed valid as a matter of law.

Defendants' actions are particularly reprehensible because: (1) defendant Ja-Ru actually *bought and used* the Lanard toy as a "market sample" or "market reference" to design its infringing knockoff—Ja-Ru's designer, Stephen Hearon, testified under oath that he was given the Lanard toy and instructed to downsize and make minor "tweaks" to it, otherwise simply copying it; and (2) defendants TRU and Dolgencorp (both of whom have long prior records of such conduct) bought the Lanard toy for several selling seasons before consciously terminating it in favor of the Ja-Ru knockoff. There is thus no doubt that each of the Defendants knowingly and intentionally dealt in the infringing toy. This is an "exceptional" case within the meaning of federal intellectual property laws, entitling Lanard to enhanced damages.

Defendants do not and cannot deny their misconduct, resorting instead to challenging the very intellectual property rights inuring in the Lanard toy, which they (TRU and Dolgencorp) previously sold under distribution agreements with Lanard. Defendants allege several meritless affirmative defenses and counterclaims challenging the validity of Lanard's patent, copyright, and trade dress rights in the Chalk Pencil. Each of Defendants' theories lacks merit and is an obvious construct in light of the undisputed facts in this case. Lanard's Chalk Pencil is an original, novel, and nonobvious design originating from Lanard, especially given numerous alternative designs for chalk holders–and no evidence shows others otherwise.

Defendants' counterclaims also seek a declaration that Plaintiff's rights are unenforceable on a theory that Plaintiff committed fraud on both the United States Patent and Trademark Office ("USPTO") and the United States Copyright Office ("Copyright Office") in the prosecution of its

applications before each. These are hyper-technical arguments without merit and do not change the undisputed fact that Defendants deliberately copied Plaintiff's toy.

First, Defendants claim Lanard failed to cite prior art to the USPTO examiner – specifically, the classic no. 2 pencil, as if the Examiner would somehow be unaware of it. Second, they claim Lanard's toy is a derivative work of that classic no. 2 pencil, and that Lanard failed to designate it as such in its application – despite the fact that the Lanard's Chalk "Pencil" is a toy, and not actually a pencil, and despite the fact that *arguendo* such "failure" does *not* invalidate either a patent or a copyright.

However, the "classic" no. 2 pencil is well-known to the USPTO examiner and the Copyright Office – as any American born in the last hundred years can attest. The Examiner probably had one on his or her desk. As such, its omission from either application is immaterial. Further, both standards for "inequitable conduct" and "fraud" on the respective offices require a showing of intentional misrepresentation. Defendants cannot show any proof of such intent, especially considering the ubiquity of the classic no. 2 pencil and the fact the Chalk Pencil is not a pencil at all, but rather, a children's toy.

In sum, the fact of Defendants' infringement is striking and indisputable. The Defendants' Products and Lanard's Chalk Pencil are identical such that, under any standard for patent, copyright, or trade dress law, infringement is found here as a matter of law. Indeed, as the District Court for the District of New Jersey stated, prior to transferring this case,  "[i]t doesn't even seem there is a real argument that there is any real true, true distinction of the two products to the ordinary eye." *See* Decl. of Richard P. Sybert ("Sybert Decl.") at ¶ 34, Prelim. Inj. Hrg. Trans., 35:8-19 attached as Ex. AR. Accordingly, Lanard is entitled to summary judgment that Defendants intentionally and knowingly infringed Lanard's Chalk Pencil, which is protected by a valid copyright, patent, and trade dress, through Defendants' identical competing toy.

## STATEMENT OF FACTS

**A.    Lanard's Intellectual Property Rights in the "Chalk Pencil"**

Lanard is a leading manufacturer and wholesale seller of toys in the United States and throughout the world.  Lanard's customers are retail stores who in turn sell Lanard's toys to the public. Decl. of James W. Hesterberg ("Hesterberg Decl."), ¶ 3.

In 2010, Lanard's designers developed a unique and original chalk holder, a device that can hold pieces of colored chalk to allow children to draw on the sidewalk. *Id*. at ¶ 4. The initial design had the appearance of a REDACTED, as shown below. *Id*., Ex. A. at LNRD000563.

REDACTED

As there are innumerable forms that a chalk holder can take[1], the design of the "Chalk Holder Wand" evolved over time, and into a design that  cartoonishly evokes the appearance of a pencil found in children's schools, on a larger scale and with additional features. Hesterberg Decl. at ¶ 5. This was the result of Lanard's investing considerable time, money, and effort in the toy's design and development, which Lanard named the "Chalk Pencil", as shown. *Id*.; Ex. B.



Lanard first sold the Chalk Pencil on November 1, 2010. *Id*. Lanard's subsidiary company, Lanard Toys, Inc., submitted a United States copyright application for the design of this original work on September 20, 2011. *Id*. at ¶ 6; Ex. C.[2] The Copyright Office registered Lanard's copyright effective as of the same date and assigned it Reg. No. VA 1-794-458. *Id*., Ex. E, F; Request for Judicial Notice ("RFJN") No. 1. Plaintiff stamped a copyright notice, "© 2010

---

[1] A collection of various third-party chalk holder designs is attached to the report of plaintiff's design expert Robert Anders ("Anders Report"), Ex. K, as "Exhibit D" thereto. None of these chalk holders evoke a classic no. 2 pencil.

[2] Lanard Toys, Inc. has irrevocably assigned to Lanard "any and all intellectual property rights" pursuant to agreement, including the Chalk Pencil.  Ex. E, at ¶ 6.  As a result, Lanard owns the copyright in the Chalk Pencil.

LANARD," into the plastic on all Chalk Pencil models since 2010, when the toy was initially published, and continuing with every Chalk Pencil toy (and its packaging) offered for sale or sold since that time. Hesterberg Decl., ¶ 10.

Next, on August 3, 2011, Lanard's product designers, Blake Christopher Nichols and Logan Williams, applied for a design patent in the Chalk Pencil with the USPTO, Application No. 29/398,687, and subsequently assigned the application to Lanard. *Id*., ¶¶ 11-13; Exs. F, G; RFJN Nos. 2-4.  Before the Chalk Pencil's patent issued, Lanard stamped "Patent Pending" into the plastic of the Chalk Pencil starting in late 2011. *Id*. at ¶ 14.

On November 20, 2012, the USPTO issued the patent for the Chalk Pencil, assigning it patent no. D671,167 (the "'167 Patent"). Hesterberg Decl. at ¶ 15; Ex. H; RFJN No. 3-7.

The Patent's written description reads as follows and with accompanying illustrations:

**CLAIM**
The ornamental design for a chalk holder, as shown and described.

**DESCRIPTION**
FIG. 1 is a perspective view of a chalk holder showing our new design;
FIG. 2 is a front elevation view thereof, the rear elevational view being a mirror image;
FIG. 3 is a right side elevation view thereof, the left side elevation view being a mirror image;
FIG.4 is a top plan view thereof; and,
FIG. 5 is a bottom plan view thereof.
The broken line disclosure in the figures is for illustrative purposes only and forms no part of the claimed design.



