# EXHIBIT A TO BAGLEY *DAUBERT* MOTION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA -- JACKSONVILLE DIVISION

Lanard Toys Limited

    Plaintiff,

            v.                      Case No. 3:15-cv-849-J-34PDB

Toys "R" US – Delaware, Inc.
Dolgencorp, LLC, and Ja-Ru, Inc.,

    Defendants.

## REBUTTAL EXPERT REPORT
### Parker H. Bagley

**June 23, 2017**

## I. INTRODUCTION AND ASSIGNMENT

1. I am a partner in the firm of Boies Schiller Flexner LLP ("BSF") and have specialized in Intellectual Property ("IP") litigation since being admitted to the New York bar in March 1984. I was retained by counsel for Lanard Toys Limited ("Lanard" or "plaintiff") as a rebuttal expert to respond to the opinions expressed by Defendants' expert Ronald Kemnitzer.

## II. SUMMARY OF OPINIONS

2. The following opinions are based upon my experience in trying design patent and copyright infringement cases to juries, my analyses of the facts in this case, relevant case law, and the Federal Rules of Evidence, particularly Rule 702 and its application by the courts. It is my opinion that, as described in greater detail below, Mr. Kemnitzer improperly opines on (a) ultimate issues of law in this case, which should be the province of the Court, and, (b) ultimate issues of fact (e.g. whether an "ordinary observer" would consider Defendants" products to be design patent infringements; ) which are questions for the jury. Such opinions will not be of assistance to the trier of fact within the meaning of FRE 702 and should be excluded on this basis. I also believe that Mr. Kemnitzer's opinions will cause juror confusion as his report is replete with glaring errors as well as misleading overstatements and comparisons of the products at issue and the prior art. Moreover, jurors are perfectly capable to place themselves in the position of "ordinary observers" in determining design patent infringement, or to decide whether copying has occurred and "substantial similarity" exists in the copyright context. Jurors will not be assisted in their determinations by being told by Mr. Kemnitzer what conclusions they should reach, based on his highly flawed analyses. However, if the Court allows Mr. Kemnitzer to offer his opinions at trial, I offer contrary opinions regarding (a) the allegedly uncited prior art, which I believe to be cumulative of the cited prior art, (b) the validity of the '167 patent, which under the law is presumed to be valid and which, in my opinion, covers a non-obvious, unanticipated and non-functional ornamental design, and (c) the confusing and substantial similarity of the designs of Defendants' products when

- 2 -

compared to the design claimed in the '167 patent, the design shown in Lanard's Copyright Registration, as well as the commercial embodiment of that design.

## III. QUALIFICATIONS AND COMPENSATION

3. I have been an IP litigator for more than thirty three years, and have been involved in well over 100 IP litigations involving design patents, copyrights, unfair competition, trademarks, utility patents, trade secrets and false advertising. I have extensive "first chair" or lead trial counsel experience, including design patent infringement, copyright infringement, and unfair competition matters. I have successfully tried, on behalf of design patent owners Baldwin Hardware and Delta Faucet, two design patent cases, one a six week bench trial, the other a five week jury trial. I have also obtained jury verdicts of infringement on behalf of plaintiffs in copyright infringement and unfair competition/trademark infringement matters, and in bench trials have successfully represented some of the world's largest companies, including Anheuser-Busch, McDonald's Corp., L'Oreal and Kmart Corp. I have had a number of cases involving IP rights in the toy industry, including representation of plaintiff Lanard over twenty years ago in a few cases that did not go to trial. I have also successfully argued two appeals before the Ninth Circuit Court of Appeals on behalf of Wham-O Toys, in which the decisions of the district court were affirmed.

4. I have substantial experience and expertise in retaining and working with expert witnesses in IP litigations, including damages experts, consumer survey experts, engineers and industrial designers. As a result of this experience, I am familiar with the types of expert opinions which are appropriate in IP cases, and conversely the types of opinions which are inappropriate.

