# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| LANARD TOYS LIMITED ,<br>       Plaintiff,<br><br>v.<br><br>TOYS "R" US - DELAWARE, INC.<br>DOLGENCORP, LLC, and JA-RU, INC.,<br>       Defendants.<br><br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Case Number: 3:15-cv-00849-MMH-PDB** |

## PLAINTIFF LANARD TOYS LIMITED'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DEBORAH RYAN

Plaintiff Lanard Toys Limited ("Lanard"), by and through its undersigned counsel and pursuant to Federal Rules of Evidence Rule 702, hereby files its Motion to Exclude the Opinions and Testimony of Deborah Ryan, who is designated as an expert by Defendants Dolgencorp, LLC ("Dolgencorp"), Toys 'R' US – Delaware, Inc. ("TRU"), and Ja-Ru, Inc. ("Ja-Ru") (collectively, "Defendants"), and, in support hereof, states the following:

## INTRODUCTION

This case is a copyright, design patent, and trade dress infringement action arising out of Defendants' knock-off toy that replicates Lanard's proprietary "Chalk Pencil," a chalk holder toy with a cartoonish oversized pencil design.  Defendants designated Deborah Ryan as an expert to opine on "custom and practice in the toy industry," yet Ms. Ryan's purported expertise has no applicability to this case at all.  Report of Deborah Ryan ("Ryan Report"), attached as Exhibit A to Decl. of Richard P. Sybert ("Sybert Decl.").  Indeed, her opinions—which seem animated by some mysterious personal animus towards Lanard, even though Ms. Ryan's design school has welcomed Lanard at the school's career fairs for its students, some of whom interned or

otherwise became employed at Lanard—are conclusory and devoid of reliable factual support to the point where during deposition questioning about substantiation for her "expert" conclusions, Ms. Ryan spontaneously blurted to Defendants' counsel on the record that they—counsel— "should never hire me for this."  Sybert Decl., Exhibit B, Deborah Ryan Depo. Trans. ("Ryan Depo."), 92:17-18.

Ms. Ryan professes that "[a]dherence to intellectual property rights and patent ownership has always been a primary concern of [hers]" as a toy designer, yet she contradicts herself by attempting to defend Defendants' virtually identical knock off toy as legitimate "competition . . . with each manufacturer striving to improve on the designs of toy products offered to consumers."  Ryan Report, §§ 1, 4.A.  Ms. Ryan's inconsistent positions and their lack of reliable substantiating factual support or adherence to any methodology strain credulity.

As outlined below, Ms. Ryan's report and testimony should be excluded because:

(1) Given her lack of experience in retail sales and marketing, she is unqualified to opine on consumer behavior and perceptions as to the Chalk Pencil and Defendants' knock off products at issue in this case, or on retailer and manufacturer behaviors and preferences in toy sales.  Her proffered opinions on these issues are wholly speculative, and not based on experience or qualifications.  She is a designer and academic, not a merchandiser or marketer.

(2) Ms. Ryan's proffered expert opinions, including that Defendant Ja-Ru's chalk holder is somehow not a knockoff of Lanard's Chalk Pencil, and about product price points, storage utility, ergonomic usability for children, and consumer preferences and perceptions, are not based on any reliable facts or data.  In fact, Ms. Ryan's opinion that Ja-Ru did "nothing wrong in designing its chalk holder" actually contravenes the undisputed evidence in this case that Defendant Ja-Ru knowingly and intentionally copied Lanard's Chalk Pencil.  Ja-Ru admittedly

used Lanard's Chalk Pencil as a "market reference" for Defendants' knock off chalk holder

pencil.  Exhibit A, Ryan Report, §§ 4.A, 4.B; Exhibit Q to Lanard's Motion for Partial Summary

Judgment ("MPSJ"), D.E. # 299-22, Bates No. LA 7-8; Exhibit O to MPSJ, D.E. # 299-20,

Russell Selevan Depo. Trans. ("Selevan Depo."), 201:3-16; Exhibit R to MPSJ, D.E. # 299-23,

Stephen Hearon Depo. Trans. ("Hearon Depo."), 28:2-29:2

 (3) Ms. Ryan's statements that "Lanard is well known for making 'knock-offs' of other

existing successful brands" is not based on any reliable facts or data, but rather on unspecified

alleged industry "reports" and the alleged filing of lawsuits against Lanard.  Exhibit A, Ryan

Report, § 4.B.  Moreover, these statements are irrelevant to any issue in this case, including the

specific toys at issue.  These statements are inflammatory claims that are unduly prejudicial to

Lanard, with no corresponding probative value.

