## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LANARD TOYS LIMITED,

    Plaintiff,

v.                                    Case No. 3:15-cv-00849-MMH-PDB

TOYS "R" US–DELAWARE, INC.,
DOLGENCORP, LLC, and JA-RU, INC.,

    Defendants.

_____/

### DEFENDANTS' *DAUBERT* MOTION TO DISQUALIFY
### ROBERT JOHN ANDERS AND PRECLUDE TESTIMONY

Defendants, pursuant to Federal Rules of Evidence 702 and 703, bring this motion to disqualify Robert John Anders, the design expert offered by Plaintiff, Lanard Toys Limited ("Lanard"), and preclude his testimony at trial in whole or in part. In support of this Motion, Defendants submit the following.

### INTRODUCTION

This Court is well aware of the background of this design patent, copyright, trade dress and unfair competition case over a toy chalk holder. As designs go, this is a simple design that was intended to mimic the image of a standard No. 2 pencil. The design thus includes the basic elements that any product that mimics the image of a No. 2 pencil would possess, including an eraser, ferrule, six sided hexagonal body and a tapered tip.[1]

---

[1] July 12, 2017 deposition of Robert John Anders ("Anders Depo.") at 66:8-67:24. Pursuant to the Court's direction, Mr. Anders' deposition will be filed in its entirety following the mediation of this matter (to the extent necessary).

1

Robert John Anders is Plaintiff's design expert who was retained to rebut the testimony of Defendants' design expert, Ronald Kemnitzer.[2] While Mr. Anders admitted in his deposition that he had never designed a toy in his life, Defendants acknowledge that his background in industrial design suffices for him to qualify as a designer of ordinary skill in the art for the simple design at issue in this case,[3] and acknowledge that he has the requisite expertise to testify on the technical aspects of the designs in question.

While Mr. Anders may thus qualify as an expert in industrial design, his opinions are objectionable as he often applied the wrong legal standards to reach his conclusions, many of his opinions suffered from the same fundamental flaw, and his Report often invades the province of the Court on legal issues in the case. Specifically:

1. Mr. Anders' design patent "infringement" opinions are based on the wrong legal standards, rendering them neither reliable nor helpful.

2. Mr. Anders' patent validity opinions on prior art comparisons are unreliable as based on the function of the '167 design.

3. Mr. Anders' opinions and testimony based on patent searches is unreliable and should be excluded.

4. Mr. Anders admitted he was not a copyright expert and did not perform the analysis required for a legitimate infringement opinion.

5. Mr. Anders' Report and testimony is replete with legal argument that is not the proper subject for expert testimony in this matter.

---

[2] Mr. Anders' Report is Exhibit B to his deposition and will be cited to hereinafter as the "Report" followed by the relevant page and paragraph numbers.

[3] Both Mr. Kemnitzer and Mr. Anders agree that a designer of ordinary skill in the art would be someone with a degree in industrial design and at least 1 year of industrial design experience. Anders Report at 14:61; Kemnitzer Report at ¶14.

2

## ARGUMENT

The admissibility of expert testimony is governed by Rules 702, 703 and 704, Federal Rules of Evidence, and *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993). The proponent of expert testimony bears the burden of proving by a preponderance of the evidence that (1) an expert is sufficiently qualified for any proffered testimony, (2) the expert's methods were sufficiently reliable, and (3) the expert's testimony will assist the trier of fact to determine a fact at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hendrix v. Evenflo Company*, 609 F.3d 1183, 1194 (11th Cir. 2010). Lanard cannot meet its burden for Mr. Anders in this case.

### I. MR. ANDERS' INFRINGEMENT OPINIONS ARE BASED ON THE WRONG LEGAL STANDARDS

Mr. Anders' infringement opinions at paragraphs 121 – 136 of his Report are based on the wrong legal standards, resulting in Mr. Anders disregarding Figures showing views of the '167 patent that are not substantially similar to the same views of Ja-Ru's chalk holder. Mr. Anders testified in deposition that differences in Figures 4 and 5 of the '167 patent and Ja-Ru's chalk holder did not matter because an ordinary observer would not and could not do a detailed comparison at the point of sale. (Anders Depo. at 184:16 -185:18) This testimony is directly contrary to the Federal Circuit opinion in *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1379 (Fed. Cir. 2002) (abrogated on other grounds, *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc)), which reversed a summary judgment in favor of the plaintiff in a design patent case because the district court disregarded views of the bottom of a tray not visible at the point of sale.

