**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LANARD TOYS LIMITED,

      Plaintiff,

v.                              Case No. 3:15-cv-00849-MMH-PDB

TOYS "R" US–DELAWARE, INC.,
DOLGENCORP, LLC, and JA-RU, INC.,

      Defendants.

_____/

**DEFENDANTS TOYS "R" US-DELAWARE, INC., DOLGENCORP, LLC AND JA-RU, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF LANARD TOYS LIMITED'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.        INTRODUCTION

Plaintiff Lanard Toys Limited's ("Plaintiff" or "Lanard") motion for partial summary judgment ("MPSJ") seeks a judgment that: Plaintiff's copyright is valid and infringed; its alleged trade dress is valid and infringed; its patent is infringed and Defendants Toys "R" Us-Delaware, Inc. ("TRU"), Dolgencorp, LLC ("Dolgencorp"), and Ja-Ru, Inc. ("Ja-Ru") (collectively, "Defendants") engaged in unfair competition.  Although the introduction of the MPSJ states Plaintiff seeks summary judgment on the validity of its patent, Plaintiff does not address the validity of the patent in its motion. With respect to its patent, Plaintiff's motion only addresses summary judgment on infringement of the patent.  Since the cross-motions deal with many of the same legal issues, Defendants will not repeat all of the arguments that are presented in their motion for summary judgment ("MSJ"), but will instead respond to Plaintiff's motion as though it was in part opposition to Defendants' motion and a reply.

Plaintiff's MPSJ is based on the flawed premise that Plaintiff is entitled to a monopoly on all pencil shaped chalk holders because it was the first to take the design of a standard No. 2 pencil and apply it to a chalk holder.  However, a copyright covers only the design features of the copyrighted work, not the concept.  Similarly, a design patent covers only non-functional ornamental aspects of the design not the intended use for the design. That is the province of utility patents.  The Plaintiff does not consider the most pertinent prior art, *i.e.* Pencil Craft's 16-inch Giant Pencil (the "Giant Pencil"), and the Dixon Oriole, Ticonderoga, and Sensematic pencils (the "Dixon Pencils") in its infringement analysis and applies the wrong legal standard in its MPSJ as to infringement of its copyright and patent. There is no infringement when the proper law is applied.

Plaintiff's trade dress and unfair competition claims, which Plaintiff concedes are duplicative, fail on the grounds that Plaintiff cannot establish that its design elements are non-functional and also because they cannot demonstrate secondary meaning in the Lanard Chalk Holder.  Plaintiff's unfair competition claim is also preempted by Copyright law.

## II.        DISPUTED MATERIAL FACTS.

Plaintiff relies on numerous "facts" in support of its MPSJ.  However, almost all of the "facts" are really facts in dispute or irrelevant to Plaintiff's MPSJ. The following material facts are either in dispute, not supported by the evidence or otherwise are irrelevant or not admissible.

1.  **Plaintiff's Brief p. 4, ¶ 3:**   In describing its development of the pencil shaped chalk holder in suit, Plaintiff states, "*This was the result of Lanard's investing considerable time, money, and effort in the  toy's design and development, which Lanard named the "Chalk Pencil", as shown. Id*.; Ex. B."

    a.   <u>Defendants' Position</u>: Lacks foundation.   No evidence has been submitted in Plaintiff's MPSJ or produced in discovery substantiating this fact.[1]

2.  **Plaintiff's Brief, p. 5 ¶ 2:** Plaintiff states "*Before the Chalk Pencil's patent issued, Lanard stamped, "Patent Pending into the plastic of the Chalk Pencil starting in late 2011.  Id.* at ¶ 14."

---

[1] Deposition of Logan Williams ("Williams Depo.") at 43:20-44:1. Pursuant to the Court's Order (D.E. #308), full deposition transcripts will be filed by the parties for any used in support of the parties' motions for summary judgment, with each filed only once, by August 17, 2017.

    a. <u>Defendants' Position</u>: Lacks foundation.  This fact is not supported by the evidence submitted in Plaintiff's MPSJ or any documents produced.  Plaintiff failed to produce any evidence as to when any marking occurred.[2]

3. **Plaintiff's Brief, p. 7 ¶ 1,** Plaintiff states **"***Following the USPTO's issuance of the '167 Patent, Lanard stamped the full patent  number into the plastic on all models of the Chalk Pencil. Hesterberg Decl., ¶ 17.***"**

    a. <u>Defendants' Position</u>: Lacks foundation. Best Evidence Rule.  This fact is not supported by the evidence submitted in Plaintiff's MPSJ or produced in discovery.  Plaintiff failed to produce any evidence as to when any marking of the patent number occurred.

4. **Plaintiff's Brief p. 7, ¶ 2:** Plaintiff states "*Starting in 2011, pursuant to a distributor agreement, Lanard sold the Chalk  Pencil to Dolgencorp, who continued to purchase the Chalk Pencil through the 2011, 2012, and  2013 selling seasons, and sold it under its "CONCRETE CANVAS" label. Hesterberg Decl., ¶  18; Exs. J, L.*

    a. <u>Defendants' Position</u>: Lacks foundation. Calls for a legal conclusion.  Best evidence rule.   This fact is not supported by the evidence submitted in Plaintiff's MPSJ.  Dolgencorp was merely a customer of Plaintiff.  No distribution agreement is identified by Plaintiff or attached to its MPSJ.

5. **Plaintiff's Brief p. 7, ¶ 2:** Plaintiff states, "*Likewise, a patent notice that stated either "Patent Pending" or a patent's number was marked on all Chalk Pencils sold to Dolgencorp. Id.  at ¶ 19.*"

---

[2] Declaration of Ivy Choderker, ("Choderker Decl."), ¶ 2, Exh. A, Plaintiff's Response to Amended Request for Production No. 40.

a. <u>Defendants' Position:</u> Lacks foundation. Best evidence. This fact is not supported by the evidence submitted in Plaintiff's MPSJ or in discovery.  Plaintiff failed to produce any evidence as to when any marking occurred.

