## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| LANARD TOYS LIMITED ,<br>　　　　　Plaintiff,<br><br>v.<br><br>TOYS "R" US - DELAWARE, INC.<br>DOLGENCORP, LLC, and JA-RU, INC.,<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Case Number:  3:15-cv-00849-MMH-PDB**

**Dispositive Motion**

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff and counterdefendant Lanard Toys Limited ("Lanard") hereby responds in opposition to the Motion for Summary Judgment ("Motion") filed by defendants and counterclainants Toys "R" Us – Delaware, Inc. ("TRU"), Dolgencorp, LLC ("Dolgencorp"), and Ja-Ru, Inc. ("Ja-Ru") (collectively, "Defendants"). [D.E. # 302].

### INTRODUCTION

Defendants' Motion is an attempt to cover up and hide from their indisputable and direct infringement and knockoff of Lanard's intellectual property in its "Chalk Pencil," a patented, copyrighted, and distinctive children's toy chalk holder with a cartoonish aesthetic in the shape of an oversized classroom pencil.  Defendants misapply the law and distort facts in mounting hypertechnical attacks on the validity of Lanard's intellectual property rights in the Chalk Pencil, and, unbelievably, claim that no infringement exists—even though a United States District Judge earlier in this case said she saw no difference between the two products, and even though the Defendants' *own design documents* show products side-by-side with the Lanard product labeled as "market reference."

Defendants' miscitations of law and distortions of fact are intentional, just as their copying of Lanard's proprietary toy was intentional.  Defendants ignore the fact that the validity of Lanard's

intellectual property is *presumed* as a matter of law.  They purposefully avoid showing an image of their own infringing products in their Motion.  That is because, once anyone sees Defendants' products next to Lanard's Chalk Pencil, the infringement is undeniable.  The Defendants' Products and Lanard's Chalk Pencil are identical such that, under any standard for patent, copyright, or trade dress law, infringement is found as a matter of law.  Indeed, as the District Court for the District of New Jersey stated, prior to transferring this case, "[i]t doesn't even seem there is a real argument that there is any real true, true distinction of the two products to the ordinary eye." *See* Decl. of Richard P. Sybert ("Sybert Decl."), ¶ 23, Prelim. Inj. Hrg. Trans., 35:8-19, Ex. R.

In a nutshell, Defendants take the position that the United States Copyright Office, as well as the United States Patent and Trademark Office, were wrong; and that both the registered Patent and the registered Copyright which protect the Chalk Pencil are invalid for various technical or procedural reasons.  Each one of those reasons is plainly wrong on both the facts and the law, as detailed below.  Similarly, Defendants attempt to negate Lanard's trade dress in the Chalk Pencil, again misciting the law.

Specifically, Defendants claim that Lanard's design patent, Patent No. D671,167 ("'167 Patent"), in the Chalk Pencil is invalid because, *inter alia*, Lanard "failed" to cite prior art – specifically, the classic no. 2 pencil, as if the Patent Examiner would somehow be unaware of it.  Similarly, Defendants allege that Lanard's copyright registration in its Chalk Pencil is invalid because the toy is a derivative work of a no. 2 pencil, and that Lanard failed to designate it as such in its application.  These arguments fail because Lanard's Chalk Pencil is a *toy*, and not actually a pencil, and in any event, such alleged "failures" do *not* invalidate a patent or copyright.

Defendants also claim that the '167 Patent and the copyright in the Chalk Pencil are invalid because the toy is primarily functional, despite the fact that the '167 Patent is expressly claimed as a "chalk holder" toy for children to play outdoors on sidewalks, not a utilitarian article like a pencil,

and no functional element appears on the face of these registrations.

Finally, Defendants claim that Lanard does not enjoy trade dress in Chalk Pencil based on Defendants' purported analysis of individual design elements, and because, according to Defendants, "no one has heard" of Lanard.  This misstates the law.  Trade dress turns on the overall commercial impression of a product, and the substantial sales of the Lanard Chalk Pencil are sufficient basis for secondary meaning.  As the fourth claim, for unfair competition under Florida state law, is predicated on Defendants' violations of Lanard's patent, copyright, and trade dress rights, this claim should also survive summary judgment.

It should not be lost in the assertion and analysis of Defendants' technical and legal arguments that their conduct is morally culpable: *they copied Lanard's product.*  Instead, Defendants misconceived position is that somehow they had a right to do so.  They did not.

Accordingly, Defendants are not entitled to summary judgment because there is no dispute that Defendants intentionally and knowingly infringed Lanard's intellectual property rights in its Chalk Pencil, which is protected by a valid copyright, patent, and trade dress, through Defendants' identical competing toy.  Further, as discussed below, genuine issues of material fact exist concerning the indirect profits Lanard lost as a result of Defendants' infringing conduct, and Lanard has a right to assert these damages before the jury as the trier of fact.

## STATEMENT OF FACTS[1]

### A.   Lanard's Intellectual Property Rights in the "Chalk Pencil"

Lanard is a leading manufacturer and wholesale seller of toys in the United States and throughout the world.  In 2010, Lanard's designers developed a unique and original chalk holder, a device that can hold chalk to allow children to draw on the sidewalk.  *See* Decl. of James W.

---

[1] Lanard objects to Defendants' purported "Undisputed Facts," including specifically, but not limited to, "Undisputed Facts" Nos. 3, 5-7, 10, 13, 15, 17, 20, 24, 27, 28, 29, 30, 37, 38, and 39, as disputed, not supported by the evidence, and/or mischaracterizing or misstating the evidence.

Hesterberg ("Hesterberg Decl.") at ¶ 4.

The initial design was a REDACTED *Id.*; Ex. A[2].  It could have been any number of things, so that the choice is ornamental, not functional.[3]  Ultimately the design evolved into a cartoonish evocation of a pencil found in children's schools, on a larger scale and with additional features, which Lanard named the "Chalk Pencil", as shown.  Hesterberg Decl. at ¶ 5; Exs. A, B.



**Original Design**                    **Revised Design**

Lanard first sold the Chalk Pencil on November 1, 2010.  *Id.*  The Copyright Office registered Lanard's copyright effective as of the same date and assigned it Reg. No. VA 1-794-458.  *Id.*; Ex. E, F; Lanard's Request for Judicial Notice ("RFJN") No. 1 [D.E. # 299-4].  Plaintiff stamped "© 2010 LANARD," into the plastic on all Chalk Pencil models since 2010 and continuing with every Chalk Pencil toy (and its packaging) offered for sale since.  Hesterberg Decl., ¶ 10.

