## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

LANARD TOYS LIMITED,

     Plaintiff,

v.                                    Case No. 3:15-cv-00849-MMH-PDB

TOYS "R" US–DELAWARE, INC.,
DOLGENCORP, LLC, and JA-RU, INC.,

     Defendants.

_____/

### DEFENDANTS' RENEWED MOTION FOR ATTORNEYS' FEES AND MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 54(b)(2), Local Rule 4.18, Florida Statute §501.2105, 17 U.S.C. § 505, 35 U.S.C. §285, and 15 U.S.C. §1117(a), and this Court's November 2, 2020 Order (D.E. 517), Defendants, Ja-Ru, Inc. ("Ja-Ru"), Dolgencorp, LLC ("Dolgencorp"), and Toys "R" Us-Delaware, Inc. ("TRU"), hereby respectfully move for an award of attorneys' fees against Plaintiff, Lanard Toys Limited ("Lanard").[1] Defendants have been completely victorious in this case, and this Court's summary judgment order, which the Federal Circuit recently affirmed in full, demonstrates the lack of merit of Plaintiff's claims.

The Defendants now seek to recover **$2,492,765** in fees defending the claims through the

---

[1] Defendants have standing to bring this Motion, even though Ja-Ru's insurance company has paid the bulk of the fees. Fla. Stat. §627.4136(2) ("any insurer who pays any taxable costs or attorney's fees which would be recoverable by the insured but for the fact that such costs or fees were paid by the insurer shall be considered a party for the purpose of recovering such fees or costs."); *Schafler v. Fairway Park Condo. Ass'n*, 147 F. App'x 113, 113-114 (11th Cir. 2005) (affirming award of attorneys' fees to the prevailing party even though the fees had already been paid by that party's insurance company, rejecting the losing party's argument that the prevailing party lacked standing); *Arnold v. Heritage Enters. of St. Lucie, LLC*, No. 13-14447-CIV, 2018 U.S. Dist. LEXIS 13341, at *10-12 (S.D. Fla. Jan. 25, 2018) (recommending grant of attorneys' fees to prevailing party and rejecting losing party's argument that attorneys' fees were not appropriate because the prevailing party's fees were paid by insurers) ("the assertion that a defendant is not entitled to attorneys' fees when its insurer is responsible for retaining and paying defense counsel was specifically considered and rejected in *El-Shahawy v. Lee*, No. 95-269, 1999 U.S. Dist. LEXIS 6745, 1999 WL 33919538, at *10 (M.D. Fla. Apr. 23 1999) (*aff'd* 208 F.3d 1009 (11th Cir. 2000)").

appeal, comprised of **$2,077,924** in fees in this Court, and **$414,841** in fees in the Federal Circuit,[2] and submit in support Declarations from the lead attorney of each defense firm.[3]

## I.      INTRODUCTION

No defendant should have to incur millions of dollars in fees defending an intellectual property case in which the total gross profit from the sale of the allegedly infringing item was less than $90,000, and there were no ongoing infringements to stop. Yet, this is exactly what happened in this case before the Court upheld the positions argued by Defendants to Plaintiff from the outset of this action. The questions for this Motion are now "why" the fees in this action are so far out of line with the underlying sales and any possible damages. The reasons for that disconnect are what makes this case stand out as an exceptional case for fee purposes.

Minor sales do not typically cause damages sufficient to justify major litigation, but this case was never just about Defendants' sales of the accused Ja-Ru chalk holder. Plaintiff paid its damage expert alone much more than the Defendants' $90,000 in gross profits from the sale of the Ja-Ru chalk holder. Instead, this case was always about Plaintiff's anger and personal vendetta against Ja-Ru, and Plaintiff's attempt to drive a wedge between Ja-Ru and two of its large retail customers, send a message to the toy industry, and use the case to try to coerce future purchases from TRU and Dolgencorp. Because of this approach, Plaintiff aggressively pursued claims that had questionable or no merit, filed initially in a distant forum and sought a needless preliminary injunction, fought transfer of the action, sought discovery disproportionate to the needs of the case, manufactured frivolous and unsupported damage claims of "millions" of dollars, made baseless

---

[2] Defendants have removed from the fee request any fees associated with (1) Plaintiff's counsel's conflict of interest and the Motion to Disqualify (*see* D.E.176, 177, 185-187, 197), (2) the stay for TRU's bankruptcy, and (3) the post-appeal mediation ordered by the Court. Defendants have also reduced the final fee request by 5% to ensure the reasonableness of the request and negate any billing or accounting issues and/or duplication of tasks by multiple firms.
[3] Filed simultaneously herewith are the Declarations of Lewis Anten of Lewis Anten, P.C., the Declaration of Frederick Page of Holland & Knight LLP, and the Declaration of Brian Socolow of Loeb & Loeb. Also filed herewith is the Declaration of Defendants' fee expert, Thomas E. Bishop.

"serial infringer" accusations to advance treble and exemplary damage claims, claimed an expectation of a $10-$20 million punitive damage award when Defendants sought to open settlement discussions, fought every issue to the bitter end with a well-documented lack of civility, and generally tried to make defending this matter as expensive and difficult as possible.

This case ended on the eve of an extended trial after substantial work by all parties. In preparing the pretrial statement for what should have been a relatively short trial, Plaintiff listed twenty (20) witnesses it intended to call at trial, including four (4) experts, and demanded that Ja-Ru bring over Hong Kong witnesses of a non-party affiliate (Ja-Ru(HK)) under the threat of seeking adverse inferences if they did not appear. Plaintiff's approach throughout this action forced Defendants to incur fees of over $2.5 million, or more than *two thousand five hundred percent* (2,500%) of the profits actually at issue from the alleged infringements, not to mention the value of time lost defending the action. TRU and Dolgencorp even made early Rule 68 offers that were greater than their actual profits from the sale of the Ja-Ru chalk holder. Plaintiff was unwilling to consider these offers and pushed forward with its claims "full speed ahead." Given this history, Defendants submit that this case is a perfect example of a case that stands out as "exceptional" because of the Lanard's unreasonable conduct.  Each of the statutes sued upon strongly supports awarding fees to Defendants under these circumstances.

## II.      HISTORY OF LITIGATION

It is not particularly surprising that two toy companies ended up in a lawsuit over whether one had permissibly used an existing toy of the other as a "market reference" or impermissibly copied the toy's proprietary elements. Such disputes are not entirely uncommon in the toy industry and are usually resolved quickly between the involved designers and manufacturers, with neither party wanting to involve retail customers as everyone is after the same customers. What is extraordinary about this case, however, is that even though the dispute involved minimal sales,

Plaintiff (1) pursued its claims against both Ja-Ru and its retail customers, TRU and Dolgencorp, for six years in a manner that had no rational relation to the amount of damages potentially caused by the alleged infringements, (2) disclosed four experts and paid them multiples of the profits of the Defendants at issue, (3) rejected Rule 68 settlement offers from the retailers for more than their actual profits and injunctive relief,[4] (4) disputed simple matters with a particular lack of civility, and (5) made baseless "serial infringer" accusations against the Defendants as threats to support treble, enhanced and even punitive damages in the matter. And despite the limited sales involved, Plaintiff deposed 18 witnesses in Hong Kong, New Jersey, California, Florida and elsewhere.

Defendants were unwilling passengers on this ride and tried to find ways off many times, including through various settlement overtures.[5] The Plaintiff's demands in response were extreme, including early demands of $1.5 million for all Defendants, and later "millions" to settle all claims or $1 million to settle the "non-intentional claims only" and still proceed to trial on the intentional claims. *See* Comp. Exh. 2. Plaintiff even contacted Ja-Ru's insurer directly after the last efforts and indicated it expected a "$10-$20 million" punitive damage award. *Id.* Defendants were left with no option but to incur the defense costs on the disproportionate discovery demands.

