**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LANARD TOYS LIMITED,

    Plaintiff,

v.                                           Case No. 3:15-cv-849-MMH-PDB

TOYS "R" US–DELAWARE, INC.,
DOLGENCORP, LLC, and JA-RU, INC.,

    Defendants.

---

**DEFENDANTS' OBJECTION TO REPORT AND RECOMMENDATION
ON DEFENDANTS' ENTITLEMENT TO ATTORNEYS' FEES**

Defendants, pursuant to Federal Rule of Civil Procedure 72(b)(2), submit the following objection to the Report and Recommendation (the "Report") on Defendants' entitlement to attorneys' fees (Doc. 529).

**INTRODUCTION**

Though unquestionably thorough and, in many respects, well-reasoned, the Report contains several conclusions to which Defendants object as to whether Defendants are entitled to recover fees under the Copyright and Patent Acts. Defendants file this objection to preserve their rights but recognize that this Objection may be rendered moot to the extent Defendants are awarded their fees under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and the Lanham Act.

Defendants contend the Report in its current form sets forth sufficient facts to support awarding copyright and patent fees. The Report also stops short of resolving three fact issues that bear on Defendants' fee request—i.e., (1) whether

damages model advanced by Plaintiff, Lanard Toys Limited ("Lanard"), was frivolous or objectively unreasonable, (2) whether Lanard's representations on marking its products were misleading, and (3) whether Lanard's motivations for prosecuting its claims in the manner described in the Report were improper. Defendants acknowledge that, in ruling on a fee motion, the Court may decline to resolve new, un-litigated issues, but none of these issues are truly *new or un-litigated* as each has been the subject of extensive briefing.

While the Report does find that Lanard's "damages theory *seemed a stretch*" and that its representation on marking "*appears cagey,*" the Report fails to take the last little step on these two issues. (Doc. 529 at 97, 102 (emphasis added)). The Report also acknowledges undisputed evidence "suggesting [Lanard] may have been motivated at least in part by considerations beyond those" considered proper, but fails to conclude that explains the massive disconnect between the real amount in controversy and the cost of this litigation. (*Id.* at 97.)

Defendants object to the Report's ultimate conclusion on the Copyright and Patent Acts. The observations in the Report, coupled with Lanard's misconduct and its unnecessary appeal that the Federal Circuit summarily rejected, demonstrate the case was prosecuted in an unreasonably aggressive and expensive manner. If this case does not warrant fees for Defendants based on how it was pursued, then no case will, and the *Kirtsaeng* standard will be reduced to awarding fees only for frivolous and objectively unreasonable claims when filed, contrary to the actual opinion of the Supreme Court. *See Kirtsaeng v. John Wiley & Sons, Inc.*,

2

136 S. Ct. 1979, 1988–89 (2016) (recognizing situations that may call for fees even if objectively reasonable claims were filed).

And if this Court believes that more is needed to award copyright and patent fees here than the observations of the Report, then Defendants ask the Court to review *de novo* the issues left open and "close the loop" once and for all by finding that (1) Lanard's damages model—95% of which consisted of damages it caused itself by suing its own customers—was not just a "stretch" but *frivolous* (or at least *objectively unreasonable*), (2) Lanard's representations on patent marking were not merely "cagey" but intentionally *misleading* given it refused to provide discovery on this issue and concealed the truth from Defendants and the Court to inflate its patent damage claims (as then claimed by its expert to cover periods before either marking or notice to Defendants), and (3) the evidence not only suggests but demonstrates that Lanard pursued Defendants with an *improper motivation*. Only because the Report was unwilling to reach a definitive conclusion on these issues did it decline to find that Defendants are entitled to fees under the Copyright and Patent Acts. Taking the final step and resolving these issues will emphasize why Defendants are entitled to fees on each claim.

