# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

LANARD TOYS LIMITED,

        Plaintiff,

v.

                                    Case No.   3:15-cv-849-MMH-PDB

TOYS "R" US-DELAWARE, INC.,
DOLGENCORP, LLC, and JA-RU,
INC.,

        Defendants.

_____

## <u>O R D E R</u>

**THIS CAUSE** is before the Court on the matter of attorneys' fees and costs.  On March 21, 2019, the Court entered an Order (Doc. 468) granting Defendants' Motion for Summary Judgment and directing the Clerk of the Court to enter Final Judgment (Doc. 469) in favor of Defendants on all counts of the Second Amended Complaint and Demand for Jury Trial (Doc. 103). Plaintiff appealed and the United States Court of Appeals for the Federal Circuit affirmed the Court's Order in a decision issued on May 14, 2020.  <u>See</u> Opinion (Doc. 500).  Having fully prevailed in this Court and on appeal, Defendants seek an award of the attorneys' fees and costs incurred in this action.  <u>See</u> Defendants' Renewed Motion for Attorneys' Fees and Memorandum of Law (Doc. 518; Motion for Fees); Defendants' Motion to Tax

Costs Pursuant to Federal Rule of Civil Procedure 54(d)(1), 28 U.S.C. § 1920, Local Rule 4.18, and for Costs under FDUTPA, and Supporting Memorandum of Law (Doc. 477; Motion for Costs).   The Court referred the Motions to the Honorable Patricia D. Barksdale, the United States Magistrate Judge assigned to this case, who issued two reports on the matter.   See Report and Recommendation (Doc. 535; First Report), entered August 20, 2021, and Supplemental Report and Recommendation (Doc. 551; Second Report) entered on February 2, 2022.   Over the span of 213 total pages, along with an 834-page appendix, the Magistrate Judge finds that Defendants are entitled to fees on two of the four claims raised in this action and further determines that a reasonable fee award on the two compensable claims is $1,630,203.54.   See First Report at 120; Second Report at 91.   In addition, Judge Barksdale recommends awarding taxable costs to Defendants in the amount of $21,256.11 and denying Defendants' request for non-taxable costs.[1]   See Second Report at 91.   For the reasons that follow, the Court finds that the Magistrate Judge's recommended award on fees and costs is due to be adopted.

---

[1] Neither party objected to the Magistrate Judge's recommendations on costs.   As such, the Court will adopt these recommendations and need not address the issue of costs any further.

## I.      Standard of Review

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b). Pursuant to Rule 72, Federal Rules of Civil Procedure (Rule(s)), the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."   See Rule 72(b)(3); see also 28 U.S.C. § 636(b)(1). However, a party waives the right to challenge on appeal any unobjected-to factual and legal conclusions.   See 11th Cir. R. 3-1.[2]   As such, the Court reviews those portions of the Magistrate Judge's findings to which no objection was filed for plain error and only if necessary, in the interests of justice.   See id.; see also Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge's] factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); Dupree v. Warden, 715 F.3d 1295, 1304-05 (11th Cir. 2013) (recommending the adoption of what would become 11th Circuit Rule 3-1 so that district courts do not have "to spend significant amounts of time and resources reviewing every issue—whether objected to or not.").

---

[2] The Magistrate Judge properly informed the parties of the time period for objecting and the consequences of failing to do so.   See First Report at 120 n.56; Second Report at 92.

## II.    Reports and Objections

In the First Report, the Magistrate Judge addressed the question of Defendants' entitlement to an award of fees on the four claims set forth in the Second Amended Complaint: specifically, Plaintiff's claims of copyright infringement, patent infringement, trade dress infringement under the Lanham Act, and unfair competition under the Lanham Act, FDUTPA,[3] and Florida common law.   Upon consideration of the relevant fee provisions and applicable law, the Magistrate Judge recommended that the Court enter an order determining that Defendants "are entitled to an award of fees under the Lanham Act and FDUTPA but not under the Copyright Act or Patent Act."   See First Report at 120.   Judge Barksdale further recommended that the Court direct her to "expeditiously prepare a report and recommendation on reasonable attorney's fees and non-taxable costs" and defer final rulings on the Motion for Fees and Motion for Costs pending that determination.   Id.