The '167 Patent and application referenced numerous examples of prior art, meaning the patent examiner carefully reviewed them and found the design to be patentably distinct, as shown in Table 1 below:

| TABLE 1 – CITED PRIOR ART | | | | |
|---|---|---|---|---|
| **FIG. 1 of U.S. Patent No. 824,375** | **FIG. 1 of U.S. Patent No. D60,192** | **FIG. 1 of U.S. Patent No. 1,920,680** | **FIG. 1 of U.S. Patent No. 1,947,168** | **FIG. 1 of U.S. Patent No. 2,517,552** |
|  |  |  |  |  |
| **FIG. 1 of U.S. Patent No. 3,187,723** | **FIG. 2 of U.S. Patent No. 3,314,531** | **FIG. 4 of U.S. Patent No. D255,545** | **FIG. 1 of U.S. Patent No. 4,878,867** | **FIG. 1 of U.S. Patent No. D305,849** |
|  |  |  |  |  |
| **FIG. 1 of U.S. Patent No. 5,069,645** | **FIG. 1 of U.S. Patent No. D333,426** | **FIG. 1 of U.S. Patent No. D452,370** | **FIG. 1 of U.S. Patent No. D497,390** | **FIG. 1 of U.S. Patent No. 2003/0159951** |
|  |  |  |  |  |

*See id.*, Ex. F, LNRD001924-1925; Ex. H; see also "Exhibit F" to the Anders Report.

Following the USPTO's issuance of the '167 Patent, Lanard stamped the full patent number into the plastic on all models of the Chalk Pencil. Hesterberg Decl., ¶ 17.

**B.  Lanard's Sales of the "Chalk Pencil" to Defendants Dolgencorp and TRU**

Dolgencorp is a national distributor wholly owned by Dollar General Corporation ("Dollar General"), a retailer with 11,000 stores in 40 states. Docket Entry ("D.E.") #s 103, p. 2 ¶ 8; 110, p. 3 ¶ 8. Starting in 2011, pursuant to a distributor agreement, Lanard sold the Chalk Pencil to Dolgencorp, who continued to purchase the Chalk Pencil through the 2011, 2012, and 2013 selling seasons, and sold it under its "CONCRETE CANVAS" label. Hesterberg Decl., ¶ 18; Exs. J, L. A copyright notice, "© 2010 LANARD," was marked on all Chalk Pencils supplied to Dolgencorp. Hesterberg Decl. at ¶ 18. Likewise, a patent notice that stated either "Patent Pending" or a patent's number was marked on all Chalk Pencils sold to Dolgencorp. *Id.* at ¶ 19.

TRU is a very famous and large toy retailer with stores throughout the United States. D.E. #s 103, p. 2 ¶ 7; 110, p. 3 ¶ 8. Under a distributorship agreement, Lanard supplied the Chalk Pencil to TRU on a private label basis starting with the 2012 selling season. Hesterberg Decl., ¶ 20. TRU made its purchases for that selling season in late 2011, and sold the Chalk Pencil as part of its "SIZZLIN' COOL" private label toy line. *Id.* A copyright notice, "© 2010 LANARD," and a patent notice that stated either "Patent Pending" or the Patent's number was marked on all Chalk Pencils supplied to TRU. *Id.* at ¶ 21.

Lanard's Chalk Pencil was a success in the market, and showed every prospect of becoming an "evergreen" product with "legs" to be sold on retail toy shelves year after year. REDACTED

REDACTED . Decl. of Angel Lee ("Lee Decl."), ¶ 12; Ex. J at LNRD000720; Ex. L. REDACTED

REDACTED                                    Lee Decl., ¶ 10; Ex. J at LNRD000721.

REDACTED

Lee Decl., ¶ 13; Ex. J at LNRD000719, LNRD000722; Ex. M at T000025-26. The Chalk Pencil was a success with other major United States retailers, including Walgreen Co., Kmart Corporation, and Wal-Mart Stores, Inc., who purchased substantial amounts of product from Lanard. Lee Decl., ¶ 14, Ex. J at LNRD000723. REDACTED

*Id*. at ¶¶ 15-16, Ex. J at LNRD000740.

**C.     Ja-Ru Copies the "Chalk Pencil" to Manufacture Its Knock-Off Version**

On January 29, 2012, defendant Ja-Ru purchased Plaintiff's Chalk Pencil for $3.99 from a K-Mart in Neptune Beach, Florida. *See* Sybert Decl. at ¶ 11, Ex. N; Depo. Trans. of Russell Selevan ("Russell Selevan Depo.") attached as Ex. O., 157:1-13; 371:16-20. REDACTED

REDACTED

Sybert Decl. at ¶ 15, Ex. Q. Other documents produced in discovery show the development of

the Ja-Ru Product referencing Lanard's Chalk Pencil as either "Original Sample," "Reference

Sample," or "Market Sample."  Sybert Decl. at ¶ 17, Ex. S at JRH000019-21, JRH000045-51;

JRH000063-69. There are even documents showing the two products side-by-side. Exs. O, S.

 Defendants have for all intents and purpose admitted their copying. REDACTED

REDACTED

REDACTED

REDACTED *See* Depo. Trans. of Stephen Hearon

("Hearon Depo."), attached as Ex. R, 28:2-29:2. Further, Russell Selevan, Ja-Ru's Vice

President, REDACTED

REDACTED

REDACTED

Russell Selevan Depo, 391:5-10; *see* Sybert Decl. at ¶ 17, Ex. S at JRH0000257-259. Due to the

difference in size, employees and agents of Ja-Ru sometimes referred to the Lanard Chalk Pencil

as the "giant chalk pencil." Ex. P; Russell Selevan Depo, p. 384:5-21.

REDACTED

REDACTED *See*

Depo. Trans. of Angela Ku ("Ku Depo.") attached as Ex. T, 38:11-16. Furthermore, emails

produced in discovery show that on April 26, 2012, Ja-Ru employees and their Hong Kong

affiliate, Ja-Ru Hong Kong, Inc., became aware that the Lanard's Chalk Pencil was protected by

the '167 Patent, noting that they were told "THIS ITEM HAS PATENTED [sic] IN US

MARKET." *See* Sybert Decl. at ¶ 20, Ex. U. Ja-Ru staff discussed the implications of the Patent

*but nevertheless proceeded with production of the Ja-Ru Product anyway. See id.*

REDACTED *See* Sybert

Decl. at ¶ 21, Ex. V at JR00002. REDACTED

REDACTED *See* Depo. Trans. of Tyson Eavenson ("Evaenson Depo."), attached as Ex. W to the

Sybert Decl., 11:9-12. The damage to Lanard was far greater, however, as remains to be proven

at trial, as the result of Ja-Ru's actions was the destruction of Lanard's historic sales relationships

with TRU and Dolgencorp generally.

In the course of discovery in this litigation, the parties produced actual specimens of

Lanard's Chalk Pencil, images of which are labeled as JR000239 and 240. Sybert Decl. at ¶ 18;

Ex. B. The first model of Lanard's Chalk Pencil, labeled JR000239, shows the notice "US Patent

D671,167" on the back of the packaging. *Id*. The second model of Lanard's Chalk Pencil,

labeled JR000240, shows the notice "PATENT PENDING" on the front of the packaging in

clear letters, and the notice "(c) 2010 LANARD TOYS LTD." on the back. *Id*.