5. I wrote a regular column on IP Law in *The New York Law Journal* for over 15 years and have spoken at many seminars and meetings on a variety of IP issues. My current resume is attached as Appendix A. I have not served as an expert witness within the last 10 years.

6. BSF is being compensated for my time on an hourly basis. The hourly rate charged by BSF for my time is $920. Neither my compensation nor BSF's is dependent on the outcome of this matter. All opinions in this report are my own.

## IV. WORK CONDUCTED

7. I reviewed the Expert Report of William O. Kerr dated June 17, 2017, the Expert Report of Ronald B. Kemnitzer dated June 9, 2017, the Supplemental Report of Mr. Kemnitzer dated June 22, 2017, (served less than 24 hours before this report was due), the draft report of Robert Anders and physical specimens of the products at issue.

8. I have also relied on my knowledge of design patent statutes and case law, and my experience in retaining and working with expert witnesses in design patent infringement cases and in taking such cases through to trial.

9. This report and any updated analyses that I conduct subsequently will be the basis of any testimony I am asked to give in this matter.

## V. THE KEMNITZER REPORT AND SUPPLEMENTAL REPORT

10. I take issue with a number of Mr. Kemnitzer's statements, comparisons and conclusions, as well as the manner in which he reached those conclusions. Mr. Kemnitzer is correct that "design patents protect the way an article looks" (Para. 17), that design patents protect ornamental features (Para. 18), and that "two designs are substantially similar under the ordinary observer test if, in the eye of an ordinary observer who is giving such attention as a purchaser usually gives, the resemblance is such as to deceive the ordinary observer to purchase an article having one design, supposing it to be the other." (Para. 19) However, I believe it is inappropriate for Mr. Kemnitzer to presume to be an "ordinary observer" and to render an opinion as an ultimate question of fact for the jury: are defendants liable for design patent infringement? Jurors are much more appropriate "ordinary observers" and the opinion of a hired expert will not be helpful to them.

11. Moreover, rather than comparing how Lanard's and defendants' accused products "look", Mr. Kemnitzer engages in an elaborate analysis of isolating various

- 4 -

elements of the designs and then measuring/comparing those elements. But the correct legal test compares the ornamental features of the overall designs in the eye of the ordinary observer, not how many centimeters larger or smaller an element of the Lanard design is when compared to that same element in the infringing designs.

12. An "ordinary observer" is unlikely to go into TRU or Dollar General Store with a ruler and begin measuring the Chalk Pencils, or elements thereof. The products at issue are inexpensive and often chosen by children, with a parent or other adult making the ultimate purchase, but not necessarily the purchasing decision. The Dollar General Chalk Pencil is actually manufactured with a $2 price tag as part of the packaging. Thus, purchasers of the products at issue are likely to be unsophisticated, unlikely to exercise great care in purchasing inexpensive toys, and unlikely to discern slight differences between the products. Mr. Kemnitzer's analysis completely ignores the low level of care/attention the ordinary observer is likely to expend when purchasing an inexpensive children's toy/accessory.

13. When discussing the design shown in the figures in Lanard's '167 patent, Mr. Kemnitzer makes the remarkable claim that the design shown "is nearly identical to the ubiquitous No. 2 yellow pencil." (Para. 24) Mr. Kemnitzer does not include any photographic evidence to back up his "nearly identical" claim in Paragraph 24, but does include this comparison as part of a larger array of products much later in his report, in Paragraphs 43 and 44:



As is readily apparent, there are vast differences in appearance, proportion, width and length between the '167 patent design and a No. 2 yellow pencil.