 (4) Ms. Ryan's claim that "Ja-Ru does not have . . . the reputation . . . as a knock-off

artist in the toy industry" despite her express statement that "she has never heard of Ja-Ru" and

that she "know[s] nothing about Ja-Ru" is neither credible nor logical—how can she opine on the

reputation of Ja-Ru, who she has never heard of and knows nothing about?  *Id.* at § 4.B; Exhibit

B, Ryan Depo., 82:16-18.  Ms. Ryan has no qualifications or experience to opine on the

reputation of *anyone*, nor is such opinion as to *Lanard* germane to any issue in this case.

 In sum, Ms. Ryan's "expert" report and testimony have all of the trappings of the

unsupported opinions of a hired gun with an inexplicable bias against Lanard, whom Ms. Ryan

simultaneously impugns yet also solicits participation in recruitment and employment for her

very own students at the toy design school where she teaches.

 This Court should exercise its gatekeeping function and exclude Ms. Ryan's report and

testimony as speculation propped up by irrelevant experience in the toy industry masquerading

as expert evidence.  Lanard agrees with this purported expert that Defendants "should never [have] hire[d her] for this."  Ryan Depo. *supra,* 92:17-18.

### STATEMENT OF RELEVANT FACTS

**A.    Ms. Ryan's Background and Experience**

On June 9, 2017, Defendants disclosed Ms. Ryan's report, which proffers opinions about "custom and practice in the toy industry" although her experience appears to be exclusively in design, and the parties' respective pencil chalk holder toys at issue in this case. Exhibit A, Ryan Report.  Ms. Ryan's report also purports to rebut the report of Lanard's designated toy industry expert, Larry B. Myer, who has spent more than three decades of his professional career in toy sales and marketing with a focus on the Asian toy market and imports.  Sybert Decl., Exhibit C, Expert Report of Larry Myer ("Myer Report"), §§ A, C, Curriculum Vitae.

Ms. Ryan's report includes a copy of her curriculum vitae, which reveals that her toy industry experience is limited to practicing and teaching toy design, not any direct experience in sales or marketing.  Ryan Curriculum Vitae, attached as Exhibit 1 to Ryan Report.  Indeed, at deposition, Ms. Ryan confirmed that her professional experience was limited to: (1) design and product development at the various companies where she worked; and (2) teaching toy design at Otis College of Art and Design, where she is currently a school administrator.  *Id.*; Ryan Report, § 1.

**B.    Ms. Ryan's Report and Its Faulty Conclusions Lacking Any Reliable Support**

In her report, Ms. Ryan offers opinions that Ja-Ru's conduct in designing its pencil chalk holder was "consistent with toy industry custom and practice[,]" even though she knows nothing about those, and that Ja-Ru's toy is not a knockoff of Lanard's Chalk Pencil.

*Id.* at § 4.A. However, nowhere in her report does Ms. Ryan define precisely what that "toy industry custom and practice" is, nor *how* Ja-Ru—whom at one point she admits she does not know—allegedly complies.

Ms. Ryan further states in her report that "Ja-Ru modeled its design after a mechanical pencil that is unrelated to Lanard." *Id.* But the undisputed evidence in this case directly contradicts this statement. Ja-Ru *admits* that it used Lanard's Chalk Pencil as a "reference sample" to copy for Ja-Ru's knockoff version. Exhibit Q to Lanard's MPSJ, D.E. # 299-22, Bates No. LA 7-8; Exhibit O to MPSJ, D.E. # 299-20, Selevan Depo., 201:3-16; Exhibit R to MPSJ, D.E. # 299-23, Hearon Depo., 28:2-29:2. Instead, Ja-Ru's defense is that it was entitled to do so, mounting a variety of hypertechnical attacks on the validity of Lanard's registered intellectual property protection for the real Chalk Pencil.

Indeed, despite admitting that she had never even heard of Ja-Ru or knew anything about it before being hired as its expert in this case, Ms. Ryan concludes that "Ja-Ru does not have . . . the reputation . . . as a knock-off artist in the toy industry." Exhibit A, Ryan Report, § 4.B; Exhibit B, Ryan Depo., 82:16-18. *How does she know*?