The views Mr. Anders discounted are shown in Figures 4 and 5 of the '167 patent and were set forth in Mr. Anders' Report at page 50:



    Fig. 4 '167 Patent        Ja-Ru        Fig. 6 Prior Art

Figure 4 of the '167 patent shows an eraser surrounded by 6 small visible points.  No points are visible on the Ja-Ru design, which matches the prior art plain circle.  Mr. Anders said an ordinary observer would never notice the points in Figure 4 of the patent and disregarded the differences.  Anders Depo. at 152:22-155:12; 172:10-174:2.  Given that the "points" in Fig. 4 of the '167 patent are the only distinguishing feature of the "top" view of the '167 design when compared to the prior art, it is presumed that an ordinary observer would notice and concentrate on those features and note the complete absence of them in Ja-Ru's design.  Mr. Anders' view that no one would notice this level of detail discounted the effect of the prior art and is inconsistent his own Report's discussion of ordinary observers and prior art.  (Report at 9:55.3-55.5)



    Fig. 5 '167 Patent[4]        Ja-Ru        Fig. 3 Prior Art

---

[4]  Figures 4 and 5 of the '167 create a conundrum.  Figure 4 shows points of the sides extending beyond

4

Figure 5 of the '167 patent shows the ferrule and eraser extending beyond every point of the hexagonal side, resulting in a circular image, and suggesting at least from this view that the sides of the body fit completely within an overhanging ridge of a ferrule or eraser structure as with the cited prior art design (*see, e.g.,* Fig. 3 Prior Art above and Report at Exhibit F-10). Ja-Ru's design, on the other hand, in this view appears as a simple hexagonal shape showing no ferrule or eraser. Mr. Anders disregarded the difference in geometric shapes this view exhibits (a circle is not a hexagon), by claiming an ordinary observer would not see this view at the time of purchase and by claiming that the difference was due to the camera angle. Both excuses are without merit.

Mr. Anders' decision to ignore Figure 5 because it would not be seen at the time of purchase is directly contrary to his own Report:

> 55.8. I understand that in viewing a design patent, all of the views of the claimed design must be considered, and if just one of the views is not substantially the same as the product, the product does not infringe, nor is it covered by the patent.
>
> \* \* \* \*
>
> 114. Additionally, I understand that one must examine all of the Figures of the patent, and compare the accused product to each one.

[Report at 10:55.8, 37:114].

Mr. Anders cited *Contessa Food Products* as support for each of the above paragraphs, which is directly contrary to his testimony on Figure 5.

---

the eraser and ferrule. Figure 5 shows all sides and all points inside of the surrounding circular elements. Given that this is Lanard's patent, any error in drafting falls on them. What is clear is the Ja-Ru's product does not match these Figures.

Mr. Anders' argument on orthogonal views, if correct, would mean that views do not have to meet the ordinary observer test if the views change at an "infinite distance" versus the normal distance viewed by users. Mr. Anders cited no authority for this caveat on the ordinary observer test, instead relying on his *ipse dixit*. Report at 46-47, Table 4.

Expert testimony may be admitted only if "the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 591–93. The goal is to ensure that the expert has "employ[ed] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152 (1999).

An expert's testimony is unreliable where "the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005). Expert testimony based on an "incomplete" or "selective" review of the factual evidence is the product of contrivance and thus inherently unreliable. *See United States v. City of Miami*, 115 F.3d 870, 873 (11th Cir. 1997); *see also In re Denture Cream Prods. Liab. Litig.*, No. 09-2051-MD-ALTONAGA, 2015 U.S. Dist. LEXIS 9653, at *90 (S.D. Fla. Jan. 28, 2015).