6. **Plaintiff's Brief p. 7, ¶ 3,** Plaintiff states, "*Under a distributorship agreement, Lanard supplied the Chalk  Pencil to TRU on a private label basis starting with the 2012 selling season. Hesterberg Decl., ¶20.*"

a. <u>Defendants' Position:</u> Lacks foundation. Calls for a legal conclusion.  Best evidence rule.  This fact is not supported by the evidence submitted in Plaintiff's MPSJ.  TRU was merely a customer of Plaintiff.  No distribution agreement is identified by Plaintiff or attached to its MPSJ.

7. **Plaintiff's Brief p. 7, ¶ 3,** Plaintiff states, "*A copyright notice, "© 2010 LANARD," and a patent notice that stated either "Patent Pending" or the Patent's number was marked on all  Chalk Pencils supplied to TRU. Id. at ¶ 21."*

a. <u>Defendants' Position:</u>  Lacks foundation. Best Evidence Rule.  This fact is not supported by the evidence submitted in Plaintiff's MPSJ or produced in discovery. Plaintiff failed to produce any evidence as to when any marking of the copyright or patent occurred.[3]

8. **Plaintiff's Brief p. 7, ¶ 4,** Plaintiff states "*Lanard's Chalk Pencil was a success in the market, and showed every prospect of  becoming an "evergreen" product with "legs" to be sold on retail toy shelves year after year.*"

_____

3 Choderker Decl. ¶ 2, Exh. A, Plaintiff's Responses to Amended Request for Production No. 24 and 40.

a.   <u>Defendants' Position:</u> Hearsay; speculation.   Lacks foundation. Calls for a legal conclusion. This fact is not supported by the evidence submitted in Plaintiff's MPSJ.



9.   **Plaintiff's Brief p. 7, ¶ 4,** Plaintiff states, "

*Decl. of Angel Lee ("Lee Decl."), ¶ 12; Ex. J at LNRD000720; Ex. L.*

*. Lee Decl., ¶ 10; Ex. J at LNRD000721.*"

a.   <u>Defendants' Position:</u> This fact is not supported by the evidence submitted in Plaintiff's MPSJ or any documents produced in discovery.   As shown on LNRD0000720,

.[5]   That Lanard sold Dolgencorp products other than the Lanard Chalk Holder is irrelevant to both Plaintiff's MPSJ and this lawsuit.

10.   **Plaintiff's Brief p. 8, ¶ 2,** Plaintiff states, "

.

*Lee Decl., ¶ 13; Ex. J at LNRD000719, LNRD000722; Ex. M  at T000025-26.*"

---

4 Deposition of Colleen Cosgrove ("Cosgrove Depo.") at 22:1-23:14; 49:16-51:5; 53:24-54:11; 65:4-66:15; 69:1-70:19; 78:2-23); Deposition of Marc Dubner ("Dubner Depo.") at 18:7-17; 82:13-85:17; 87:21-89:14; 90:4-92:23; Deposition of Kenneth Marshall ("Marshall Depo.") at 108:11-110:11; 139:3-23; Exh. 4; 139:24-141:10.

5 Declaration of Lewis Anten ("Anten Decl."),  ¶ 2, Exh. A, LNRD0000720.

a.  Defendants' Position: This fact is not supported by the evidence cited in Plaintiff's MPSJ or any documents produced in discovery.  As shown on LNRD0000719, ██████ ████████████████████████████████████████████████████████.[6]  That Lanard sold TRU products other than the Lanard Chalk Holder is irrelevant to both Plaintiff's MPSJ and this lawsuit.

11.  **Plaintiff's Brief p. 8, ¶ 2,** Plaintiff states, "*The Chalk Pencil was a success with other major United States retailers,  including Walgreen Co., Kmart Corporation, and Wal-Mart Stores, Inc., who purchased  substantial amounts of product from Lanard. Lee Decl., ¶ 14, Ex. J at LNRD000723.*"

a.  Defendants' Position: Lacks foundation.  Speculation.  Calls for a legal conclusion.

12.  **Plaintiff's Brief p. 8, ¶ 2** Plaintiff states, "██████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████. *Id. at ¶¶ 15-16, Ex. J at LNRD000740.*"

a.  Defendants' Position: Relevance. The only possible relevance of Plaintiff's sales are during the time frame prior to when the accused product entered the marketplace in 2013. See Defendants' MSJ at D.E. #302 at 28-30. Additionally, ██████████████ ████████████████████████████████████████████████████████.

---

6 Anten Decl. ¶ 3 Exh. B, LNRD0000719.

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████.[7]

13. **Plaintiff's Brief p. 8 ¶ 3,** Plaintiff states, "*Thereafter, Ja-Ru's single designer, Stephen Hearon, who is a graphic or package designer (that is, Ja-Ru does not even have its own product or industrial designer on staff), used Plaintiff's Chalk Pencil as a "reference" to make Ja-Ru's own copy of the product (the "Ja-Ru Product"), as evidenced by this image that the Ja-Ru staff, including Mr. Hearon, emailed each other during what passed for the "design phase" of the Ja-Ru Product.*"

   a. <u>Defendants' Position:</u> Lacks foundation. This fact is not supported by the evidence submitted in Plaintiff's MPSJ or produced in discovery. Ja-Ru designs hundreds of new products and packaging a year. That it does not have a segregated design department is irrelevant. Legal conclusion. Ja-Ru did not "copy" the Lanard Chalk Holder.[8] The substantial design differences are set forth below and in Defendants' MSJ.

14. **Plaintiff's Brief p.9 ¶ 2,** Plaintiff states, "*Defendants have for all intents and purpose admitted their copying.*"

   a. <u>Defendants' Position.</u> Lacks foundation. This fact is not supported by the evidence submitted in Plaintiff's MPSJ or produced in discovery. Ja-Ru changed every non-functional design feature substantially. Plaintiff, not Defendants, ███████████████

---

7 Anten Decl. ¶ 4 Exh. C, JR000001-2; Anten Decl. ¶ 5, Exh. D, Lanard's Customer Invoice Report; Anten Decl. ¶ 6, Exh E, Amended Response to Ja-Ru's Interrogatory No. 5(c); Choderker Decl. ¶9, Exh H, Dolgencorp's Response to Interrogatory No. 12; Declaration of Kimberly Mayben ("Mayben Decl."), ¶ 8 (D.E. # 302-48).