On November 20, 2012, the USPTO issued the '167 Patent for the Chalk Pencil, whose claims include the below.  *Id.* at ¶ 15; Ex. H; RFJN No. 3-7.

| TEXT | ILLUSTRATIONS |
|---|---|
| **CLAIM:** The ornamental design for a chalk holder, as shown and described.<br>**DESCRIPTION:** FIG. 1 is a perspective view of a chalk holder showing our new design; FIG. 2 is a front elevation view thereof, the rear elevational view being a mirror image; FIG. 3 is a right side elevation view thereof, the left side elevation view being a mirror image; FIG.4 is a top plan view thereof; and, FIG. 5 is a bottom plan view thereof. The broken line disclosure in the figures is for illustrative purposes only and forms no part of the claimed design. | FIG. 1    FIG. 2    FIG. 3    FIG. 4    FIG. 5 |

---

[2] All exhibit citations herein are to the exhibits attached to Lanard's Index of Exhibits in Support of the instant Opposition unless otherwise noted.
[3] A collection of various chalk holder designs is attached to the report of plaintiff's expert Robert Anders ("Anders Report"), Ex. K hereto [D.E. #299.16], as "Exhibit D" thereto. None of these chalk holders evoke a no. 2 pencil.

The '167 Patent referenced numerous examples of prior art, as shown in Table 1:

| TABLE 1 – CITED PRIOR ART | | | | | | | |
|---|---|---|---|---|---|---|---|
| FIG. 1 of U.S. Pat. # 824,375 | FIG. 1 of U.S. Pat. # D60,192 | FIG. 1 of U.S. Pat. # 1,920,680 | FIG. 1 of U.S. Pat. # 1,947,168 | FIG. 1 of U.S. Pat. # 2,517,552 | FIG. 1 of U.S. Pat. # 3,187,723 | FIG. 2 of U.S. Pat. # 3,314,531 | FIG. 4 of U.S. Pat. # D255,545 |
|  |  |  |  |  |  |  |  |
| FIG. 1 of U.S. Pat. # 4,878,867 | FIG. 1 of U.S. Pat. # D305,849 | FIG. 1 of U.S. Pat. # 5,069,645 | FIG. 1 of U.S. Pat. # D333,426 | FIG. 1 of U.S. Pat. # D452,370 | FIG. 1 of U.S. Pat. # D497,390 | FIG. 1 of U.S. Pat. # 2003/0159951 | |
|  |  |  |  |  |  |  | |

*See id.*; Ex. F, LNRD001924-1925; Ex. H; "Exhibit F" to Anders Report.  Following the USPTO's issuance of the '167 Patent, Lanard stamped the full patent number into the plastic on all models of the Chalk Pencil. Hesterberg Decl., ¶ 17.[4]  Before the patent issued, Lanard marked "Patent Pending" onto the plastic and packaging of the Chalk Pencil starting in late 2011.  Hesterberg Decl., ¶ 14.

**B.     Lanard's Sales of the "Chalk Pencil" to Defendants Dolgencorp and TRU**

Starting in 2011, pursuant to a distributor agreement, Lanard sold the Chalk Pencil to Dolgencorp, who continued to purchase the Chalk Pencil through the 2011, 2012, and 2013 selling seasons, and sold it under its "CONCRETE CANVAS" label. *Id.* at ¶ 18; Exs. J, L.  A copyright

---

[4] In the course of discovery in this litigation, the parties produced actual specimens of Lanard's Chalk Pencil, images of which are labeled as JR000239 and 240.  Sybert Decl. at ¶ 15; Ex. B hereto. The first model of Lanard's Chalk Pencil, labeled JR000239, shows the notice "US Patent D671,167" on the back of the packaging. *Id.* The second model of Lanard's Chalk Pencil, labeled JR000240, shows the notice "PATENT PENDING" on the front of the packaging in clear letters, and the notice "(c) 2010 LANARD TOYS LTD." on the back.  *Id.*

notice, "© 2010 LANARD," was marked on all Chalk Pencils supplied to Dolgencorp.  Hesterberg Decl., ¶ 18.  Likewise, a patent notice that stated either "Patent Pending" or the patent number was marked on all Chalk Pencils sold to Dolgencorp.  *Id*. at ¶ 19.

Under a distributorship agreement, Lanard supplied the Chalk Pencil to TRU on a private label basis starting with the 2012 selling season.  *Id*. at ¶ 20.  TRU made its purchases for that selling season in late 2011, and sold the Chalk Pencil as part of its "SIZZLIN' COOL" private label toy line. *Id*.  A copyright notice, "© 2010 LANARD," and either "Patent Pending" or the Patent's number was marked on all Chalk Pencils supplied to TRU.  *Id*. at ¶ 21.

The Chalk Pencil was a commercial success.  REDACTED Decl. of Angel Lee ("Lee Decl."), ¶ 12; Ex. J, LNRD000720; Ex. L.  REDACTED Lee Decl., ¶ 10; Ex. J at LNRD000721. REDACTED Lee Decl., ¶ 13; Ex. J, LNRD000719, LNRD000722; Ex. M, T000025-26.

The Chalk Pencil was also a success with other major United States retailers, who purchased substantial amounts of product from Lanard.  Lee Decl., ¶ 14, Ex. J, LNRD000723.  REDACTED *Id*. at ¶¶ 15-16, Ex. J, LNRD000740.

**C.      Ja-Ru Copies the "Chalk Pencil" to Manufacture Its Knock-Off Version**

REDACTED *See* Depo. Trans. of Stephen Hearon ("Hearon Depo."), 28:2-29:2.  REDACTED

REDACTED Depo. Trans. of Angela Ku ("Ku Depo."),

38:11-16.  Ja-Ru's *own internal documents* show Lanard's toy and the Ja-Ru knockoff side-by-side

with the former labeled "Market Sample" or "Reference Sample." Ex. O, JRH000019-21,

JRH000045-51; JRH000063-69; Ex. Q.

      After purchasing the Lanard's Chalk Pencil for several sales seasons, TRU abruptly stopped

ordering the product late in 2013.  Hesterberg Decl., ¶ 23.  REDACTED

REDACTED Depo. Trans. of Colleen Cosgrove, ("Cosgrove Depo."), 147:12-15.  REDACTED

REDACTED

REDACTED *Id*. at 23:8-20.

      Dolgencorp, as distributor for Dollar General Corporation, also ceased ordering Lanard's

Chalk Pencil in late 2013.  Hesterberg Decl., ¶ 25.  REDACTED

REDACTED ("Dolgencorp Product") (collectively with the Ja-

Ru Product and the TRU Product, the "Defendants' Products").  Depo. Trans. of Eric Hedberg.