After losing the summary judgment, Plaintiff still refused to entertain the possibility of settling the case or voluntarily submitting the matter to mediation (either through or independent of the Federal Circuit's Appellate Mediation Program and Rule 33.1 of the Federal Circuit), forcing the parties to incur more fees on a meritless appeal. *See* April 25, 2019 email exchange, Exh. 3 hereto. After losing on appeal and being directed by this Court to confer on Defendants'

---

[4] Defendants' Rule 68 Offers were for $20,000 each and are attached as Exhibit 1. Plaintiff's expert calculated TRU's gross profits at only $14,076 and Dolgencorp's at $20,493 before overhead and other indirect expenses were considered. Kerr Report, 302-17 at ¶¶47-48, Exh. 6.1, 6.2. D.E. S-319 has an unredacted copy of the Kerr Report.
[5] All of the mentioned overtures were made outside of mediation and are offered herein for purposes permitted under Federal Rule of Evidence 408(b). *See, e.g., Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 211 (5th Cir. 1998) (considering plaintiffs refusal to accept settlement offer as support for awarding defendant fees). Defendants have not, and will not unless ordered, disclose any content from any of the mediation conferences.

pending motions for attorneys' fees and costs, Plaintiff did so in the same unreasonable and "make them pay" attitude with which it approached this entire case. In one recent communication to Defendants' counsel, Plaintiff compared the undersigned's fee negotiations to one of Stalin's propaganda techniques known as the "Big Lie" (a term actually coined by Hitler). The dispute that led to the "Big Lie" reference was whether Plaintiff had made an offer to reimburse any fees to the Defendants—which they had not at that time—or were otherwise willing to respond to the current offers to negotiate on rate and reasonableness issues—which they were not at that time. *See August 3* 2020 email exchange, Exh. 4 hereto.

From the outset of this matter, Plaintiff sought discovery disproportionate to the real amount in controversy. When challenged, Plaintiff defended its discovery requests with representations to the Court that this case involved "millions" of dollars in damages; however, when Plaintiff's damages were ultimately disclosed by its expert, Plaintiff's expert confirmed that Defendants only had less than $90,000 in profits. (D.E. 302-17 at ¶¶ 47-49). The so-called "millions" of damages turned out to be a claim for lost sales by Plaintiff to TRU and Dolgencorp— the same customers that Plaintiff was suing—for products unrelated to the chalk holder in the suit, a theory which Plaintiff's expert did not try to support and admitted he had never heard of it.[6] Instead, the expert distanced himself from the theory by indicating he had been "asked to assume that TRU and/or Dolgencorp improperly stopped doing business with Lanard" and then limiting his opinions to the value of those sales based on this assumption. (*Id.* at ¶33-40). Plaintiff contended these lost sales occurred when TRU and Dolgencorp stopped purchasing these "other" products from Plaintiff after Plaintiff sued them. Plaintiff ignored that such a damage claim is both

---

[6] *See* Deposition of William Kerr, D.E. S-359 at 11:17-12:23, 29:6-17. *See also K*err, William:  *Assets and Finances: Calculating Intellectual Property Damages* (with Richard B. Troxel), West Publishing, Thomson-Reuters, Rochester NY (10th Ed. 2015; previous editions 2006-2014).

contrary to intellectual property law[7] and frivolous from a duty and causation perspective.

Plaintiff also failed to meaningfully consider this Court's well-reasoned, 75-page summary judgment Order when taking the appeal. Instead, Plaintiff pressed-on with its appeal, in which it presented no challenge to this Court's factual findings and raised no new issues. (*See, e.g.,* Plaintiff's Opening Brief, Exh. 5 hereto at 35, 38-41).

In this manner, Plaintiff prolonged this already-protracted litigation, continued its colorful attacks on Ja-Ru in its Briefs and further increased defense costs. The fact that the Federal Circuit's precedential Opinion found no error with any of this Court's analysis, even finding with respect to this Court's claim construction analysis that it followed the Federal Circuit's directives "to a tee," and that Plaintiff tried to "side-track the infringement analysis," highlights the objective unreasonableness of Plaintiff's appeal (D.E. 500 at 6, 10-11). The only effect of the appeal was the continuation of this vexatious litigation to the bitter end.[8]

Overall, Plaintiff's litigation tactics were neither logical nor expected in a matter involving such little sales. Plaintiff's overly aggressive approach to this matter, pursuit of frivolous damage claims and disproportionate discovery, unreasonably contentious litigation conduct, and pursuit of meritless claims in this Court and on appeal support an award of Defendants' fees.

## III.   PLAINTIFF'S BAD FAITH BEHIND SUIT AND UNREASONABLE TACTICS

Much about Plaintiff's conduct in this suit made no economic sense, and the six-year history of this litigation demonstrates that Plaintiff did not pursue this action in good faith merely to enforce and protect intellectual property rights. Instead, Plaintiff used the case to wage a

---

[7] *See* D.E. 438 at 5-17.

[8] *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 13-1407, 2015 U.S. App. LEXIS 16055, at *3 (10th Cir. May 26, 2015) (awarding appellate fees) ("[O]ne who assumes a never-say-die attitude and drags [a] dispute through the court system without an objectively reasonable belief it will prevail does so at the risk of being sanctioned.") (quoting *DMA Int'l., Inc. v. Qwest Commc'ns Int'l, Inc.*, 585 F.3d 1341, 1346 (10th Cir. 2009) (internal quotation marks omitted)).

vendetta against Ja-Ru, punish Ja-Ru, and send a message to the toy industry that "if you dare to 'copy' a Lanard product, this is what you will face." Plaintiff's Managing Director admitted he was irate with Ja-Ru when he saw Ja-Ru's chalk holder. (*See* Deposition of James Hesterberg, July 6, 2017, Doc. S-357, at 34:10-11). Plaintiff also believed that Ja-Ru had years earlier copied another one of its toys, a "Power Toss Water Balloon Launcher," which Plaintiff argued evidenced that Ja-Ru was a "serial infringer," even though Lanard had no intellectual property rights to the item.[9] Trying to make litigation onerous to punish a competitor supports reimbursing defense fees.

But Plaintiff also shot itself in the foot by suing its own customers, TRU and Dolgencorp, for very minor sales and profits, which decision was the ultimate cause of over 90% of the compensatory damages Plaintiff claimed in this case. The only rational explanation for naming the retailers is that their inclusion was intended to create tension between Ja-Ru and its customers and give Plaintiff leverage to coerce the retailers to buy more of its products going forward. Plaintiff had done this in a prior suit with Dolgencorp, which Dolgencorp believed was meritless but settled by agreeing to purchase a high volume of product from Plaintiff in future years to avoid the burdens of litigation. (D.E. 302 at p. 10, ¶41 and p. 34, and D.E. 302-49 at ¶5; D.E. 427 at p. 5).

Regardless of Plaintiff's actual motivation, Plaintiff's litigation tactics were on display throughout this case. For example, Plaintiff first initiated the action in an inconvenient forum, fought any transfer and sought a needless preliminary injunction (the motion was denied).[10] (*See*

---

[9] Deposition of Russell Selevan, D.E. 356 at 72:16-74:5; Expert Rebuttal Report of Larry Myer, D.E. 315-2 at 10.

[10] Throughout this case, Plaintiff has cited the transcript of the hearing on Plaintiff's Motion for Preliminary Injunction held by the predecessor court. However, this Court recognized in its summary judgment Order that Plaintiff's reliance on the comments of the predecessor court that presided over the preliminary injunction hearing were misplaced because (1) the judge's references to similarities of the parties' respective designs were based, at least in part, on aspects of Plaintiff's design that are not protected by the patent-in-suit and (2) the judge denied the request of preliminary injunction "based on a lack of irreparable harm, such that it simply assumed without deciding that Plaintiff had established a substantial likelihood of success on infringement." [D.E. 468 at 44, n.20]. Thus, the predecessor judge did not indicate the strength of Plaintiff's claims, validate Plaintiff's claims, or indicate that there was *prima facie* evidence of a sustainable case, as Plaintiff would like this Court to believe.

D.E. 76, 87). And as soon as discovery opened, Plaintiff's "shock and awe" discovery tactics commenced by unilaterally noticing 17 depositions (D.E. 135, Transcript of Nov. 9, 2015 hearing, at p. 5), and serving 61 interrogatories and over 149 document requests.[11] (D.E. 141, 141-1).