Alternatively, Defendants ask the Court to defer ruling on the foregoing objections until the Magistrate Judge has made a recommendation on the issue of the reasonable fees to award under the Lanham Act and FDUTPA. As set forth in Defendants' fee motion, even if Defendants may only recover fees under these statutes, Defendants would still be entitled to recover all (or, at least, the vast

3

majority) of their fees. (*See* Doc. 518 at 25–27.) This is because (1) FDUTPA does not require allocation of intertwined fees,(2) Lanard alleged the same conduct that violated the Copyright and Patent Act also violated FDUTPA and the Lanham Act, and (3) the factual issues in each claim were highly intertwined, including what, if anything, was original, unique or protectable about Lanard's "Chalk Pencil." Thus, the vast majority of the fees Defendants seek are allocable to the Lanham Act and FDUTPA claims, potentially mooting Defendants' objections to the Report. [1] (*Id.*)

Defendants thus agree with the Report's recommendation that the Court further refer the matter to the Magistrate Judge to "expeditiously prepare a report and recommendation on reasonable attorney's fees." (Doc. 529 at 120.)

## LEGAL STANDARDS

When reviewing a magistrate judge's report and recommendation, district court judges should "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge may then accept, reject, or modify the magistrate judge's findings or "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The requirement for *de novo* review is essential to the constitutionality of Section 636's delegation of functions that are otherwise reserved to Article III judges. *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990).

---

[1] Specifically, as allocated by Defendants, $1,967,020 of the $2,186,748 in trial-level fees set out in the fee memorandum are recoverable under FDUTPA and the Lanham Act, and $348,478 of the $436,676 in appellate-level fees are recoverable under FDUTPA and the Lanham Act.

4

## **ARGUMENT**

Defendants object to the Report's recommendation that the Court order that Defendants are not entitled to attorneys' fees under the Copyright[2] and Patent[3] Acts. (*See* Doc. 529 at 120.)

As a threshold matter, Defendants submit that the Report's listed findings of Lanard's misconduct are already sufficient to justify awarding Defendants fees under the Copyright and Patent Acts.[4] These begin to illustrate the objectively unreasonable manner in which this case was prosecuted. As detailed in the Report:

- Lanard advanced multiple arguments that were objectively unreasonable or frivolous. (*See* Doc. 529 at 68 (describing a discovery argument as "nonsensical"); *id.* at 80 (describing a *Daubert* argument as "bordering on absurd"); *id.* at 96 (describing Lanard's "belated motion for leave to [amend]" as "frivolous or groundless"); *id.* (describing summary-judgment arguments as "confusing" and "nonsensical"); *id.* at 99 (describing arguments that were "vastly overstated" and "woefully" deficient)).

- Lanard litigated this case to the hilt, such that the Magistrate Judge "[could not] recall litigation that spawned more discovery disputes" than this action during her time on the bench. (*Id.* at 67.)

- Despite being "*twice* admonished . . . for lack of civility and professionalism . . . Lanard's lead counsel's behavior continue[d] to be

---

[2] "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party. . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Report accurately sets forth the legal standards that govern application of this provision. (*See* Doc. 529 at 9–16.)

[3] "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Report accurately sets forth the legal standards that govern application of this provision. (*See* Doc. 529 at 16–27.)

[4] The Report also cited instances of Lanard's misconduct that were not specifically identified in the fee motion and therefore not considered. (Doc. 529 at 34 n.26; *id.* at 86 n.45.) Defendants submit that the general arguments about Lanard's unreasonable conduct throughout this matter suffice to raise each of the issues discussed and then disregarded by the Report. It literally would have been impossible to list each and every instance of misconduct by Lanard and its counsel in the fee motion given space constraints.

      less than civil [i.e., uncivil]" all throughout the litigation, culminating in a begrudging, qualified "pseudo-apology" mustered only under the threat of multi-million-dollar fee award. (*Id.* at 72, 87–88, 102 (emphasis added).)

- Lanard made multiple misleading representations. (*Id.* at 70 (describing statements that were "inattentive at best [and] intentionally misleading at worst."); *id.* at 102 (stating certain representations "appear[ ] cagey").)