Significantly, Plaintiff did not raise any objections to the Magistrate Judge's First Report, thereby waiving any challenge to Judge Barksdale's recommended finding that Defendants are entitled to an award of fees under the Lanham Act and FDUTPA.   But, as to her determination that fees are not warranted under the Copyright Act or Patent Act, Defendants did assert an

---

[3] The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), section 501.2105 of the Florida Statutes.

objection.   <u>See</u> Defendants' Objection to Report and Recommendation on Defendants' Entitlement to Attorneys' Fees (Doc. 530; Objections on Entitlement), filed September 3, 2021.   In their Objections on Entitlement, Defendants argued that the findings in the First Report are sufficient to demonstrate their entitlement to fees under those Acts, but if not, the Court should resolve certain "open factual issues" which, in Defendants' view, would demonstrate that fees are warranted.   <u>Id.</u> at 5-6.

Alternatively, Defendants asserted that, "even if limited to recovering fees under the Lanham Act and FDUTPA, Defendants may still recover all or the vast majority of their requested fees."   <u>Id.</u> at 18.   As such, Defendants "propose[d] that the Court defer ruling on [the stated] objections until the Magistrate Judge has prepared a report and recommendation on reasonableness."   <u>Id.</u>   In Defendants' view, "[o]nly if the fees are allocated in a way that the precise statutes under which defendants are entitled to recover becomes consequential will the Court need to rule on [the stated] objections."   <u>Id.</u>   Plaintiff filed a response on September 17, 2021.   <u>See</u> Plaintiff's Response to Defendants' Objection to Report and Recommendation on Renewed Motion for Attorneys' Fees (Doc. 531; Response on Entitlement).   In its Response on Entitlement, Plaintiff asserted that the Magistrate Judge correctly determined that fees were not warranted under the Copyright Act and Patent Act.   In addition, Plaintiff argued that "apportionment and allocation of the fees

associated with the patent and copyright claims is necessary so that they may be properly excluded in any fees award."  <u>See</u> Response on Entitlement at 13-14.   According to Plaintiff, it would violate preemption principles to allow Defendants to recover their copyright and patent fees through the FDUTPA claim.  <u>See</u> <u>id.</u> at 10-13.

Considering those arguments, and given that Defendants' entitlement to fees under FDUTPA and the Lanham Act was unchallenged, the Court recommitted the matter to the Magistrate Judge for a recommendation on the parties' allocation arguments and the amount of a reasonable award of fees and non-taxable costs.  <u>See</u> Order (Doc. 532), entered September 30, 2021.  The Magistrate Judge requested and received supplemental briefing as to the reasonable amount of fees, conducted a hearing on the matter, and obtained additional briefing after the hearing.  <u>See</u> Second Report at 2.  On February 2, 2022, the Magistrate Judge entered the Second Report.

In the Second Report, Judge Barksdale recommends that the Court find that a fee award of $1,630,203.54 is reasonable in this case.  <u>See</u> Second Report at 83, 91.  The Magistrate Judge used the lodestar method to reach this total, first determining reasonable rates for the various defense attorneys and paralegals involved in this lawsuit, <u>see</u> <u>id.</u>, Part H, and then calculating the reasonable number of hours expended, <u>see</u> <u>id.</u>, Part I.  In determining reasonable hours, Judge Barksdale analyzed, at length, the voluminous billing

records identifying problems such as block billing, insufficient detail, vagueness, redundancy, excessiveness, and billing for travel time, among other issues. See id., Part I, ¶¶ 1-6.

Judge Barksdale also addressed the issue of allocation of time between those claims for which Defendants are entitled to fees (the Lanham Act and FDUTPA claims) and those for which she believed they are not (the copyright and patent claims). See id. at 71-79. In their billing records, Defendants allocated each entry into one of four categories: Copyright, Patent, Trade Dress & FDUTPA, and Joint.[4] The allocation issue pertains to those fees categorized as "joint."[5] Defendants contend that the Court should award the "joint" fees because the claims in this action are intertwined. See Defendants' Response to Court Order Dated October 19, 2021 DE 533 (Doc. 536; Defendants' Supplemental Brief) at 12-16. The Magistrate Judge agreed, finding that Defendants had "satisfied their burden of showing the four claims (copyright,

---

[4] For ease of reference, the Magistrate Judge organized the billing records located in various places on the docket into a single chart. See Second Report at 47, Attachments A-B.