## D.    TRU Ceases Purchasing the "Chalk Pencil" and Purchases Ja-Ru's Knock-Off

After purchasing the Chalk Pencil from Lanard for several sales seasons, TRU abruptly

stopped ordering the product late in 2013. Hesterberg Decl., ¶ 23. REDACTED

REDACTED Deposition Trans. of Colleen Cosgrove,

("Cosgrove Depo."), attached as Ex. X, 147:12-15. REDACTED

REDACTED

REDACTED *Id*., p. 23:8-20. The TRU Product is a copy of Lanard's Chalk

Pencil design, as evident by the comparison in <u>Table 2</u> below:

| TABLE 2 – TRU PRODUCT | | | |
|---|---|---|---|
| TRU's SIZZLIN' COOL Product | TRU's SIZZLIN' COOL Product in Packaging | Lanard's Chalk Pencil | Lanard's Chalk Pencil in Packaging |
|  |  |  |  |

Exs. B; Y.

REDACTED

Ex. M, T000023-24.

**E. Dolgencorp Ceases Purchasing Lanard's "Chalk Pencil" and Purchases Ja-Ru's Knock-Off**

Dollar General, through Dolgencorp, also ceased ordering Lanard's Chalk Pencil in late

2013. Hesterberg Decl., ¶ 25. REDACTED

Deposition Trans. of Eric Hedberg ("Hedberg Depo."), attached as Ex. Z, 18:5-12. REDACTED

. *Id.* at p. 44:18-21.

Dollar General and its Dolgencorp distributor sold this product, which is a copy of

Lanard's Chalk Pencil design as shown in <u>Table 3</u> below, as part of Dollar General's Spring

2014 toy line – the same line that once featured Lanard's Chalk Pencil.

| TABLE 3 – DOLGENCORP PRODUCT | | | |
|---|---|---|---|
| Dolgencorp Product | Dolgencorp Product in Packaging | Plaintiff's Chalk Pencil | Plaintiff's Chalk Pencil in Packaging |
| | | | |

Sybert Decl., Exs. B, AA.

REDACTED

Sybert Decl., ¶ 6, Ex. L, DG00055. Whether TRU and/or Dolgencorp actually solicited Ja-Ru to knock off Lanard's toy so that it could be acquired for a lower price, or instead simply took advantage of Ja-Ru's offering once it was copied, both TRU and Dolgencorp knowingly and intentionally dealt in what they must have known was infringing product because they had previously bought the proprietary Lanard Chalk Pencil toy for years previously.

On March 25, 2014, Ja-Ru circulated an email stating that "Dollar General receive [sic] a threat from Lanard on this item [item #3517 Chalk Pencil], we have just found out they have a design patent." Sybert Decl., ¶ 27, Exhibit AB. However, Ja-Ru did not cease production of the Ja-Ru Chalk Pencil at that time, REDACTED

Russell Selevan Depo., 358:10-16. In fact, REDACTED

REDACTED

*Id.* at 388:1-5.

### F.    The Instant Lawsuit

In its Second Amended Complaint, Lanard asserts claims for copyright, patent, and trade dress infringement, and related unfair competition claims against Defendants' arising out of their knock off products. D.E. # 103. In their answers and counterclaims, Defendants assert affirmative defenses of copyright and patent unenforceability and invalidity, and unclean hands and inequitable conduct, and corresponding counterclaims for declaratory judgment of invalidity, unenforceability, and non-infringement of Lanard's copyright, patent, and trade dress. D.E. #s 270 (eighth, eleventh, twelfth, and fourteenth affirmative defenses; counterclaims counts I-III), 271 (eighth, tenth, and eleventh affirmative defenses; counterclaims counts I-III), 272 (eighth, tenth, eleventh, and twelfth affirmative defenses; counterclaims counts I-III).

## I.    ARGUMENT

### A.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure allows a court to rule on a claim or issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of showing there is no genuine issue as to any material fact. *American Viking Contractors, Inc. v. Scribner Equip. Co.* 745 F.2d 1365, 1369 (11th Cir. 1984). The nonmoving party must then demonstrate specific facts showing that a genuine issue remains for trial. *Celotex*, 477 U.S. at 324. The "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Labrache v. American Maritime*

*Officers Pension Plan*, 45 F.Supp.2d 1335, 1337 (M.D.Fla. 1999); *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

**B. Partial Summary Judgment of Defendants' Affirmative Defenses and Counterclaims**

    1.  <u>Defendants Cannot Overcome the Presumption of Copyright Validity</u>

                a.  *Plaintiff's Chalk Pencil Is Not a Derivative Work As a Matter of Law Because the Alleged Preexisting Work Is Not Protected by Copyright*

A copyright is presumed valid. *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (citing 17 U.S.C. § 410(c)) (production of a certificate of copyright registration creates presumption of copyright validity). Thus, Defendants bear the burden of establishing invalidity of the copyright. *Id*. Defendants seek a declaration that Lanard's registered copyright in its Chalk Pencil is invalid because in its registration application, Lanard did not designate the Chalk Pencil as a "derivative" work from the classic No. 2 pencil. Defendants claim that this constitutes "fraud on the Copyright Office." D.E. #s 110, p. 14, ¶ 7; 111, p. 12, ¶ 7; 112, pp. 13-14, ¶ 7. However, Lanard's Chalk Pencil is an *original* work – not a derivative work, and as such, no such disclosure was required. Further, in any event, failure to so cite a derivative work does *not* invalidate a copyright registration—it merely invites correction.  Defendants claim that the "preexisting work" from which Lanard's Chalk Pencil allegedly derives is a "standard no. 2 yellow pencil," which Defendants cannot show is copyrightable.

When a copyright is sought on a derivative work, the registration form must identify the preexisting work. *See* Copyright Act, 17 U.S.C. § 409(9). The Copyright Act defines a derivative work as "a work based upon one or more preexisting works." 17 U.S.C. § 101. However, as courts have long recognized, "almost all works are derivative works in that in some degree they are derived from preexisting works." Nimmer on Copyright § 3.01 (2011); *Pickett v. Prince*, 207 F.3d 402, 406 (7th Cir. 2000) ("A derivative work is, by definition, bound to be very similar to the original.").

If a work "sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the … work is not a derivative work and, for that matter, does not infringe the copyright of the original work." *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.,* 150 F.3d 132, 143 n.9 (2d Cir. 1998). Moreover, "[a] work is not derivative unless it has substantially copied from a prior work . . . [A] work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work. It is saved from being an infringing work only because the borrowed or copied material was taken with the consent of the copyright owner of the prior work, or because the prior work has entered the public domain." Nimmer on Copyright Section 3.01, at 3-3 (1995); *see also Eden Toys, Inc. v. Florelee Undergarment Co*., 697 F.2d 27, 34 (2d Cir. 1982).

Here, Lanard's Chalk Pencil is not simply a large pencil—it is a toy that children play with by making marks on a sidewalk, as distinct from a pencil that is intended as a precise writing instrument on paper. Lanard's Chalk Pencil contains the following major differences from an ordinary pencil: body made of plastic, colored chalk interior, chalk is removable from gripper, much larger size, says "Chalk Pencil," and the eraser unscrews to reveal hollow interior for storage. These changes are sufficient to render the Chalk Pencil non-infringing of a regular pencil and thus not a derivative work.

A pencil includes the following aspects: yellow color, six sides, made of wood, graphite or lead interior, metal top before the eraser, pink eraser, capable of being sharpened, approximately eight inches long with a diameter of approximately 1/8 inch. Sometimes the pencils have a manufacturer's identity, place of manufacture, and "No. 2" or "2" in a black circle written on one side. The only similarities between the ordinary pencil and Chalk Pencil are the yellow color, six sides, pink eraser, and a "2" in a black circle. Overall, the Chalk Pencil's

appearance is sufficiently different, particularly considering its exaggerated appearance related to the gripper and removable eraser for storage. These differences render the Chalk Pencil not substantially similar to a public domain pencil and thus not a derivative work.