14. In his report, Mr. Kemnitzer studiously avoids making a side by side comparison of the overall appearance of the commercial embodiment of the '167 patent and the Ja-Ru "Chalk Pencil", and for good reason. If the two designs shown in Paragraph 15 above are in his opinion "nearly identical", a stronger modifier of "identical" would have to attach when describing the designs below:

| Commercial Embodiment of the '167 Patent | Ja-Ru "Chalk Pencil" |
|---|---|
|  | |

15. In my opinion, the prior art relied upon by Mr. Kemnitzer and discussed in Paragraphs 35-41, is cumulative of the 15 prior art references cited by the

Examiner. Mr. Kemnitzer concedes that four of the prior art references disclosed pencil designs, and three of the images he includes in Paragraph 33 of his report (Refs. 824,375; 1,920,680 and D497,390) show pencil designs that, in my opinion, would render the alleged "uncited" prior art to be cumulative of what the Examiner considered in finding patentability. Mr. Kemnitzer claims that U.S Patent No. 1,920,680 (the '680 patent) was not cited by the Examiner (Paragraph 40) and then later concludes that the '167 patent is invalid as anticipated by the '680 patent (Paragraph 81). He reaches this conclusion without realizing the '680 patent is actually **cited** prior art, and without any discussion of the legal standard for anticipation or analysis of how this 84 year old utility patent for a "Pencil Ferrule" somehow anticipates (contains all the elements of) the design of the entire chalk holder claimed in the '167 patent. This level of sloppiness is sufficient reason alone, in my opinion, to exclude the Kemnitzer report in its entirety. Jurors will necessarily be confused by Mr. Kemnitzer's own confusion as to what prior art was cited, and what was not.

16. Neither the Examiner nor Mr. Kemnitzer have cited any prior art chalk holders, which would be the most relevant class of prior art. Mr. Kemnitzer fails to explain how the prior art pencil designs he cites are more relevant than the pencil designs considered by the Examiner (while completely missing the fact that the Examiner **did consider** the '680 patent). The '167 patent is presumed to be valid and cannot be invalidated by "prior art" which is cumulative of what the Examiner considered. Merely citing additional pencil designs does not overcome the presumption of validity or render the '167 patent either obvious or anticipated. In his Supplemental Report, Mr. Kemnitzer merely cites to photographs of "giant pencils" from a website. Even of these pencils were "prior art" (and there is no evidence that they pre-date the '167 patent) they are cumulative of the pencil designs cited by the Examiner. Pencils are pencils and chalk holders are chalk holders and the size of the cited pencil designs is irrelevant. Moreover, the Supplemental Report should be excluded as untimely.

17. The '167 patent does not cover a **pencil** design, it covers a **chalk holder** design which is meant to "evoke" a pencil. Clearly, the design does not "replicate" the design of a No. 2 pencil, as claimed by Mr. Kemnitzer (Paragraph 24). Mr.

Kemnitzer apparently fails to understand the difference between "evoke" and "replicate". This is readily apparent from the illustration Mr. Kemnitzer includes in his report and discusses in Paragraphs 44 and 45, (reproduced above in Paragraph 13 above).

18. Faced with this visual evidence, Mr. Kemnitzer backs off his outlandish claims that the two designs are "nearly identical" and that the '167 patent design is meant to "replicate" the design of a No. 2 pencil. (Paragraph 24) He is forced to admit that there "are some visual differences" between the designs, "the most substantial being the proportions with the design of the '167 patent relatively thicker (sic)." (Paragraph 45). In my opinion, Mr. Kemnitzer's penchant for overstatement, hyperbole and contradiction renders his opinions of questionable value to the jury, and will lead to juror confusion as they attempt to reconcile his bald claims of near-identically and replication with the contrary visual evidence, as well as his contradictory admissions of visual differences.

19. Mr. Kemnitzer opines on the obviousness at of the '167 patent design at Paragraphs 46-50 and at Paragraph 53 opines that the '167 patent "is invalid due to being primarily functional, anticipated by the prior art and/or obvious to one of ordinary skill in the art". Nowhere in his report does he recite his understanding of the law governing these distinct legal concepts.