Ms. Ryan also opines on consumer perceptions of the parties' respective pencil chalk holder toys, despite having no background or expertise in marketing or consumer research, including the pricing of the toys, and the appeal of the storage space in Lanard's Chalk Pencil and the products' packaging to consumers. Exhibit A, Ryan Report, §4.A. She further states that the "Ja-Ru product, while using the idea of a pencil shaped chalk holder, is a completely different product from Lanard's, serves a different purpose, and targets different end-users at a different price point." *Id.* However, nowhere in her report does Ms. Ryan explain the basis for her conclusions that the parties' respective products serve different purposes (which she

does not specify), or target different users (whom she does not identify), nor does she explain the basis for her suppositions about consumer perceptions and price point preferences, including those of the hypothetical and unidentified relevant purchaser who she assumes would buy the pencil chalk holders at issue. *Id.* at §§ 4.A, 4.B. Nor, of course, does she set forth at any point her qualifications that would entitle her to make such assertions in the first place.

At deposition, Ms. Ryan fared no better, citing unidentified "market research" as support for her conclusions on consumer perceptions about the specific toys in this case. However, that research was not attached to her report, nor was it specifically cited or quoted so that the information could be verified. Exhibit B, Ryan Depo., 67:16-68:4; 71:1-11 (discussing example of hypothetical mother theoretically (not actually) examining Ja-Ru's pencil chalk holder packaging). There is no indication or evidence that any of Ms. Ryan's cited market research applies to the specific toys at issue in this case. Nor does Ms. Ryan possess any direct experience in sales and marketing of toys to support her conclusions about consumer perceptions and pricing preferences about pencil chalk holder toys in this case.

Ms. Ryan further offers her opinions that Lanard is purportedly "well-known" for making "knock-offs of other existing successful brands" based solely on a Google search result set consisting of a hodgepodge of unauthenticated and unverified information from the internet, including online merchant listings by unknown persons on eBay and Etsy, and a website maintained by an unidentified GI Joe toy collector. Ryan Report, Composite Exhibit 3. Indeed, the only other basis for Ms. Ryan's conclusory aspersions against Lanard is the "lawsuits" filed against Lanard as to other toy products not at all relevant to this case. *See* Exhibit B, Ryan Depo., 83:11-84:84:3. When pressed for the basis of her opinion that

Lanard is itself a "knockoff company," all Ms. Ryan could cite were "acquaintance[s]" and

industry "reports" suggesting that Lanard had been sued. *Id.*  However, such reports were

neither sufficiently identified nor actually attached to her report, and Ms. Ryan herself

capitulated, conceding that the fact of being sued does not prove anything because "anybody

can file a lawsuit." *Id.* at 84:2-3.  These opinions are prime examples of the kind of

unsubstantiated and hearsay "evidence" that has no place in our Courts.

Moreover, despite her lack of sales and retail experience, Ms. Ryan opines that:

> [A]s with all retailers, DolGen and TRU are known to be tough on toy manufacturers
> on price issues and will pressure manufacturers to get the best price possible.
> Because there are so many different manufacturers competing for their business, it is
> the manufacturers who act to undercut each other, not the major retailers . . . all major
> retailers attempt to avoid intellectual property disputes . . .

Exhibit B, Ryan Report, § 4.B.  Ms. Ryan neither provides any basis nor possesses and

relevant experience to support any of these statements as to manufacturer or retailer behavior

or attitudes.[1]

## ARGUMENT

### A.    Relevant Standard for Admissibility of Expert Testimony

Expert testimony is subject to special scrutiny by the trial court because it "can be both

powerful and misleading" to jurors. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 595

(1993); Simard and Young, "*Daubert's* Gatekeeper: The Role of the District Judge in Admitting

Expert Testimony," 68 Tulane L. Rev. 1457, 1462 (1994) ("If courts 'simply toss [expert

testimony] off to the jury under a "let it all in philosophy,"' unreliable expert testimony may

'assume a posture of mystic infallibility in the eyes of a jury of laymen.'").

---

[1] Which statements, by the way, are also false.  The "big box" retailers in the toy industry like TRU and Dollar
General simply hide behind their vendor agreements and try to foist all liability for intellectual property violations
on their suppliers.  This is the reason they are content to accept cheaper knockoffs of proprietary product, even
product they themselves have carried. That is precisely what occurred in this case, so that the retailers are complicit.

Federal Rule of Evidence 702 codifies *Daubert* and provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 imposes a "gatekeeping" responsibility on federal courts, requiring them to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. This gatekeeping responsibility applies not only to "scientific" knowledge, but also to "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael, etc., et al.*, 526 U.S. 137, 141 (1999). "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 1994).