Courts have rejected the testimony of experts who "cherry-pick" evidence to arrive at a preordained conclusion. *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (excluding expert who "accepted some of the testimony and data that suited his theory and ignored other portions of it that did not… [S]uch selective use of facts fails to satisfy the scientific method and *Daubert*") (brackets omitted); *see also LeClercq v. Lockformer Co.*, No. 00 C 7164, 2005 U.S. Dist. LEXIS 7602, at *15 (N.D. Ill. Apr. 28, 2005) (same); *Holden Metal & Aluminum Works v. Wismarq Corp.*, No. 00 C 0191, 2003 U.S. Dist. LEXIS 5247, at *6 (N.D. Ill. Apr. 2, 2003) (same); *De Jager Constr. Co. v. Schleninger*, 938 F. Supp. 446, 448-49

6

(W.D. Mich. 1996) (barring expert who attempted to "weave a story" by "select[ing] those portions of the available material which supports his client's position" and "deliberately ignor[ing] other portions that do not support his client's claim").

Mr. Anders may not disregard views and Figures that do not support his opinions. His efforts to limit the effect of Figures 4 and 5 on the infringement analysis undermine his reliability and methodology, rendering his opinion on infringement unhelpful to a trier of fact.

Defendants further assert that the ultimate issue of infringement is not a proper subject for expert testimony in this matter.[5]  Lanard's other expert, Parker Bagley, made this same point in his Report in this action.  Bagley Report at 2:2, 4:10.

## II. MR. ANDERS' OPINIONS ON PRIOR ART COMPARISONS ARE UNRELIABLE AS BASED ON THE FUNCTION OF THE '167 DESIGN

In critiquing Mr. Kemnitzer's report and comparing the '167 design to cited prior art, Mr. Anders repeatedly relied on the "function" of the '167 design as support for his opinions. *See, e.g.*, Report at 76, 81.2, 82, 153, 154, and 155.  Design patents protect ornamental designs, not functions.  35 U.S.C. §171; *Elmer v. Icc Fabricating, Inc.*, 67 F.3d 1571 (Fed. Cir. 1995) ("A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent.").  The '167 patent thus only covers the nonfunctional aspects of the design shown in the drawings.

While the shape and appearance of the '167 design are set forth in the drawings of the patent, neither the size nor use of the design is shown.  The fact that the title of the patent is "CHALK HOLDER" or the fact that "chalk holder" appears in the preamble or written

---

[5] Defendants offered to Lanard to remove all "ultimate issue" opinions on infringement and validity from the expert reports.  Lanard declined this offer.

description of what is claimed does not create a limitation on the design separate from the drawings. *Reddy v. Lowes Companies, Inc.*, 60 F.Supp.3d 249, 256 (D. Md. 2014). *See In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). Mr. Anders at times admitted that nothing in the patent requires the design to hold chalk and that the "Title" of the patent as a chalk holder did not create a limitation (Anders Depo. at 219:10-25), but still repeatedly uses the function of the design – what it was "intended" to hold – as a distinguishing factor when analyzing prior art.

For example, in his Report, when arguing in rebuttal to Mr. Kemnitzer, Mr. Anders stated the following on the Giant Pencil: "I do not believe there would have been any incentive for a designer skilled in the art to create a toy chalk holder from a 44" giant pencil, since a chalk holder is a completely different design problem from a pencil, no matter what the size is." (Report at 150:149) This sentiment would be common in a utility analysis setting, but has no place in an analysis of ornamental designs. Mr. Anders then analyzed this issue and testified that the fact that no one else had designed a chalk holder to look like a No. 2 pencil "substantiated the validity of the patent." (Anders Depo. at 222:22-225:3) Mr. Anders also reversed his earlier position on the effect of the Title of the '167 Patent and admitted he used the Title of "chalk holder" and the fact no one had previously designed a chalk holder to look like a pencil for his opinion that the patent was valid. (Anders Depo. at 225:4-22) Mr. Anders also made clear that the use of a No. 2 pencil "motif" in a new way supported the validity of the '167 Patent (to him). (Anders Depo. at 225:23-227:11)

All of Mr. Anders' opinions that rely on the "use" of the patented design – regardless of whether based on the title or other references to "chalk holder" – are improper, not reliable and not

helpful. They would serve only to confuse the issues for the jury. This is a design patent case, not a utility one.