8 Deposition of Angel Ku ("Ku Deposition") at 77:3-13; Deposition of Russell Selevan "(R. Selevan Depo.") at 25:18-29:23, Exh. LA-1, 79:1-80:24, 94:7-16, 164:19-171:22, 341:5-9; Deposition of Stephen Hearon ("Hearon Depo.") at 25:11-28:2-6, 31:18-33:2, 93:5-19.

████████████████████████████████████████████████████████████

██████████████████████████████.[9]   In contrast, once third-party Ja-Ru (HK) Ltd.

("Ja-Ru HK") learned of the '167 Patent, all manufacture of the accused product was

discontinued.   This required Ja-Ru HK to abandon parts previously made by the

factory.[10]

15.   **Plaintiff's Brief p. 9, ¶ 2** "*Further, Russell Selevan, Ja-Ru's Vice  President, admitted*

*at deposition that he instructed his team to use Lanard's Chalk Pencil and make a*

*version reduced in size:*

> *Q: Okay. What instructions did you give him?*
> *A: Adjusting it to make it look more realistic like a No. 2 pencil,  making it*
> *the size that we wanted for a child to use well.*
> *Q: What adjustments?*
> *A: Size.*
> Russell Selevan Depo, 391:5-
> 10; see Sybert Decl. at ¶ 17,
> Ex. S at JRH0000257-259.

a.   <u>Defendants' Position</u>: Lacks foundation.   Plaintiff mischaracterizes the quoted

testimony and takes it out of context.   The testimony accurately supports Defendants'

position that there was not copying. Ja-Ru designed its pencil chalk holder to have

features that more realistically resembled a mechanical pencil and some that resembled a

standard yellow No. 2 pencil, and to improve on market examples to reduce cost and

---

9 Deposition of James Hesterberg (Hesterberg Depo). at 139:24-142:18; 213:2-214:9, Exh. 182; 217:15-218:7;
Second James Hesterberg Depo. on July 7, 2017 ("Second Hesterberg Depo") at 34:10-37:2.

10 Choderker Decl ¶ 2, Exh. B, JRH000231; R. Selevan Depo. at 121:11-122:14; 383:23-384:8; Deposition of
Marc Selevan ("M. Selevan Depo.") at 36:25-37:9.

better fit a child's hand.[11]

16. **Plaintiff's Brief p. 9, ¶ 3,** Plaintiff states, **"***Furthermore, emails produced in discovery show that on April 26, 2012, Ja-Ru employees and their Hong Kong affiliate, Ja-Ru Hong Kong, Inc., became aware that the Lanard's Chalk Pencil was protected by the '167 Patent, noting that they were told "THIS ITEM HAS PATENTED [sic] IN US MARKET." See Sybert Decl. at ¶ 20, Ex. U.* Ja-Ru staff discussed the implications of the Patent *but nevertheless proceeded with production of the Ja-Ru Product anyway." See id*.

    a. <u>Defendants' Position:</u> Lacks foundation. This statement is false. As Plaintiff admits on page 5 of its MPSJ, Plaintiff's patent issued on November 20, 2012. There was no patent in place as of April 26, 2012, the date of the above referenced email. Plaintiff fails to present the complete email stream that shows Ja-Ru HK did a patent search and there was no patent. Emails showing the true events are attached.[12]

17. **Plaintiff's Brief p. 10, ¶ 3,** Plaintiff states "



. *See Sybert Decl. at ¶ 21, Ex. V at JR00002.*

. *See Depo. Trans. of Tyson Eavenson ("Evaenson Depo."), attached as Ex. W to the Sybert Decl., 11:9-12. The damage to Lanard was far greater, however, as remains to be proven at trial, as the*

---

11 R. Selevan Depo. at 25:18-29:23, Exh. LA-1, 79:1-80:24, 94:7-16, 164:19-171:22, 341:5-9; Hearon Depo. at 25:11-28:2-6, 31:18-33:2, 93:5-19; Deposition of Deborah Ryan ("Ryan Depo.") at 48:9-51:25; 67:3-15; Expert Report of Deborah Ryan ("Ryan Report") at D.E. #313-2 at docket page 4, ¶¶ 2-3, 5 and docket page p.5, ¶ 3.

12 Choderker Decl. ¶4, Exh. C, JRH000024-JRH000025; Choderker Decl. ¶3, Exh. B, JRH000231; Choderker Decl. ¶5, Exh. D, JRH000372-JRH000380; Choderker Decl. ¶ 6, Exh. E, DG000016.

*result of Ja-Ru's actions was the destruction of Lanard's historic sales relationships  with TRU and Dolgencorp generally.*"

a.  <u>Defendants' Position:</u>  Lack foundation. This statement calls for a legal conclusion and is not a fact.  Plaintiff has submitted no evidence to substantiate this position, and admits that its MPSJ does not address damages.  Ja-Ru did not even sell any of the Ja-Ru Chalk Holders to TRU or Dolgencorp.  Lost sales from Dolgencorp were the result of Plaintiff suing its own customer and lost sales from TRU were because Plaintiff did not contact any TRU buyer to set up any sales meetings after Plaintiff sued TRU.  ▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉.[13]

18.  **Plaintiff's Brief p. 10, ¶ 2,** Plaintiff states "*The first model of Lanard's Chalk Pencil, labeled JR000239, shows the notice "US Patent  D671,167" on the back of the packaging. Id. The second model of Lanard's Chalk Pencil,  labeled JR000240, shows the notice "PATENT PENDING" on the front of the packaging in  clear letters, and the notice "(c) 2010 LANARD TOYS LTD." on the back.  Id.*

a.  <u>Defendants' Position:</u> Lacks foundation. These facts are not supported by the evidence submitted in Plaintiff's MPSJ or produced in discovery. Certainly, no patent number was on the Lanard Chalk Holder until after Ja-Ru developed the Ja-Ru Chalk