("Hedberg Depo."), at p. 44:18-21.

      The Defendants' Products are copies of Lanard's Chalk Pencil design (Exs. B, P, Q):

| TABLE 2 – TRU AND DOLGENCORP PRODUCT | | | | | |
|---|---|---|---|---|---|
| Dolgencorp Product | Dolgencorp Product in Packaging | TRU's SIZZLIN' COOL Product | TRU's SIZZLIN' COOL Product in Packaging | Lanard's Chalk Pencil | Lanard's Chalk Pencil in Packaging |
|  |  |  |  |  |  |

REDACTED

REDACTED Sybert Decl., ¶ 6; Ex. L, DG00055.  REDACTED

REDACTED                                                    *See* Ex. F to the Ivy

Choderker Decl., p. 11, Interrogatory No. 12.  Thus, both TRU and Dolgencorp knowingly and

intentionally dealt in what they must have known was an infringing product from years of selling the

original toy – Lanard's Chalk Pencil.

## ARGUMENT

Fed. R. Civ. P. 56 allows a court to rule on a claim or issue "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party bears the burden of

showing there is no genuine issue of material fact.  *American Viking Contractors, Inc. v. Scribner

Equip. Co.* 745 F.2d 1365, 1369 (11th Cir. 1984).  The nonmoving party must then demonstrate

specific facts showing that a genuine issue remains for trial.  *Celotex*, 477 U.S. at 324.  A court draws

all inferences from the evidence in the light most favorable to the non-movant and resolves all

reasonable doubt in the non-movant's favor.  *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

As discussed below, Defendants fail to carry their burden to show that summary judgment in

their favor is proper.  To the contrary, because of the reasons set forth in Lanard's pending Motion

for Partial Summary Judgment [D.E. # 299], the undisputed material facts show that Defendants

willfully infringed Lanard's enforceable intellectual property rights in the Chalk Pencil.

**A.**      **The '167 Patent Is Enforceable Against the Defendants' Infringing Products**

Defendants first argue that Defendants' Products[5] do not infringe Lanard's '167 Patent as a

---

[5] Defendants attempt to shield TRU and Dolgencorp from liability by highlighting how "TRU and [Dolgencorp] had no involvement in the development, design or manufacturing of the Ja-Ru Chalk Holder."  Mot. p. 5, ¶ 7. However, patent infringement does not require the infringer merely "develop[], design or manufactur[e]" an infringing item, as an infringement by selling is equally liable.  *See* 35 U.S.C. § 271 ("whoever without authority makes, uses, offers to sell, or sells any patented invention within the United States . . . during the time for the patent, therefore, infringes the patent."). There is no dispute that Defendants sold the Ja-Ru chalk holder item; thus, each Defendant is liable for its wrongful infringement.  In any event, Lanard is entitled to argue to the jury that a proper inference to the contrary may be made.

matter of law, asserting that each element of Lanard's Chalk Pencil is either derived from existing prior art and/or is unprotected as functional.  Mot. pp. 11-16.  However, this analysis misapplies the applicable ordinary observer test, which examines a patented design "*in its entirety*, as it is claimed." *See L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1125 (Fed. Cir. 1993) (emphasis added).

Infringement of a patent is committed by "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor[.]"  35 U.S.C. § 271(a).  The infringement analysis is a two-step process: "First, the court construes the claims to correctly determine the scope of the claims.  Second, it compares the properly construed claims to the accused device."  *Lockheed Martin Corp. v. Space Systems/Loral, Inc*., 249 F.3d 1314, 1323 (Fed. Cir. 2001).  Of these two steps, "[t]he first of these is a legal question and the second is factual."  *Hormone Research Found. v. Genentech, Inc*., 904 F.2d 1558, 1562 (Fed. Cir. 1990).

Defendants make no attempt at analyzing the first step of the infringement analysis—i.e., construing the claims.  Construing the claims here, "the written description requirement for a design patent is applied against a drawing."  *Spencer v. Taco Bell Corp*., No. 8:12-cv-387-T-23TGW, 2013 U.S.Dist.LEXIS 142619, *7 (M.D.Fla. 2013).  Further, design patents take the form of illustrations aided by written descriptions.  *See generally Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc*., No. 8:12-cv-691-T-24-MAP2014, U.S.Dist.LEXIS 127986, *33-34, (M.D.Fla. 2014).

Thus, the proper construction of the '167 Patent's claims includes its illustrations and its written description that specifies the patent as being a design for a chalk holder.  *See* Ex. H; RFJN Nos. 4-7.  Defendants ignore the latter, and thus present an incomplete and erroneous proposed construction as a matter of law.

Further, Defendants compartmentalize their incomplete analysis into insignificant differences in design details, contrary to the appropriate "ordinary observer" standard which requires viewing the

patented design "*in its entirety*, as it is claimed."  *See L.A. Gear, Inc.*, 1117 at 1125 (emphasis added). As is plainly evident by comparing the '167 Patent to the products depicted in <u>Table 2</u> above, the overall shape and form of the accused products are substantially the same as depicted in the '167 Patent and extend to each of the Patent's design elements: the hexagonal body, cylindroid tip, ferrule, and eraser are substantially similar in size, proportionality and relationship to each other and the whole.  Thus, the various identical components add to a greater whole, and indisputably show that the '167 Patent and Defendants' Products are identical in their overall impression.

Indeed, Judge Wigenton, who presided over this matter before its transfer to this Court, noted the substantial similarity between the parties' products, stating:

> It doesn't even seem there is a real argument that there is any real true, true distinction of the two products to the ordinary eye. There are some minimal distinctions, but as I said, one is larger, one's smaller. But for the most part, the coloring, the components, the features of it are very, very similar.

*See* Ex. R. 35:8-19.

Likewise, Lanard's design expert Robert Anders analyzed each aspect and figure of the Patent compared to the accused products in great detail.  Anders Report, pp. 37, ¶ 113-50, ¶ 136.  Mr. Anders found that the similarity between the products at issue "is substantially the same, such that an ordinary observer with knowledge of the prior art would purchase the accused product[s] believing [them to be the patented] design."  *See id.* at pp. 47, ¶ 132; 50, ¶ 136.  Thus, there is no dispute that an ordinary observer familiar with the relevant field and the prior art would find the Defendants' Products infringe the '167 Patent.  *See id.* at ¶ 126-¶ 136.