Defendants requested an immediate hearing given Plaintiff's conduct, resulting in the Court admonishing Plaintiff and limiting Plaintiff to ten depositions. (D.E. 135 at 50). But that did not stop Plaintiff, who continued to unilaterally notice depositions, including by serving subpoenas and additional document requests on counsel for witnesses and demanding compliance under threat of sanctions. (*See* D.E. 214, 214-1 through 214-8; D.E. 458-2). These tactics and Plaintiff's less than civil responses when challenged on them unnecessarily increased the expense of even simple tasks in this case. (*See, e.g.,* Jan. 24, 2016, email exchange between counsel for the parties, Exh. 6 hereto; D.E. 214-7; 242-3; 458-2).[12] Plaintiff's discovery tactics continued throughout the matter, and Plaintiff eventually took 18 depositions, even as Defendants objected to the proportionality of those efforts. *See, e.g.*, D.E. 149 at pp. 3-7; D.E. 214 at pp. 11, 15-16.

When challenged on the proportionality of the discovery sought, Plaintiff consistently claimed to the Court that the case involved millions of dollars in damages, plus claims for treble and punitive damages. (D.E. 222 at p. 4; D.E. 224 at p. 4; D.E. 135 at p. 14:11-21; D.E. 157 at pp.

---

[11] Plaintiff later served 23 additional interrogatories and 34 additional production requests. (D.E. 288-1)

[12] Other examples of issues disputed through multiple emails and at times include the location of the mediation (Plaintiff demanded it in California or Miami, the location of the pretrial meeting of counsel (Plaintiff demanded Miami or Tampa), the location of Ja-Ru's witness depositions (Plaintiff initially demanded Hong Kong witnesses come to Jacksonville), the number of depositions (Plaintiff wanted more than 10), the manner in which depositions were counted when witnesses appeared both individually and as 30(b)(6) designees, the number of interrogatories from the Defendants (Plaintiff refused to answer more than 25 from all three, rather than 25 per party), and many more such issues. Defendants will spare the Court the numerous emails on these topics. Defendants still cooperated with Plaintiff – agreeing to take Plaintiff's corporate representative's deposition in Hong Kong, where he lives (rather than the forum where the case was pending) and making non-party Ja-Ru (HK)'s witnesses in Hong Kong available without need for subpoena during that same trip to keep fees and costs down for both parties. *See* Anten Dec. at ¶ 15.a. Defendant even offered to move the pretrial conference to Miami when travel plans changed and it became a potential option, but Plaintiff's counsel declined as his travel plans were set (and Defendant had eased the burden of counsel's travel by permitting the inspection of digital images rather than physical exhibits). *See* Page Dec. at ¶ 13.b.

52-54). But that too proved disingenuous, as Plaintiff had to manufacture damages for lost sales of products unrelated to its chalk holder to justify its position (of Plaintiff's approximately $1.7 million in claimed damages through 2016, over $1.5 million was for these unrelated products, and Plaintiff further claimed over $500,000 per year after 2016 in additional damages for those same unrelated products).[13] The causation theory for these "unrelated product" damages was objectively meritless and was based on TRU and Dolgencorp not buying product from Plaintiff *after* Plaintiff sued them (which was the second time Plaintiff had sued Dolgencorp). There is no support under any intellectual property laws for a plaintiff to recover such self-inflicted damages that were causally remote from any statutory violation.[14] Nevertheless, Plaintiff still fought for those damages to the bitter end and litigated as if this case were actually worth the $20+ million Plaintiff claimed it expected to recover.[15]

Plaintiff's various unfair competition claims were also without merit, and Plaintiff never sought to develop them. The Court found the evidence "woefully inadequate" on the critical "secondary meaning" element and the Federal Circuit agreed. Yet, Plaintiff pushed forward on these claims through Motions to Dismiss, Motions for Summary Judgment, and Motions-in-Limine and relied on these claims to support its delusional punitive damage claims.

Attached as Exhibit 7 is a list of the substantive Motions filed in this matter. The list provides insight into the hurdles faced by the Defendants as the vast majority of the Motions were

---

[13] Given Plaintiff's claims for additional damages on a yearly basis of over $500,000 for future lost sales, the actual percentage of Plaintiff's alleged damages that were attributable to Plaintiff's decision to sue TRU and Dolgencorp could be as high as 99%. *See* Kerr Report, 302-17 at ¶¶ 2 and Exh. 4.1.

[14] Defendants never contended that Plaintiff would have been limited to Defendants' profits as a measure of damages had it prevailed. However, there is no case that supports Plaintiff's novel "retaliatory" or unrelated product theory of damages. Recovery of "indirect profits" in a copyright infringement action requires that such profits be non-speculative and that there be evidence proving a direct, causal connection to the infringing conduct. *See* e.g. *Mackie v. Rieser*, 296 F.3d 909, 914-916 (9th Cir. 2002) (precluding recovery of indirect profits in copyright action where there was no proffer of non-speculative evidence proving a causal connection between the alleged infringement of artwork used in a promotional campaign for a symphony and profits generated from the symphony).

[15] *See* Kerr Report, D.E. 302-17 at ¶¶ 2-3, 33-45 (D.E. S-319). *See also*, D.E. 455 at 8-13.

the result of Plaintiff's unreasonable tactics. Defendants have limited this fee application by removing fees associated with the Motion to Disqualify Plaintiff's Counsel (D.E. 176), the Motion to Stay due to TRU's bankruptcy (D.E. 390), and the post-appeal mediation ordered by the Court for the parties to attempt to resolve Defendants' fee and costs motions (D.E. 503).

## IV.    STATUTORY BASES FOR FEE AWARDS

All the statutes in this case support awarding fees to prevailing parties. While any award is discretionary, cases suggest that exercising that discretion is appropriate where a plaintiff has pursued unsupported components of claims from a legal or factual perspective, or litigated unreasonably or in bad faith. Both factors are present here. In addition to awarding attorneys' fees to a party who has prevailed in the district court pursuant to these statutes, a district court may also properly determine a prevailing party's request for appellate attorneys' fees. *See e.g. Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1380 (Fed. Cir. 2017).

### A.    FDUTPA FEES

The question of FDUTPA fees is governed by Florida law. *Chow v. Chau*, 640 Fed.Appx. 834 (11th Cir. 2015). Under Florida law, where interrelated claims are asserted, attorney time incurred relating to conduct that is alleged as a "deceptive" or "unfair" trade practice is recoverable under FDUTPA without need for apportionment. §501.2105, Fla. Stat. (2014); *Diamond Aircraft Industries Inc. v. Horowitch*, 107 So. 3d 362, 370 (Fla. 2013) (holding fees should be awarded in FDUTPA matters for all fees unless the fees are "clearly unrelated" to an alleged FDUTPA violation); *Alhassid v. Nation Star Mortg., LLC*, 688 Fed.Appx. 753 (11th Cir. 2017) ("The fees recoverable are those devoted to the entire action, not merely the FDUTPA claim, "unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501.") (citations omitted).

While there have been several federal district court opinions that have refused to award

fees under FDUTPA when a FDUTPA claim is deemed a "tag-along" or "derivative" claim to other asserted claims, or when there is no showing that separate time and fees were incurred as a result of the FDUTPA claims being asserted, Florida law does not support such rules. *See Diamond Aircraft*, 107 So. 3d at 370 (discussing with approval *Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. 2d 266, 271 (Fla. 1st DCA 1985) as "contemplating recovery for the hours an attorney dedicated to litigating a civil action involving a FDUTPA claim 'unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of Chapter 501.' "). *See also Procaps S.A. v. Patheon Inc.*, 2017 WL 3536917, at *19-*29 (S.D. Fla. August 17, 2017) (concluding that defendant was entitled to fees under FDUTPA for the entire action in a bitter 4.5 year litigation after rejecting cases where district courts had denied fees after finding that FDUTPA claims were derivative or tag-along claims).