These findings coupled with a few the Report apparently did not give much weight (e.g., seven violations of the confidentiality order, an unreasonable appeal, and Lanard's unreasonable settlement positions), more than justify a fee award under the Copyright Act and make this case "exceptional" under the Patent Act.[5] Defendants acknowledge the discretion inherent in such awards and ask the Court to exercise that discretion to award these fees.

If the Court is inclined not to exercise its discretion to award fees under the Copyright and Patent Acts based on the Report's current findings, Defendants submit that when appropriate findings are made on the three issues the Report effectively sidestepped, fees are clearly warranted. (*See* Part I, *infra*.) Defendants respectfully request the Court either resolve these open factual issues at this time or defer ruling on this Objection until the Magistrate Judge has prepared a Report addressing the reasonable fees to award. (*See* Parts II and III, *infra*.)

---

[5] Lanard's decision to appeal in the face of the Court's thorough, well-reasoned order without any sound basis to challenge its findings of fact and legal analysis was also objectively unreasonable (*see* Doc. 529 at 22–23), a fact rarely mentioned in the otherwise thorough Report.

## I. The Court should resolve the three issues sidestepped in the Report's application of the governing factors.

The Report acknowledges that frivolousness, objective unreasonableness and motivation are factors in determining whether fees are proper under both the Copyright and Patents Acts. (*See* Doc. 529 at 10, 18.) The Report also acknowledges the Court's equitable authority to "make findings about state of mind, intent, and culpability" when resolving fee issues. (*Id.* at 8 n.11; *see also id.* at 103 (stating that the fact that the "Court never decided damages . . . that does not prevent the Court from considering [it]" in resolving the fee motion)). Despite these acknowledgements, however, the Report avoids making findings that are relevant to the frivolousness, objective unreasonableness, and motivation factors because the issues, though heavily litigated, were not conclusively determined when the case was resolved on the merits on liability issues (mooting all damage questions). (*Id.* at 64, 73.) If the question of Copyright and Patent Act fees turns on these issues, then Defendants asks the Court to resolve them now.

### A. Lanard relied on a frivolous and objectively unreasonable damages model to justify excessive litigation tactics and avoid settlement.

The first critical issue the Report passes over is whether Lanard's damages model was frivolous or objectively unreasonable. Importantly, objective unreasonableness relates not just to the overall claims but to the "legal components of the case." *Fogerty*, 510 U.S. at 534 n.19 (internal quotation marks omitted). Damages are one of the key legal components to consider in this context.

7

As Defendants explained in their renewed fee motion, it is undisputed that the total gross profit for all Defendants combined from the sale of the allegedly infringing product was less than $90,000 (*see* Doc. 302-17 ¶¶ 47–49) and that any ongoing infringement had ceased (Doc. 529 at 75 n.39). How, then, could Lanard possibly justify litigation resulting in combined legal fees exceeding *$4.5 million* and expert fees that were multiples of the profits of the alleged infringers? (*Id.* at 82.) The answer lies in Lanard's reliance on a damages model that Lanard's own expert said he had never heard of and made no effort to defend. (*See* Doc. 359 at 11:12–23, 29:6=17) Under this model, Lanard sought damages not derived from the allegedly infringing products themselves but from completely unrelated products that TRU and Dollar General stopped buying from Lanard after Lanard took the extraordinary step of suing them. (*See* Doc. 529 at 75–76.) Over 95% of Lanard's disclosed damages consist of this "unrelated product" category.

Needless to say, this novel damages theory is completely unsupported in law. (*See* Doc. 438 at 5–17.) Lanard's attempt to characterize these damages as copyright damages was frivolous and contrary to years of damages precedent. (See *id.*; Doc. 455 at 8-9). There is no causal connection between the alleged infringement and TRU's and Dollar General's decisions to cease buying products from Lanard. (*See* Doc. 302/324 at 33–35; Doc. 316/319 at 8–10.) TRU and Dollar General would have been perfectly free to decline purchasing goods from any manufacturer who has sued them, and there were numerous other reasons justifying the decision to end their relationship with Lanard. (*See* Doc. 316 at 14–

8

16.) Even amidst multiple other examples of Lanard's unreasonable positions, its damages model is especially egregious because it was how Lanard justified its disproportionate discovery demands in response to Defendants' multiple efforts to have limits placed on the case and was used by Lanard to avoid settlement discussions at any reasonable level. (*See, e.g.*, Doc. 224 at 4; Doc. 529 at 84.)