[5] In the Motion for Fees, Defendants argued that, under FDUTPA, they could recover all their fees without the need for apportionment. See Motion for Fees at 10, 25-27. Judge Barksdale appeared to agree, observing in the Second Report that FDUTPA places the burden on Plaintiff to show that the copyright and patent claims were "beyond the scope" of the FDUTPA claim, and Plaintiff neither acknowledged nor attempted to satisfy this burden. See Second Report at 72-73, 75. Nevertheless, in an attempt to moot Plaintiff's preemption argument, Defendants agreed to withdraw their request for any patent or copyright-only fees. See Defendants' Response to Court Order Dated October 19, 2021 DE 533 (Doc. 536; Defendants' Supplemental Brief) at 12-13, 16 n.9; see also Second Report at 75. As such, those fees are not at issue here. Additionally, Plaintiff does not challenge Defendants' designation of any entries they identified as Trade Dress & FDUTPA-only.

patent, trade dress, and FDUTPA) are intertwined and share a common core of facts and related legal theories."   <u>See</u> Second Report at 73.   However, in reviewing Defendants' designations in the billing records, the Magistrate Judge found that further allocation was possible and determined that "unallocated hours for work on the patent and copyright claims amount[ed] to approximately three percent of the hours . . . ."   <u>Id.</u> at 77-79 & n.67.

The Magistrate Judge then considered how to calculate the number of reasonable hours given the foregoing issues.   Because the billing records are quite voluminous, with nearly 3500 entries, rather than conduct a line-by-line analysis of each entry, Judge Barksdale applied an across-the-board percentage reduction of thirty percent.   <u>See</u> Second Report at 51, 79.   Judge Barksdale explained that the thirty-percent reduction selected was to "account for block billing, insufficient detail, vagueness, redundancy or duplication, excessiveness, and other issues affecting reasonable hours . . . as well as allocation conceded by the defendants."   <u>Id.</u> at 79.   The reasonable rates multiplied by the total hours requested, discounted by thirty percent, total $1,630,203.54. [6]   The

---

[6] Both parties appear to believe that the Magistrate Judge committed a clerical error when she multiplied the reasonable rates by the <u>total</u> hours, without excluding the hours Defendants designated as copyright and patent-only, before applying the percentage reduction.   <u>See</u> Plaintiff's Objections at 3-4; Defendants' Response at 2-4.   However, the Magistrate Judge's selection of a thirty-percent across-the-board reduction was intended to account for the exclusion of <u>all</u> copyright and patent-only hours.   <u>See</u> Second Report at 79; <u>see also</u> Order (Doc. 558) at 1 n.1.   The Magistrate Judge did not rely on the designations included in the billing records based on her observation that the numbers in Defendants' briefing did not align with its billing records.   Indeed, the Magistrate Judge identified numerous entries characterized as "Joint" in the billing records that should have been allocated to a particular

Magistrate Judge then considered whether this amount was a reasonable fee award in this case and based on her thorough review of the record, and familiarity with the history of the case and the parties, she determined that it was.   Id. at 83.

Defendants submit only a conditional objection to the Magistrate Judge's Second Report.   See Defendants' Conditional Objections to Report and Recommendation (Doc. 529) and the Supplemental Report and Recommendation (Doc. 551) on Defendants' Entitlement to Attorneys' Fees and Costs (Doc. 552; Conditional Objection), filed February 16, 2022.   Specifically, Defendants maintain their previous Objections on Entitlement "only in the event that the Court reduces the award of attorneys' fees recommended by the Magistrate Judge's [Second Report] in the amount of $1,630,203.54."   Id. at 2.[7] Defendants advise the Court that they withdraw this Objection, "[i]f there is no

claim.   See Second Report at 76-79, n.67.   Rather than engage in a line-by-line analysis, and to avoid a double discount, the Magistrate Judge accounted for all allocation in the thirty percent reduction.   See Second Report at 50 (explaining that to avoid doubly discounting hours, courts are not permitted to conduct both an hour-by-hour analysis and an across-the-board reduction of hours (citing Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1351-52 (11th Cir. 2008)); id. at 79; see also Order (Doc. 558) at 1 n.1.   As such, to the extent Plaintiff objects to the Second Report based on a purported clerical error, this objection is due to be overruled.