### b. *Defendants Cannot Show Intent to Defraud*

Even assuming *arguendo* that Lanard's Chalk Pencil is a derivative work–which it is not –Defendants cannot establish the requisite *scienter* for a claim of "fraud on the Copyright Office." A party seeking to invalidate a copyright on the grounds of failure to cite a derivative work in a copyright application must show that the copyright applicant had intent to defraud the Copyright Office. *See, e.g., Donald Frederick Evans & Assocs. v. Cont'l Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986) ("Without proof of the scienter element, the [copyright invalidity] claim fails."); *see also Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 & n.5 (9th Cir. 1984). Failure to "identify any evidence of scienter" defeats an allegation of fraud on the Copyright Office. *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1271 (M.D.Fla. 2008).

Here, there is no evidence of Lanard' intent to defraud the Copyright Office. Defendants have taken numerous depositions of Lanard's employees, directors, officers, and representative agents throughout the course of this litigation. Sybert Decl., ¶ 32. None of the evidence supports any claim that Lanard intentionally defrauded the Copyright Office by withholding reference to the "standard no. 2 pencil," or any other work.[3] And, as previously argued, the "standard no. 2 pencil" is not copyrightable in the first instance. As a result, Defendants cannot show an intent to defraud, and this claim fails.

### c. *Defendants Cannot Show that Any Omission Was "Material"*

To show a fraud on the Copyright Office, the misrepresentation or omission must be sufficiently significant that it "might have occasioned a rejection of the application." *We Shall*

---

[3] It is also frankly inconceivable that staff at the Copyright Office would not have been aware of the existence of pencils.

*Overcome Found. v. Richmond Org., Inc*., 221 F. Supp. 3d 396, 408 (S.D.N.Y. 2016) (citing

*Whimsicality, Inc. v. Rubie's Costume Co*., 891 F.2d 452, 456 (2d Cir. 1989)). "[F]ailure to

inform the Copyright Office of given facts is without substance, to the extent that the Office

would have registered the subject work even had it known those facts." *We Shall Overcome*

*Found*, 221 F.Supp.3d at 408 (*quoting* 2 Nimmer on Copyright § 7.20[B].) Courts have held that

a failure to reference a work in the public domain as insufficient grounds to invalidate a

copyright. *Chirco v. Hampton Ridge L.L.C*., No. 01-72015, 2002 U.S.Dist. LEXIS 29050, *19-

20 (E.D.Mich. 2002) ("[I]t is entirely permissible for the firm to create an original work from a

work in the public domain[.]")

     As shown above, the alleged "preexisting work" is a "standard no. 2 pencil." Defendants'

own expert, Ronald B. Kemnitzer, notes that the "standard no. 2 pencil" has existed for "over

100 years" and is common in classrooms across the country. *See* Kemnitzer Report, p. 12, ¶ 36,

attached as Ex. AD. As a work in the public domain known to anyone who attended almost any

school in this country in the past 100 years, the Copyright Office examiner is likely familiar with

the "standard no. 2 pencil."  As a result, Defendants have not shown that its disclosure on

Lanard's Chalk Pencil copyright application would have changed anything about the Copyright

Office examiner's decision to register the work. Indeed, the Copyright Office has a process for

amending or amplifying information in a registration, by submitting Form CA, which results in a

supplementary registration, not cancellation or replacement of the registration.  17 U.S.C. §

408(d); Supplementary Registrations, Copyright Office Compendium, Ch. 1800, § 1802.

    2.  <u>Defendants Cannot Overcome the Presumption of the '167 Patent's Validity</u>

     Patents are presumed valid. *See* 35 U.S.C. § 282(a). Here, the Patent is registered by the

USPTO, and as such, it is presumed valid. Ex. H; RFJN No. 4-7. Defendants have the burden to

establish patent invalidity by clear and convincing evidence. *SRAM Corp. v. AD–II Eng'g, Inc*.,

465 F.3d 1351, 1357 (Fed. Cir. 2006).

Here, as an affirmative defense and counterclaim, Defendants allege inequitable conduct as a basis for the invalidity and unenforceability of the '167 Patent, claiming the same "failure" to alert the Patent Office as to the existence of pencils. Defendants' argument lacks merit.

a. *Defendants' Inequitable Conduct Argument Fails as a Matter of Law Because Defendants Cannot Establish Lanard Had Any Intent to Deceive the USPTO*

The defense of "inequitable conduct" is equitable in nature and typically a question of law. *See Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1333 (Fed. Cir. 2011) ("the trial court has the obligation to resolve the underlying facts of materiality and intent."). Every patent applicant has a "duty of candor and good faith" that includes a "duty to disclose to the Office all information known to that individual to be material to patentability." 37 C.F.R. 1.56. To prevail on a claim of inequitable conduct, a party must prove that the patent applicant misrepresented or omitted material information with the specific intent to deceive the USPTO. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc).

Here, Defendants claim that the '167 Patent is invalid or unenforceable as a result of Lanard's alleged "failure" to disclose relevant prior art. Defendants' Affirmative Defense and Counterclaim for Declaration of Invalidity of '167 Patent, D.E. # 110-112, 270-272. However, Defendants cannot show any evidence that Lanard possessed the requisite intent to deceive the USPTO in Lanard's alleged failure to disclose any relevant prior art in the patent application.

An accused infringer must prove that the patentee acted with the specific intent to deceive the USPTO, and requires a showing of *more* than gross negligence. *Therasense*, 649 F.3d at 1290. In cases involving the non-disclosure of information, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id*.

Defendants cannot establish any intent to deceive by Lanard as to the '167 Patent, let

-18-

alone that Lanard intentionally omitted or otherwise failed to disclose any prior art in the relevant field that would have materially impacted the Examiner's decision to issue the '167 Patent as discussed further below. Based on this failure of proof, Defendants' inequitable conduct affirmative defense and corresponding counterclaim for a declaration of invalidity or unenforceability of the '167 Patent on the alleged omissions fail as a matter of law.

> ### b. Defendants Cannot Show that Any Alleged Omission Was Material to the Issuance of the '167 Patent

In addition to intent, inequitable conduct warranting invalidation of a patent requires a finding of materiality. *Therasense*, 649 F.3d at 1287 (noting that "[i]ntent and materiality are separate requirements."). Under the "but-for" test, "prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art," and "the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Id.* at 1291.

With discovery now closed, Defendants have no evidence showing the materiality of the alleged omissions to the issuance of the '167 Patent—i.e., Defendants cannot show that the alleged "omitted" prior art was material to the examiner's decision to issue the '167 Patent. Defendants make much of the non-disclosure of the "standard no. 2 pencil," but the long history and famous nature of that product shows that, at a bare minimum, the examiner must be aware of it when processing the Patent's application. "A patent need not teach, and preferably omits, what is well known in the art." *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F.Supp.2d 1025 (N.D.Cal. 2011) (citing *Epistar Corp. v. International Trade Commission*, 566 F.3d 1321, 1336 (Fed. Cir. 2009)). In any event, Defendants cannot dispute that the '167 Patent covers a chalk holder design that is meant to evoke a pencil; the patent does not cover the design of a pencil.