20. Indeed, there is no discussion regarding what "anticipation" requires or how he reached this legal conclusion. He just summarily concludes that the patent is invalid due to anticipation. In the real world, proving patent anticipation is extremely difficult and unusual. It essentially requires that an accused infringer unearth a prior art reference not cited by the Examiner that discloses the identical invention claimed by the patent. In this context, in order to support a conclusion of anticipation, Mr. Kemnitzer would have needed to cite a single reference which disclosed a chalk holder which evoked a No. 2 pencil with substantially the same design as is shown in the '167 patent. Instead, Mr. Kemnitzer bases his anticipation conclusion solely upon the '680 patent, which, again, the Examiner considered and implicitly found that it did not anticipate or render obvious the patented design.

21. The '680 patent issued in 1933 and is a **utility** patent entitled "Pencil Ferrule". As the name of the patent implies, the '680 patent covered only the utility of the pencil ferrule and did not cover the overall design of the pencil. Moreover, the utilitarian ferrule shown in the '680 patent has a completely different appearance from the non-functional plastic ferrule of the '167 design patent. (See, Kemnitzer Paragraph 42 Illustration). Mr. Kemnitzer has not cited a single chalk holder as a prior art reference, much less one which evokes a No. 2 pencil and therefore could be properly found to be an anticipatory reference. But his conclusion that the '167 design patent is somehow anticipated by the '680 utility patent is nothing short of absurd and once again highlights why his opinions should be excluded.

22. It is equally clear from his discussion and conclusions that Mr. Kemnitzer does not understand the legal concept of obviousness. He completely ignores the burden that defendants face in overcoming the presumption that the '167 patent is valid and non-obvious. In Paragraph 47, he sets forth the false premise that obviousness should be determined by a "designer of ordinary skill…tasked with designing a chalk holder to look like a standard No. 2 yellow pencil." But this presumes that it was obvious to be "tasked" with designing a chalk holder that evoked a No. 2 pencil, when in fact, all the evidence is to the contrary. No one had ever designed a chalk holder to evoke a No. 2 pencil prior to Lanard's inventive design. Not a single chalk holder has been cited as prior art by either the Examiner or Mr. Kemnitzer. All of the evidence leads to the conclusion that the idea of designing a chalk holder to evoke the look of a pencil was completely new, unique and non-obvious. It is wholly improper for Mr. Kemnitzer to opine on obviousness, based on a flawed understanding of the facts and the law.

23. Mr. Kemnitzer's opinion that the '167 patent "is invalid due to being primarily functional" is similarly flawed. (Paragraph 53). The Examiner found the '167 patent design to be ornamental. A presumption of non-functionality and validity attaches to this finding. This was also a clearly correct conclusion by the Examiner as there are an infinite number of ornamental designs that can be added to a functional chalk holder. For example, a chalk holder can be designed to look like a pretzel stick, fountain pen, can of tennis balls, roll of candy, etc. without impacting its functionality in holding chalk. Mr. Kemnitzer would be correct in his

- 9 -

conclusion if the Lanard design were a simple tube in which the chalk was held, with no ornamentation. But there is no utilitarian function served by the ornamental features which make that chalk holder evocative of a No. 2 pencil.

**Copyright**

24. In my opinion, Mr. Kemnitzer's discussion of "Copyright Issues" (Paragraphs 86-93) should be excluded in its entirety. The discussion is replete with factual errors and misleading comparisons which can only serve to confuse and not assist the jury. Moreover, Mr. Kemnitzer's conclusions evidence a fundamental misunderstanding of copyright law, including "substantial similarity" and "copying". After hearing all the evidence and observing the products at issue, the jury will determine whether the products are "substantially similar" and whether Ja-Ru copied the Lanard chalk holder.