When evaluating whether to exclude an expert, the Eleventh Circuit requires a trial court to undertake a "rigorous three-part inquiry" that includes consideration of the following three factors: (1) whether the expert is *qualified* to testify competently regarding the matters she intends to address; (2) whether the opinions which the expert proposes to offer are premised on a *reliable and viable foundation*; and (3) whether the proposed testimony would *assist the trier of fact* through the application of the expert's experience to understand the evidence or to determine a fact in issue. *Id.*

Here, Defendants cannot meet their burden of establishing that Ms. Ryan is qualified to opine on issues discussed in her report, particularly as to sales and pricing practices, consumer perceptions and purchase valuations, and manufacturer or retailer behavior as to sales in the toy industry. Moreover, even if Ms. Ryan were qualified to offer expert opinions, neither her report nor testimony is based on any reliable facts or information, let alone any facts or information that

are verifiable or demonstrably applicable to the specific toys at issue in this case. Thus, Ms. Ryan's proffered expert opinions are unhelpful to this Court and the jury as to the issues and claims in this case, which warrants the exclusion of her reports and testimony at trial.

### B.     Ms. Ryan is Unqualified to Provide Expert Testimony in this Case

"When a party offers expert testimony and the opposing party raises a *Daubert* challenge, the trial court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, (1999)). "The observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *United States v. Masferrer*, 367 F.Supp.2d 1365, 1372 (S.D.Fla. 2005) (citing *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004)). "While an expert's overwhelming qualifications may bear on reliability of his proffered testimony, they are by no means a guarantor of reliability . . . Our caselaw plainly establishes that one may be considered an expert but still offer unreliable testimony." *Masferrer*, 367 F.Supp.2d at 1372 (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341-42 (11th Cir. 2003). "The trial court's gatekeeping function requires more than simply taking the expert's word for it." *Masferrer*, *supra,* 367 F.Supp.3d at 1372 (citing *Daubert*, 43 F.3d at 1316 (the gatekeeping role requires a district court to make a reliability inquiry; the expert's bald assurance of validity is not enough)).

"'[I]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient

basis for the opinion, and how that experience is reliably applied to the facts.'"  *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (citing Committee Note to the 2000 Amendments of Fed. R. Evid. 702) (emphasis in original); *see also Daubert*, 43 F.3d at 1316.  "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Frazier*, *supra,* 387 F.3d at 1261.  "That 'a witness qualifies as an expert with respect to certain matters or areas of knowledge, [does not mean] that he or she is qualified to express expert opinions as to other fields.'"  *Levin v. Dalva Bros.*, 459 F.3d 68, 78-79 (1st Cir. 2006) (internal citations omitted) (alterations in original) (affirming exclusion of an expert due to lack of qualifications— namely, insufficient experience with a specific sub-specialty of furniture appraisal for pieces from a specific era; proposed expert's "general experience" was insufficient to qualify him to testify as to a more specific area).  *Id.*  "[A] district court acts properly by excluding opinions that are beyond the witness's expertise." *Id.* (citing *Weinstein's Evidence*, § 702.04[6] (2006)).

Here, Ms. Ryan is not qualified to opine on sales and pricing practices, consumer perceptions and purchase valuations, and manufacturer or retailer behavior as to sales in the toy industry, much less the specific pencil chalk holder toys at issue in this case.  Ms. Ryan's education and experience in the toy industry are limited to toy design.  Ryan Report, § 1 ("My background encompasses more than 30 years as a toy and product *designer* . . . and more recently, as an educator in the area of toy *design*.") (emphasis added); Exhibit 1, Curriculum Vitae.  Her resume and deposition testimony reveal no training, education, or experience in toy sales, manufacturing, or distribution, or any dealings with retailers, including the Defendants in this case.  *Id.*; Ryan Depo., Exhibit B to Sybert Decl., 18:12-17, 19:5-14, 22:3-5, 22:20-23:3, 23:9-17.  Even her experience in design is limited to academia and employment with the industry

giants Mattel and Disney, insulated from the competitive cut and parry of the general toy

business and market.