Another reason why Mr. Anders' opinions on validity issues should not be permitted is the fact he has "no idea" if the '167 design would have been patentable if intended for a "pen" rather than a chalk holder. (Anders Depo. at 47:5-14) This is a significant concession. He thus opines "valid" when the '167 patent is used as a chalk holder, and "I don't know" if the exact same design is used a pen. This shows a lack of reliability of his opinions. Opinions that evolve from "I don't know" to "valid" as the use of the same design progresses from pen to chalk holder are based on the use of the design as a chalk holder rather than on the ornamental design features themselves. This is not consistent with design patent principles.

Design patents do not protect the use or function of a design. "The adaptation of old devises or forms to new purposes, however, convenient, useful, or beautiful they may be in their new role, is not invention." *Smith v. Whitman Saddle Co.,* 148 U.S. 674, 679 (1893); *Cahoone Barnet Mfg. Co. v. Rubber & Celluloid Harness Co. (C.C.)*, 45 Fed. 582-585 (1891) ("And so it is forbidden for one to choose an existing design, simply to devote it to a new use, and, because of such new use, successfully to claim the benefits of the patent laws."). If an expert does not have a sufficient basis to opine if a design could be properly patented when intended for a writing pen, then the expert also does not have a sufficient basis to opine if the design was properly patented when intended for a chalk holder.

As such, Mr. Anders patent validity opinions should be excluded. All of his opinions suffer from the fundamental problem of using the intended function of the design of the '167 patent to distinguish the '167 patent from the prior art.

9

### III. MR. ANDERS' OPINIONS BASED ON PATENT SEARCHES SHOULD BE EXCLUDED

Mr. Anders' Report used search results in several different ways. First, he argued for the validity of the '167 patent based on the fact that other design patents have been issued for writing instruments shaped like known objects and for toys shaped like every-day items. (Report at 22:82-24:83) Mr. Anders admitted he was provided with a list of patents from counsel and did not know the search parameters used. (Anders Depo. at 41:3-42:13) He also did nothing to determine whether such designs were patentable for any other uses, nor did he look into whether the intended use of the design played a role in the patenting process. (Anders Depo. at 42:20-47:2) He also admitted that he had no way of determining if the use as toy made any difference on the patentability of the designs because he did not examine the items and patents. (Anders Depo. at 46:11-20) This is not a reliable or scientific methodology.

For starters, without knowing if the specific designs in question were patentable for their "ordinary" use, the inference Mr. Anders is trying to draw from these few other design patents being issued is nether reliable nor helpful. The issue in this case is also not controlled by what the Patent Office may have done on other applications.

There are thus several possible interpretations of the proffered evidence, but Mr. Anders did not consider or explore alternatives to his conclusion or do anything to eliminate alternative explanations for the handpicked data provided to him. An expert's failure to consider alternative explanations renders his opinions fundamentally unreliable. *See* Fed. R. Evid. 702 advisory committee note (2000 amends.) (in determining reliability of expert testimony, trier of fact should consider "[w]hether the expert has adequately accounted for obvious alternative explanations"); *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-28DAB, 2011 U.S. Dist.