---

13 Cosgrove Depo. at 22:1-23:14; 49:15-51:5; 53:24-54:11; 65:4-66:15; 69:1-70:19; 78:2-23; Dubner Depo. at 18:7-17:82:13-85:17; 87:21-89:14; 90:4-92:23; Mayben Decl., ¶ 6 (D.E. # 302-48).; Hedberg Decl. ¶2-9 (D.E. #302-49); Expert Report of William Kerr ("Kerr Report"), ¶¶ 28-40, D.E. #316-1 (redacted) and provisionally filed under seal; Reply Expert Report of William Kerr ("Kerr Reply Report") ¶ ¶ 9, 15, 21, D.E. #316-3 (redacted) and provisionally filed under seal.

Holder. In discovery Defendants asked for documents showing when the patent number was actually placed on product shipped into the United States, but no such documents were produced.[14]

19. **Plaintiff's Brief, p. 12, ¶ 1,** Plaintiff states, "*Whether TRU and/or Dolgencorp actually solicited Ja-Ru to knock off Lanard's toy so that it could be acquired for a lower price, or instead simply took advantage of Ja-Ru's offering once it was copied, both TRU and Dolgencorp knowingly and intentionally dealt in what they must have known was infringing product because they had previously bought the proprietary Lanard Chalk Pencil toy for years previously.*"

a. <u>Defendants' Position:</u> Lacks foundation and is speculation. Plaintiff has not submitted any evidence in its MPSJ or produced any documents in discovery that supports this statement. Dolgencorp and TRU had no involvement in the decision to make the Ja-Ru product or the design of the Ja-Ru product.[15] Also, just because TRU and DG bought the Lanard Chalk Holder does not mean they believed it was proprietary.

20. **Plaintiff's Brief p. 12, ¶ 2,** Plaintiff states "*On March 25, 2014, Ja-Ru circulated an email stating that "Dollar General receive [sic] a threat from Lanard on this item [item #3517 Chalk Pencil], we have just found out they have a design patent." Sybert Decl., ¶ 27, Exhibit AB. However, Ja-Ru did not cease production of the Ja-Ru Chalk Pencil at that time, even despite sentiments that Mr. Selevan claims to have had:*

---

14  Choderker Decl. ¶ 2, Exh. A, Lanard's Response to Amended Production Request No. 40.

15 R. Selevan Depo. at 222:14-223:2; Anten Decl. ¶ 4, Exh. C, JR000001-JR000002; Choderker Decl. ¶ 8, Exh. G, TRU's Response to Interrogatory No. 15; Choderker Decl. ¶9, Exh. H, Dolgencorp's Response to Interrogatory No. 15; Choderker Decl. ¶ 10, Exh. I, Ja-Ru's Response to Interrogatory No. 15.

> Q: Did you want to stop the production if you could?
>  A: Yes.
> Q: Okay. It doesn't say that [in email Exhibit 99 to the Selevan Depo, JRH000231], though, does it?
> A: It does not say that there.

Russell Selevan Depo., 358:10-16.

a. Defendants' Position: Lacks foundation. Speculation. This fact is not substantiated by the evidence. In fact, to avoid legal costs associated with a potential lawsuit, the record shows that Ja-Ru HK stopped manufacturing and Ja-Ru stopped purchasing and importing the Ja-Ru Chalk Holder.[16]

## III.        PLAINTIFF'S CLAIMS FOR SUMMARY JUDGMENT.[17]

Defendants are not going to rehash their assertions in their MSJ, but instead incorporate those arguments herein and focus on the new arguments that Plaintiff's MPSJ frames.

### A. Copyright Invalidity and Non-Infringement.

Whether a work contains a sufficient degree of originality to qualify for copyright protection is generally a question of fact in this Circuit. *Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409 (11th Cir. 2015). The Lanard Chalk Holder lacks the requisite level of originality when the elements dictated by function are disregarded. *See* Defendants' MSJ (D.E. #302 at 20-27).[18] Also, while adapting an existing design to a new

---

16 R. Selevan Depo. at 121:11-122:14, 383:23-384:8; M. Selevan Depo. at 36:25-37:9.

17 Summary judgment may only be entered if the court concludes there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see, e.g., Celotext Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

18 For example, the relative "thickness" of sidewalk chalk holders as compared to traditional pencil designs are dictated by its purpose of holding sidewalk chalk which is obviously much thicker than the lead of a standard pencil. *See id.* at 1409-1410 (shape dictated by function is not copyrightable). Lanard's design expert, Robert

medium may require some level of manufacturing skill, it generally does not support a copyright registration. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d at 905 (2d Cir.1980) ("mere reproduction of the Disney characters in plastic, even though the adaptation to this medium undoubtedly involved some degree of manufacturing skill, does not constitute originality.")

Plaintiff's MPSJ is at odds with the testimony of its witnesses.  ██████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████.[19]

Plaintiff's experts were also unable to identify any "protected expression."[20]  They instead relied on the "use" of the design to claim it is original, with one of its experts, Parker Bagley, opining that while Plaintiff's <u>exact design</u> would be copyrightable as a chalk holder, a Christmas tree ornament or even a fishing lure, the <u>exact same design</u> would not be copyrightable as a pencil because "no one could copyright the look of a No. 2 pencil because it's in the public domain."[21]

### 1.     Plaintiff Cannot Meet its Burden on Originality

While 17 U.S.C. section 410(c) creates a presumption of validity of a copyright registration, this presumption is overcome where, as here, an applicant failed both to disclose the derivative nature of its work to the Copyright Office and to identify any original

---

Anders, admitted this noncontroversial fact in deposition. Deposition of Robert John Anders ("Anders Depo.") at 210:23-212:20.