1. <u>The Defendants' Products Are Infringing In Light of the Relevant Prior Art</u>

Defendants claim that their products do not infringe the '167 Patent because "all the major elements of the design claimed in the '167 Patent are derived from prior art."  Mot., p. 13. The USPTO disagrees.  The '167 Patent's cited prior includes a wide variety of drawing apparatuses,

boxes, and other products featuring similar *elements* of the Patent, but none featuring *all* elements of the Patent.  None of the prior art combines the Patent's unique design with a *chalk holder*.

The cases cited by Defendants do not aid their argument.  The seminal Federal Circuit case *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 678 (Fed. Cir. 2008), found no infringement concerning a patented "nail buffer" design featuring a four-sided metal tube with "nail buffers" on the sides.  The prior art at issue was *another nail buffer product* featuring nearly identical elements, except that the body was "triangular, rather than square, in cross-section." *Id.* at 669.  There, unlike here, the prior art was a nearly identical product that served the same purpose as the prior art – buffering nails.  Here, the cited prior art is for pencils and storage containers, not chalk holders.

In other cases cited by Defendants, the design was for the same object subject to the prior art. *See Kreative Power, LLC v. Monoprice, Inc.*, 2015 U.S.Dist.LEXIS 26489, *32 (N.D.Cal. 2015) (prior art at issue was an identical utility patent in the same surge protector subject to the plaintiff's design patent); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 U.S.Dist.LEXIS 105125, *14 (N.D.Cal. 2012) (concerned shapes of cellular phones with prior art of other cellular phones).  Unlike each of these cases, the '167 Patent is entirely different from the products featured in the uncited prior art asserted by Defendants.  A toy and a pencil are not the same object.  The "Dixon" series of pencils and the "giant" pencil cited by Defendants are also, again, pencils.  They do not incorporate any features for the purpose of holding chalk, nor are any of them toys intended for child's play.

In fact, some of the cited prior art illustrate how design patents are valid and issued for toy designs that evoke different utilitarian objects.  U.S. Patent No. 4,878,867 is for a "COIN BANK" that evokes the appearance of a crayon, while U.S. Patent No. 5,069,645 is also for a "COIN BANK" that evokes the appearance of a pencil. *See id.*, Ex. F, LNRD001924-1925 hereto; Ex. H hereto; see also "Exhibit F" to the Anders Report.  Each of these design patents were issued by the Patent Examiner because they apply a design (a crayon and a pencil) *onto a different object* (coin banks).

Similarly, the '167 Patent is a design evoking the appearance of a wooden pencil applied to a different object—a chalk holder toy, that is not actually a wooden pencil but designed in the shape of one for imaginative and creative reasons.

      2.    <u>The '167 Patent Is Not "Functional," It Is a Toy</u>

Defendants next claim their products do not infringe the '167 Patent by arguing incorrectly that "each element of the '167 design and the [Defendants' Products] serves a functional purpose." Mot. p. 15.  However, Defendants cherry-pick among different elements of the '167 Patent and fail to show that the '167 Patent is anything but a toy design.

The fact that a design patent has an ultimate function does not preclude a design patent's validity.  *See L.A. Gear,* 988 F.2d at 1123 (patent valid for shoes); *Lancaster Colony Corp. v. Aldon Accessories, Ltd*., 506 F.2d 1197, 1200, (2d Cir. 1974) (patent valid for ashtray).  Further, while design patents do not protect utilitarian features, the nature of the utility at issue frames the scope of the patent.  Defendants cite *OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1405 (Fed. Cir. 1997) where the Federal Circuit rejected an infringement claim "based simply on the presence of tail-fins on a toy football, reasoning that the fins were necessary for aerodynamic stability." *DCNL, Inc. v. Almar Sales Co*., No. C-97-3738 DLJ, 1997 U.S.Dist.LEXIS 22931, *11-12 (N.D. Cal. 1997) (analyzing *OddzOn*).

However, just because a feature exists does not mean its design is inherently functional.  *Id*. In *DCNL, Inc.*, the court held that a hairbrush design that featured "vents" was protected despite the fact that a hairbrush is useful.  *Id*.  The court stated that "[w]hile the existence of vents may aid in the hair drying process, the choice of wavy-shaped vents does not seem to enhance drying. [. . . .] Similarly, the existence of bristles obviously serves a function, but the particular pattern of bristles does not necessarily do so."  *Id*.

Lanard's chalk holder may be designed to evoke the look of a pencil, but it is not actually a

pencil.  It appears to be made of wood, but it is not.  It has an oversized eraser to mimic the appearance of a pencil, but Defendants cite no evidence that the eraser is actually useful to erase pencil lead markings.  Defendants claim that the eraser's ferrule "unscrews from the top of the body to permit access to storage space," despite the fact that this "feature" does not appear on the face of the '167 Patent.  Mot., p. 14.  Likewise, Defendants do not explain what "function" the "tapering" on the Chalk Pencil serves.  *Id.*

As to the hexagonal shape, Defendants cite no actual evidence that this shape prevents rolling—as school pencils might do on customary schoolhouse desks with an incline—as a function instead of acting a mere design.[6]  Indeed, if the designers sought to prevent the object from rolling, they could have made the entire chalk holder flat.  Here, the Chalk Holder is a toy intend for children to play with outdoors on concrete, not for writing on schoolhouse desks.

Further, there exists a wide variety of chalk holders on the market that do *not* look like pencils, a fact that shows the non-functional nature of the '167 Patent design.  "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."  *L.A. Gear*, 988 F.2d at 1123.  "The evidence shows that each of these individual elements embodies one of several possible designs. Defendants' evidence with respect to functionality does not contradict the fact that each of these elements can be changed or moved to achieve a different overall look." *Am. Bev. Corp. v. Diageo N. Am., Inc.*, 936 F.Supp.2d 555, 588 (W.D.Pa. 2013).  Mr. Anders cited numerous alternative designs for chalk holders, none of which depicted the design shown in the '167 Patent.  Anders Report, p. 31, ¶ 97; Exhibit D thereto.  Indeed, the original design of Lanard's Chalk Pencil had REDACTED
 showing that form dictated the design of this toy, not function.  Ex. A.

---

[6]Lanard's expert, Robert Anders, presented his own testing of the "rolling" functionality of the design, finding that if placed "on a surface inclined at 14.40°, [] the hexagonally shaped form did not prevent the product from rolling down the inclined plane."  Anders Report, p. 25, ¶ 85.4.  Defendants have not rebutted this finding.