Here, Plaintiff claimed that Defendants' acts of reproducing, selling, and/or using the "overall design" of the chalk holder in commerce was a violation of both trade dress law and FDUTPA as it deceived and confused the consuming public. (D.E. 103 ¶¶ 31-33, 49, 55). The same acts were also alleged as copyright and design patent infringements. (*Id*., ¶¶ 37, 43). In opposing summary judgment, Plaintiff also claimed its FDUTPA and unfair competition claims were "predicated on Defendants' indisputable infringement outlined in detail above," thereby intertwining the legal issues of the copyright and patent infringement claims with FDUTPA. (D.E. 321 at pg. 24). And whether any of the alleged misconduct comprised a willful violation of Plaintiff's rights was raised in all the claims based on the exact same evidence.

Defendants acknowledge that FDUTPA fees are no longer mandatory and any award is discretionary based on the following nonexclusive list of factors:

(1) the scope and history of the litigation;
(2) the ability of the opposing party to satisfy an award of fees;

(3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
(4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;
(5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
(6) whether the defense raised a defense mainly to frustrate or stall; [and]
(7) whether the claim brought was to resolve a significant legal question under FDUTPA.

*Altair S.R.L. v. His Wind, LLC*, 2016 WL 1728931, at *1 (M.D. Fla. April 29, 2016). Factors 2, 6 and 7 are neutral here, while factors 1, 3, 4 and 5 support awarding fees in this case.

First, as discussed, *infra*, Plaintiff's anger towards Ja-Ru, abuse of process to coerce sales from TRU and Dolgencorp, and the unreasonable and disproportionate manner in which Plaintiff pursued its claims, demonstrate the expense of this litigation was greatly augmented by Plaintiff's bad faith. This explains the insanity of the parties incurring millions in fees over minor sales. Nor is this is a typical situation where parties do not agree on the amount at issue—there is no support legally or factually for over 90% of Plaintiff's claimed damages.

Next, while frivolousness of a claim is a factor to consider when analyzing fees, it is not a requirement. *Procaps S.A.*, 2017 WL 3536917, at *17. *See Prato v. Hacienda Del Mar, LLC*, No. 2:08-cv-883, 2011 WL 3875373, at *2 (M.D. Fla. August 31, 2011) (awarding defendant FDUTPA fees where claims were not frivolous). Here, Plaintiff pursued frivolous damages to justify disproportionate discovery greater than the real needs of the case and claimed these damages as part of its FDUTPA claim without any legal support. Plaintiff also engaged in grossly unreasonable conduct with respect to the liability components of its FDUTPA and related unfair competition claims that significantly increased defense fees. For example, in responding to Defendants' Motion to Dismiss[16] and throughout discovery, Plaintiff maintained it had trade dress in its product

---

[16] Defendants' Motion to Dismiss Plaintiff's trade dress infringement and unfair competition claims was denied without prejudice shortly before the summary judgment filing deadline with the expectation the issues would be

packaging, even as Plaintiff refused to describe it. *See* Plaintiff's Response to Motion to Dismiss (D.E. 116 at 3-5, 9-10, 12; Plaintiff's Response to Interrogatory No. 10; D.E. 302 at 10, ¶37; D.E. 302-36; Plaintiff's Response to Request for Admission No. 2, attached as Exhibit 8). Plaintiff's expert admitted that Plaintiff's packaging was "just basic," there was nothing different about Plaintiff's packaging from "thousands of other items," and that Ja-Ru's packaging was not a copy of Plaintiff's. (Deposition of Larry Myer, D.E. 345 at 66:19-68:2, 99:15-99:23, and 101:3-18). But it was not until Plaintiff responded to Defendants' Motion for Summary Judgment that it dropped its packaging claim (D.E. 322 at p. 22), but this was after forcing Defendants to defend the "packaging" claim in pleadings, motions, discovery, and expert disclosures.[17]

Plaintiff then limited its trade dress to the "overall appearance" of its chalk holder, but never did anything to support this alleged trade dress. No surveys were taken, no evidence of customer confusion was offered, and Plaintiff never attempted to address how its claim could survive its private labeling of its product for others, including TRU.[18] In the end, Plaintiff's evidence was deemed woefully inadequate by this Court. (D.E. 468 at 66).

Despite this lack of support, Plaintiff pursued its FDUTPA claim for nearly six years, including the "unrelated product" damages that have no connection to any of the traditional FDUTPA requirements for damages such as "customer confusion," "customer injury" or "deceptive conduct." Given that the "customers" at issue for the unrelated product damages were TRU and Dolgencorp, it is absurd to suggest they were confused, deceived or coerced by a

---

addressed in the summary judgment briefings. [D.E. 263]. Thus, the denial of the Motion to Dismiss did not represent a substantive rejection by this Court of Defendants' challenges to Plaintiff's claims.

[17] The trade dress packaging claim also never made any sense against TRU, which owned its own packaging and had Lanard package the "Chalk Pencils" under TRU's own proprietary brand.

[18] Plaintiff's repeated assertions of "five years of uninterrupted use" to prove secondary meaning was disingenuous (at best) as that type of use must occur before Ja-Ru launched its product. This is another example of pursuing a claim that is factually unsupported under clear law, which Lanard knew about as it is the same law Lanard argued in another case when it was the defendant. *General Motors Corp. v. Lanard Toys, Ltd.*, 468 F.3d 405, 418-419 (6th Cir. 2006).

FDUTPA violation into not buying product from Plaintiff. The duty and causation elements for such damages on the FDUTPA claim were never present.

Undeterred by this Court's finding of a "woeful" lack of support for its claim, Plaintiff persisted with its trade dress claim on appeal. Unsurprisingly, the Federal Circuit agreed with this Court and found that Plaintiff did not identify any evidence as to how its customers, regardless of their identity, view the Lanard Chalk Pencil. (D. E. 500 at 14-15.). Plaintiff's appeal of its trade dress claim was *per se* objectively unreasonable.

Plaintiff's conduct – pursing meritless FDUTPA claims and damages in bad faith and in an unreasonable manner – supports a significant fee award. Such an award would also have a deterrent effect on Plaintiff and other claimants from asserting meritless FDUTPA claims. Florida law is also clear that a plaintiff may not assert a FDUTPA claim, seek to enjoy the potential benefits of the statute, and then avoid the consequences of losing the claim by arguing FDUTPA's fee provision should not apply. Here, the only relevance of FDUTPA was to support an expansive fee claim for Plaintiff (if it won).  This works both ways as asserting a FDUTPA claim is not a "heads I win, tails you lose" proposition. *See Diamond Aircraft*, 107 So.3d at 370 (citations omitted).

Additionally, the fact that Ja-Ru's insurer paid the bulk of the fees does not prevent a fee award on the Plaintiff's claims in this case.  See fn. 1, *supra*.  Ja-Ru and its insurer still stand to benefit from the fee award. The instant case is distinguishable from *Alhassid v. Nation Star Mortg., LLC*, 767 F. App'x 865 (11th Cir. 2019), which held that fees were not awardable under FDUTPA on the effort to obtain the fees for the actual FDUTPA claim (which were granted) because any "fees on fees" would inure only to the benefit of the plaintiff's attorneys, who had agreed to handle the fee recovery claim on a contingency basis. *Id.* at 867-868.

**B.    COPYRIGHT FEES**

The Copyright Act makes an award of fees to a prevailing defendant a matter of discretion

for the Court. 17 U.S.C. §505. However, in this Circuit strong policies favor awarding fees to prevailing parties—plaintiffs and defendants. *Cable/Home Comm'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 853 (11th Cir. 1990) ("the fee award should be granted to the prevailing party.").[19] "'In copyright cases, although attorneys' fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely.'" *Prof'l Led Lighting, Ltd. v. Aadyn Tech., LLC*, 88 F. Supp. 3d 1356, 1376 (S.D. Fla. 2015) (quoting *Arista Records, Inc. v. Beker Enters.*, 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003)); *see also Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1300 (S.D. Fla. 2015). The key consideration is whether an award would further the objectives of the Copyright Act. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). That standard is applied on an "evenhanded" basis to prevailing defendants and prevailing plaintiffs. *Id.*

One important objective of the Copyright Act is to encourage defendants to advance meritorious defenses to assist in clearly demarcating the boundaries copyright law. *Id.* at 527.

> The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, i.e., by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure "that the boundaries of copyright law [are] demarcated as clearly as possible" in order to maximize the public exposure to valuable works.