The Report recites the parties' arguments on this issue (Doc. 529 at 75–76, 84) and acknowledges that damage issues were briefed extensively (*id.* at 73 n.38). The Report even ventures so far as to say Lanard's "other-products damages theory *seemed a stretch*." (*Id.* at 97 (emphasis added).) However, it appears the Report was unwilling to give this issue any real weight because "[t]he Court never decided any damages issue." (*Id.* at 73.)

Nor did the Report analyze whether the sparse and highly distinguishable "prior bad act" evidence that Lanard argued made Defendants "serial infringers" and supported $10-$20 million in punitive damages could ever support a punitive damage award, which was briefed during the case, including in a specific Motion in Limine. (*See* Doc. 518 at 4–5, 18–19; Doc. 427 at 2–22; Doc. 453.) There is simply no way the proffered evidence could ever support sending such a claim to a jury (and nor was the evidence, including anonymous internet posts from unverified sources, admissible under Eleventh Circuit precedent). A handful of contested and unproven anecdotal claims of alleged copying of unprotected products do not support a punitive damage claim. The sparsity of the alleged evidence is a key point showing that Defendants were not, as Lanard claimed,

"serial infringers." In fact, Ja-Ru has been in the toy business for 50+ years without ever having a judgment against it, and TRU and Dollar General sell thousands of different toy products each year without a track record of infringements. (*See* Doc. 427 at 2–22.)

Given the extensive briefing available and the Report's expressed doubts about Lanard's damages model, Defendants object to the Report's failure to factor the objectively unreasonable nature of the Lanard's damage model into its analysis.[6] Defendants ask the Court to correct this by finding that Lanard's damages model was objectively unreasonable and awarding fees under the Copyright and Patent Acts.[7]

---

[6] The Report also appeared to get distracted by Lanard's claim to an entitlement of $450,000 in statutory damages on the copyright claims in addition to actual damages on other claims. Such a model is inconsistent with copyright law as statutory damages are not set in a vacuum. Instead, statutory damages should relate to the profits and motivation of the infringer and are generally limited to 2–3 times the defendants' profits, without duplication. *See, e.g.*, *Universal Music Corp. v. Latitude 360 Nev., Inc.*, No. 3:15-cv-1052, 2016 WL 3200087, at *4 (M.D. Fla. May 4, 2016), *report and recommendation adopted*, 2016 WL 3188899 (M.D. Fla. June 8, 2016) (Howard, J.).

[7] In discussing damages generally, the Report notes that "defendants did not staff their defense in a manner suggesting they believed modest damages were clear-cut." (Doc. 529 at 97.) However, Defendants and their insurer providing the defense were forced to staff the case in proportion to both the damages Lanard insisted on putting at issue (even if objectively unreasonable) and the broad scope of discovery Lanard justified with its unreasonable damages theories. Settlement discussions were also a non-starter with a claimed $10–$20 million punitive expectation. The fact that a defendant incurs substantial legal costs defeating objectively unreasonable claims is precisely why the Patent and Copyright Acts allow for fee shifting. To the extent the Report uses the tremendous legal costs Defendants incurred to defeat Lanard's claims as evidence that the damages issues was not "clear-cut," Defendants object because this logic directly undermines the purposes of the Acts fee-shifting provisions. The Report also notes that, "had Lanard demanded modest amounts, the defendants may have felt pressure to abandon their meritorious defenses or may have argued Lanard was improperly litigating to obtain a nuisance-value settlement." (*Id.* at 97.) But the harm that would have been caused by a "nuisance-value settlement" would have been far less than the *millions* Defendants were forced to expend on legal fees in this action. Again, Defendants object to this reasoning because it makes a virtue out of the very conduct—excessive damage demands—that has caused harm.