However, the Court does clarify a scrivener's error in the Second Report.   On page eighty-three of the Second Report, the sentence that reads "Thirty percent of that amount [the lodestar] is $1,630,203.54," is more correctly stated "The lodestar amount reduced by thirty percent is $1,630,203.54."

[7] Defendants subsequently agreed to accept $1,490,554.42, in light of Plaintiff's argument that the Magistrate Judge committed a clerical error.   See Defendants' Response to Plaintiff Lanard Toys Limited's Objection to the Supplemental Report and Recommendation (Doc. 557; Defendants' Response) at 1-2, 4, 15.

- 9 -

reduction of" the recommended attorneys' fees award.  Id.  Plaintiff filed a response to Defendants' Conditional Objection on February 23, 2022.  See Lanard's Responses to Defendants' Objections to Supplemental Report and Recommendation (Doc. 556).

Plaintiff also filed objections to the Second Report.  See Lanard's Objections to Supplemental Report and Recommendation (Dkt 551) (Doc. 553; Plaintiff's Objections).  In Plaintiff's Objections, Plaintiff asserts that the Magistrate Judge's recommended fee award is unreasonable and the Court should award no more than $606,405.20 in fees.  See id. at 2.  Specifically, Plaintiff contends that the Magistrate Judge erred in her calculation of reasonable hours by failing to properly allocate the joint fees between compensable and non-compensable claims. [8]  Id. at 2-3.  Because the Magistrate Judge determined that Defendants are not entitled to fees under the Patent or Copyright Acts, Plaintiff contends that any award of fees under FDUTPA that includes work related to the patent or copyright claims is preempted.  Id. at 4-6.  Likewise, Plaintiff argues that the Magistrate Judge improperly relied on FDUTPA to place the burden on Plaintiff to demonstrate which joint fees should be excluded as related to the copyright and patent

---

[8] Notably, Plaintiff does not object to the Magistrate Judge's assessment of the reasonable rates for the various lawyers and paralegals involved.  Absent an objection from either party and finding no plain error, the Court will adopt the Magistrate Judge's recommendations on reasonable rates.

claims, "effectively reward[ing] Defendants for . . . vague billing practices with a windfall . . . ." See id. at 7-8.

As to the Lanham Act, Plaintiff maintains that Defendants are not entitled to the full amount of the joint fees because Defendants failed to meet their burden of demonstrating that allocation is "not feasible." Id. at 9-10. In support, Plaintiff proposes various alternative methods for allocating the joint fees that it maintains are "feasible." Id. at 10-13. Not surprisingly, Plaintiff's proposed methods all result in a drastically reduced fee award. Plaintiff maintains that the Court should reject the recommended $1.6 million fee award as "excessive," and points to the fact that when it initiated this lawsuit, it had a registered patent and registered copyright, as well as evidence that Defendants used Plaintiff's product in their design process. Id. at 12. Plaintiff further contends that the FDUTPA and Lanham Act claims were mere "add-on, tag-along claims" such that allowing Defendants to recover the majority of their fees based on these claims is "overkill." Id. Defendants filed a response to Plaintiff's Objections on March 2, 2022. See Defendants' Response to Plaintiff Lanard Toys Limited's Objection to the Supplemental Report and Recommendation (Doc. 557; Defendants' Response). On this record, this matter is ripe for review.