**C.     Partial Summary Judgment of Elements of Lanard's Claims**

    1.     <u>Defendants' Products Infringe Lanard's Copyright</u>

        *a.  Lanard Owns a Valid Copyright in an Original Work*

To show copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991) ("*Feist*"). A certificate of registration constitutes *prima facie* evidence of validity when the registration was filed within five years after first publication of the work. 17 U.S.C. § 410(c).

Lanard owns a valid registration on the Plaintiff's Chalk Pencil, registration no. VA 1-794-458, as a sculptural work. Ex. D, Ex. E; 17 U.S.C. § 102(a)(5) (copyright protection for "pictorial, graphic, and sculptural works" as a category of protected works). Lanard published the Chalk Pencil on November 1, 2010 and acquired copyright registration for the Chalk Pencil on September 20, 2011. Ex. D., Hesterberg Decl., ¶¶ 6-9, within five-years after the Chalk Pencil's first publication as required by the Copyright Act. 17 U.S.C. § 410. Thus, Lanard's copyright is presumed valid.

Lanard's Chalk Pencil is a sculptural work that is inspired by (but is not) a pencil and that houses chalk grippers. Courts routinely uphold copyright protection for toys as "pictorial, graphic or sculptural works" as defined by the Copyright Act, even where there is some functional element to the toy. *See, e.g.*, *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 916 (9th Cir. 2010) (clothing made for dolls protected by copyright); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985) ("Transformer" robot/vehicle toys held copyrightable as sculptural works); *Gay Toys, Inc., v. Buddy L Corp.*, 703 F.2d 970, 973 (6th Cir. 1983) (toy airplanes protected by copyright because they have no intrinsic utilitarian function other than to portray real airplanes). Thus, although Lanard's Chalk Pencil (on the inside of the

casing) allows the toy to grip big pieces of chalk, that feature does not preclude copyright protection.  *See, e.g.*, *Spinmaster, Ltd. v. Overbreak LLC*, 404 F.Supp.2d 1097, 1102-04 (N.D.Ill. 2005) (extending copyright protection to a helicopter-like "flying saucer" toy although toy's motor and main propeller were not protected by copyright as "functional" elements, the hub, blades, the "saucer" ring, and the design of a separate controller and base station were "artistic" elements subject to copyright protection.).

Lanard's Chalk Pencil is analogous to other toys that multiple courts in the foregoing cases have held copyrightable, in that Lanard's Chalk Pencil is a giant, oversized pencil-inspired toy, which renders it a fanciful cartoon or version of a traditional pencil. Moreover, in playing with this toy, although a child can make the Chalk Pencil make marks on a sidewalk, such marks are only rough approximations of the precision marks one can make with a pencil, much like the helicopters that achieve some suspension in the air, but without the precision of actual flight.  *See Lanard Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 710 (9th Cir. 2010) (citing *Gay Toys*, 703 F.2d 970).

Further, the fact that Lanard's Chalk Pencil merely *resembles* the classic No. 2 yellow pencil does not preclude copyright protection for originality, as threshold for the originality requirement is low. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 824 (11th Cir. 1982). Courts have upheld copyright protection for toys that resemble other objects, but are not themselves those objects. *See, e.g.*, *Gay Toys*, 703 F.2d at 973 (toy airplanes); *Mattel, Inc.*, 616 F.3d at 916 (clothing for dolls). Given such a low bar, the fact that Lanard applied the familiar design of a pencil, and greatly exaggerated it in size and relative dimensions for use in a *different* product–a chalk holder toy–is enough to show the work is original.

       b.     *The Work is Not a Derivative Work and, Regardless, Is Independently Protected by Copyright*

Further, as discussed above, Lanard's Chalk Pencil is not a derivative work of a pencil.

Even assuming *arguendo* that Lanard's Chalk Pencil is a derivative work, derivative works are independently copyrightable. *U.S. Auto Parts Network Inc. v. Parts Geek LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012). Copyright protection in a derivative work will cover "the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103(b), *see Stewart v. Abend*, 495 U.S. 207, 223 (1990).

In order to be copyrightable, (1) "the original aspects of a derivative work must be more than trivial" and (2) "the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material." *U.S. Auto Parts*, 692 F.3d at 1016 (*quoting Entm't Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1220 (9th Cir. 1997)). Thus, the first element of this test asks whether the derivative work is original to the author and non-trivial—i.e., possesses a minimal degree of independent creativity. *Durham Indus. v. Tomy Corp*., 630 F.2d 905, 909 (2d Cir. 1980). The second element asks whether the author of the derivative work made so few changes to the preexisting work that issuing a copyright for the derivative work would prevent the owner of the preexisting work from exercising some of its rights under copyright law. *Entm't Research Grp*., *supra*, 122 F.3d at 1220.

The quantum of originality required for copyright in a derivative work is the same as that required for copyright in any other work. *See* 1 Nimmer on Copyright §3.01, at 3-2, §3.03[A], at 3-7. More particularly, the relevant standard is whether a derivative work contains a "nontrivial" variation from the preexisting work "sufficient to render the derivative work distinguishable from [the] prior work in any meaningful manner." *Id*. §3.03[A], at 3-10; *see also Eden Toys*,  697 F.2d 27 at 34-35 (numerous minor changes in an illustration of Paddington Bear were sufficiently nontrivial because they combined to give Paddington a "different, cleaner 'look'"); *Millworth Converting Corp. v. Slifka*, 276 F.2d 443, 445 (2d Cir. 1960) (embroidered

reproduction of a public-domain embroidery of Peter Pan was sufficiently distinguishable);

*Kamar Int'l v. Russ Berrie and Co.*, 657 F.2d 1059 ("anyone can copyright anything, if he adds something original to its expression").

Here, the original aspects of the Lanard's Chalk Pencil are more than trivial, and include a body made of plastic, a colored chalk interior, the use of the term "Chalk Pencil," and an oversized eraser. The size difference between Lanard's Chalk Pencil and the Defendants' Products, which is not dictated by function, is particularly important. Indeed, the size is so large that children must often use two hands to make marks on a sidewalk.  Further, the relative proportions are different; the toy Chalk Pencil is "fat" whereas a real pencil is slim.  Anders Report, p.30, ¶95.  These changes are not so few so as to preclude copyright protection even as a derivative work because the copyright in Lanard's Chalk Pencil would not prevent the owner of the alleged preexisting work—i.e., a pencil—from exercising its rights under copyright law because the pencil is indisputably in the public domain. Lanard is not seeking to stop any use of lead or graphite pencils because Lanard's copyright is limited to the aspects outlined above, for a chalk holder toy, not a pencil. Therefore, Chalk Pencil carries independent copyright protection, even if classified as a derivative work.

        c.     *Undisputed Direct Evidence Shows Defendants Copied Lanard's Chalk Pencil*

Proof of copying may be shown either by direct evidence of copying or, in the absence of such evidence, "copying as a factual matter typically may be inferred from proof of access to the copyrighted work and 'probative similarity.'" *Bateman v. Mnemonics, Inc*., 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Engineering Dynamics, Inc. v. Structural Software, Inc*., 26 F.3d 1335, 1340 (5th Cir. 1994)). Though "[d]irect evidence of copying rarely exists," such direct copying is shown where, as here, the accused infringer essentially admits to copying the work at issue. *See e.g., Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994) (employee

-23-

testified that president told her he was copying plaintiff's doll); *SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc*., 455 F. Supp.2d 1347, 1359 (N.D.Ga. 2006) (employees admitted they copied part of plaintiff's manual).