25. In terms of factual inaccuracies, Mr. Kemnitzer asserts that the Lanard chalk holder eraser has a convex top and that the Ja-Ru eraser has a flat top (Paragraph 91(a)). Based on my comparison of the products, it is evident that both products have flat tops. But even if Mr. Kemnitzer were correct, his entire series of comparisons of various elements in Paragraph 91 is irrelevant to the inquiry of whether the overall appearances are "substantially similar". Infringers like Ja-Ru rarely make identical copies because that is defined as counterfeiting, which carries both criminal and civil penalties. In my experience, there are always subtle differences in the "knock off" product, but that does not mean that copying did not occur or that the overall appearance of the knock off is not substantially similar to the original.

26. Mr. Kemnitzer's lack of understanding of the copyright law is highlighted by his reliance on the difference in size between the products in reaching his conclusions that that Ja-Ru did not copy and that there is no substantial similarity: "Lanard's product is 47% longer than Ja-Ru's." (Paragraph 91). Indeed, Mr. Kemnitzer apparently believed the size difference was worthy of separate discussion from the 17 other alleged differences he asserts in Paragraph 91. But difference in size is irrelevant to the substantial similarity inquiry. Under Mr. Kemnitzer's reasoning, if someone made and sold a Mickey Mouse toy that was 47% the size of Disney's

- 10 -

26. Mr. Kemnitzer's lack of understanding of the copyright law is highlighted by his reliance on the difference in size between the products in reaching his conclusions that that Ja-Ru did not copy and that there is no substantial similarity: "Lanard's product is 47% longer than Ja-Ru's." (Paragraph 91). Indeed, Mr. Kemnitzer apparently believed the size difference was worthy of separate discussion from the 17 other alleged differences he asserts in Paragraph 91. But difference in size is irrelevant to the substantial similarity inquiry. Under Mr. Kemnitzer's reasoning, if someone made and sold a Mickey Mouse toy that was 47% the size of Disney's copyrighted toy, and incorporated some other minor differences, there would be no substantial similarity because of the size difference. This is clearly not how the copyright law operates.

## VI.   CONCLUSION

For all the foregoing reasons, it is my opinion that the Kemnitzer Report should be excluded in its entirety. There are simply too many factual inaccuracies (the '680 patent was uncited prior art), overstatements (the patented design "replicates" and is "nearly identical" to the No. 2 pencil design), and unfounded conclusions (the '680 utility patent anticipates and invalidates the '167 design patent) for his opinions to be of assistance to the jury.

I HEREBY DECLARE under penalty of perjury that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine and imprisonment, or both, under 18 U.S.C. §1001.

Respectfully submitted,

Dated: June 23, 2017

_____
Parker H. Bagley

# APPENDIX A

# Parker H. Bagley

575 Lexington Avenue

New York, NY 10022

**Education**

Columbia College: BA 1979

Fordham School of Law: JD 1983

Admitted to New York Bar: March 1984

**Experience**

Brumbaugh Graves Donohue & Raymond: Associate 1983-1991; Partner 1991-1997

Baker Botts: Partner 1997-1999

Milbank Tweed Hadley & Mc Cloy: Partner 1999-2008

Goodwin Procter: Partner 2008-2013

Boies Schiller Flexner LLP: Partner, 2013-Present

**IP Litigation Experience**

Parker is a leading IP trial lawyer who has tried jury cases in every area of IP law, including patent, copyright, trademark, and trade secrets. He obtained a verdict of willful trademark infringement on behalf of L'Oreal, a multimillion dollar verdict of patent infringement for Delta Faucet, and a multimillion dollar verdict of copyright infringement against The Limited.

In successful bench trials, Parker has represented some of the largest companies in the world, including McDonald's, Anheuser-Busch, Kmart and MasterCard. He has successfully represented many more leading companies in preliminary injunction hearings, including MetLife, Paine-Webber, Ultimate Fighting Championship, Tyco Healthcare, Lancome, and Research In Motion.

Parker was named one of the top three trademark litigators in the U.S. in a *Managing Intellectual Property* survey of his peers, was named one of the top 30 U.S. trademark lawyers in the 2015 *Best of the Best* publication, and has been voted a New York Super Lawyer for the past 17 years.