     Notwithstanding this lack of qualifications, Ms. Ryan offers unsupported opinions about

consumer perceptions of the parties' respective pencil chalk holder toys, including the storage

space in Lanard's Chalk Pencil and the products' price points.  Ryan Report, §4.A.  She states:

> The many design differences . . . show that Ja-Ru was targeting a different market than
> Lanard.  Also, the retail price of the Lanard product at $5.00 for a plastic, pencil shaped
> chalk holder with minimal storage for additional chalk is not a good value, particularly
> when the market is so competitive with so many other choices.  The Ja-Ru product is a
> much better value at $2.00 for chalk toy [sic] for kids.  The addition of the feature of
> increased storage in the Lanard product does not justify the price increase . . .

*Id.*  Again, how does *she* know?  Ms. Ryan provides no explanation of how her qualifications

and experience allow her to make or lead her to these conclusions, let alone "why that experience

is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"

*Frazier*, 387 F.3d at 1261.  Ms. Ryan does not identify the consumers whose preferences she

speculates about, nor does she identify the other market "choices" for oversized pencil-shaped

chalk holder toys.  Nor does Ms. Ryan possess any direct experience in the sales of toys to

support her conclusions about consumer perceptions and pricing preferences about the pencil

chalk holder toys in this case.  In other words, Ms. Ryan's opinions about hypothetical consumer

choices and valuations of the specific toys at issue in this case are arbitrary and pulled out of thin

air.  *See also* Exhibit B, Ryan Depo., 67:16-68:4 (citing unidentified "market research" that was

not produced or attached to her report); 71:1-11 (discussing example of hypothetical mother

examining Ja-Ru's pencil chalk holder packaging).

     Similarly, Ms. Ryan is unqualified to opine about retailers' exertion of pressure on

manufacturers to keep prices low, and manufacturers' alleged "undercutting" of each other.

Neither her education nor experience shows any actual knowledge or expertise in toy sales or

manufacturing, including dealing and selling toys to retailers.  Her education and experience are

limited to toy design.  Ryan Report, Exhibit 1, Curriculum Vitae.  Indeed, she admitted at

deposition that her initial opinions were limited to comparing the parties' respective pencil chalk

holder toys by "their design and function," but that she was then "told" by Defendants' counsel

that "being an expert witness in legal cases like this, that [she was] . . . supposed to address the

Complaint and also Mr. Meyer's allegations" in his report.  Sybert Decl., Exhibit B, Ryan Depo.

78:18-25.

Thus, Ms. Ryan's opinions outside of the issue of the design of the pencil chalk holders at

issue in this case are not only outside of her expertise and qualifications, but she has admitted

that she made these opinions only because she was directed to do so by counsel.

Counsel's direction to Ms. Ryan to deliver certain opinions and conclusions is itself an

independent basis to exclude Ms. Ryan's report and testimony.  *See Magistrini v. One Hour

Martinizing Dry Cleaning*, 180 F.Supp.2d 584, 608 (D.N.J. 2002) (excluding expert testimony as

"result-oriented 'judgment'" and created "without a reliable method[.]"); *see also, DataQuill Ltd.

v. Handspring, Inc.*, No. 01 C 4635, 2003 U.S.Dist.LEXIS 2981, *11 (N.D.Ill. 2003) ("We doubt

the value to the trier of the fact of a hired expert's opinion when the party hiring [her] has put

words in [her] mouth.").

### C.    Ms. Ryan's Report and Testimony Are Not Based on Any Reliable Facts or Information

It is "a basic foundation for admissibility that 'proposed [expert] testimony must be

supported by appropriate validation *i.e.* good grounds, based on what is known.'"  *Masferrer*,

367 F.Supp.2d at 1372 (citing *Frazier*, 387 F.3d at 1261; *Daubert*, 509 U.S. at 590). Fed. R.

Evid. 702 assigns the trial court with the "task of ensuring that an expert's testimony . . . rests on

a reliable foundation."  *Masferrer*, 367 F.Supp.2d at 1372.  To be admissible, expert opinions

must be based on sufficient facts or data. Thus, an expert's testimony is inadmissible if based on suppositions rather than facts. *See*, *e.g.*, *Hathaway v. Bazany*, 507 F.3d 312, 318-19 (5th Cir. 2007) (proffered expert testimony properly excluded because it relied on insufficient factual support and "a host of unsupported conjectures that falls far short of a methodology"); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) ("expert's conclusions regarding causation must have a basis in established fact and cannot be premised on mere suppositions"). An expert witness's conclusion must not represent an unfounded extrapolation from the underlying data, and must not be based on speculative methodologies not rooted in real factual conditions. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (court not required to admit opinion that "is connected to existing data only by the *ipse dixit* of the expert"). Further, an expert's analysis must be excluded where it is based on a false assumption. *See*, *e.g.*, *Ferguson v. Bombardier Services Corp.*, 244 Fed. Appx. 944, 949 (11th Cir. 2007) (finding that the district court properly excluded expert's testimony predicated on a false assumption that was belied by the evidence). Ms. Ryan's testimony here fails these basic tests.