LEXIS 58127, at *19 (M.D. Fla. May 31, 2011); *McCorvey v. Baxter Healthcare Corp.*, No. 99-1250-CIV, 2010 U.S. Dist. LEXIS 103298, at *10, 19-21 (S.D. Fla. Sep. 30, 2010).[6]

Mr. Anders next used "Google" search results for chalk holders to argue that because he could not find a chalk holder that looks like a No. 2 pencil, the '167 was valid. (Report at 56:155, Exhibit D.) Mr. Anders' using "Google" to perform a simple single search and his limiting of the search to just "chalk holders" instead of the broader "writing instruments," or "pencil shaped" renders his analysis misleading and incomplete. This was not a reliable or reasonable methodology. The design in this case mimics a No. 2 pencil design and is intended for use as a chalk holder. There are many products available for sale that mimic the appearance of No. 2 pencils, all of which Mr. Anders excluded by the way the search was performed. Thus, both Mr. Anders' methodology and opinions were improperly shaped by his using (again) the intended function of the patented design, rather than limiting himself to the ornamental design elements as shown and claimed in the Figures of the '167 patent.

For these reasons, Mr. Anders' opinions using search results should be excluded.

## IV. MR. ANDERS' OPINIONS ON COPYRIGHT INFRINGEMENT SHOULD BE EXCLUDED

Mr. Anders opinions on copyright issues, Report paragraphs 137 to 140 and 160, should be excluded as Mr. Anders is not a copyright expert and did an insufficient analysis on the copyright issues in this case. Mr. Anders freely admitted he was not an expert on copyright law and or copyright principles (Report at 11:56; Anders Depo at 194:25-195:16), and then

---

[6] *See also In re Denture Cream Prods. Liab. Litig.,* No. 09-2051-MD-ALTONAGA, 2015 U.S. Dist. LEXIS 9653, at *89-90 (S.D. Fla. Jan. 28, 2015) (failure to consider obvious alternative explanations weighs against admissibility of expert's testimony); *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 596 (N.D. Fla. 2009) (expert should identify and eliminate alternative causes in reaching his conclusion).

exhibited that in his deposition by not knowing what "deposit materials" are for a copyright registration (186:8-188:15), not knowing how the deposit materials related to the commercial product of Lanard or whether the commercial design was even protected (189:10-190:5), not knowing if Lanard's design was a "useful article" under copyright law (195:17-20), and opining that functional elements could be protected by copyrights. (195:21-196:22). Under these circumstances, Mr. Anders' copyright infringement opinions are not reliable, especially when he himself qualified his opinion of infringement as being "[a]s far as I could tell, … from my limited experience." (Anders Depo. at 200:3-4).

In deposition, Mr. Anders was also unable to identify any protectable expression of Lanard in its design other than what he termed the "overall appearance," but he then admitted he did not know which elements were protected and which were not, or even which elements, if any, were in the public domain. (Anders Depo. at 200:5-204:25). This was contrary to his own report that acknowledged "[c]opying of unprotectable elements does not infringe a copyright" and claimed that he examined "related works in the public domain" and "determined the copyrighted works originality." (Report 12:56.8, 52:138) This testimony should also be compared with his earlier testimony on the fact that the Lanard design mimicked a public domain image and contained common elements of that image, as would any other product that mimicked that same image. (Anders Depo. at 66:8-67:24) A reliable methodology for an expert in this matter required Mr. Anders to at least identify the protectable and unprotectable elements of the Lanard design. Yet, Mr. Anders did nothing to separate the protected and unprotected elements. Instead, he simply looked at the "overall sculptural form"

12

and came to his opinion without performing any other analysis. (Anders Depo. 206:8-207:10)[7] He thus did not even exclude functional elements from his copyright analysis, including elements that were dictated by cost and use considerations. This was an error. *See, e.g., Lego A/S v. Best-Lock Constr. Toys, Inc.* 874 F.Supp.2d 75, 99-102 (D.Conn. 2012) (disregarding functional elements and comparing similarities of Lego's specifically identified protected elements of its toys to the defendant's toys to determine if evidence supported finding of infringement).

Mr. Anders opinions on copyright issues should thus be excluded as he did not apply the correct legal standards; his opinion was replete with errors; he did not identify what was protectable; he did not consider the effect of public domain imagery, and he did not factor out elements and features dictated by functional considerations. This is exactly the type of opinion *Daubert* and its progeny do not permit. *See United States v. City of Miami*, 115 F.3d 870, 873 (11th Cir. 1997) ("Relevant expert testimony is admissible only if an expert knows of facts which enable him to express a *reasonably accurate conclusion*.") (emphasis added).