19 Williams Depo. at 39:11-48:19; Deposition of Blake Nichols (Nichols Depo.") at 74:1-76:3; 77:2-25.

20 Deposition of Robert John Anders ("Anders Depo.") at 200:5-204:25.

21 Deposition of Parker H. Bagley ("Bagley Depo.) at 20:1-16; 54:21-55:15.

contributions of its designers.  Such omissions rebut the presumption founded on 17 U.S.C. section 410(c).  See *Service & Training, Inc. v. Data General Corp.*, 963 F.2d 680, 688 (4th Cir. 1992) (the presumption of validity of the copyright can be rebutted by specific evidence that the information contained in the registration is erroneous).  *See also* 17 U.S.C. section 409(9).  Additionally, the presumption is rebutted where, as here, the evidence establishes the design is derived from the public domain.  *Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc*., 785 F.2d 897, 903 (11th Cir. 1986); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 826 (11th Cir. 1982).  "[D]eriving inspiration from [a copyrighted work] . . . does not establish the copying of *original* elements" necessary to establish infringement.  *Mattel, Inc. v. MGA Entm't, Inc. & Consol. Actions*, 782 F.Supp.2d 911, 948 (Cal. D.C. 2011) (holding "evidence that [defendant] copied the unoriginal, exaggerated features found in [plaintiff's] sketches [of fashion dolls] does not establish infringement" of Mattel's Bratz dolls).  Thus, it is Plaintiff's burden to prove the originality of its design.

As discussed below, Plaintiff cannot meet this burden, especially given that both its expert and Ja-Ru's expert, Ronald Kemnitzer, testified that there were no non-trivial differences between Lanard's design and public domain No. 2 pencil designs.[22]  Plaintiff's motion identifies what it contends are the non-trivial differences between its chalk holder design and the public domain generic pencil design on which it was based: (1) a body made of plastic, (2) a colored chalk interior, (3) the use of the term "Chalk Pencil," (4) an oversized

---

22 Anders Depo. at 58:5-59:12; 66:21-67:24; 112:9-113:9; 118:5-124:16; 200:5-204:25; 210:23-212:20; 214:20-219:25; Report of Ronald Kemnitzer ("Kemnitzer Report) at ¶93(c) (D.E. # 302-44).

eraser, (5) a larger size, and (6) different proportions with the Lanard product "fat" and the normal pencil "slim." (Plaintiff's MPSJ, D.E. #299 at 15, 23).  All of these reasons fail under copyright principles.

### a.  A new use for a familiar design is not a factor for originality

Plaintiff's chalk holder at issue has a utilitarian function of holding chalk and is thus a "useful article."  It does not exist just for its appearance as a large pencil.  As a useful article, the use of its design must be separated from any "sculptural work" it encompasses under the "separability test."  *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 2017 U.S. LEXIS 2026 *1010 (March 22, 2017).   When the design and function of Lanard's chalk holder are properly separated, Plaintiff's design must be examined in a vacuum and Mr. Bagley's admission that "no one could copyright the look of a No. 2 pencil" is exactly what Defendants contend in this action.[23] If the design is not copyrightable as a pencil, it is not copyrightable as a chalk holder.  Plaintiff's expert's testimony alone provides a basis to defeat Plaintiff's MPSJ.

### b.  Converting a known design to a plastic toy is not copyrightable

Courts recognize that adapting a known design to a new medium may require physical manufacturing skill, but it does not require creative contribution for copyright purposes.  *Durham Industries*, 630 F.2d at 905; *see L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir. 1976) (holding plastic "Uncle Sam" bank based on public domain imagery lacked originality)); *Past Pluto Productions Corp. v. Dana*, 627 F.Supp. 1435 (S.D.N.Y. 1986) (foam "pop-up" hat of Statue of Liberty lacked originality as a mere adaption of public

---

23 Bagley Depo. at 20:1-16; 54:21-55:15.

domain image to new medium).

### c.        Size and proportions are functional

Plaintiff's argument that the size and proportions of its chalk holder are original and not functional is contrary to their experts' testimony.  Mr. Anders agreed that adapting a pencil design to a chalk holder will require the design to be thicker.[24]   Plaintiff's designer also admitted that the ultimate thickness was the result of using a preexisting piece to hold the chalk (the tapered end piece).[25]  Thickness and size are irrelevant to copyright.  *Home Legend*, 784 F.3d at 1409-1410.[26]

### d.        Interior storage space is functional

Assuming that by "colored chalk interior," Plaintiff is referring to the storage space inside its pencil, this alleged difference is not significant.  First, if Plaintiff is claiming "color" as part of its registration, copyrights do not protect simple colors.  *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1317, n.16 (11th Cir. Fla. 2010). Next, the purpose of Plaintiff's "chalk holder" is to hold and store chalk.  The storage space is a utilitarian feature of the design and is therefore outside of copyright protection.[27]  For the foregoing reasons, Plaintiff's design lacks originality.

### 2.        Ja-Ru did not copy Plaintiff's protectable expression

---

24 Anders Depo. at 210:23-212:20.

25 Williams Depo. at 42:21-45:19; 78:10-78:20.

26 Lanard's comment on size differences when trying to defend its registration is also ironic given the size difference between the Lanard product and the Ja-Ru product, and the critique of its expert that size should not be used to distinguish one design from another.  Anders Depo. at 210:23-211:6; 234:23-235:8.

27 Of course, if size, proportions and large storage space are all the "protected expression" Lanard claims, Ja-Ru's product, which is much smaller, has different proportions, and an interior that will not even hold 2 pieces of chalk

Non-infringement may be determined as a matter of law on a motion for summary judgment" if "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work." *Oravec v. Sunny Isles Luxury Ventures, L.C.,* 527 F.3d 1218 (11th Cir. 2008).  If the Court determines that Plaintiff's copyright is invalid, there is no need to reach the issue of infringement.   Assuming *arguendo* that Plaintiff's copyright is valid, it is extremely "thin" and can protect only slavish copying of its entire design.  *Home Legend*, 784 F.3d at 1414.[28]  As noted above, most of Plaintiff's facts to support its argument that Defendants copied the Lanard Chalk Holder are in fact disputed.  (Disputed Material Fact Nos. 13-16, 18-20.)