3.      <u>Product Differences Are Inconsequential Under the Doctrine of Equivalents</u>

Defendants take numerous statements by Mr. Anders out of context in their attempt to

discredit the '167 Patent.  These kinds of distortions emphasize the weakness of Defendants'

analysis.  Specifically, Defendants claim that Mr. Anders noted "design differences between the

products."  Mot., p. 15.  While Mr. Anders highlights small differences between the products, these

inconsequential details are not inconsistent with and do not override his opinion that Defendants

copied the "overall appearance, the overall form" of the Chalk Pencil.  Anders Depo., 200:11-16.[7]

In any event, minor differences between the '167 Patent and the Defendants' Products are of

no consequence, as "minor differences between a patented design and an accused article's design

cannot, and shall not, prevent a finding of infringement."  *Litton Sys., Inc. v. Whirlpool Corp.*, 728

F.2d 1423, 1444 (Fed. Cir. 1984).  Thus, small differences, like the subtle detailing on the erasers,

and any *de minimis* differences between exact dimensions of the '167 Patent and the Defendants'

Products, are inconsequential to preclude a finding of infringement.  *Id.*

Further, under the doctrine of equivalents, which applies to design patents, infringement exists

where the "alleged infringer seeks to appropriate the invention with minor modification to avoid the

literal language of the claims."  *Carman Indus. v. Wahl*, 724 F.2d 932, 942 (Fed. Cir. 1983); *see Sun*

*Hill Indus. Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995); *Degelman Indus. v.*

*Pro-Tech Welding & Fabrication, Inc.,* No. 06-CV-6346, 2011 U.S.Dist.LEXIS 150394, *42

(W.D.N.Y. 2011) (noting that the doctrine of equivalents has survived *Egyptian Goddess*).

As discussed above, the Defendants' Products are identical to the overall visual appearance of

the '167 Patent.  However, even where Defendants made slight modifications to the design outside of

---

[7] Defendants take further issue with Mr. Ander's opinions that their products are infringing based on various views at "the point of sale."  Mot., pp. 16.  However, whether there is point-of-sale confusion is inconsequential, as Mr. Anders ultimately concluded that the products were substantially similar as a whole no matter what view is adopted or how the ordinary observer sees the products—be it point-of-sale or otherwise.  His own report breaks down the various views, angles, and dimensions of the products at issue, regardless of the packing visible at the point of sale.  Anders Report, pp. 44-50.

what is strictly in the scope of the '167 Patent's claim (such as minor variations on the ridges found in the eraser cap), the Doctrine of Equivalents protects the '167 Patent's novel claimed features— namely, its combined features as a chalk holder with a hexagonal body, a cylindroid tip, an eraser and ferrule substantially similar in size, proportionality and relationship to each other and the whole.  *See Sun Hill Indus.*, 48 F.3d at 1196.  As expressed in Mr. Anders's report, these elements add up to the same overall visual appearance, and the Defendants' Products infringe the "novel claimed design features" of the '167 Patent under the doctrine of equivalents.

   4.   Defendants Fail to Rebut the Presumed Validity of the '167 Patent

   Patents are presumed valid.  *See* 35 U.S.C. § 282(a).  Here, Defendants admit that the USPTO issued the '167 Patent, and as such, it is presumed valid.  Mot. p. 5, ¶ 9.[8]  Defendants have the burden to establish patent invalidity by "clear and convincing evidence."  *SRAM Corp. v. AD–II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006).  Defendants fail to overcome this presumption.

   Admitting that Lanard's Chalk Pencil is "a chalk holder in the shape of a pencil" (Mot., p. 6, ¶ 12), Defendants claim that Lanard's Chalk Pencil is "derived from prior art" (*id.*, p. 15) and that Lanard "failed" to cite this prior art in its application (*id.*, pp. 16-20).

   Like infringement, the first step of patent anticipation analysis concerns construing the claims. *Medichem, S.A. v. Rolabo, S.L.,* 353 F.3d 928, 933 (Fed. Cir. 2003).  Once again, Defendants fail to construe the claims, ignoring the written description that limits the '167 Patent to "a chalk holder." As previously discussed, such descriptions are valid for a design patent when "applied against a drawing." *Spencer*, 2013 U.S.Dist.LEXIS 142619, at *7.

   Defendants assert that "[t]he fact that the '167 design patent was a design for a chalk holder as opposed to a pencil is irrelevant to the validity analysis."  Mot. pp.19-20.  This is a flat misstatement

[8] Defendants state that the '167 Patent was issued on November 20, 2012.  Mot. p. 5, ¶ 11.  However, patents are enforceable as of the date of the filing of their applications, not their issuance.  *See* 35 U.S.C. § 100 (i). The application for the '167 Patent was filed on August 31, 2011.  Ex. F.  Thus, the relevant date for enforcement of the '167 Patent is at least as early as August 31, 2011.

-15-

of law.  Defendants cite two cases to support this misstatement, but neither does.  Defendants first cited case, *Smith v. Whitman Saddle Co.,* 148 U.S. 674, 679 (1893), involved a design patent dispute over horse saddles.  The Court held the patent invalid because "there were several hundred styles of saddles or saddle-trees belonging to the prior art, and that it was customary for saddlers to vary the shape and appearance of saddle-trees in numerous ways according to the taste and fancy of the purchas[e]r."  *Id.*  As a result, the saddle subject to the patent dispute did not have the requisite creativity to distinguish it from the prior art for *other saddles*.  *Id.*  That case is, thus, factually distinguishable, as it did not involve a toy's design that fancifully evokes a *different* object.  Again, Lanard's Chalk Pencil is a *toy*, not an actual pencil.

Defendants' second cited case, *Jaybee Mfg. Corp. v. Ajax Hardware Mfg. Corp*., 287 F.2d 228, 229 (9th Cir. 1961), involved a design patent in furniture, specifically a door handle.  The Ninth Circuit found that the Patent Examiner "had a very limited and incomplete record before him" based on limited prior art references included in the patent application.  *Id.*  Further, at least six examples of uncited prior art that escaped the Patent Examiner's consideration were sufficiently identical to the subject patent to anticipate the design.  *Id.*  Once again, this case did not concern a similar situation, where a design patent claimed for a toy, a chalk holder, is designed to look like something else, a pencil.  This fact is expressly claimed in the '167 Patent.