*Mitek Holdings, Inc. v. Arce Engineering Co., Inc.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 526-27). Without defendants willing to test their beliefs, aggressive copyright owners will define their own boundaries of copyright protection.[20]

Other non-exclusive factors to consider when analyzing fees under §505 include

---

[19] *See also Indyne Inc. v. Abacus Tech. Corp.*, 2013 WL 11312471, at *11-*12 (M.D. Fla. December 6, 2013); *Assessment Tech. of Wisc., LLC v. Wiredata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) ("[w]hen the prevailing party is the defendant, who by definition receives not a small award but *no award*, the presumption in favor of awarding fees is very strong."); *Diamond Star Building Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994) (same).

[20] Since an award of fees may be used to deter infringement as recognized by the Eleventh Circuit in *Mitek*, 198 F.3d at 842-42, so too may an award be used to deter the filing of infringement suits over primarily functional articles and public domain imagery. An "evenhanded" approach to awarding fees requires such an analysis. *See Fogerty*, 510 U.S. at 521 n.8*; Sherry Manufacturing Co. v. Towel King of Florida, Inc.*, 822 F.2d 1031, 1034 n.3 (11th Cir. 1987).

"frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534, n. 19 (quotation marks omitted). The objective unreasonableness of a litigant's conduct may be weighted more heavily by a court than the other factors in the analysis, but is not controlling. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988-89 (2016). As discussed below, each factor supports awarding fees.

    1.    **Frivolity:**  Even  though  Plaintiff's  claims  were  unsupported,  Defendants acknowledge that Plaintiff's copyright claim was not entirely frivolous. However, frivolity of an entire claim is not required. "[A] showing of bad faith or frivolity is not a requirement of the grant of fees. Rather, the only precondition to an award of fees is that the party receiving the fee be the 'prevailing party' and that the fees be reasonable." *Mitek*, 198 F.3d at 842 (*citing Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 832 (11th Cir 1982)). *See Cable/Home*, 902 F.2d at 853 ("frivolity is not a precondition to awarding attorneys' fees.").

    In this case, Plaintiff did pursue frivolous positions, such as its damage claims and "serial infringer" accusations, and relied on those positions to unreasonably increase the cost of this litigation. Plaintiff based its "serial infringer" accusations on unproven and disputed allegations from third parties, and claimed such allegations were evidence of "prior bad acts" under Federal Rule of Evidence 404(b) (contrary to Eleventh Circuit precedent), resulting in multiple unnecessary discovery hearings, disputes and motion practice.[21] The irony of Plaintiff's "serial infringer" claims is further evidenced by the fact that Ja-Ru, which has been in the toy business for 75 years, has never had an infringement judgment against it, while Plaintiff has had multiple judgments of infringement entered against it. The inapplicable authority Plaintiff relied upon to

---

[21] *See, e.g., United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000) ("to be admissible [under Rule 404(b)], the prior act must be proved sufficiently to permit a jury determination that the defendant committed the act.").

support its "serial infringer" arguments demonstrates the frivolous nature of its claim. *See Tinnus Enterprises LLC v. Telebrands Corp.,* No. 6:15-cv-00551 RWS-JDL, 2016 U.S. Dist. LEXIS 86719, at *8 (E.D. Tex. 2016) (finding potentially relevant allegations that manufacturer had been sued in 50 prior infringement cases, had been referred to as the "knock-off king," "a knock-off artist par excellence" and "one of the most shameless copycats" in various articles, and had its status as an "accredited business" revoked due to 1,397 complaints to the Better Business Bureau in preceding three years). Nothing close to the facts in *Tinnus* existed for any Defendant in this case. Pursuit of a frivolous position to colorfully smear adversaries and increase the burden of litigation supports awarding fees.

So too was Plaintiff's "unrelated product" damage claim a frivolous claim. There is simply no authority or logic to support awarding damages against a competitor such as Ja-Ru when a copyright holder sues its own customers for infringement of one product and they stop buying unrelated products from the holder as a result.

2.    **Motivation:** As discussed *infra,* Plaintiff has not pursued this suit in good faith, regardless of whether the motivation behind this suit was to try to punish Ja-Ru, interfere with Ja-Ru's relationship with its retailer clients, send a message to the toy industry, or coerce future purchase orders from TRU and Dolgencorp. There is no possible argument that Plaintiff's efforts were limited to protecting and enforcing what it believed were its rights as Plaintiff's rejection of TRU's and Dolgencorp's Rule 68 offers demonstrates. Accepting those offers would have protected the alleged rights in full with respect to those parties. *See* Exh. 1 hereto.

3.    **Objective unreasonableness (on factual or legal components of case):**

Clearly, something unreasonable happened in this case. Millions of dollars of fees should not be incurred over minor sales. Defendants submit that Plaintiff's bad faith and unreasonable

conduct was the driving force behind this outcome as Plaintiff's conduct demonstrates. *See* Exh. 1 and Comp. Exh. 2 hereto. No reasonable person could review the claims in this case, demand millions to settle and expect a $10-$20 million punitive award.

In addressing whether components of a party's case are objectively unreasonable, one factor to consider is "the clarity of the law with respect to the losing party's position." *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1240 (S.D. Fla. 2008). The law that this Court applied in granting summary judgment both invalidating the copyright registration and finding non-infringement is well-established authority that (1) restricts protection for useful articles, (2) applies copyright's core distinctions between unprotectable ideas and protectable expression, and (3) requires similarities in protected expression, not in functional or generic elements. This law is not controversial and is exactly what Defendants had been arguing to Plaintiff all along. The Federal Circuit fully agreed with this Court on all points. Under these circumstances, Plaintiff acted objectively unreasonable in this case, including by:

a. pursuing frivolous or at least objectively unreasonable claims for over $1.5 million in damages for "unrelated products" without legal support and contrary to traditional causation principles (*see* D.E. 438 at 5-19);

b. pursuing unsupportable willfulness and "serial infringer" claims without evidentiary or legal support contrary to controlling precedent and claiming such evidence supported an award of $10-$20 million in punitive damages (*see* D.E. 427);

c. never reasonably discussing settlement and rejecting early offers from TRU and Dolgencorp to pay more than profits and accept adverse injunctions (*see* Exh. 2);

d. trying to attribute sales of Ja-Ru (HK) to Ja-Ru, even after taking the opposite position while trying to belatedly add Ja-Ru (HK) in the case (*see* D.E. 439 and 450);

e. engaging in vexatious and needlessly adversarial litigation conduct on minor issues;

f. attempting to use copyright law to claim ownership of the idea of a pencil-shaped chalk holder without regard to functionality concerns or public domain designs;

g. never identifying any "protected expression" to the Copyright Office or in discovery in this matter that it claimed as its own original contribution to its Chalk Pencil design,

other than the overall appearance of its product when used a chalk holder, which included both functional elements and public domain elements of all pencils;

h. never attempting to meet its burden of proving "actionable copying" – i.e., copying of specific protected expression as opposed to copying of the idea of a chalk holder shaped like a standard yellow no. 2 pencil;[22]

i. challenging any characterization of its "Chalk Pencil" as looking like a "real" or "realistic" pencil despite its own documents showing that was the intent of the product and how it was sold to companies such as Wal-Mart. (*See, e.g.*, D.E. 463-2 (describing product to Wal-Mart as a "Realistic Looking Giant Pencil"), 463-1 (specifying changes so that tip would look "like the tip of a real pencil"), 463-3 ("chalk needs to taper to a slight point … so it still looks like a graphite/lead tip"));

j. denying the functionality of its product by, *inter alia*, ignoring its own design documents on that functionality – "we need to be clear to the customer what the purpose and/or function of the chalk pencil is, and that is drawing with chalk" (D.E. 463-1);[23]

k. contesting whether the chalk holder was a "useful article" in this Court despite clear evidence to the contrary and then admitting that the chalk holder was a "useful article" on appeal given its inherent functionality;

l. appealing this Court's opinion that Lanard was trying to copyright the entire useful article itself (which the Federal Circuit upheld);

m. persisting on appeal with its copyright claim despite this Court's finding that Plaintiff was essentially seeking to claim rights to the idea of a pencil shaped chalk holder, which the Federal Circuit affirmed (D.E. 500 at 12-13), noting that Plaintiff "was essentially seeking to assert protection over any and all expressions of the idea of a pencil-shaped chalk holder" (D.E. 500 at 13-14); and

n. repeatedly violating the Stipulated Protective Order for Confidential Information and/or Trade Secrets (D.E. 406), which the Court acknowledged "show[ed] carelessness (or maybe even professional incompetence)." (D.E. 442)