### B. Lanard offered misleading evidence on the marking issue.

Compounding the harm caused by its unreasonable damages theories, Lanard also offered misleading evidence on whether and when it stamped the patent number onto its product. (*See* Doc. 529 at 21–22.) This marking issue is critical because it limits the patent damages a plaintiff can recover to the time period after defendants had *actual notice* of plaintiff's patent claims. *See* 35 U.S.C. § 287. Here, actual notice for Ja-Ru and TRU did not occur until this action was filed in March 2014 (and for Dollar General in a demand letter shortly before the case was filed), by which point Defendants had few of the allegedly infringing products left and decided to halt further production until the case was resolved. (*See* Doc. 518 at 22; *see also* Doc. 424.)

Knowing the importance of this issue, Lanard filed a declaration misleadingly claiming that, "[f]ollowing the USPTO's issuance of the '167 Patent [in November 2012], Lanard stamped the full patent number into the plastic on all models of the Chalk Pencil."[8] (Doc. 321-3 ¶ 17.) In fact, samples of the product purchased by Defendants show that, as late as November 2013—a *year* after the '167 Patent was issued—no patent number was stamped into the plastic. (Doc. 518 at 21–22.) This means that, in addition to its "other-products" damages model being objectively unreasonable, Lanard also knew from the outset of the case that it could recover hardly any damages on its patent claims under Section 287 of the

---

[8] This misrepresentation found its way into the Court's summary judgment order. (Doc. 468 at 7.)

11

Patent Act. Tellingly, Lanard made no attempt to defend or explain its misconduct on this issue when responding to Defendants' fee motion.

The Report seems to acknowledge these facts and tiptoes right up to edge of calling Lanard's failure to ever specify when it stamped its product out as the deliberately misleading conduct that it is. (*See* Doc. 529 at 101–02.) But the Report ultimately settles for the diffident conclusion that Lanard's representation on stamping "appears cagey." (*Id.* at 102.) Again, it seems that, despite having all the facts needed to determine Lanard engaged in serious misconduct in prosecuting this action, the Report was unwilling to take the final step and "call a spade a spade" because the merits of the case were resolved before the Court had cause to address the marking issue. (*See* Doc. 529 at 70 ("[T]his Court never had to reach the issue of when the defendants had possessed actual notice of the patent.").)

For these reasons, Defendants object to both the Report's failure to find that Lanard deliberately misrepresented material facts to mislead Defendants and the Court regarding marking and the Report's failure to factor this additional misrepresentation[9] into its analysis of Defendants' entitlement to fees under the Patent Act. With an appropriate finding that Lanard committed yet another misrepresentation to try to boost damages, it is clear that fees are warranted.

---

[9] While, as the Report acknowledges, Lanard made other misrepresentations throughout this action (*see* Doc. 529 at 70) that Defendants contend, on their own, are sufficient to warrant fees, the stamping misrepresentation is particularly egregious because it underscores the disproportionate relationship between the extraordinarily burdensome tactics Lanard used to litigate this case and the minimal damages that were genuinely at issue.

12

## C. In light of the minor damages genuinely at issue and Lanard's efforts to manufacture damages, Lanard's improper motivations are clear.

Finally, the Report acknowledges that motivation is a key factor in analyzing entitlement (*id.* at 10, 18) and that it can be considered even if not previously decided (*id.* at 103). Given the paltry damages genuinely at issue in this action, a thorough analysis of motivation is crucial to understand why Lanard pursued this action so aggressively and avoided serious settlement discussions—resulting in more than $4.5 million in combined fees (*id.* at 82) and more discovery practice than the Magistrate Judge had ever seen (*id.* at 67)—and why Lanard took the extraordinary step of suing two of its largest customers. Notably, Lanard did not sue any of Ja-Ru's customers with whom Lanard did not have an existing relationship.