## III. Discussion

To resolve the Objections, the Court need only consider whether the award of joint fees is appropriate under the Lanham Act.[9]   Plaintiff contends that to be entitled to the joint fees, Defendants must show that allocation is "not feasible."   According to Plaintiff, although the Magistrate Judge found that the claims were intertwined, she did not find, and Defendants have not shown, that "the issues were so intertwined that allocation is not feasible."   See Plaintiff's Objections at 10.   Plaintiff asserts various ways that, in its opinion, the Magistrate Judge could have "feasibly" allocated the joint fees to particular claims.   Plaintiff's arguments are unavailing.

To the extent Plaintiff contends that the Magistrate Judge failed to apply the correct standard, this contention is without merit.   See Plaintiff's Objections at 10.   In Yellow Pages Photos, Inc. v. Ziplocal, LP, 846 F.3d 1159 (11th Cir. 2017), the Eleventh Circuit explained that if compensable and non-compensable claims "are intertwined and share a 'common core' of facts or a

---

[9] Plaintiff does not dispute the Magistrate Judge's finding that the Lanham Act and FDUTPA claims are entirely overlapping such that fees awarded under each statute are the same.   See Second Report at 82; Plaintiff's Objections at 5, 9.   Because the Court finds that the award of joint fees is proper under the Lanham Act, the Court need not address whether those same fees could be awarded under FDUTPA.   Moreover, to the extent Plaintiff contends that the Magistrate Judge improperly relied on FDUTPA to place the burden of allocation on Plaintiff, this contention is belied by the discussion in the Second Report.   The Magistrate Judge specifically determined that Defendants satisfied their burden to show that the claims were intertwined.   See id. at 73.   And, going further, she conducted her own assessment of the billing records.   Id. at 77-78 & n.67.   Thus, despite her observation that FDUTPA placed the burden on Plaintiff, she nevertheless held Defendants to their burden under the Lanham Act.   As such, the Court need not address Plaintiff's preemption argument.

related legal theory, then a reasonable fee is allowed as to <u>all hours expended</u> on both sets of claims." <u>Yellow Pages Photos</u>, 846 at 1163 n.3 (emphasis added); <u>see</u> <u>also</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 (1983) (observing that where a plaintiff's claims involve a common core of facts or related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis" and "[s]uch a lawsuit cannot be viewed as a series of discrete claims"). In the Second Report, the Magistrate Judge reviewed the applicable legal authority and determined that the claims "are intertwined and share a common core of facts and related legal theories." <u>See</u> Second Report at 73.   Plaintiff's suggestion that some further finding was required is without merit. Regardless, upon de novo, the Court finds that, given the common facts and related legal theories underlying all four claims, much of the time spent defending this action cannot feasibly be allocated to any particular claim.[10]

Nevertheless, it is undisputed that some allocation of the fees is possible. In their billing records, Defendants identified approximately nine percent of the fees as being solely related to the patent or copyright claims.   In addition, upon

---

[10] Plaintiff argues that allocation is feasible because Defendants identify "only" six intertwined issues and did not raise all these issues as to every claim at summary judgment. <u>See</u> Plaintiff's Objections at 2, 10.   However, the six issues identified were foundational issues as to all claims, regardless of the fact that Defendants were ultimately able to narrow their arguments at summary judgment given Plaintiff's utter failure to support its Lanham Act claims with any evidence of secondary meaning.

independent review, the Magistrate Judge found that three percent of the unallocated joint fees were more properly attributable to the copyright or patent claims alone.  See Second Report at 77-78 & n.67.[11]  But, as with the other issues affecting the number of reasonable hours, rather than exclude entries on a line-by-line basis, the Magistrate Judge opted to account for the allocation issues in her selection of a thirty-percent across-the-board reduction of the lodestar.  See Second Report at 79.[12]

In its Objections, Plaintiff proposes alternative means of allocating fees amongst the claims.  According to Plaintiff, the only entries which should be allocated and awarded as joint fees are those entries that specifically reference one of the six issues that Defendants identified as intertwined.  See Plaintiff's Objections at 10-11.  In Plaintiff's view, all other joint entries must be excluded.  Notably, Plaintiff does not cite a single case in which a court has employed this methodology for determining the proper allocation of fees between compensable and non-compensable claims.  Id.  And, upon due consideration, the Court rejects Plaintiff's proposed method of allocation.