Here, there is no dispute that the defendants directly copied Lanard's Chalk Pencil; they have admitted it. Specifically, it is undisputed that Lanard its Chalk Pencil, which was marked with a copyright notice, "© 2010 LANARD," since publication, to both TRU and Dolgencorp with express authorization pursuant to distribution agreements among the parties.  Hesterberg Decl., at ¶¶ 10, 18, 21, Ex. B. As a result, Defendants cannot claim ignorance of Lanard's Chalk Pencil or its copyright protection.

Further, Ja-Ru's representatives REDACTED *See* Russell Selevan Depo., 25:18-21; Ku Depo., 38:11-16. REDACTED

REDACTED

*See* Ex. Q. REDACTED *See* Ex. S; Russell Selevan Depo. at 201:3-16. Thus, Defendants admit that they copied Lanard's Chalk Pencil in the development of the Defendants' Products, and such direct copying is a tacit admission of copyright infringement that was indisputably willful. *Cable/Home Commun. Corp. v. Network Prods*., 902 F.2d 829, 851 (11th Cir. 1990) ("willfully" means that a defendant "knows his actions constitute an

infringement; the actions need not have been malicious.") (citations omitted); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015) ("willful copyright infringement under [17 U.S.C.] § 504(c)(2) encompasses reckless disregard of the possibility that one's actions are infringing a copyright.")

     *i.*  *Defendants Indisputably Had Access to the Chalk Pencil*

   "'Access' under the Copyright Act means merely 'an opportunity to view the protected material.'" *Lifetime Homes, Inc. v. Residential Dev. Corp.*, 510 F. Supp. 2d 794, 802, (M.D. Fla. 2007) (citations omitted).  As discussed above, there is no question that Defendants not only had "an opportunity to view" Lanard's Chalk Pencil but did in fact access the toy itself. *See* May 14, 2014 Prelim. Inj. Hrg., Sybert Decl. at ¶ 34, Ex. AE at 18:10-11 (defense counsel admitting: "There's certainly access to the plaintiff's device[.]"). Thus, access is undisputed here.

     *ii.*  *Defendants' Products Are Nearly Identical Knock Offs of the Chalk Pencil*

   Substantial similarity exists where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  *Original Appalachian Artworks*, 684 F.2d at 829. Substantial similarity does not require the works to be identical where differences are "minor and appear to be the result of a calculated but thin attempt to disguise deliberate copying[.]" *Fisher-Price Toys, Div. of the Quaker Oats Co. v. MY-TOY CO.*, 385 F.Supp. 218, 221 (S.D.N.Y. 1974). In performing the similarity analysis between two works, "[t]he key . . . is . . . the similarities rather than the differences." *Latele TV, C.A. v. Telemundo Communs. Group, LLC*, 2015 U.S. Dist. LEXIS 11849, *23 (S.D.Fla. 2015) (*quoting Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093n4 (2d Cir.1977)).

   Here, Lanard's Chalk Pencil, as expressed in copyright registration no. VA1-794-458, is shown below next to Defendants' Products:

| TABLE 4 – Comparison Between Copyright Images and Defendants' Products | | |
|---|---|---|
| Lanard's Chalk Pencil, Copyright VA 1-794-458 | TRU and Ja-Ru's "SIZZLIN COOL" Product | Dolgencorp and Ja-Ru's "Side Walk Chalk Pencil" |
|  |  |  |
|  |  |  Bottom Perspective |
|  |  |  Top Perspective |

*See* Exs. D, Y, AA; *see also* Exhibit I to the Anders Report.

As is plainly evident, the Defendants' Products are near identical in shape and design to the Plaintiff's Chalk Pencil. The only difference is scale: Defendants have produced a version that is approximately 8 ½ inches long instead of 12 inches. Russell Selevan Depo, p. 391:5-10; *see* Ex. S at JRH0000257-259. But merely reducing the scale of the design does not alter the substantial similarity between the products. *See Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir. 1988) (party claiming no infringement must "identify more significant differences than slight variations in size or a different positioning [of elements]"). Defendants' smaller-scale replicas copy the protectable expression in Lanard's Chalk Pencil design and are just as infringing as if they were the same size. Thus, the similarity in appearance here is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded," especially given the fact Defendants admit to deliberate copying, as previously shown above. *Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 Fed. Appx. 873, 885 (11th Cir. 2015).

Moreover, as previously stated, the Honorable Judge Wigenton opined on the similarity

between the Lanard "Chalk Pencil" stating that "[t]here's no dispute" of their similarity and that "It doesn't even seem there is a real argument that there is any real true, true distinction of the two products to the ordinary eye." *See* Ex. AE, p. 35:8-19.  Any reasonable and objective observer – any juror – would reach the same conclusion. Further still, Mr. Anders opined that the Defendant's Products are "substantially the same as each and every image contained in the [Lanard] copyright," and that it is apparent that the products "infringed the copyrighted artwork[.]" Anders Report, 51:138-140.

In sum, any differences between the Plaintiff's Chalk Pencil and the Defendants Products are too "minor" to avoid a finding of infringement. *Fisher-Price Toys*, 385 F.Supp. at 221.

2. <u>Defendants' Products Infringe the '167 Patent Under the Ordinary Observer Test and Doctrine of Equivalents</u>

Direct infringement of a patent is defined as "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor[.]" 35 U.S.C. § 271(a). The infringement analysis is a two-step process: "First, the court construes the claims to correctly determine the scope of the claims. Second, it compares the properly construed claims to the accused device." *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 249 F.3d 1314, 1323 (Fed. Cir. 2001). Of these two steps, "[t]he first of these is a legal question and the second is factual." *Hormone Research Found. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990).

Construing the claims here, "the written description requirement for a design patent is applied against a drawing." *Spencer v. Taco Bell Corp.*, Case No. 8:12-cv-387-T-23TGW, 2013 U.S. Dist. LEXIS 142619, *7 (M.D. Fla. 2013). Further, design patents take the form of illustrations aided by written descriptions. *See generally Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, Case No. 8:12-cv-691-T-24-MAP2014, U.S. Dist. LEXIS 127986, *33-34, (M.D. Fla. 2014).

In applying the infringement test here, the proper construction of the '167 Patent's claims includes its illustrations and the accompanying written description that clarifies the patent as being a design for a chalk holder as discussed above. Ex. H, RFJN Nos. 4-7.

On summary judgment, the court may find substantial similarity as a matter of law where "no material issue of fact regarding the substantial similarity of the overall visual appearance" between an infringing product and the subject patent. *See Rockport Co., Inc. v. Deer Stags, Inc.*, 65 F.Supp.2d 189, 195, (S.D.N.Y. 1999); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988); *see also Columbia Sportswear N. Am. v. Seirus Innovative Accessories*, 202 F.Supp.3d 1186, 1197 (D.Or. 2016) (infringement on summary judgment for a design patent where "[a]n ordinary observer familiar with the prior art would be likely to confuse" the accused product and the patent).

Courts analyze design patent infringement under the "ordinary observer" test, where "the patented design is viewed in its entirety, as it is claimed."  *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed. Cir. 1993); *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) ("the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed."). This test for substantial similarity, as originally stated by the Supreme Court in *Gorham v. White*, 81 U.S. 511, 528 (1871), is:

> If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

The Federal Circuit has since modified the ordinary observer test in *Gorham* to include one "who is conversant with the prior art." *Egyptian Goddess, Inc.*, 543 F.3d at, 678.