       1.    <u>Ms. Ryan's Unsupported Opinions About Ja-Ru's Conduct and Reputation</u>

Here, Ms. Ryan provides no reliable factual basis or other validation for her opinions. Specifically, Ms. Ryan concludes that Ja-Ru's conduct in designing its pencil chalk holder was "consistent with toy industry custom and practice[,]" and that Ja-Ru's toy is not a knockoff of Lanard's Chalk Pencil. Ryan Report, § 4.A. However, Ms. Ryan does not define precisely what that "toy industry custom and practice" is or *how* Ja-Ru allegedly complies. Ms. Ryan further states in her report that "Ja-Ru modeled its design after a mechanical pencil that is unrelated to Lanard." *Id.* The undisputed evidence in this case—that Ja-Ru admittedly used Lanard's Chalk Pencil as a "reference sample" is "designing" Ja-Ru's knockoff version—directly contradicts Ms.

Ryan's conclusion.  Exhibit Q to Lanard's MPSJ, D.E. # 299-22, Bates No. LA 7-8; Exhibit O to

MPSJ, D.E. # 299-20, Selevan Depo., 201:3-16; Exhibit R to MPSJ, D.E. # 299-23, Hearon

Depo., 28:2-29:2.

Ms. Ryan also offers several conclusory opinions about Ja-Ru's reputation in the

industry, despite admitting that she had never even heard of Ja-Ru or knew anything about it

before being hired as its expert in this case.  Exhibit A, Ryan Report, § 4.B; Exhibit B, Ryan

Depo., 82:16-18.  When pressed at deposition about the basis for her conclusion that "Ja-Ru does

not have . . . the reputation . . . as a knock-off artist in the toy industry[,]" Ms. Ryan testified:

"They're [i.e., Lanard is] accusing this company [Ja-Ru] that I am not familiar with – it's never

come across on my radar that they're a knockoff company.· They may be, may not be.· That's

not for me to determine . . ." *Id.* at 83:6-10.  Yet, she conclusively makes these very

determinations in her report.

        2.    <u>Ms. Ryan's Unsupported Opinions About Consumer Perceptions and
Preferences</u>

As discussed above, Ms. Ryan's unreliable opinions and testimony continue with her

conclusions about consumer perceptions and preferences as to Lanard's Chalk Pencil and Ja-

Ru's product, including the appeal of the storage space in Lanard's Chalk Pencil and the

products' respective packaging to consumers.  Exhibit A, Ryan Report, §4.A.  She opines that

the "Ja-Ru product, while using the idea of a pencil shaped chalk holder, is a completely

different product from Lanard's, serves a different purpose, and targets different end-users at a

different price point." *Id.*  However, Ms. Ryan does not explain the basis for her conclusions

that the parties' respective products serve different purposes or targets different users, nor does

she explain the basis for her suppositions about consumer perceptions and price point

preferences. *Id.* at §§ 4.A, 4.B.

### 3.    Ms. Ryan's Unsupported Opinions About Pricing

Further, Ms. Ryan concludes that "the retail price of the Lanard product at $5.00 for a plastic, pencil shaped chalk holder with minimal storage for additional chalk is not a good value, particularly when the market is so competitive with so many other choices." *Id.* at § 4.A. However, Ms. Ryan does not provide the basis for her opinion that the $5.00 price point is "not a good value"—she fails to identify the other competing chalk holder toy choices, how they compete with Lanard's specific pencil shaped chalk holder, or their prices. Ms. Ryan goes on to conclude, without any basis, that the Ja-Ru product "is a much better value at $2.00," without regard to the quality of the Ja-Ru toy or any analysis of the market values of comparable chalk holders. *Id.* Indeed, the only market reference cited by Ms. Ryan for her value comparison is Lanard's Chalk Pencil—the very toy that Ja-Ru knocked off—which necessarily means that Ja-Ru's version must be cheaper since it is an imitation of Lanard's original. *Id.*

Ms. Ryan may or may not be right – we believe she is wrong – but she is no more qualified to proffer these opinions than any consumer or shopper off the street. Indeed, unless she is a regular shopper of toys for children (as opposed to her design classes), she may well be *less* qualified.