It is Lanard's burden in this case to prove "copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). This means that Lanard must prove copying of its protectable, original elements. *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543-44 (11th Cir.1996) (even where copying is admitted, there is infringement only if "there is 'substantial similarity' between the allegedly offending program and the protectable, original elements of the copyrighted work"); *Taylor Corp. v. Four*

---

[7] This testimony by Mr. Anders does call into question the accuracy of paragraph 138 of the Report "In my examination of the copyrighted work as well as related works in the public domain, I determined the copyrighted works originality."

13

*Seasons Greetings, LLC*, 315 F.3d 1039, 1042-43 (8th Cir. 2003) ("similarity between plaintiff's and defendant's works that are limited to hackneyed elements cannot furnish the basis for a finding of substantial similarity"). The "overall appearance" of a product that looks like a No. 2 pencil is just that – a No. 2 pencil – and would necessarily include more than just Lanard's protected expression (if any existed). Mr. Anders' opinions are thus inconsistent with longstanding copyright principles (and his own Report). *Mattel, Inc. v. Goldberger Doll Manu. Co.,* 365 F.3d 133, 136 (2d Cir. 2004). As such, Mr. Anders copyright opinions should be excluded.

### V. MR. ANDERS' LEGAL OPINIONS SHOULD ALSO BE EXCLUDED AND STRICKEN

As a final issue, Mr. Anders' Report is chalk full of legal cites and his understanding of the controlling patent and copyright laws. If the Report were to be admitted or shown to a jury, those legal statements would invade the province of the Court and could lead to significant confusion if inconsistent with the ultimate instructions in the case. Such matters may not be placed in front of a jury through a design expert. Defendants accordingly request the Court strike all legal principles, citations and opinions from Mr. Anders' Report and exclude any of his opinions expressing legal principles.

### CONCLUSION

For the reasons set forth above, Defendants respectfully submit that Mr. Anders should be disqualified as an expert in this matter. His opinions on patent infringement, patent validity and copyright infringement were fundamentally flawed and should be excluded.

| Dated this 31st day of July, 2017 | **LEWIS ANTEN, P.C.**<br>Lewis Anten, Esq.<br>Lewisanten@aol.com<br>Ivy Mara Choderker, Esq.<br>ivychods@aol.com<br>16830 Ventura Boulevard, Suite 236<br>Encino, CA 91436<br>*Admitted Pro Hac Vice*<br><br>and<br><br>**HOLLAND & KNIGHT LLP**<br>s/ Frederick D. Page<br>Frederick D. Page, FBN 968587<br>50 North Laura Street, Suite 3900<br>Jacksonville, Florida 32202<br>(904) 353-2000<br>(904) 358-1872 (fax)<br>fred.page@hklaw.com |
|---|---|

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will serve as an electronic notice of filing to the following counsel of record:

Service List

| | |
|---|---|
| Richard P. Sybert<br>rsybert@gordonrees.com<br>Holly Heffner<br>hheffner@gordonrees.com<br>GORDON & REES LLP<br>101 West Broadway, Suite 2000<br>San Diego, California 92101<br>Counsel for Plaintiff Lanard Toys Limited<br><br><br>Robin Taylor Symons<br>rsymons@gordonrees.com<br>Eric R. Thompson<br>ethompson@gordonrees.com<br>GORDON & REES LLP<br>Southeast Financial Center | Reid E. Dammann<br>rdammann@grsm.com<br>Karen Curtis<br>kcurtis@grsm.com<br>GORDON & REES LLP<br>633 West Fifth Street, Suite 5200<br>Los Angeles, California 90071<br>Counsel for Plaintiff Lanard Toys Limited |

| | |
|---|---|
| 200 S. Biscayne Boulevard, Suite 4300<br>Miami, FL  33131<br>Counsel for Plaintiff Lanard Toys Limited | |

s/ Frederick D. Page
Attorney