Here, there are many differences between Ja-Ru's product design and Plaintiff's product design, rendering it beyond any doubt that Ja-Ru's product is not a slavish or identical copy of Plaintiff's.   These differences include: size; eraser shape; ferrule proportions and decorations; body proportions and tapering; writings and orientation; seam between the body and the tapered piece (Plaintiff only); and tapered end piece shape, proportions and decorative lines.[29] As Mr. Kemnitzer stated, "with all of these differences, it is clear that Ja-Ru's chalk holder design was not copied from Plaintiff's design. Instead, Plaintiff has its way of expressing the idea of a chalk holder shaped like a no. 2 yellow

---

28 While Plaintiff accused Ja-Ru of knocking off its product, Plaintiff is the one who was enjoined for knocking off the Hasbro trademark for G.I. Joe. *See Hasbro Inc. v. Lanard Toys Ltd*., 858 F.2d 70 (2d Cir. 1988.) Plaintiff's attorney in that case is Plaintiff's designated patent expert in this action.  Ja-Ru, on the other hand, has been in the toy business for almost 60 years and has never had a judgment or preliminary injunction granted against it for violation of anybody's IP rights.  Plaintiff also admits that its Mini Chalk Holder is a copy of the Ja-Ru Chalk Holder which it copied to "piss off" Ja-Ru.  If any party acted in bad faith, it was Plaintiff, not Defendants.

29 Kemnitzer Report at 30:91-32:91 ( D.E. # 302-44).

pencil, and Ja-Ru has its own and different way of expressing that same idea."[30]   Plaintiff is trying to claim protection for the idea of a chalk holder that looks like a No. 2 pencil, rather than its expression of that idea.  Such a claim is not permitted under the merger and scenes a faire doctrine. See Defendants' MSJ at 25-27. (D.E. #302).[31]  Accordingly, the Plaintiff's not entitled to judgment that its copyrights are valid and infringed.

### B.  Patent Invalidity and Non-Infringement

#### 1.  The Plaintiff Does Not Seek Summary Judgment that the '167 Patent is Valid

As discussed in detail in Defendants' MSJ, the test for copyright infringement is entirely different than for patent validity or infringement. Plaintiff does not seek summary judgment that its patent is valid, only that it is infringed. Plaintiff does not even address the validity of its patent or even try to distinguish the design of the '167 Patent from the Dixon Pencils or Pencil Craft Giant Pencil.

Moreover, Plaintiff does not reference the standard for infringement, but just says "[c]ourts analyze design patent infringement under the "ordinary observer" test, where "the patented design is viewed in its entirety, as it is claimed."  (Plaintiff's MPSJ at p. 28.)   The ordinary observer test involves a view-by-view comparison of all non-functional/ornamental features of the design patent to the accused design, after eliminating any features found in prior art, to evaluate whether they are substantially similar in appearance. Based on the complete detailed discussion of the application of the ordinary observer test in Defendants'

---

30 *Id.* at 32:92. The only feature that the Lanard designer claimed was original was the decoration of the tapered end piece with lines to emulate wood grain.  Williams Depo. at 39:15-43:15. Ja-Ru's product has no such lines, and was intended to emulate a mechanical pencil with a metal tapered end piece (and is thus silver versus Lanard's wood colored end piece). R. Selevan Depo. at 23:22-24:12; 25:18-29:23; 94:17-96:7.

31 *See also* Ryan Depo. at 46:19-48:15; 67:16-70:2; Ryan Report at D.E. #313-2 at docket page 4, ¶¶2-4.

MSJ at p. 11-16 there is no patent infringement.

### 2. The Doctrine of Equivalents Does Not Bolster Plaintiff's Position

Plaintiff relies on *Litten System v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed Cir. 1984) for the proposition that minor differences between a patented design and an accused article cannot prevent a finding of infringement.  However, Plaintiff fails to disclose that the court in *Litton* cautioned that in "a field crowded with many references relating to the design of the same type of appliance, we must construe the range of equivalents very narrowly." *Id.* That is, "no matter how similar [the] two items look, [there is no infringement unless] the accused device . . . appropriate[s] the novelty in the patented device which distinguishes it from prior art." *Id.*  The Court in *Litton* ultimately found no infringement on the basis that the similarities between the design patent and the alleged infringing product were derived from the prior art. *Id.*  This is exactly the fact in this case.

Similarly, the additional cases cited by Plaintiff in support of the application of the doctrine of equivalents likewise support Defendants' position.  In *Degelman Indust.*, 2011 U.S.Dist.LEXIS 150394 * 42 (W.D.N.Y. 2011), the court found that the doctrine of equivalents did not apply because the accused products did not include features that were substantially similar to novel design features.  In *Sun Hill Indus. Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995), the courts opined that the doctrine of equivalents applies to design patent cases "only when the accused product includes features equivalent to novel claimed design features." *Id.*  In denying the application of the doctrine, the court stated that "a patentee cannot invoke the doctrine to evade scrutiny of the point of novelty . . . which is to focus on those aspects of a design which render the design different from prior art

designs." [32]

### 3. Design Patents do not Protect Function

Plaintiff argues for protection available by a utility patent.  Plaintiff argues that the function of its design as a chalk holder prevents Ja-Ru from making a chalk holder that looks like a generic No. 2 pencil.  This is incorrect.  Plaintiff's patent is classified in writing instruments (D19/35), along with all pencils, mechanical pencils, and chalk holders. [33]  The admission of Plaintiff's expert, Mr. Bagley, that Plaintiff's exact design could not be copyrighted as a pencil because it is in the public domain also undermines Plaintiff's patent and creates, at the very least, a factual issue regarding the relationship of Plaintiff's design to the generic, public domain, prior art No. 2 pencil design and in turn Ja-Ru's own design. [34]

Plaintiff now argues that the written description of the '167 Patent supports its effort to protect the function of its design.  This is not the law.  In *Spencer v. Taco Bell Corp*., 2013 U.S. Dist. LEXIS 142619 * 9 (M.D. Fla 2012), while this Court repeated the often-cited quote "the written description requirement for a design patent is applied against a drawing," the court clarified that:

> (1) "[f]or a design patent, the sole disclosure method is a drawing." (*citing Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1564 (Fed.Cir.1991));
> (2) "a design ... can be described only by illustrations showing what it looks like (though some added description in words may be useful to explain the illustrations)." (*quoting Racing Strollers, Inc. v. TRI Indus., Inc*., 878 F.2d

---

[32] Plaintiff also cites to *Carman Indus. C. Wahl,* 724 F.2d 932, 942 (Fed. Cir. 1983) to support its application of the doctrine of equivalents here.  However, *Carman* involved a utility patent as opposed to a design patent. In that context, the doctrine requires the court to ask whether the accused device "performs substantially the same function in substantially the same way to obtain the same result." *Id.* at 942.  That is not the analysis in the design patent context, where function is irrelevant.

[33] D.E. # 121-2; Choderker Decl. ¶ 12, Exh. J, Patent Office Classification Order 1830.

[34] Bagley Depo. at 20:1-16; 54:21-55:15.

1418, 1420 (Fed.Cir.1989);

(3) "Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings." (quoting *In re Mann*, 861 F.2d 1581, 1582 (Fed.Cir.1988)); and

(4) "A design patent contains no written description; the drawings are the claims to the patented subject matter." (*quoting Hupp v. Siroflex of Am., Inc*., 122 F.3d 1456, 1464 (Fed.Cir.1997)).[35]

Drawings and figures thus control.  Either the design is valid on its ornamental features as shown in the drawings or it is not.  *See Reddy v. Lowes Companies, Inc*., 60 F.Supp.3d 249, 256 (D. Md. 2014) ("any written description that goes beyond the scope of the figures would be unprotected by the patent, and thus ought not be part of the construed claim."). The drawings of the '167 Patent look like a No. 2 pencil.  Adapting a generic pencil design with a few functional alterations to use the design as a toy chalk holder is not invention as Defendants have argued.

### 4.      Plaintiff Continues to Ignore Design Differences and Figures

As set forth in Defendants' MSJ at pages 14-16 and incorporated herein, there are numerous material differences in Ja-Ru's design and the '167 design.  Per Mr. Kemnitzer, there is simply no basis for an ordinary observer, <u>with</u> <u>knowledge</u> <u>of</u> <u>the</u> <u>prior art</u>, to find that Ja-Ru's design is substantially similar to Plaintiff's design in light of all views of the '167 Patent.   (D.E. # 302-44 at Kemnitzer Report at 27:77-28:79.)  Accordingly, Plaintiff's claim of patent infringement must fail.

### C.  Plaintiff's Trade Dress Claim Fails Because The Lanard Chalk Holder Lacks Secondary Meaning

As discussed in great detail in Defendants' MSJ, Plaintiff's trade dress claim fails due

---

35   The second case cited by Plaintiff ,*Industrial Engineering & Development, Inc. v. Static Control Components, Inc*., Case No. 8:12-cv-691-T-24-MAP (M.D. Fla 2014),  appears to be an unpublished utility patent case.

to Plaintiff's inability to prove secondary meaning. Plaintiff's trade dress infringement argument ignores Supreme Court precedent, which makes clear that under trade dress law, a product's design qualifies for protection if, and only if, it has acquired "secondary meaning" by the time the alleged infringing product entered the marketplace.[36] *See Wal-Mart, supra*, 529 U.S. at 211-216; *St. Luke's Cataract & Laser Inst., P.A.*, *supra,* 573 F.3d at 1209.  The sales figures cited by Plaintiff, which is the only evidence it submits to support its "secondary meaning" argument, ███████████████████████████████████████████ ███████████████████████████████.[37] ███████████████████████████████ ███████████████████████████, both of which need to be filtered out before considering if the sales rise to a level that could conceivably be indicative of secondary meaning.  *Id.*

### D.  Plaintiff's Unfair Competition Claim Fails

Plaintiff acknowledges that its unfair competition claim is merely a repackaged trade dress claim.  (*See Plaintiff's MPSJ* at p. 34-35.)  As Defendants argue in substantial detail in their MSJ, Plaintiff's failure to disclose any evidence on secondary meaning is fatal to this claim as well as to its trade dress claim.  Moreover, Plaintiff glosses over the fact that Florida common law also "requires that [plaintiff] establish deceptive or fraudulent conduct . . . and

---

36 *Wal-Mart v. Samara*, 529 U.S. at 202, 211-216 (U.S. 2000); *Miller's Ale House, Inc*., 702 F.3d at 1322; *Perini Corp v. Perini Constr.,* Inc. 915 F.2d 121, 125-26 (4th Circuit 1990); *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1209 (11th Circ. 2009).

37 Anten Decl. ¶ 4, Exh. C, JR000001-2; Anten Decl. ¶ 5, Exh. D, Lanard's Customer Invoice Report; Anten Decl. ¶ 6, Exh E, Amended Response to Ja-Ru's Interrogatory No. 5(c); Choderker Decl. ¶ 9, Exh. H, Dolgencorp's Response to Interrogatory No. 12; Mayben Decl. at ¶ 8 (D.E. #302-48).

likelihood of consumer confusion."[38] Such elements are not present here. There is no evidence of secondary meaning or that any Defendant fraudulently misrepresented the source of any product. There was thus no evidence of a single instance of confusion or deception submitted by Plaintiff in either its discovery or in its MPSJ. As such, the common law claim fails.[39]

Further, as discussed in Defendants' MSJ, both the FDUTPA and common law claim are preempted by the Copyright Act under the "extra element" test. *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1549 (11th Cir.1996). That Defendants were aware of the Lanard Chalk Holder does not alter the nature of Lanard's unfair competition claim, and therefore is insufficient to save it from preemption. *See e.g. Foley*, 249 F.3d at 1285.