The second step of anticipation analysis is a comparison of the properly construed claim to the prior art.  *See Medichem, S.A.*, 353 F.3d 928 at 933.  "[I]nvalidity by anticipation requires that the four corners of a *single*, prior art document describe every element of the claimed invention." *Advanced Display Sys., Inc. v. Kent State Univ*., 212 F.3d 1272, 1282 (Fed. Cir. 2000) (emphasis added).  Anticipation is a question of fact, and may only be decided on summary judgment if "the record reveals no genuine dispute of material fact."  *Diamondback Firearms, LLC v. Saeilo, Inc.*, No.6:10-cv-1664-Orl-28DAB, 2012 U.S.Dist.LEXIS 156895, *14 (M.D.Fla. 2012).  The party

claiming invalidity through anticipation must prove "by clear and convincing evidence" that "one or more [. . . .] items of prior art discloses every element" of the patent at issue. *Nextec Applications v. Brookwood Cos.*, 703 F.Supp.2d 390, 423, (S.D.N.Y. 2010) (summary judgment denied where patent challenger failed to show "every element" of patent was disclosed in single piece of prior art).

Again, the USPTO disagreed with Defendants, and with good reason. Comparing claims of the '167 Patent to the prior art shows that none of the cited references anticipated the '167 Patent, as shown in <u>Table 1</u>. The cited references include a wide variety of drawing apparatuses, boxes, and other products featuring similar *elements* of the Patent, but none featuring *all* of its elements. Specifically, none of the prior art combines the '167 Patent's unique design with a *chalk holder*.

Further, Defendants claim the following products amount to prior art: the Dixon Ticonderoga and Oriole No. 2 yellow pencils, the Dixon SenseMatic mechanical pencil, and Pencil Craft's "giant pencils." Mot., p. 6, ¶ 13. However, as previously discussed for the applicable infringement analysis, none of these products feature one of the most important claims for the '167 Pencil—the fact it is for a chalk holder. As a result, no "single, prior art document describe every element of the claimed invention," and these examples are irrelevant. *Advanced Display Sys., Inc.*, 212 F.3d at 1282.

The instant Motion is silent on Defendants' counterclaim of invalidity based on obviousness. Given the heavy validity presumption afforded the '167 Patent, Lanard need not establish nonobviousness. *See SRAM Corp.*, 465 F.3d at 1357; *see also Continental Technical Services, Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) ("An argument not made is waived[.]").

**B.**    <u>**The Copyright for the Lanard Chalk Pencil Is Enforceable Against Defendants' Infringing Products**</u>

     1.    <u>Defendants Fail to Rebut the Presumed Validity of Lanard's Copyright</u>

Defendants admit that the Copyright Office issued a copyright for Lanard's Chalk Pencil, Reg. No. VA 1-794-458, on September 20, 2011. Mot. p. 5, ¶ 9. Despite this, Defendants claim that

the burden of proof for validity rests with Lanard.  Mot. p. 22 ("Lanard has offered no evidence of any variation between its design and the No. 2 pencils on which it was based.  This failure of proof is fatal to Lanard's copyright claim.")  However, a copyright, like a patent, is *presumed valid*, and the burden to rebut that presumption *rests with Defendants.  Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999) (citing 17 U.S.C. § 410(c)) (production of copyright registration creates presumption of copyright validity).  As discussed below, Defendants fail to overcome this presumption because the Chalk Pencil is an original work entitled to copyright protection.

Defendants claim that the copyright registration in Lanard's Chalk Pencil is invalid because Lanard did not explain how this work is different from a No. 2 pencil.  Mot. pp. 21-22.  Further, Defendants claim that Lanard failed to disclose "that its work is a derivative work based on pre-existing material, namely a No. 2 pencil[.]"  Mot. p. 5, ¶ 10.  However, Lanard's Chalk Pencil is an *original* work, not a derivative work, and as such, no such "explanation" or disclosure to the Copyright Office was required.  Further, in any event, failure to so cite a derivative work does *not* invalidate a copyright registration—it merely invites correction.  Defendants claim that the "preexisting work" from which Lanard's Chalk Pencil allegedly derives is a "no. 2 yellow pencil," which Defendants cannot show is copyrightable.

Under the Copyright Act, a derivative work as "a work based upon one or more preexisting works."  17 U.S.C. § 101.  If a work "sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the … work is not a derivative work[.]" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.,* 150 F.3d 132, 143 n.9 (2d Cir. 1998).  Moreover, "[A] work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work.  It is saved from being an infringing work only because the borrowed or copied material [. . . .] because the prior work has entered the public

domain." Nimmer on Copyright Section 3.01, at 3-3 (1995); *see also Eden Toys, Inc. v. Florelee Undergarment Co*., 697 F.2d 27, 34 (2d Cir. 1982).

Preliminarily, Defendants concede that the no. 2 yellow pencil is in the "public domain." Mot., p. 24-27. Thus, Lanard's Chalk Holder is not a derivative work based on the no. 2 yellow pencil as a matter of law. Moreover, the Chalk Holder is a sufficiently transformative expression of the no. 2 pencil. The Chalk Holder has the following distinguishing features from a pencil: a body made of plastic, colored chalk interior, chalk is removable from gripper, larger size, says "Chalk Pencil," and the eraser unscrews for storage. The Chalk Holder is a toy that children play with by making marks on a sidewalk, as distinct from a pencil that is intended as a precise writing instrument on paper.

In contrast, a pencil includes the following aspects: yellow color, six sides, made of wood, graphite or lead interior, metal top before the eraser, pink eraser, may be sharpened, approximately eight inches long with a diameter of about 1/8 inch. Sometimes the pencils have a manufacturer's identity, place of manufacture, and "No. 2" or "2" in a black circle written on one side.

Overall, the Chalk Pencil's appearance is sufficiently different, particularly considering its exaggerated appearance related to the gripper and removable eraser for storage. These differences render the Chalk Pencil not substantially similar to a public domain pencil, which in any event, cannot be the basis of any derivative work.

2.   <u>Lanard's Copyright Is Enforceable Independent of the Functional Elements</u>

Lanard's Chalk Pencil is a sculptural work—a toy—that is inspired by (but is not) a pencil and that houses chalk grippers. However, Defendants claim that "Lanard's Chalk Holder is not a 'toy' that exists only for its appearance," calling it "utilitarian [ ] as a writing instrument," and thus, a "useful article" not subject to copyright protection. Mot. p. 23.