Such conduct supports a fee award under §505 given the equities of this dispute. *See Medallion Homes Gulf Coast, Inc. v. Tivoli Homes of Sarasota, Inc.*, 2016 WL 5870215 (M.D. Fla. Oct. 7, 2016) (finding plaintiff's claims objectively unreasonable where plaintiff should have been aware there was no infringement based on the differences in any protected expression of the

---

[22] *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1542 (11th Cir. 1996).
[23] D.E. 463-1 is a June 22, 2010 email from the designer of Lanard's Chalk Pencil to the design team. It was extracted from Comprehensive Exhibit 171 to the Deposition of Blake Nichols, D.E. S- 354, at 124:1-20, 141:3-142:1 and Logan Williams, S-353, at 14:6-20, 83:15-23.

works); *Home Design Services, Inc. v Turner Heritage Homes*, 2017 WL 3687665 (N.D. Fla July 26, 2017) (finding claims not objectively reasonable given no copying of protected expression despite some similarities in works). *See also, Jason D.W. v. Houston Indep. Sch. Dist*., 158 F.3d 205, 211 (5th Cir. 1998) (considering plaintiff's unreasonable settlement conduct as support for awarding defendant fees).

4.     **Deterrence:** Courts should not countenance the use of copyright litigation as a weapon against competitors. A fee award in this matter would deter plaintiffs from pursuing questionable claims out of spite in an overly aggressive manner and would encourage others to stand up to bullies to help demarcate the boundaries of copyright protection.

C.     **PATENT FEES**

Under patent law, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C §285. "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*. 572 U.S. 545, 554 (2014). "Exceptionality" is determined on the totality of the circumstances on a case-by-case basis. *Id*. Courts in patent cases may consider the same nonexclusive factors identified in *Fogerty* for copyright cases (frivolousness, motivation, unreasonableness, compensation and deterrence). *Id*. at n. 6. (citing *Fogerty*, 510 U.S. at 534, n. 19.)

*Octane Fitness* marked an important departure from the manner in which courts had previously addressed fee questions under §285 of the Patent Act. The Court rejected the Federal Circuit's rigid fee standard that required a showing of either sanctionable-level misconduct in seeking the patent or in pursuing the litigation, or both "pursuit of objectively unreasonable litigation" and "subjective bad faith." *Id*. at 554-558. The Court also held that a party seeking fees

need only show its entitlement by a preponderance of the evidence. *Id*.

As a result of these changes, the same rationale that supports awarding fees on the copyright claim supports awarding fees on the patent claim. But there are also other patent-specific aspects of the claims that support a fee award. Plaintiff relied on the function of its design as a chalk holder instead of as a pencil to distinguish its product from prior art. This was never a reasonable position given the fundamental nature of design patents – protection of ornamental, not functional, designs.

Also, despite a misleadingly worded Declaration from Plaintiff that approaches fraud on the Court (see D.E. 321-3 at ¶17), Plaintiff did not mark "all models" of its product with the D671,167 patent number until <u>after</u> the bulk of the alleged infringements in this case. This deceit is significant as Plaintiff was not entitled to damages that occurred prior to giving Defendants actual notice of its patent rights. *See* 35 U.S.C. §287; D.E. 424 at 4-6.

Despite discovery requests, Plaintiff both never produced documents showing when the marking of its chalk holder with the D'167 patent number commenced and chose not to prepare its corporate representative on that topic. Plaintiff's corporate representative on the topic of marking, James Hesterberg, testified that he did not know when marking commenced when deposed. *See* D.E. S-355 at 114:19-116:24; 121:7-122:21. But then Mr. Hesterberg filed a Declaration in connection with the summary judgment motions claiming that "[f]ollowing the USPTO's issuance of the '167 Patent [November 2012], Lanard stamped the full patent number into the plastic on all models of the Chalk Pencil."[24] (D.E. 321-3 at ¶17). This statement is proven false by the actual samples of Plaintiff's product purchased by counsel for Defendants after the case was filed. Those samples have a November 2013 date of manufacture stamped onto the Chalk Pencils and the packaging, and no patent number is stamped on either (the packaging only says

---

[24] Technically, this may be true, but misleading, if by "following" Mr. Hesterberg meant over a year later.

"patent pending.").[25] Thus, the Plaintiff's own product shows that as of November 2013, a full year after the patent issued and only four months before this suit was filed, Plaintiff was still not stamping "all models" of its product with the patent number.[26] *See* Exhibit 9 hereto (photographs of Lanard's Chalk Pencil and packaging with no patent number).

This means that the patent damages claimed against Defendants were barred as a matter of law under §287 until Plaintiff gave the Defendants actual notice of its patent claims (which did not occur until March 2014, when Plaintiff filed suit). By that time, the Defendants had little inventory of the accused product left. Plaintiff thus concealed from Defendants and the Court the actual date it complied with §287 even as it pursued virtually worthless patent claims through pleadings, discovery, motions, experts, summary judgment briefings, *Daubert* briefings, motions *in limine*, and the pretrial statement. Concealing relevant evidence in this manner is the epitome of a bad faith, unreasonable litigation tactic and supports fees.[27]

Plaintiff's unreasonable tactics continued on appeal. First, Plaintiff challenged this Court's claim construction by arguing the Court discounted on an "all or nothing basis" the ornamental aspects of the functional elements of the patented design. [Exh. 5 at p. 35] Plaintiff ignored both the Court's language which made clear the ornamental aspects of the functional elements were protected, and this Court's ensuing analysis which compared the ornamental aspects of the functional elements to both the prior art and Ja-Ru's chalk holder as part of the infringement test. This did not go unnoticed by the Federal Circuit, which concluded that this Court followed its

---

[25] Cases clearly establish that "patent pending" markings are not sufficient. *See, e.g.,* D.E. 424 at 5. *Bazz, Inc. v. Catalina Lighting, Inc.*, 1998 U.S. Dist. LEXIS 21771, at *11 (S.D. Fla. Dec. 18, 1998).

[26] Upon request, Defendants will file Plaintiff's physical pencil shaped chalk holder for inspection by the Court.

[27] Such unreasonable litigation conduct by Plaintiff makes this case "stand out" from others, and markedly different than a case such as *ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1371, 1373-1374 (Fed. Cir. 2019) in which the denial of fees was based on the fact that the main argument advanced for seeking fees was that the litigation costs exceed the potential damages. *ATEN* did not involve the type of litigation misconduct by Plaintiff such as filing a misleading declaration.

directives on claim construction "to a tee." (D.E. 500 at 5-7)

The Federal Circuit also concluded that this Court properly analyzed infringement by applying the "ordinary observer" test. Lanard argued that this Court, "despite its pronouncements" improperly performed an element-by-element test, rather than consider the overall appearance of the two designs. (Exh. 5 at 38-41). Lanard ignored the numerous references by the Court to the "overall appearance" test in its Order and that the Court discounted differences it found would not impact the overall appearance of the designs. It is no surprise that the Federal Circuit affirmed. (D.E. 500 at 5-6, 7-9.)

In rejecting Plaintiff's challenge to this Court's infringement analysis, the Federal Circuit also noted that Plaintiff tried to "side-track the infringement analysis" by emphasizing similarities between its *product*—the Lanard Chalk Pencil—and Ja-Ru's product when the law is clear that the test for patent infringement requires that "an accused design be compared to the claimed design, not to a commercial embodiment." (D.E. 500 at 10-11). Plaintiff's unsupportable position on its patent claim on appeal, in the face of this Court's analysis in its Order, evidences the objectionably unreasonable nature of both Plaintiff's appeal and Plaintiff's approach to this six-year ordeal.