A review of this case's history makes clear that Lanard was motivated not by a proper desire to enforce the intellectual property rights it believed it had. If that had been Lanard's motivation, there is no reason it would not have accepted Rule 68 offers by TRU and Dollar General that included more than those parties' gross profits from the allegedly infringing product and included a permanent injunction prohibiting the product's purchase, offer, or sale. (*See* Doc. 518-1.) And there is no reason that Lanard would not have engaged in reasonable settlement discussions with Ja-Ru's insurer, rather than demand millions of dollars and claim an expectation of $10-$20 million in punitive damages alone. This is not typical litigation conduct. Instead, it is clear that Lanard wanted to punish Ja-Ru by

13

pursuing the claims in an offensive and expensive manner in order to both interfere with Ja-Ru's relationship with TRU and Dollar General and to coerce future orders, just as it had done in a previous settlement with Dollar General. (*See* Doc. 302-49 ¶ 5.)

Lanard protested that enforcing intellectual property rights against "a known copier" is a pure motivation, but, as the Eleventh Circuit has explained, "'there is absolutely nothing legally or morally reprehensible about exact copying of things in the public domain'" (or, presumably, that are otherwise not protectable). (Doc. 468 at 68 (quoting *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983)).)[10] Moreover, the purported zeal to go after a "known copier" cannot explain what Lanard was thinking when it sued its customers, TRU and Dollar General. On this note, Lanard insists it must have been "at the end of its tether" to sue TRU and Dollar General (Doc. 523 at 24), but, of course, being at the end of one's tether is consistent with lashing out with improper motivations. Indeed, the fact that Lanard's managing director was irate with Ja-Ru over the chalk pencil is precisely why it would have launched this action as a punitive vendetta rather than a genuine effort to protect legitimate rights. (*See* Doc. 518 at 7 (citing Doc. S-357 at 34:10–11)). Put simply, there is more than enough direct and circumstantial evidence in the record to discern Lanard's

---

[10] This is another reason that Lanard's proffered "other infringement" evidence was frivolous.

improper motivations in prosecuting this action, claiming highly inflated damages, misrepresenting when it marked its products, and avoiding settlement discussions.

Even the Report's restrained analysis acknowledges there are facts "suggesting that Lanard may have been motivated at least in part by considerations beyond those" that are considered proper under the Copyright and Patent Acts. (Doc. 529 at 98.) But, again, it seems that because "[t]he Court never made a factual finding about motivation" (Doc. 529 at 64; *see also id.* at 97), the Report was unwilling to make a finding on this issue (using arguments and evidence already available to it) in addressing Defendants' entitlement to fees. Defendants object to the Report's failure to make a determination that Lanard's motivations in bringing this action were improper and use that determination as a basis to find that Defendants are entitled to fees under the Copyright and Patent Acts.

## II. Making the factual determinations discussed herein would not meaningfully add to the burdens of the litigation.

While the Report correctly notes that Courts have discretion to decline to "add to the burdens of litigation" by opening up new areas of inquiry in ruling on a motion for fees, Defendants respectfully submit that this principle does not apply here in the manner it was referenced in the Report. The concern animating this principle is that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). On this basis, courts have latitude to decline to consider "issues that have not been litigated." *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020).

15

Far from being truly novel or un-litigated, the issues the Report left open have been the subject of extensive discovery and briefing. Damages, for example, are not an "issue[ ] that [has] not been litigated," *id.*, but are, instead, an issue on which the parties' positions have been "expressed in many papers." (Doc. 529 at 73 n.38; Doc. 438; Doc. 455.) No "second major litigation" would be required for the Court to make a finding on the issues discussed herein. *Hensley*, 461 U.S. at 437. No new discovery or hearings are needed to find that Lanard's damages theory was unreasonable, its marking representations were intentionally misleading, and its improper motivations affected how the case was prosecuted. Nor is the conduct of Lanard's counsel's truly separate from Lanard, which was very familiar with its former general counsel when it switched the case to him when this case was transferred to this Court.