---

[11] Notably, in its Objections, Plaintiff specifically identifies only three entries in the billing records that it contends were improperly designated as "joint" entries.  See Plaintiff's Objections at 11 n.3.

[12] Thus, to the extent Plaintiff objects to the Second Report because the Magistrate Judge's percentage reduction "did not consider issues of allocating and excluding time spent on the patent and copyright claims," see Plaintiff's Objections at 7, the Court finds this objection is due to be overruled as Plaintiff simply misapprehends the Magistrate Judge's discussion in the Second Report.

The glaring problem with Plaintiff's proposal is that it is vastly underinclusive.   Plaintiff ignores all the time spent on general legal work related to all claims.   The Magistrate Judge observed that:

> much of the general legal work was for all claims, including work on the motion to transfer, protective orders, case management, motion for sanctions for violating the protective order, opposition to adding Ja-Ru HK as a party, status reports, statement of the facts and standard of review in the appellate response brief, and most pretrial work.

See Second Report at 75.   Even a cursory review of the billing records reveals numerous entries properly allocated as joint that Plaintiff's method would arbitrarily exclude.   Compare, e.g., Second Report, Attachment A, entries 28, 84, 95, 166, 182 (related to settlement); entries 400-401, 416-418, 420, 425 (related to case management conference and initial disclosures) with Plaintiff's Objections, Ex. 1.   Moreover, this exercise proves precisely why the Magistrate Judge was entirely correct in declining to conduct a comprehensive line-by-line analysis here—the billing records are quite voluminous and reviewing each of the nearly 3500 billing entries would be impractical and an egregious waste of judicial resources.   See Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994).   The Magistrate Judge opted to account for the allocation issues through an across-the-board percentage reduction of the lodestar and the undersigned finds that this approach is the appropriate way to address the allocation issues in this case.

In its Objections, Plaintiff also proposes a percentage reduction that it maintains reflects a more appropriate "allocation" of the joint fees.   See Plaintiff's Objections at 13.[13]   Plaintiff asserts that the Court should award only 37.2% of the joint fees, which in its view is more proportional to the importance of the trade dress and unfair competition claims in this litigation. See id.   Plaintiff derived this number by totaling all the "non-Joint fees" (i.e., the fees in the patent-only, copyright-only, and trade dress & FDUTPA-only columns) and then determining the percentage of those fees that were trade dress & FDUTPA-only fees.   Id.   But Plaintiff fails to explain how this method rationally reflects the amount of time spent working on the claims jointly, and cites no legal authority in support of this manner of allocation.   Regardless, the Court finds that a nearly seventy-percent reduction of the joint fees is not warranted here given Defendants' showing that the four claims are substantially intertwined.   See Sprint Solutions, Inc. v. 4 U Cell, LLC, No. 2:15cv605-PAM-CM, 2017 WL 11632645, at *3 (M.D. Fla. June 9, 2017) (explaining that because the compensable and non-compensable claims "inevitably overlap," defendants are entitled to a "full fee" except "when defense

_____

[13]   The Court notes that Plaintiff incorporates by reference other "methods of allocation" proposed in its prior briefing.   See Objections at 12, 13.   The mere incorporation by reference of a prior argument does not constitute a "specific written objection[]" as required by Rule 72, and as such, the Court need not consider these incorporated arguments. Regardless, Plaintiff's other proposed methods of allocation are due to be rejected for the same reasons set forth here—they are underinclusive and do not result in a reasonable fee award.

counsel indicates that they specifically worked on [non-compensable claims]"). Moreover, the Magistrate Judge reviewed the records and determined that only approximately three percent of the joint fees pertained to discrete copyright or patent related matters.   As such, the Court declines to apply Plaintiff's proposed reduction as it would improperly exclude a significant portion of the fees that Defendants reasonably incurred defending the Lanham Act claims.[14] See Yellow Pages Photos, 846 F.3d at 1163 n.3.