As is plainly evident by comparing the '167 Patent to the products depicted in Tables 2 & 3, above, the overall shape and form of the accused products are substantially the same as

depicted in the Patent and extend to each of the Patent's design elements: the hexagonal body portion; the cylindroid tip portion; the ferrule portion and the erasure portion are substantially similar in size, proportionality and relationship to each other and the whole. Thus, the various identical components add to a greater whole, and indisputably show that the '167 Patent and the Defendants' Products are identical in their overall impression.

Indeed, Judge Wigenton, who presided over this matter before its transfer to this Court, noted the substantial similarity between the parties' products in the context of Lanard's likelihood of success on its claims for a preliminary injunction, stating:

> It doesn't even seem there is a real argument that there is any real true, true distinction of the two products to the ordinary eye. There are some minimal distinctions, but as I said, one is larger, one's smaller. But for the most part, the coloring, the components, the features of it are very, very similar.

See Ex. AE, 35:8-19.

Further, minor differences between the '167 Patent and the Defendants' Products are of no consequence, as "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Litton Sys., Inc. v. Whirlpool Corp*., 728 F.2d 1423, 1444 (Fed. Cir. 1984). Thus, small differences, such as the subtle detailing on the erasers, and any *de minimis* differences between exact dimensions of the Patent and the Defendants' Products, are inconsequential to preclude a finding of infringement. *Id*.

Likewise, different labeling does not affect the analysis for infringement. *See L.A. Gear*, 988 F.2d at 1126 ("Design patent infringement . . . does not . . . allow of avoidance of infringement by labelling.").  As a result, the fact that Lanard's commercial embodiment of the Patent features text that appears slightly different than the Defendants' Products (stating "Chalk Pencil" instead of just "Chalk"), is of no consequence.

Also, courts often rely on the testimony of expert witnesses knowledgeably in the relevant field to speak to similarity as seen from an "ordinary observer."  *See Degelman Indus. v.*

*Pro-Tech Welding & Fabrication, Inc.*, 2011 U.S.Dist.LEXIS 150187, *28 (W.D.N.Y. 2011) (plaintiff's motion for summary judgment required "expert testimony or from someone knowledgeable in the field setting forth an ordinary observer's view-by-view comparison of the evidence[.]");*Contessa*, 282 F.3d at 1378 (stating that design infringement analysis must include a review of all figures of a design patent).

In the case at bar, Lanard's expert Robert Anders analyzed each aspect and figure of the Patent compared to the accused products in great detail. Anders Report, pp. 37, ¶ 113-50, ¶ 136. Mr. Anders found that the similarity between the infringing products and the Patent "is substantially the same, such that an ordinary observer with knowledge of the prior art would purchase the accused product[s] believing [them to be the patented] design," and that both products infringe the Patent. *See id.* at pp. 47, ¶ 132; 50, ¶ 136. Thus, based on the obvious appearance of the Patent compared to the Defendants' Products and the testimony of Mr. Anders, there is no dispute that an ordinary observer familiar with the relevant field and the prior art would find the Defendants' Products infringe the Patent. *See id.* at p. 43, ¶ 126, p. 51, ¶ 136.

Moreover, under the doctrine of equivalents, infringement exists where the "alleged infringer seeks to appropriate the invention with minor modification to avoid the literal language of the claims." *Carman Indus. v. Wahl*, 724 F.2d 932, 942 (Fed. Cir. 1983). The doctrine of equivalents applies to design patents. *See Sun Hill Indus. Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995) (the doctrine of equivalents applies to design patent cases "when the accused product includes features equivalent to the novel claimed design features") (abrogated on other grounds); *see also Degelman Indus.*, 2011 U.S.Dist.LEXIS 150394 at *42 (noting that the doctrine of equivalents has survived the Federal Circuit's analysis in *Egyptian Goddess*).

As discussed above, the Defendants' Products are identical to the overall visual appearance of the '167 Patent. However, even where Defendants made slight modifications to

the design outside of what is strictly in scope of the '167 Patent's claim – such as minor variations on the ridges found in the eraser cap–the Doctrine of Equivalents protects the '167 Patent's novel claimed features—namely, its combined features as a chalk holder with a hexagonal body, a cylindroid tip, an eraser and ferrule substantially similar in size, proportionality and relationship to each other and the whole. *See Sun Hill Indus.*, 48 F.3d at 1196. As expressed in Mr. Anders's report, these elements add up to the same overall visual appearance, and the Defendants' Products infringe the "novel claimed design features" of the '167 Patent under the doctrine of equivalents.

3.  Defendants' Products Infringe Plaintiff's Trade Dress in the Chalk Pencil as a Matter of Law

    a.  *The Plaintiff's Chalk Pencil is Protected Trade Dress, Because Its Design Elements Are Non-Functional*

"'Trade dress' involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983) (Section 43 of the Lanham Act, 15 U.S.C. § 1125, creates a federal cause of action for trade dress infringement) (internal citations omitted). Trade dress infringement requires a showing that (1) the trade dress is primarily non-functional; (2) it is inherently distinctive or has acquired secondary meaning, and (3) the likelihood of consumer confusion as to origin, sponsorship, or approval due to similarity between the plaintiff's trade dress and the accused product. *PortionPac Chem. Corp. v. Sanitech Sys.*, 217 F. Supp. 2d 1238, 1249 (M.D.Fla. 2002).

The "functionality" element of trade dress infringement is tested through two tests: the traditional test, where product feature is considered "functional" if it is "essential to the use or purpose of the article, or if it affects the cost or quality of the article." *Dixie Consumer Prods. LLC v. Huhtamaki Ams., Inc.*, 691 F.Supp.2d 1372, 1379 (N.D.Ga. 2010) (*quoting Traffix*

*Devices v. Mktg. Displays*, 532 U.S. 23, 32 (2001)). The second test is the "competitive test" that finds trade dress is non-functional when there exist numerous alternative non-infringing designs that serve the same function. *See Dixie Consumer Prods. LLC*, 691 F.Supp.2d at 1378 (citing *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601 (9th Cir. 2003)).

As shown above, Lanard's Chalk Pencil is a toy only meant to evoke a pencil–it is not, itself a pencil, and is not utilitarian. Its purpose is to be a toy–nothing else. Further, the protected trade dress does not extend to its functional components–such as how it grips chalk or draws as part of child's play – but instead to its fanciful elements, such as its design as a pencil.

Additionally, numerous additional designs for chalks holders exist in a wide variety of shapes, sizes, and forms. Anders Report at "Exhibit D". Indeed, the initial design of the Lanard's Chalk Pencil was to evoke REDACTED – and only through significant design and development did the product take its current form. Hesterberg Decl., ¶¶ 4-5; *compare* Ex. A and Ex. B. As a result, Lanard's Chalk Pencil's current design is not "essential to the use or purpose of the article" to render it functional. *Dixie Consumer Prods. LLC.*, 691 F.Supp.2d at 1379.