### 4.    Ms. Ryan's Unsupported Opinions About the Chalk Pencil's Ergonomic Compatibility that Contradict the Product's Actual Market Performance

Ms. Ryan proceeds to conclude in her report that the Lanard Chalk Pencil "fails as a toy chalk holder / drawing pencil because it is ergonomically too large for the size of a child's hand and too expensive as a pencil-shaped, novelty chalk storage container . . ." *Id.* As with her other conclusions, Ms. Ryan provides no basis for this statement, which actually contradicts the market success of Lanard's Chalk Pencil, REDACTED

-15-

REDACTED                                    Decl. of Angel Lee in Support of Lanard's MPSJ

("Lee Decl."), D.E. # 299-2, ¶¶ 15-16; Ex. J to Lee Decl., D.E. # 299-15, at Bates No.

LNRD000740.  Moreover, her conclusions about the ergonomic suitability of Lanard's Chalk

Pencil are not based on any actual examination of the toy's use by real children but rather

whether Ms. Ryan found it easy to use the Chalk Pencil.  Sybert Decl., Exhibit B, Ryan Depo.,

51:18-52:8.  Nor does she possess any particular qualifications in ergonomics, child psychology,

or any other pertinent field of study.  *She was a toy designer, and now she is an academic.*

   5.   <u>Ms. Ryan Cites Unidentified "Market Research" That She Failed to Produce in Support of Her Report</u>

At deposition, Ms. Ryan confirmed the lack of any validating or verifiable factual basis

for her conclusions.  She cited unidentified "market research" as support for her conclusions on

consumer perceptions about the specific toys in this case.  However, that research was not

attached to her report, nor was it specifically cited or quoted so that the information could be

verified.  Exhibit B, Ryan Depo., 67:16-68:4; 71:1-11.  Moreoever, there is no indication or

evidence that any of Ms. Ryan's cited market research applies to the specific chalk holder toys at

issue in this case.  In sum, Ms. Ryan simply wants the Court to take her word for it that her

expert opinions are accurate and sound.  This is not the test, and the law requires far more

credible support for expert testimony.

   6.   <u>Ms. Ryan's Unsupported Characterizations of Lanard and Its Reputation</u>

Ms. Ryan concludes that Lanard is purportedly "well-known" for making "knock-offs of

other existing successful brands" based solely on a Google search result set consisting of

unauthenticated and unverified internet search results, including online merchant listings by

unknown persons on eBay and Etsy, and a website maintained by an unidentified GI Joe toy

collector.  Ryan Report, Composite Exhibit 3.  None of this information can be verified, nor is

any of it reliable data.  There is no information about the creators of the cited internet content or the basis of the content itself.

The only other basis for Ms. Ryan's conclusory aspersions against Lanard is the "lawsuits" filed against Lanard as to other toy products not at all relevant to this case.  *See* Exhibit B, Ryan Depo., 83:11-84:84:3.  Ms. Ryan conceded that the toys at issue in those suits are not those at issue in this case—which is "this chalk holder versus another chalk holder"—and that in any event, Ms. Ryan had no factual evidence to support her "opinion" that Lanard had knocked off other companies' toys.  *Id.* at 88:11-14, 20-24 (Q: "But again, this is you -- this is you with your opinion.·  There's no factual evidence to support the fact that these [toys in other unrelated lawsuits] are knockoffs?"; A: "Well, I think that's up to the lawyers to bring that forward.").

Moreover, the source of Ms. Ryan's knowledge of these other lawsuits in which Lanard is allegedly involved were unidentified "acquaintance[s]" and industry "reports" suggesting that Lanard had been sued.  *Id.* at 83:11-84:84:3.  None of the reports were attached or produced as part of Ms. Ryan's expert report in this case.  In any event, Ms. Ryan herself conceded the uselessness of the underlying information for her conclusions about Lanard, conceding that the fact of being sued does not prove anything because "anybody can file a lawsuit."  *Id.* at 84:2-3.

> **D.    Ms. Ryan's Report and Testimony Are Therefore Unhelpful to the Trier of Fact, and Serve Only to Confuse or Mislead the Jury**

Expert testimony is admissible where it will "assist the trier of fact."  *Frazier*, 387 F.3d 1262.  "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."  *Id*. (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985).  "Proffered expert testimony generally will not help the trier of fact when it

offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*,
387 F.3d at 1262-63.