### E. The Doctrine of Licensee Estoppel Does Not Apply

Defendants' reliance on the doctrine of licensee estoppel is improper given that TRU and Dolgencorp are Plaintiff's customers, not licensees, and also because their alleged infringement occurred following the termination of their relationship with Plaintiff.  Licensee estoppel is an equitable doctrine.  *John C. Flood of Va. Inc. v. John C. Flood Inc.*, 642 F.3d 1105, 110 (D.C. Cir. 2011).  In an attempt to reach a balance between the public interest in challenging invalid trademarks and the private interest in enforcing contracts, many circuit courts, including the Eleventh Circuit recognize "the rule . . .  that a former licensee is not forever banned from challenging a holder's valid ownership."  *Pandora Jewelers 1995 v. Pandora Jewelry, LLC*, 2011 WL 2174012 * 20 (S.D. Fla. 2011). As long as the purported

---

38 *See Donald Frederick Evans and Assoc. v. Continental Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986), *questioned on other grounds* in *Brewer-Giorgio v. Bergman*, 45 U.S.P.Q.2d (BNA) 1915.

39 *M.G.B. Homes v. Ameron Homes*, 903 F.2d 1486, 1493-1494 (11th Cir. 1990) *superseded other grounds Global Tech LED, LLC v. HiLUmz Int'l Corp.*, 2017 U.S. Dist. Lexis 20512 (M.D. Fla 2017).

infringing activity arose out of facts following the expiration of the licensee relationship, the doctrine of licensee estoppel is barred. *Id.* Moreover, even where the alleged infringement occurred during the term of the license, the Eleventh Circuit will still only employ the doctrine if warranted by "the particular circumstances of the case and the terms of the license." *Pandora Jewelers 1995 v. Pandora Jewelry, LLC*, 2011 WL 2174012 * 20 (licensee estoppel did not apply to a former licensee who used plaintiff's trademark in google adwords because the purported infringing activity occurred after the expiration of the license agreement, and the license limited use of plaintiff's trademark to advertise goods "for the purpose of re-selling its line of Pandora Jewelry Products on a retail basis.")

Plaintiff does not even produce the purported license agreements with TRU or Dolgencorp, or pointing to any language within its agreements with TRU or Dolgencorp. The only pertinent facts that have been established are: (1) TRU purchased the Lanard Chalk Holder in 2011 and 2012, and Dolgencorp purchased the Lanard Chalk Holder from 2010 to 2012; (2) that both TRU and Dolgencorp did not begin selling the Ja-Ru Chalk Holder until years later.[40] Under Plaintiff's theory, any party who ever bought the Lanard Chalk Holder should be barred from challenging the validity of Plaintiff's trade dress. This is not the law.

Accordingly, as dictated by *Pandora*, the doctrine of licensee estoppel cannot apply here since TRU and Dolgencorp's purported infringing acts, *i.e.* their sale of the Ja-Ru Chalk Holder, arose out of facts following the expiration of the vendor agreement. 2011 WL

---

40 Anten Decl. ¶ 2, 3, Exhs. A and B, LNRD0000719-720; Anten Decl. ¶ 4, Exh. C, JR000001-2; Anten Decl. ¶ 5, Exh. D, Lanard's Customer Invoice Report; Anten Decl. ¶ 6, Exh. E, Amended Response to Ja-Ru's Interrogatory No. 5(c); Choderker Decl. ¶ 9, Exh. H, Dolgencorp's Response to Interrogatory No. 12; Mayben Decl. at ¶ 8 (D.E. #302-48).

2174012 * 20.

The cases Plaintiff cites in support of licensee estoppel are distinguishable. First, none of the cases Plaintiff cites are from this jurisdiction. Rather, Plaintiff relies exclusively on cases from other circuits on an issue in which the circuit courts disagree, and ignores the binding precedent in this jurisdiction. Notably, *Creative Gifts Inc. v. UFO*, 235 D.3d 540, 548 (10th Cir. 2000) is distinguishable because unlike the Eleventh Circuit, the Tenth Circuit places no temporal limitations on the application of the doctrine of licensee estoppel. Both *John C. Flood of Va. Inc. v. John C. Flood Inc.* and *Prof'l Golfers Ass'n v. Bankers Life & Cas. Co.*, are also factually distinguishable. The defendant in *John C. Flood of Va. Inc. v. John C. Flood Inc.*, had been using the plaintiff's exclusive mark for 20 years, and had tried to purchase the trademark in a bankruptcy trustee sale, which the court found was tantamount to an admission of the mark's validity. 42 F.3d 1105, 1106 (D.C. Cir. 2011). Similarly, in *Prof'l Golfers Ass'n v. Bankers Life & Cas. Co.*, the defendant had used the PGA trademark for the name of a country club for over 10 years, and refused to remove the name once the license agreement that gave him permission to use it expired. 515 F.2d 665, 667 (5th Cir. 1975). Given the length of the agreement and that the alleged infringing conduct, *i.e.* the defendant's use of the name PGA, arose out of activity that occurred during the ten-year license agreement, the court applied the doctrine of licensee estoppel. Plaintiff has not and cannot meet its burden of proving the doctrine of licensee estoppel applies here.

IV.     **CONCLUSION**

Based on the foregoing reasons and authorities, Defendants respectfully request that the Court deny Plaintiff's MPSJ.

**LEWIS ANTEN, P.C.**
s/Lewis Anten_____
Lewis Anten, Esq.
Lewisanten@aol.com
Ivy Mara Choderker, Esq.
ivychods@aol.com
16830 Ventura Blvd., Suite 236
Encino, CA 91436
*Admitted Pro Hac Vice*

**HOLLAND & KNIGHT, LLP**
Frederick D. Page, FBN 96858750
North Laura Street, Suite 3900
Jacksonville, FL 32202(904)353-2000
(904)358-1872(fax)
fred.page@hklaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of August, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve an electronic notice of electronic filing to the following counsel of record:      GORDON      & REES LLP:  Richard P. Sybert, Robin Symons, Eric Thompson, Reid E. Dammann, Holly Heffner.

s/Lewis Anten_____
Attorney