Defendants' logic skirts the very definition of a "toy," because under Defendants' theory, any

item used by children that approximates a functional object used by adults is "functional."  All toys approximate *something*—children play pretend with all sorts of toys that take concepts from "functional" adult objects.  Further, Courts routinely uphold copyright protection for toys as sculptural works, even where there is some "functional" element to the toy. *See, e.g.*, *Ted Arnold, Ltd. v. Silvercraft Co*., 259 F.Supp. 733, 734-735 (S.D.N.Y. Sept. 26, 1966) (a functional pencil sharpener shaped like a telephone); *Mattel, Inc. v. MGA Entertainment, Inc*., 616 F.3d 904, 916 (9th Cir. 2010) (clothing made for dolls protected by copyright); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc*., 780 F.2d 189, 192 (2d Cir. 1985) (robot/vehicle toys); *Gay Toys, Inc., v. Buddy L Corp*., 703 F.2d 970, 973 (6th Cir. 1983) (toy airplanes); *See Lanard Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 710 (9th Cir. 2010) (toy helicopters protectable as "miniature, fanciful renderings of helicopters that are launched together into the air . . . A child can make the toy 'copters' fly high into the air, but that 'flight' is simply a portrayal of the real objects . . .").

As previously discussed, the individual elements of Lanard's Chalk Pencil are not functional. Further, the fact that children can write something on a sidewalk with chalk does not automatically make all chalk holders "useful articles."  The design of Lanard's Chalk Pencil is to allow a child to pretend—the child may be on a sidewalk drawing, but in the child's head, she is writing a novel like her father or drawing plans for a house like her mother.  The imaginative design of the item accomplishes this creative task and many others associated with child's play.

Likewise, Defendants forget that the most obvious method for children to use chalk is to just hold it with their bare hands.  Thus, a "chalk holder" is inherently a non-functional toy, and not necessary to the child's enjoyment of chalk.  This is evidenced by the alternative designs for chalk holders, shown above, *none of which evoke the appearance of a pencil*.

     3.    <u>There Is No Dispute that Defendants' Products Infringe the Lanard Chalk Pencil</u>

Defendants' copyright infringement argument essentially concedes access and direct copying

of Lanard's Chalk Pencil.  The only issue in dispute is substantial similarity.  Substantial similarity

exists where "an average lay observer would recognize the alleged copy as having been appropriated

from the copyrighted work."  *Original Appalachian Artworks*, 684 F.2d at 829.  Substantial similarity

does not require the works to be identical where differences are "minor and appear to be the result of

a calculated but thin attempt to disguise deliberate copying[.]"  *Fisher-Price Toys, Div. of the Quaker

Oats Co. v. MY-TOY CO*., 385 F.Supp. 218, 221 (S.D.N.Y. 1974).  In performing the similarity

analysis between two works, "[t]he key . . . is . . . the similarities rather than the differences."  *Latele

TV, C.A. v. Telemundo Communs. Group, LLC*, 2015 U.S.Dist.LEXIS 11849, *23 (S.D.Fla. 2015)

(citations omitted).

As previously discussed under the patent analysis above, there is no dispute that the

Defendants' Products copy the appearance of Lanard's Chalk Pencil.  Defendants wrongly claim that

Lanard "has identified no feature it contends is its protected expression[.]"  Mot. p. 25.  However, as

is plainly evident, the Defendants' Products are near identical in shape and design to the Plaintiff's

Chalk Pencil, a pencil-shaped chalk holder toy that constitutes protectable expression given the

myriad forms and designs that a chalk holder toy can take.  *See* Anders Report at Exhibit D thereto.

The only difference is scale: Defendants have produced a version that is approximately 8 ½ inches

long instead of 12 inches.  Russell Selevan Depo, p. 391:5-10; *see* Ex. O at JRH0000257-259, hereto.

But merely reducing the scale of the design does not change anything.  *See Concrete Mach. Co. v.

Classic Lawn Ornaments, Inc*., 843 F.2d 600, 611 (1st Cir. 1988) (party claiming no infringement

must "identify more significant differences than slight variations in size or a different positioning [of

elements]").  Defendants' smaller-scale replicas are just as infringing as if they were the same size.

Moreover, as previously stated, the Honorable Judge Wigenton opined on the similarity

between the Lanard "Chalk Pencil" stating that "[t]here's no dispute" of their similarity and that "It

doesn't even seem there is a real argument that there is any real true, true distinction of the two

products to the ordinary eye." *See* Ex. R, 35:8-19. Any reasonable and objective observer—any juror—would reach the same conclusion. Further, Mr. Anders opined that the Defendant's Products are "substantially the same as each and every image contained in the [Lanard] copyright," and that it is apparent that the products "infringed the copyrighted artwork[.]" Anders Report, 51:138-140. In sum, any differences between Lanard's Chalk Pencil and the Defendants' Products are too "minor" to avoid a finding of infringement. *Fisher-Price Toys*, 385 F.Supp. at 221.

Defendants misapply the *scenes à faire* doctrine, which recognizes that certain expressions lack enough originality to justify copyright protection. *See Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459-460 (11th Cir. 1994) (holding mosque-style palace was *scenes à faire* in story about Arabian or African royalty). As discussed, a chalk holder that looks like a pencil is an original form of expression, not an idea, given the wide range, shapes, sizes, and designs for chalk holders.

The Chalk Holder toy is distinguishable from works at issue in the cases cited by Defendants because, to make a children's chalk holder toy, it is not "required" that the chalk holder look like a pencil, not like how action figures are "required" to have a muscular physique, like the "He-Man" toys in *Mattel, Inc. v. Azrak-Hamway Int'l*, Inc., 724 F.2d 357, 360 (2d Cir. 1983). Further, as discussed, because the substantial similarity between the products here is apparent, this a distinguishable situation from where a party alleges infringement over dissimilar items that hinge on the same idea, such as the totally dissimilar jewelry "bee pins" in *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742, (9th Cir. 1971). As a result, Defendants' *scenes à faire* argument is another attempt to hide their wrongful infringement.

**C.**   **Defendants Fail to Show that the Lanard Chalk Pencil Is Not Protectable Trade Dress**

Defendants misconstrue the trade dress at issue here, focusing on the product's packaging. Mot., p. 7, ¶¶ 20-22. Lanard is not claiming protected trade dress in its packaging, but in the Chalk Pencil itself. Regardless, Defendants wrongly claim that Lanard's trade dress claim fails because

Lanard did not conduct a survey concerning the Lanard Chalk Pencil.  Mot. p. 6, ¶ 16.[9]  Survey evidence is not the only means to show secondary meaning.