### D.     LANHAM ACT FEES

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The exceptional case standard articulated in *Octane Fitness* applies to cases brought under the Lanham Act. *Tobinick v. Novella*, 884 F.3d 1110, 1117-18 (11th Cir. 2018); *Most Worshipful Nat'l Grand Lodge v. United Grand Lodge GA AF & AYM, Inc.*, 813 F. App'x 455, 460 (11th Cir. 2020).

Accordingly, the same analysis that supports awarding fees on the copyright and patent claims also supports awarding fees on the Lanham Act claims. Plaintiff unreasonably prosecuted trade dress and unfair competition claims under 15 U.S.C. §1125(a) that were unsupported and

sought grossly inflated damages. Plaintiff also never attempted to identify its trade dress with the requisite specificity,[28] and Plaintiff never identified any evidence tying its alleged damages to any Lanham Act violations or confusion of customers.

Further, as discussed in the FDUTPA section, this Court found that there was no evidence to support a finding of secondary meaning, which meant that Plaintiff's trade dress claim was dead on arrival when it reached the Federal Circuit. Plaintiff's persistence of its secondary meaning argument on appeal with no supporting evidence highlights the unreasonable manner in which Plaintiff litigated its trade dress and unfair competition claims.

### E.     APPELLATE FEES

As discussed above, this Court has authority to award appellate fees. On the FDUTPA claim, such a claim is not even ripe until all appeals are exhausted. On the Copyright, Patent and Lanham Act claims, district courts are routinely called upon to award appellate fees. *See, e.g., Inventor Holdings,* 876 F.3d at 1380 (Fed. Cir. 2017)**.**

For purposes of attorneys' fees, the appeal is considered part of the inclusive whole of the case, and a prevailing party seeking to recover appellate attorneys' fees need not make a separate showing that an award of appellate attorneys' fees are warranted, i.e. that the appeal was independently "exceptional" or "objectively unreasonable." *See Therasense,* 745 F.3d at 516, 519 (patent);[29] *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 2017 U.S. Dist. LEXIS 128867, at

---

[28] When sued, Lanard has no problem arguing that each element of claimed trade dress has to be specifically identified. *See, e.g., General Motors Corp. v. Lanard Toys, Ltd.*, 468 F.3d 405, 415 (6th Cir. 2006).

[29] *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d at 516 (quoting *Comm'r INS v. Jean*, 496 U.S. at 161-62, 110 S. Ct. 2316, 110 L. Ed. 2d 134 ("Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified . . . fee-shifting statutes[] favor[] treating a case as an inclusive whole, rather than as atomized line-items.")). In clarifying the case law, the dissenting judge in *Therasense* explained that the district court does not have to consider whether the appeal itself is exceptional. *Id.* at 519. Instead, "for *our court* [in other words, the Federal Circuit] to award appellate fees, we must find the appeal itself to be exceptional." *Id.* at 519 (citing *Rohm & Hass*, 736 F.2d at 692." "But nothing in *Rohm & Hass* suggested that the *trial court* must find an appeal exceptional to award appellate fees." *Id.*(J. Dyk dissenting) (emphasis in original). The dissenting judge in

*13 *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 106643, 2018 WL 4409885 (S.D. Fla. June 25, 2018) (Lanham Act claim); *Action Star Enter. Co. v. KaiJet Tech. Int'l, Ltd.*, 2015 WL 12752877 (C.D. Cal. June 24, 2015) (patent); *Dippin' Dots, Inc. v. Mosey*, 602 F. Supp. 2d 777 (N.D. Tex. 2009). Of course, Defendants do assert that the appeal was objectively unreasonable for the reasons previously explained.

## V.   ALLOCATION ISSUES

Defendants submit that no allocation between claims is required given that Defendants prevailed on all claims, the controlling statutes all support awarding fees, and the claims were highly intertwined. Nevertheless, Defendants provide the following allocation analysis.

### A.   FDUTPA DOES NOT REQUIRE ALLOCATION

No allocation is required under FDUTPA on intertwined claims, except to the extent time was clearly not related to the FDUTPA claim (such as fees incurred before the assertion of a FDUTPA claim).[30] Here, Plaintiff admitted the intertwined nature of the FDUTPA, unfair competition and trade dress claims and when it conceded that all depended on whether Plaintiff's alleged trade dress had obtained secondary meaning. (D.E. 468 at 63 n.27).

The FDUTPA claim and the copyright and patent claims also all involved many of the same issues, including: (1) What features, if any, of Plaintiff's chalk holder were protectable versus free for others to use? (2) What acts violated FDUTPA, the Copyright Act or the Patent Act? (3) Were any violations willful? and (4) What damages, if any, were caused?

---

*Therasense* also recognized that with respect to fee-shifting statutes other than § 285, the Supreme Court has held that "all phases of the litigation, including appellate proceedings, are to be treated as a unitary whole, not parsed into discrete parts." *Therasense,* 745 F.3d at 519 (citations omitted).

[30] *See Diamond Aircraft*, 107 So.3d at 369-371 (Fla. 2013) (citing with approval *Heindel*, 476 So. 2d at 272 (finding that fees need not be allocated between a FDUTPA claim and other claims based on the same transactions)). *See also LaFerney v. Scott Smith Oldsmobile, Inc.*, 410 So. 2d 534, 535-36 (Fla. 5th DCA 1982) (same); *State Fire & Casualty Company v. Becraft*, 501 So. 2d 1316, 1319 (Fla. 4th DCA 1986) (finding that where work was intertwined so that separation of the time between claims is not practical, fees for the entire service is allowed under FDUTPA).

Trade dress law protects features that are non-functional and have acquired secondary meaning. *Dippin' Dots, Inc. v. Frosty Bites Distr., LLC*, 369 F.3d 1197, 1202 (11th Cir. 2004). For trade dress to be protectable, it must be exclusive to a manufacturer because common features of products from multiple manufacturers cannot become indicative of source. This was problematic here given the number of pencil shaped products that exist because Plaintiff claimed only that the "overall appearance" of its pencil shaped product when used as a chalk holder was its trade dress. (D.E. 302-36, Resp. to Int. No. 10)

This mirrored Plaintiff's copyright and patent claims as Plaintiff's experts refused to identify specific protected expression or original features of Plaintiff, instead again claiming that the protected expression of Plaintiff was the "overall appearance" when used as a chalk holder.[31] Thus, whether any specific trade dress in the chalk holder was exclusive to Plaintiff for secondary meaning purposes was intertwined with separating public domain and prior art features from any original expression of Plaintiff for copyright and design patent purposes. So, too, functionality questions were common to all the claims. Primarily functional features may not be protected under trade dress, copyright or design patent law. What could qualify as non-functional trade dress was very similar to that same issue under copyright and patent law.

And, on damages, Plaintiff made a general Prayer for Relief, and its submissions confirmed the damages sought were the same on its claims, rendering damage questions intertwined, although at times Plaintiff suggested its state law claims gave it additional rights, including punitive damages. (D.E. 103 at 15-17; 455 at 8-13; D.E. 138 at 36).

Thus, the FDUTPA claim involved the same underlying transactions, conduct and alleged damages as Plaintiff's other claims. In this situation, there were no fees "clearly unrelated" to the

---

[31] Deposition of Robert John Anders (D.E. 342) at 200:5-19; Deposition of Parker Bagley (D.E. 343) at 52:7-54:14.

FDUTPA claim once it was asserted, meaning Defendants' fees and non-taxable costs (see D.E. 477) are recoverable under FDUTPA. *See* D.E. 103; *Diamond Aircraft*, 107 So.3d at 369-371; *Heindel*, 476 So. 2d at 272; *LaFerney*, 410 So. 2d at 535-36.

### B.    COPYRIGHT, PATENT AND LANHAM ACT ALLOCATION ISSUES

As discussed above, the intertwined nature of the issues in the copyright, design patent and trade dress/unfair competition claims makes allocation needless and virtually impossible. Nevertheless, Defendants have attempted to allocate time where possible to time attributable to each of the claims, and, if allocation is not possible, then to a joint time category. Defendants incurred $2,187,288 in fees at the district court level, which consists of $130,338 in copyright only fees, $89,390 in patent only fees, $91,123 in Lanham Act / FDUTPA only fees, and $1,875,897 in joint fees and paralegal fees; and seek for work in the Federal Circuit, $436,675 in fees, which consists of $42,770 in copyright only fees, $45,428 in patent only fees, $48,733 in Lanham Act / FDUTPA fees, and $299,745 in joint fees and paralegal fees. Defendants seek reimbursement of these amounts, less 5% for incidental and duplication issues, and reserve the right to seek additional fees relating to this fee motion and the pending cost motion (D.E. 477).