This case is therefore unlike those in which it was appropriate to decline to consider relevant but novel issues. For example, in *IQASR LLC v. Wendt Corp.*, the court stated it would not "entirely disregard" certain issues but would not focus primarily on "*entirely new areas*" that might require "further evidentiary presentation." 2021 WL 3855810, at *1 (D. Colo. Aug. 30, 2021) (emphasis added). Here, none of the issues discussed herein are "entirely new," nor has any party asserted a need for an evidentiary hearing. *Id.* Similarly, in *Sprint Communications Co. L.P. v. Cequel Communications LLC*, the court declined to consider an issue on which "the briefing now [was] at best cursory." 2021 WL 1820562, at *3 (D. Del. May 6, 2021). By contrast, the Report does not identify any

16

areas where further briefing would be needed and notes that some of the issues it passed on were briefed extensively. (*See, e.g.*, Doc. 529 at 73 n.38.)

Declining to take the final step and make a ruling on the issues discussed herein is unwarranted given that they bear directly on the entitlement analysis. In addition, unlike a case where fees are a comparatively minor epilogue, the fees at issue in this case dwarf the genuine stakes of the case on the merits. This is thus the type of case where the open issues should be addressed head-on based on the record evidence before the Court. *See, Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1378 (Fed. Cir. 2020) (holding the district court abused its discretion "[b]y not addressing the adequate evidence" before it on the plaintiff's "manner of litigation" and failing to give due consideration to the objective unreasonableness of the plaintiff's allegations); *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1362 (Fed. Cir. 2017) ("[T]he district court clearly erred by failing to consider [plaintiff's] damages methodology as part of a totality-of-the-circumstances analysis.")

The deference given to district courts on fee issues is premised on their superior position to understand and weigh the issues and evidence. *Id.* at 1360. Consistent with this premise, Defendants ask the Court to take the opportunity to weigh the issues and evidence and make findings that bear on Defendants' entitlement to fees under the Copyright and Patent Acts.

### III. Alternatively, the Court should postpone ruling on these objections until the Magistrate Judge has prepared a recommendation on reasonableness and apportionment.

As noted above, even if limited to recovering fees under the Lanham Act and FDUTPA, Defendants may still recover all or the vast majority of their requested fees. (*See* Doc. 518 at 10, 25–27 (citing *Diamond Aircraft Indus. Inc. v. Horowitch*, 107 So. 3d 362, 370 (Fla. 2013); *State Fire & Casualty Co. v. Becraft*, 501 So. 2d 1316, 1319 (Fla. 4th DCA 1986); *Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. 2d 266, 271 (Fla. 1st DCA 1985); *LaFerney v. Scott Smith Oldsmobile, Inc.*, 410 So. 2d 534, 535-36 (Fla. 5th DCA 1982)).)

For this reason, resolving Defendants' objections expressed herein could prove to be wasted effort. Defendants therefore propose that the Court defer ruling on these objections until the Magistrate Judge has prepared a report and recommendation on reasonableness. Only if the fees are allocated in a way that the precise statutes under which Defendants are entitled to recover becomes consequential will the Court need to rule on these objections. This approach promotes efficiency and is consistent with the Report's recommendation for a referral to "expeditiously prepare a report and recommendation on reasonable attorney's fees." (Doc. 529 at 120.)

## CONCLUSION

For the foregoing reasons, Defendants ask the Court to (1) sustain their objections to the Report, (2) determine that they are entitled to fees under the

18

Copyright and Patent Acts, and (3) refer the matter to the Magistrate Judge to recommend the reasonable fees to award under the Lanham Act and FDUTPA.

Alternatively, Defendants ask the Court to defer ruling on Defendants' objections until this latter determination is made.

Dated:  September 3, 2021  **HOLLAND & KNIGHT LLP**

*/s/ Frederick D. Page*
Frederick D. Page (Fla Bar No. 968587)
fred.page@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, FL  32202
Telephone: (904) 353-2000
Facsimile:  (904) 358-1872

*-and-*

Lewis Anten (*pro hac vice*)
L.Anten@antenlaw.com
Ivy Mara Choderker (*pro hac vice*)
ivychods@aol.com
LEWIS ANTEN, P.C.
16830 Venture Boulevard, Suite 236
Encino, CA 91436

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that, on September 3, 2021, I filed this document using the Court's CM/ECF system, which will cause a copy to be served on all counsel of record.

*/s/ Frederick D. Page*
Attorney