Ultimately, the question before the Court is whether $1,630,203.54 constitutes a reasonable fee award for the Lanham Act claims in this case. Plaintiff insists that a seven-figure award is excessive and amounts to an undue punishment.   See generally Plaintiff's Objections.   According to Plaintiff, it has "already suffered great losses," including the nearly $2 million paid to its own attorneys, the loss of "two large retail customers," and the invalidity of its

---

[14] Plaintiff appears to contend that such a significant reduction is warranted because this was primarily a patent and copyright infringement case.   In support, Plaintiff points to Defendants' contention at summary judgment that Plaintiff "'seem[ed] to have abandoned its trade dress and unfair competition claims.'"   See Plaintiff's Objections at 2, 10 (quoting Defendants' Dispositive Motion for Summary Judgment (Doc. 302) at 3).   This argument is not well taken.   While Plaintiff should have abandoned those claims given its egregious lack of any supporting evidence, Plaintiff repeatedly refused to do so.   Plaintiff opposed a motion to dismiss its trade dress and unfair competition claims, opposed Defendants' request for summary judgment on those claims, and affirmatively moved for summary judgment in its favor on those counts.   Indeed, even after this Court entered summary judgment against it, Plaintiff continued to pursue those claims on appeal.   Moreover, as the Magistrate Judge pointed out and Plaintiff does not deny, Plaintiff sought the same damages as to all claims. Thus, even if all parties viewed the copyright and patent infringement counts as the stronger claims, the trade dress and unfair competition claims were fully part of this litigation and Defendants had to defend against those causes of action throughout this lawsuit.

"registered intellectual property."   See Plaintiff's Objections at 12.   Plaintiff appears to contend that its conduct in this case was reasonable given that when it initiated the case it had "a registered patent and a registered copyright, and had uncovered evidence that Defendants did use its product in the design process."   Of course, those arguments do not address the more salient question of whether it was reasonable for Plaintiff to assert trade dress and unfair competition claims absent any evidence of secondary meaning or consumer confusion.   Moreover, these arguments are merely an invitation to revisit the issues addressed on the question of entitlement.   For all the reasons expressed in the First Report, this is an exceptional case, one that stands out from others both due to the significant flaws in the legal theories advanced and in the overly aggressive and uncivil way it was litigated.   See, e.g., First Report at 87-88, 103.   Based on the undersigned's own familiarity with the matter, a significant fee award is warranted and, the Court is convinced that an award of $1,630,203.54 is a reasonable fee award for the Lanham Act claims in this case.[15]   Accordingly, it is

---

[15]  Indeed, it would not be in Plaintiff's interest for the Court to reject the recommended fee award.   Doing so would require the Court to engage in a de novo review of the First Report to address Defendants' Objections on Entitlement.   Having ruled on the summary judgment motions, the undersigned is more familiar with the arguments raised at summary judgment and the applicable law.   Based on this familiarity, were the Court to revisit the issue of entitlement, the undersigned likely would find that fees are warranted on the copyright claim as well.

While the Magistrate Judge is correct that the Court did not give "short shrift" to Plaintiff's copyright arguments, this is not a reflection of the strength of the merits of those arguments, but rather reflects that Plaintiff's copyright claim lacked merit in so many ways.