### b. *Lanard's Chalk Pencil Has Acquired Secondary Meaning*

"Secondary meaning attaches to a trade dress when the public associates that mark, image or design with a singular source for the given product." *Jungle Rags, Inc. v. Rainbow Graphics, Inc.*, No. 93-260-CIV-T-21A, 1993 U.S. Dist. LEXIS 20203, at *8 (M.D. Fla. July 23, 1993). Evidence of such associations includes sales volumes and intentional copying by the accused infringer. *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984); *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir 1985) (secondary meaning where infringed product had sales in excess of $5 million and there was evidence of intentional copying); *PAF S.r.l. v. Lisa Lighting Co.*, 712 F. Supp. 394, 403 (S.D.N.Y. May 2, 1989) (secondary meaning through 200,000+ units of a lamp sold over four years combined with

over one million dollars in royalties and intentional copying); *Studio 1712, Inc. v. Etna Products Co.*, 777 F. Supp. 844, 851 (D. Colo. 1991) (secondary meaning shown through evidence of copying where company forwarded picture of product around with "specific instruction to develop a like product"); *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960). Furthermore, under 15 U.S.C. § 1052(f), substantially exclusive use of the trade dress for five years, as is undisputed here, is *prima facie* evidence of acquired distinctiveness before the USPTO.

Here, Lanard made significant sales in its Chalk Pencil since 2010 to numerous retailers, including Dolgencorp and TRU, as well as well-known third-party retailers Walgreens, Kmart, Wal-Mart, and many others. Hesterberg Decl., ¶ 22, Lee Decl. ¶ 14; Ex. J at LNRD000723.

REDACTED

Ex. J at LNRD000719-20; Ex.L at DG000055; M at T000025-26. REDACTED

Lee Decl., ¶¶ 15-16. Based on these sales figures reflecting the success of the Chalk Pencil, and the indisputable evidence of Defendants' intentional copying, Lanard's Chalk Pencil acquired secondary meaning and is protected trade dress.

### c.   There Exists Likelihood of Confusion Between the Products

There are seven primary factors to consider in deciding whether there is a likelihood of confusion: (1) the type of mark at issue; (2) similarity of the mark; (3) similarity of products or services; (4) identity of purchasers and similarity of retail outlets; (5) similarity of advertising campaigns; (6) the defendant's intent; and (7) actual confusion. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997).

As previously discussed above, the similarities between the Lanard's Chalk Pencil and Defendants' Products are striking (and intended as such)–they are the same design and the same fundamental product, different only in size and minor detail. Likewise, these products are sold to the general and downstream markets (toy stores and to children), and all products were at one time sold in TRU and Dolgencorp's stores. Moreover, as discussed above, Ja-Ru deliberately copied Lanard's Chalk Pencil. The similarity of the products, identity of purchasers, and similarity of retail outlets establish a likelihood of confusion.

If "a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone 'may be sufficient to justify the inference that there is confusing similarity.'" *John H. Harland Co.*, 711 F.2d at 977 (citations omitted).  In *John H. Harland Co.*, the Eleventh Circuit found that evidence of the accused infringer's awareness of plaintiff's product's success, attempts to copy the plaintiff's product as closely as possible, and even the use of plaintiff's product as a model when designing the new product, was probative of the infringer's intentional and willful infringement in order to benefit from the success that the plaintiff's trademark had already achieved. *Id.* These facts are analogous to Defendants' infringement of Lanard's Chalk Pencil trade dress here, where Defendants TRU and Dolgen indisputably knew of Lanard's product, which they previously carried as part of their respective toy lines, and Ja-Ru admitted to using the Chalk Pencil as a sample and reference to copy. These facts are undisputed and they establish Defendants' willfulness and intent. As Judge Wigenton stated, there is no "real argument that there is any real true, true distinction of the two products to the ordinary eye[.]" *See* Ex. AE, p. 35:8-19. "No real argument" means no disputed issue of material fact, warranting summary judgment on liability.

3.   Lanard is Also Entitled to Summary Judgment on Its Unfair Competition Claim, Which is Predicated on Defendants' Infringement

Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition

and forbids unfair trade practices involving infringement of trade dress. *University of Florida v. KPB, Inc.*, 89 F.3d 773, 775-76 (11th Cir. 1996). Courts addressing claims of both trade dress and federal and state common law unfair competition address the claims together because they have virtually identical elements. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001).

Because Lanard's statutory and common law unfair competition claims under federal and Florida law are predicated on Defendants' indisputable infringement outlined in detail above, summary judgment in favor of Lanard on its unfair competition claim is also proper.

4. The Licensee Estoppel Doctrine Bars Defendants TRU and Dolgencorp From Challenging the Validity of Lanard's Trade Dress

The licensee estoppel doctrine precludes a trademark or trade dress licensee from challenging the validity of the licensor's mark. *See John C. Flood of Va., Inc. v. John C. Flood, Inc.,* 642 F.3d 1105, 1110 (D.C. Cir. 2011); *Creative Gifts, Inc. v. UFO,* 235 F.3d 540, 548 (10th Cir. 2000); *Prof'l Golfers Ass'n v. Bankers Life & Cas. Co.,* 514 F.2d 665, 671 (5th Cir. 1975). "The theory underlying the licensee estoppel doctrine is that a licensee should not be permitted to enjoy the benefits afforded by the license agreement while simultaneously urging that the trademark which forms the basis of the agreement is void." *John C. Flood*, 642 F.3d at 1111.

Under this doctrine, Defendants TRU and Dolgencorp, as former licensees of Lanard's trade dress in the Chalk Pencil by virtue of their distributor agreements with Lanard, may not challenge the trade dress from which they previously benefitted as resellers of Chalk Pencil. As established above, these Defendants sold significant quantities of the Chalk Pencil, reaping substantial financial benefit through those sales.

## CONCLUSION

Based on the foregoing authority and argument, Lanard respectfully requests that the Court grant summary judgment in Lanard's favor on the grounds stated herein.

Respectfully submitted this 24th day of July, 2017.

| | |
|---|---|
| | */s/ **Richard P. Sybert*** |
| | |
| | Richard P. Sybert |
| | **Admitted *Pro Hac Vice*** |
| | Reid E. Dammann |
| | **Admitted *Pro Hac Vice*** |
| | GORDON & REES |
| |   SCULLY MANSUKHANI |
| | 101 W. Broadway, Suite 2000 |
| | San Diego, CA 92101 |
| | Telephone: (619) 696-6700 |
| | Facsimile: (619) 696-7124 |
| | rsybert@gordonrees.com |
| | rdammann@gordonrees.com |
| | |
| | Eric R. Thompson |
| | Florida Bar No. 888931 |
| | Karin A. Curtis |
| | Florida Bar No. 90988 |
| | GORDON & REES |
| |   SCULLY MANSUKHANI |
| | Miami Tower |
| | 100 S.E. Second Street |
| | Suite 3900 |
| | Miami, FL  33131 |
| | Telephone: (305) 428-5300 |
| | Facsimile:  (877) 644-6209 |
| | kcurtis@gordonrees.com |
| | ethompson@gordonrees.com |
| | |
| | ***Attorneys for Plaintiff*** |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 24, 2017, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, and that a true and correct copy of the

foregoing was served by electronic notice on all counsel or parties of record on the Service List

below.

                                         *s/ Eric R. Thompson*
                                        Eric R. Thompson
                                        Florida Bar No. 888931

**Service List**
Fred Page
Holland & Knight
50 North Laura Street
Suite 3900
Jacksonville, Florida 32202
*Counsel for Defendants*

Lewis Anten
Ivy Choderker
Lewis Anten, P.C.
16830 Ventura Boulevard, Suite 236
Encino, California 91436
*Counsel for Defendants*