Additionally, "[b]ecause of the powerful and potentially misleading effect of expert
evidence[,] . . . expert opinions that otherwise meet the admissibility requirements may still be
excluded by applying Rule 403.  Exclusion under Rule 403 is appropriate if the probative value
of otherwise admissible evidence is substantially outweighed by its potential to confuse or
mislead the jury . . ." *Frazier*, 387 F.3d at 1262-63 (citing *Hull v. Merck & Co., Inc.*, 758 F.2d
1474, 1477 (11th Cir. 1985) (*per curiam*) (admission of speculative and "potentially confusing
testimony is at odds with the purposes of expert testimony as envisioned in Fed. R. Evid. 702")).

Here, Ms. Ryan's proffered opinions about the propriety of Ja-Ru's conduct (which is
ultimately a question of fact and law for this Court and the jury), and consumer preferences
about the parties' respective products, including their packaging and pricing, consumer
judgments about the value of the products, are not helpful to the jury because none of her
opinions "concern matters that are beyond the understanding of the average lay person."
*Frazier*, 387 F.3d 1262; *Tillman v. C.R. Bard, Inc*., 96 F. Supp. 3d 1307, 1325-26 (M.D. Fla.
2015) (citing *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)) (excluding expert
opinions as legal conclusions that "invade the province of the court to determine the applicable
law and to instruct the jury as to that law").

Here, none of Ms. Ryan's opinions are scientific or technical.  Her opinions about
consumer perceptions and marketplace conditions are all matters with which this Court, and no
doubt the jurors, all of whom are consumers, will be familiar or can understand.  Ms. Ryan's
opinions add no value.  In fact, her opinions have the effect of potentially misleading or
confusing the jury about the true issues in this case, particularly as to Ms. Ryan's unsupported

opinions about Lanard's alleged (and unproven) knocking off of other toy products that have nothing to do with the toys at issue in this case. Lanard is the plaintiff in this case; it is not being accused of infringement, so any opinions that suggest that Lanard has copied third party companies' toys have no bearing on any issue in this case. Thus, even if Ms. Ryan's report and testimony could pass muster under *Daubert* and Rule 702 (it cannot), her opinions should nevertheless be excluded because their probative value is far outweighed by their potential to confuse the jury, particularly given the inflammatory nature of Ms. Ryan's accusations against Lanard.

## <u>CONCLUSION</u>

Ms. Ryan's report and testimony fail to offer reliable, helpful expertise to this Court and the jury. Based on her education and experience that focuses specifically on toy design, she is not qualified to opine on matters related to sales, pricing, consumer preferences at the point of sale, or manufacturer and retailer behaviors on sales and pricing. Moreover, her opinions lack any reliable and substantiating data or information that can be independently verified. Finally, her opinions are unhelpful to this Court or any trier of fact in any event, as no expert testimony is necessary for the Court or jury to understand the consumer issues presented in this case that concerns Defendants' unauthorized copying and sales of Lanard's Chalk Pencil toy. As such, and based on the foregoing reasons outlined above, her report and testimony must be excluded under the strictures of *Daubert* and Fed. R. 702, which are intended to filter out precisely the type of speculative and irrelevant opinions offered by Ms. Ryan.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), I hereby certify that the undersigned has conferred with Defendants' counsel in a good faith effort to resolve the issues presented in the instant Motion and that Defendants' counsel has advised the undersigned that Defendants object to the relief requested herein.

Respectfully submitted this 31st day of July, 2017.

*s/ Eric R. Thompson*
Eric R. Thompson
Florida Bar No. 888931
GORDON & REES
  SCULLY MANSUKHANI
Southeast Financial Center
200 S. Biscayne Blvd., Suite 4300
Miami, FL 33131
Telephone: (305) 428-5300
Facsimile: (877) 644-6209
ethompson@gordonrees.com

Richard P. Sybert
**Admitted *Pro Hac Vice***
GORDON & REES
  SCULLY MANSUKHANI
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124
rsybert@gordonrees.com
***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 31, 2017, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, and that a true and correct copy of the

foregoing was served by electronic notice on all counsel or parties of record on the Service List

below.

<u>*s/ Eric R. Thompson*</u>
Eric R. Thompson
Florida Bar No. 888931

<u>Service List</u>
Fred Page
Holland & Knight
50 North Laura Street
Suite 3900
Jacksonville, Florida 32202

Lewis Anten
Ivy Choderker
Lewis Anten, P.C.
16830 Ventura Boulevard, Suite 236
Encino, California 91436
***Counsel for Defendants***