"Secondary meaning attaches to a trade dress when the public associates that mark, image or design with a singular source for the given product."  *Jungle Rags, Inc. v. Rainbow Graphics, Inc.*, No. 93-260-CIV-T-21A, 1993 U.S.Dist.LEXIS 20203, at *8 (M.D.Fla. July 23, 1993).  Evidence of such associations includes sales volumes and intentional copying by the accused infringer. *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984); *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir 1985) (secondary meaning where infringed product had millions in sales and there was evidence of intentional copying); *PAF S.r.l. v. Lisa Lighting Co.*, 712 F. Supp. 394, 403 (S.D.N.Y. May 2, 1989) (secondary meaning through 200,000+ units of a lamp sold over four years combined with over one million dollars in royalties and intentional copying); *Studio 1712, Inc. v. Etna Products Co.*, 777 F. Supp. 844, 851 (D. Colo. 1991) (secondary meaning shown through evidence of copying where company forwarded picture of product around with "specific instruction to develop a like product").  Furthermore, under 15 U.S.C. § 1052(f), substantially exclusive use of the trade dress for five years, as is undisputed here, is *prima facie* evidence of acquired distinctiveness.

Defendants claim REDACTED

However, these figures are incomplete, REDACTED

*See* Angel Lee Decl. ¶¶ 15-16.

Here, Lanard made significant sales of its Chalk Pencil since 2010 to numerous retailers,

[9] Defendants make no argument concerning likelihood of confusion, and thus waive this argument. *Continental Technical Services, Inc.*, 927 F.2d at 1199 ("An argument not made is waived[.]").

including Dolgencorp and TRU, as well as well-known third-party retailers.  Hesterberg Decl., ¶ 22;

Lee Decl. ¶ 14, Ex. J at LNRD000723.  REDACTED

Ex. J at LNRD000719-20; Ex. L at

DG000055; Ex. M at T000025-26.  REDACTED

Lee Decl., ¶¶ 15-16. Based on these sales figures reflecting the success of the Chalk Pencil,

and the indisputable evidence of Defendants' willful copying, Lanard's Chalk Pencil acquired

secondary meaning and is protected trade dress.

**D.**     **Defendants Are Not Entitled to Summary Judgment on Lanard's Unfair Competition Claim**

Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition and

forbids unfair trade practices involving infringement of trade dress.  *University of Florida v. KPB,*

*Inc.*, 89 F.3d 773, 775-76 (11th Cir. 1996).  Courts addressing claims of both trade dress and federal

and state common law unfair competition address the claims together because they have virtually

identical elements.  *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193n4 (11th

Cir. 2001).  Because Lanard's statutory and common law unfair competition claims under federal and

Florida law are predicated on Defendants' indisputable infringement outlined in detail above,

Defendants are not due summary judgment in their favor.

**E.**     **Infringement Damages Can Include "Indirect Profits," Including Sales of Other Products Damaged As a Proximate Result of Defendants' Infringement**

Defendants claim that Lanard's damages theory "borders on the absurd" because Lanard

claims lost profits from lost sales of other Lanard products aside from the Lanard Chalk Pencil.  Mot.,

p. 33-34.  However, this legal concept is hardly absurd—it is provided by statute.  Section 504(b) of

the Copyright Act provides recovery for "any profits of the infringer that are attributable to the

infringement." 17 U.S.C. § 504(b).  Courts have held that this section "does not differentiate between 'direct profits' -- those that are generated by selling an infringing product -- and 'indirect profits' -- revenue that has a more attenuated nexus to the infringement." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002).  Courts will not rule on summary judgment where a genuine issue of material fact exists concerning the causal relationship between the indirect profits and the defendant's infringing activities.  *See Home Design Servs. v. A-Plus Homes, Inc.*, No. 5:03-cv-255-Oc-10GRJ, 2004 U.S.Dist.LEXIS 29044, *16 (M.D.Fla. 2004) (it was "not so speculative to find that profits earned by the Defendants in building and selling infringing homes can be attributed, at least in part, to the Plaintiff's copyrighted plans[.]").

Defendants retaliated against Lanard as a result of their infringing activities.  Specifically, once Lanard asserted its intellectual property rights, defendants ceased all business with Lanard and informed their toy buyers to stop all buying goods from Lanard.  Though TRU claims that it never gave such an instruction to its toy buyers (Mot., p. 10, ¶ 39), testimony by some of its employees shows REDACTED Cosgrove Depo., pp. 49:16-50:14 (REDACTED ) Likewise, Dolgencorp, admits it retaliated against Lanard.  Mot., p. 10, ¶ 40.

Thus, both TRU and Dolgencorp admit they cut business ties from Lanard as a result of Lanard merely asserting its legally valid intellectual property rights.  As a result, Lanard lost indirect profits from sales of products other than the Lanard Chalk Holder as a direct and proximate result of Defendants' infringement.  Lanard is entitled to present its damages claim at trial.

## CONCLUSION

Based on the foregoing authority and argument, Lanard respectfully requests that the Court deny Defendants' Motion in its entirety on the grounds stated herein.

Respectfully submitted this 7th day of August, 2017.

|  | **_/s/ Richard P. Sybert_** |
|---|---|
|  | Richard P. Sybert |
|  | **Admitted _Pro Hac Vice_** |
|  | Reid E. Dammann |
|  | **Admitted _Pro Hac Vice_** |
|  | GORDON & REES |
|  |   SCULLY MANSUKHANI |
|  | 101 W. Broadway, Suite 2000 |
|  | San Diego, CA 92101 |
|  | Telephone: (619) 696-6700 |
|  | Facsimile: (619) 696-7124 |
|  | rsybert@gordonrees.com |
|  | rdammann@gordonrees.com |
|  |  |
|  | Eric R. Thompson |
|  | Florida Bar No. 888931 |
|  | Robin Taylor Symons |
|  | Florida Bar No. 356832 |
|  | GORDON & REES |
|  |   SCULLY MANSUKHANI |
|  | Miami Tower |
|  | 100 S.E. Second Street |
|  | Suite 3900 |
|  | Miami, FL  33131 |
|  | Telephone: (305) 428-5300 |
|  | Facsimile:  (877) 644-6209 |
|  | rsymons@gordonrees.com |
|  | ethompson@gordonrees.com |
|  |  |
|  | **_Attorneys for Plaintiff_** |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 7, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that a true and correct copy of the foregoing was served by electronic notice on all counsel or parties of record on the Service List below.

<u>*s/  Eric R. Thompson*</u>
Eric R. Thompson
Florida Bar No. 888931

<u>**Service List**</u>
Fred Page
Holland & Knight
50 North Laura Street
Suite 3900
Jacksonville, Florida 32202
***Counsel for Defendants***

Lewis Anten
Ivy Choderker
Lewis Anten, P.C.
16830 Ventura Boulevard, Suite 236
Encino, California 91436
***Counsel for Defendants***