## VI.    DEFENDANTS' FEES ARE REASONABLE.

The starting point for determining the reasonableness of fees is to determine the "lodestar" amount, which is the multiplication of the hours reasonably expended by a reasonable hourly rate. *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). After the lodestar is determined, the court need not adjust the amount to award if, as here, "the result was excellent." *Id.* at 1302 (citations omitted).

Plaintiff has indicated that the amount of its attorneys' fees and costs paid by its client prior to the appeal were $1,462,620, [D.E. 498-1 at 5], but did not provide the detail needed to analyze this number fully, such as the hours incurred for each attorney prior to write-offs, the rate for each

attorney, whether the rates were affected by a volume discount, and whether fees were not charged based on the results obtained. It is also not surprising that a plaintiff in this type of action would incur less total fees than three Defendants given the discovery sought from each party and the evidentiary burdens on Defendants in intellectual property cases. Regardless, Plaintiff's fees demonstrate this was an expensive case for both sides.

The lodestar for the attorney's fees requested by Defendants is calculated as follows:

| Firm | Timekeeper | Position | Year of Practice | Rates[32] | Hours | Total |
|---|---|---|---|---|---|---|
| Anten | Lewis Anten | Partner | 48th | $600 | 0.5 | $300.00 |
| | | | | $550 | 413.6 | $227,480.00 |
| | | | | $475 | 1257.8 | $597,455.00 |
| | | | | $350 | 10.5 | $3,675.00 |
| Anten | Ivy Choderker | Associate | 20th | $400 | 644.15 | $257,660.00 |
| | | | | $350 | 1765.13 | $617,796.67 |
| Anten | Melissa Arbiter | Associate | 13th | $400 | 44.5 | $17,800.00 |
| | | | | $350 | 224.5 | $78,575.00 |
| H&K | Frederick D. Page | Partner | 27th | $525 | 22.2 | $11,655.00 |
| | | | | $545 | 109.1 | $59,459.50 |
| | | | | $555 | 736.8 | $408,924.00 |
| | | | | $475 | 263.5 | $128,250.00 |
| H&K | Michael A. Abel | Partner | 28th | $545 | 6.5 | $3,542.50 |
| H&K | Courtney Batliner | Partner | 8th | $425 | 113.4 | $48,195.00 |
| H&K | Mark T. Goracke | Associate | 7th | $350 | 67.5 | $23,625.00 |
| H&K | Ilene Pabian | Partner | 25th | $475 | 111.4 | $52,915.00 |
| Loeb | Brian Socolow (NY) | Partner | 29th | $630 | 58 | $37,881.00 |
| | | | | $652.50 | | |
| Loeb | Jodi Sarowitz (NY) | Associate | 13th | $585 | 44 | $25,915.50 |
| Loeb | Lindsay Feuer (NY) | Associate | 7th | $265.5 | 8 | $2,360.70 |
| | | | | $396 | | |
| | **Total Attorney Fees:** | | | | **5,789.68** | **$2,601,104.17** |
| | **Plus Paralegal Fees:** | | | | **83.3** | **$22,859** |
| | **TOTAL FEES:** | | | | | **$2,623,963.17** |
| | **Less 5%** | | | | | **$2,492,765.01** |

## A.     DEFENDANTS' HOURLY RATES ARE REASONABLE.

---

[32] To ensure the reasonableness of the requested fees, Defendants have used the actual historical rates for these attorneys as part of this fee request instead of current rates. *See, e.g., Norman*, 836 F.2d at 1302.

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experiences and reputation. *See Norman*, 836 F.2d at 1299. The party moving for fees has the burden of establishing "that the requested rate is in line with the prevailing market rates." *Id*. Defendants submit that the rates requested are in line with prevailing market rates. The rates for the bulk of the time incurred in this Court were also negotiated and agreed to by Ja-Ru's insurer as the entity paying those rates. The Declarations filed in support hereon, including the Declaration of Thomas E. Bishop, Esq., who is the managing partner for Bishop & Mills, attest to the fact that the rates requested are in line with the prevailing market rates for the involved professionals.

### B.     DEFENDANTS' TIME EXPENDED WAS REASONABLE.

Defendants also submit the time incurred on this matter as set forth above was reasonable given that Plaintiff treated this action as if it really expected to recover millions in compensatory damages plus a $10-$20 million punitive damage award. Such a result could have ruined Ja-Ru. The traditional factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, (1989), may be considered by a court when determining the reasonableness of the hours expended by attorneys. *See Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1187, n. 8 (11th Cir. 1983). Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in

similar cases. Each of these factors is discussed in the Declarations filed in support of this motion, and each supports the reasonableness of the number of hours incurred and the fees requested.

###    C.    THE RESULT ACHIEVED BY DEFENDANTS WAS EXCELLENT.

"If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman,* 836 F.2d at 1302. Defendants obtained an excellent result.

## IV.    CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court award the Defendants **$2,492,765** in fees. This amount does not include fees relating to the Motion to Disqualify (D.E. 176), TRU's bankruptcy, and the post-appeal mediation, and reflects a 5% discount to account for incidental issues and any duplication.

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

Counsel for Defendants has conferred in detail with counsel for Plaintiff on the relief requested herein, and reports that Plaintiff does not agree to the relief sought.

Dated:  November 23, 2020

<div style="margin-left:40%">

**HOLLAND & KNIGHT LLP**

*/s/ Frederick D. Page*
Frederick D. Page, FBN 968587
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
(904) 353-2000
(904) 358-1872 (fax)
fred.page@hklaw.com

   and

**LEWIS ANTEN, A PROFESSIONAL
   CORPORATION**

Lewis Anten, Esq.
l.anten@antenlaw.com
Ivy Mara Choderker, Esq.
i.choderker@antenlaw.com
16830 Ventura Boulevard, Suite 236
Encino, CA 91436
*Admitted Pro Hac Vice*

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of November 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will serve an electronic notice of electronic filing to the following counsel of record on the Service List below:

**Service List**

| | |
|---|---|
| Richard P. Sybert<br>rsybert@gordonrees.com<br>Holly Heffner<br>hheffner@gordonrees.com<br>GORDON & REES LLP<br>101 West Broadway, Suite 2000<br>San Diego, California 92101<br>Counsel for Plaintiff Lanard Toys Limited<br><br>Robin Taylor Symons<br>rsymons@gordonrees.com<br>Eric R. Thompson<br>ethompson@gordonrees.com<br>GORDON & REES LLP<br>Southeast Financial Center<br>200 S. Biscayne Boulevard, Suite 4300<br>Miami, FL 33131<br>Counsel for Plaintiff Lanard Toys Limited | Reid E. Dammann<br>rdammann@grsm.com<br>GORDON & REES LLP<br>633 West Fifth Street, Suite 5200<br>Los Angeles, California 90071<br>Counsel for Plaintiff Lanard Toys Limited<br><br>John R. Catizone<br>catizone@litchfieldcavo.com<br>Morgan Fairthorne Spector<br>spector@litchfieldcavo.com<br>Litchfield Cavo, LLP<br>600 Corporate Dr Ste 600<br>Ft Lauderdale, FL 33334-3611<br>954/689-3000<br>Fax: 954/689-3001<br><br>Richard H. Nicolaides , Jr.<br>rnicolaides@nicolaidesllp.com<br>Nicolaides Fink Thorpe Michaelides<br>Sullivan, LLP<br>Thomas W. Arvanitis<br>tarvanitis@nicolaidesllp.com<br>21st Floor<br>10 South Wacker Drive<br>Chicago, IL 60606<br>312-585-1400<br>Fax: 312-585-1401 |

*/s/ Frederick Page*
Attorney