**ORDERED:**

1. Lanard's Objections to Supplemental Report and Recommendation (Doc. 553) are **OVERRULED**.

_____

See First Report at 98. The existence of a registered copyright notwithstanding, Plaintiff's copyright infringement claim was a transparent attempt to seek "protection over any and all expressions of the idea of a pencil-shaped chalk holder." See Lanard Toys Ltd. v. Dolgencorp LLC, 958 F.3d 1337, 1346 (Fed. Cir. 2020). However, Plaintiff's experienced counsel is undoubtedly well-aware of the black letter law that copyright protection does not extend to an "idea" itself. See 17 U.S.C. § 102(b); Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc., 499 U.S. 340, 344 (1991) ("The most fundamental axiom of copyright law is that '[n]o author may copyright his ideas . . . .'" (quoting Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 556 (1985))); see also Baby Buddies, Inc. v. Toys R Us, Inc., 611 F.3d 1308, 1317 (11th Cir. 2010) ("But every sculpture of a teddy bear shares these features simply because these features are what defines a teddy bear. To protect this basic combination of features would in effect give Baby Buddies exclusive rights over the very idea of a plastic sculpted teddy bear, which is expressly precluded under the copyright laws."). Yet remarkably, Plaintiff never made any serious attempt to identify its protected expression as anything other than the general idea of a pencil shaped chalk holder. See, e.g., Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 322) at 21 (characterizing the "protectable expression" as "a pencil-shaped chalk holder toy"). This is perhaps because, once the idea itself is set aside, the only remaining similarities between the works are those that stem from the plainly unprotected design elements of the ubiquitous no. 2 pencil itself. As such, Plaintiff's copyright claim stands out to the Court as one involving substantial overreach. See Baby Buddies, Inc. v. Toys "R" Us, Inc., No. 8:03-cv-1377, ECF No. 129 (M.D. Fla. Sept. 20, 2011) (order granting fees in copyright infringement action) ("It was objectively unreasonable for Plaintiff to pursue the theory that Plaintiff's total design was protected.").

This overreach is compounded by the fact that Plaintiff sought substantial damages on a theory that it could recover the lost sales of its unrelated products stemming from its decision to sue its own retail customers for infringement. While the Court did not reach the issue of damages, it is noteworthy that Plaintiff combined an exceptionally weak copyright claim with a particularly expansive theory of damages without citation to a single case where any court awarded such damages or otherwise recognized the viability of such a theory. See, e.g., Plaintiff's Response to Defendants' Motion in Limine Nos. 11 and 12 on Unrelated Product and DUTPA Damage Issues (Doc. 455) at 8; Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 322) at 24-25. Nevertheless, in light of Defendants' conditional waiver, the Court need not decide whether Plaintiff's copyright claim was so exceptional as to warrant a fee award. But, were a de novo review on entitlement necessary, the Court would likely exercise its discretion to award fees in order to deter the type of overaggressive use of the copyright laws exhibited in this action. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 527 (1994) ("[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.").

2. Defendants' Objection to Report and Recommendation on Defendants' Entitlement to Attorneys' Fees (Doc. 530) are deemed **WAIVED** as set forth in Defendants' Conditional Objections to Report and Recommendation and the Supplemental Report and Recommendation on Defendants' Entitlement to Attorneys' Fees and Costs (Doc. 552).

3. The resolutions set forth in the Report and Recommendation (Doc. 535) and the Supplemental Report and Recommendation (Doc. 551) are **ADOPTED**.[16]

4. Defendants' Motion to Tax Costs Pursuant to Federal Rule of Civil Procedure 54(d)(1), 28 U.S.C. § 1920, Local Rule 4.18, and for Costs under FDUTPA, and Supporting Memorandum of Law (Doc. 477) is **GRANTED, in part, and DENIED, in part**.

   A. The Motion is **GRANTED** to the extent the Court awards taxable costs to Defendants in the amount of **$21,256.11**.

   B. Otherwise, the Motion is **DENIED**.

5. Defendants' Renewed Motion for Attorneys' Fees and Memorandum of Law (Doc. 518) is **GRANTED, in part, and DENIED, in part**.

---

[16] Although the Magistrate Judge appeared to indicate in the First Report that Defendants would be entitled to non-taxable costs under FDUTPA, see First Report at 29, 106, she more closely examined the issue in the Second Report and ultimately recommended that Defendants' request for non-taxable costs be denied. See Second Report at 84-91. Absent any objection from Defendants on this issue, the Court adopts the recommendation in the Second Report and denies Defendants' request for non-taxable costs under FDUTPA.

A. The Motion is **GRANTED** to the extent the Court awards attorney's fees to Defendants in the amount of **$1,630,203.54**.

B. Otherwise, the Motion is **DENIED**.

6. The Clerk of the Court is **directed** to enter **JUDGMENT** for Defendants and against Plaintiff in the amount of **$21,256.11** in costs, and **$1,630,203.54** in attorney's fees.

**DONE AND ORDERED** in Jacksonville, Florida this 22nd day of June, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record

The Hon. Patricia D. Barksdale
        United States Magistrate Judge